Exhibit 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BETTE EAKIN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.: 1:22-cv-00340 |
| | ) | |
| v. | ) | |
| | ) | Judge Susan P. Baxter |
| ADAMS COUNTY BOARD OF | ) | |
| ELECTIONS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM IN SUPPORT OF
### INTERVENOR-DEFENDANTS' MOTION TO DISMISS

Intervenor-Defendants support and seek to uphold free and fair elections on behalf of all Pennsylvanians. Intervenor-Defendants therefore respectfully move the Court to uphold the General Assembly's duly enacted laws governing Pennsylvania's elections and to dismiss Plaintiffs' Complaint.[1]

The General Assembly has mandated that a voter who uses an absentee or mail-in ballot "shall . . . fill out, date and sign the declaration" printed on the outer envelope of the ballot. 25 P.S. §§ 3146.6(a), 3150.16(a). Just last week, the Pennsylvania Supreme Court held that the General Assembly's date requirement is mandatory and, thus, that election officials may not count any absentee or mail-in ballot that fails to comply with it. *See* Order, *Ball v. Chapman*, No. 102 MM 2022 (Pa. Nov. 1, 2022) (per curiam) ("*Ball* Order").

Plaintiffs' Complaint is the latest in a series of lawsuits asking courts to erode the General

---

[1] Intervenor-Defendants are Individual Voters David Ball, James D. Bee, Debra Biro, Jesse D. Daniel, Gwendolyn Mae DeLuca, Ross M. Farber, Lynn Marie Kalcevic, Vallerie Sicilano-Biancaniello, S. Michael Streib, the Republican Committees the Republican National Committee, National Republican Congressional Committee, and the Republican Party of Pennsylvania.

Assembly's date requirement.  But Plaintiffs' two counts wholly "fail[] to state a claim upon which relief can be granted" because the date requirement does not violate the federal materiality provision, 52 U.S.C. § 10101(a)(2)(B), or the U.S. Constitution.  Indeed,  as to Plaintiffs' first count, the Pennsylvania Supreme Court's order upheld the date requirement under the federal materiality provision, *see* Ball Order at 1, and three Justices of the U.S. Supreme Court have already concluded that the notion that the date requirement violates the federal materiality provision is "very likely wrong," *Ritter v. Migliori*, 142 S. Ct. 1824, 1824 (2022) (Mem.) (Alito, J., dissenting from the denial of the application for stay).  No other U.S. Supreme Court Justices addressed the merits in the stay posture of that case.

These decisions are correct: the plain statutory text and governing case law confirm that the date requirement does not even *implicate* the federal materiality provision, let alone violate it. The federal materiality provision prohibits "deny[ing] the right of an[] individual to vote" as part of an election official's determination whether that "individual is qualified under State law to vote," 52 U.S.C. § 10101(a)(2)(B)—but application of the date requirement to absentee and mail-in ballots does not deny anyone the right to vote or determine anyone's qualifications to vote.  And neither can the Plaintiffs show a constitutional violation in the longstanding, commonsense, and unburdensome election regulation.  The Court should decline Plaintiffs' invitation to split from the Pennsylvania Supreme Court and the opinion of three Justices, dismiss Plaintiffs' Complaint, and uphold the General Assembly's lawful and constitutional date requirement.

## BACKGROUND

Plaintiffs acknowledge that this suit is merely the latest salvo in a long line of attempts to persuade the courts to undo the General Assembly's date requirement for absentee and mail-in ballots.  *See* Compl. ¶¶ 21–31 (Dkt. No. 1).  In 2020, a majority of the Pennsylvania Supreme

Court held that the date requirement is mandatory and, thus, that election officials may not count any noncompliant ballot in any election after the 2020 general election. *See In re Canvass of Absentee and Mail-In Ballots of November 3, 2020 General Election*, 241 A.3d 1058, 1079–80 (2020) (Opinion of Justice Wecht); *id.* at 1090–91 (Opinion of Justice Dougherty, Chief Justice Saylor, and Justice Mundy).

In the first two cases following that ruling, the Pennsylvania Commonwealth Court upheld mandatory application of the date requirement. The Pennsylvania Supreme Court allowed both decisions to stand. *See In re Election in Region 4 for Downington Sch. Bd. Precinct Uwchlan 1*, 272 A.3d 993 (Pa. Commw. 2022) (unpublished), *appeal denied*, 273 A.3d 508 (Pa. 2022); *Ritter v. Lehigh Cnty. Bd. of Elecs.*, 272 A.3d 989 (Pa. Commw. 2022) (unpublished), *appeal denied*, 271 A.3d 1285 (Pa. 2022).

Four days after the Pennsylvania Supreme Court resolved *Ritter*, individual voters filed a new lawsuit in federal court claiming that the date requirement violates the federal materiality provision, 52 U.S.C. § 10101(a)(2)(B). The Third Circuit agreed, but the U.S. Supreme Court vacated that decision last month. *See Migliori v. Cohen*, 36 F.4th 153 (3d Cir. 2022), *cert. granted and judgment vacated*, *Ritter v. Migliori*, No. 22-30, 2022 WL 6571686 (U.S. Oct. 11, 2022) (Mem.). And when addressing a request for a stay at an earlier stage in that case, three Justices opined that the Third Circuit's now-vacated holding was "very likely wrong" on the merits because it rested upon a misconstruction of the materiality provision. *Ritter*, 142 S. Ct. at 1824 (Mem.) (Alito, J., dissenting from the denial of the application for stay). No other Justices addressed the merits in that stay posture.

Meanwhile, the Commonwealth Court twice has invoked the now-vacated decision in *Migliori* to depart from the General Assembly's date requirement in unpublished, non-precedential

cases arising out of the 2022 primary election.  *See McCormick for U.S. Senate v. Chapman*, 2022 WL 2900112 (Pa. Commw. June 2, 2022) (unpublished); *Chapman v. Berks Cnty. Bd. of Elections*, 2022 WL 4100998 (Pa. Commw. Aug. 19, 2022) (unpublished).

Finally, just last week, the Pennsylvania Supreme Court held that the date requirement is mandatory and, thus, that any absentee or mail-in ballot that fails to comply with it is invalid.  *See Ball* Order.  The Pennsylvania Supreme Court therefore ordered county boards of elections "to refrain from counting any absentee and mail-in ballots received for the November 8, 2022 general election that are contained in undated or incorrectly dated outer envelopes."  *Id.* at 1.  Its order noted that "[t]he Court is evenly divided on the issue of whether failing to count such ballots violates 52 U.S.C. § 10101(a)(2)(B)."  *Id.*

Thus, as Plaintiffs acknowledge—after seven cases in five courts over two years—the current state of the law is that the General Assembly's date requirement is mandatory and that any noncompliant absentee or mail-in ballot may not be counted in the 2022 general election and beyond.  *See* Compl. ¶¶ 21–31; *McCormick*, 2022 WL 2900112; *In re Election in Region 4*, 272 A.3d 993; *Ritter*, 272 A.3d 989; *see also Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (federal courts may not order changes to state election laws on the eve of an election).  Plaintiffs now ask the Court to split from the Pennsylvania Supreme Court and to invalidate the date requirement duly enacted by the General Assembly and upheld after two years of litigation.  *See* Compl. ¶¶ 32–47.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint.  *See, e.g.*, *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 556 (2007).  Accordingly, federal courts "disregard[] allegations in the complaint that are legal conclusions," *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 330 (3d Cir. 2022), and must grant motions to dismiss under Rule 12(b)(6) where the complaint fails to "raise a right to relief above the speculative level," including because it asserts a legally deficient theory of liability, *Twombly*, 550 U.S. at 555.

## ARGUMENT

"States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cty. Area New Party*, 520 U.S. 351, 358 (1997).  "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983) (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)); *see also Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2347–48 (2021) (because voter "[f]raud is a real risk," a state may act prophylactically to prevent fraud "without waiting for it to occur and be detected within its own borders").

The General Assembly has prescribed such a regulation through its mandatory date requirement for absentee and mail-in ballots.  *See* 25 P.S. §§ 3146.6(a), 3150.16(a); *Ball* Order.  As Justices of the Pennsylvania Supreme Court have affirmed, the date requirement serves an "unquestionable purpose."  *In re Canvass of Absentee and Mail-In Ballots of November 3, 2020 General Election*, 241 A.3d at 1090 (Opinion of Justice Dougherty, Chief Justice Saylor, and Justice Mundy) (citing then-Judge Brobson's "observ[ations] below").  The date "provides proof of when the elector actually executed the ballot in full, ensuring their desire to cast it in lieu of appearing in person at the polling place."  *Id.*  It "establishes a point in time against which to measure the elector's eligibility to cast the ballot."  *Id.*  And it "ensures the elector completed the

5

ballot within the proper time frame and prevents tabulation of potentially fraudulent back-dated votes." *Id.* at 1091; *see also id.* at 1087 (Opinion of Justice Wecht) (noting that "colorable arguments also suggest [the] importance" of the date requirement).

These are no mere theoretical interests.  Earlier this year, officials in Lancaster County discovered that an individual had cast a fraudulent ballot in her deceased mother's name.  At least one piece of crucial evidence was the fact that the date provided on the outer envelope was April 26, 2022, twelve days after the mother had passed away.  *See* Affidavit of Probable Cause ¶ 2, Police Criminal Complaint, *Com. v. Mihaliak*, No. CR-126-22 (June 3, 2002) (Ex. A).

In all events, Plaintiffs' complaint is riddled with errors that demand dismissal.  *First*, Plaintiffs fail to join essential parties to this action.  *Second*, Plaintiffs' contention that the date requirement violates the federal materiality provision contravenes the provision's plain statutory text and governing law, resting instead on a misreading of federal law that would invalidate a broad swath of duly enacted state election rules.  *Third*, Plaintiffs argument that the date requirement violates the First and Fourteenth Amendments of the U.S. Constitution misreads governing case law and would subject virtually every meaningful election regulation to strict scrutiny.  None of Plaintiffs' theories is the law.  The Court should dismiss the Complaint and uphold the General Assembly's date requirement and its authority to enact commonsense laws governing Pennsylvania's elections.

## I.    PLAINTIFFS FAILED TO JOIN INDISPENSABLE PARTIES IN VIOLATION OF RULE 19 AND IN CONTRADICTION of THEIR OWN COMPLAINT

Federal Rule of Civil Procedure 19 provides that "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if . . . in that person's absence, the court cannot accord complete relief among existing parties."  Fed. R. Civ. P. 19(a)(1)(A).  Here, as the complaint points out, the county boards of

elections "receive the mail ballots that voters return, which are held until Election Day and then opened and canvassed." Compl. ¶ 17 (citations omitted). And, "[f]or statewide elections," the county boards of elections "send a certificate showing the totals of the returns cast to the Secretary of the Commonwealth, who, in turn, combines each of the certified counts she receives in order to determine the election winner." *Id.* Just this past month, the Acting Secretary had issued guidance stating that "every county is expected to include undated ballots in their official returns for the Nov. 8 election." *See* Acting Secretary of State Issues Statement of SCOTUS Order on Undated Mail Ballots (Oct. 11, 2022), available at https://www.media.pa.gov/pages/state-details.aspx?newsid=536. After the order in *Ball v. Chapman*, the Acting Secretary issued guidance directing counties to "segregate[]" undated or incorrectly dated ballots "from other ballots." Pa. Dep't of State, *Guidance on Undated and Incorrectly Dated Mail-in and Absentee Ballot Envelopes Based on the Pennsylvania Supreme Court's Order in* Ball v. Chapman*, issued November 1, 2022* (Nov. 3, 2022), available at https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/2022-11-03-Guidance-UndatedBallot.pdf.

These are obvious parties that should have been named as defendants. In fact, just four business days ago, a complaint alleging an identical claim to Plaintiffs' Count One was filed naming the Acting Secretary and all 67 county boards of elections as defendants. *See* Complaint, *Pa. State Conf. of the NAACP v. Chapman*, No. 1:22-CV-00339 (W.D. Pa. Nov. 4, 2022), ECF No. 1. And Plaintiffs seem to be at least somewhat aware of these requirements. In their complaint, Plaintiffs say that the Defendants "consist of Pennsylvania's 67 county boards of elections (full list recited in caption)." Compl. at 1; *see also id.* ¶ 17 ("Defendants are the county boards of elections for the 67 counties of the Commonwealth of Pennsylvania.").

Contrary to their representations in the body of the complaint, Plaintiffs did not name all those entities as defendants. Of the 67 county boards Plaintiffs purported to include in this suit, only 60 are listed in the Complaint's caption. Missing are Armstrong County Board of Elections, Erie County Board of Elections, Greene County Board of Elections, Philadelphia County Board of Elections, Schuylkill County Board of Elections, Susquehanna County Board of Elections, and York County Board of Elections. Neither do the Plaintiffs name, or purport to name, the Acting Secretary. Plaintiffs' Complaint is therefore defective even before reaching the first paragraph, and the Court should dismiss it.

## II.   MANDATORY APPLICATION OF THE DATE REQUIREMENT DOES NOT VIOLATE THE FEDERAL MATERIALITY PROVISION

When informing the Court that the U.S. Supreme Court "declined to disrupt the Third Circuit's ruling [in *Migliori*] when one of the parties . . . sought an emergency injunction," Plaintiffs leave out that three Justices of the U.S. Supreme Court dissented from denial of the stay in *Migliori*. *See* Compl. ¶ 26. Those Justices concluded that the Third Circuit panel's view that mandatory application of the date requirement violates the federal materiality provision is "very likely wrong." *Ritter*, 142 S. Ct. at 1824 (Mem.) (Alito, J., dissenting from the denial of the application for stay). The plain statutory text and governing law confirm that the General Assembly's date requirement does not even implicate, let alone violate, 52 U.S.C. § 10101(a)(2)(B). The Court should dismiss Count One.

### A.   Application Of The Date Requirement Does Not Deny Anyone The Right To Vote Or Determine Anyone's Qualifications To Vote

The materiality provision states:

No person acting under color of law shall … deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B).

Application of the General Assembly's date requirement to preclude counting of undated or incorrectly dated absentee or mail-in ballots does not violate this provision for at least three reasons.  *First*, the materiality provision prohibits only "deny[ing] the right of any individual to vote," not imposing mandatory rules on the act of completing and casting a ballot.  *Id.*   The materiality provision therefore has no application to the date requirement because "[w]hen a mail-in ballot is not counted because it was not filled out correctly, the voter is not denied 'the right to vote.'"  *Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay) (quoting 52 U.S.C. § 10101(a)(2)(B)).  Rather, "that individual's vote is not counted because he or she did not follow the rules for casting a ballot."  *Id.*

An individual "may be unable to cast a vote for any number of reasons," such as showing up to the polls after Election Day, failing to sign or to use a secrecy envelope for an absentee or mail-in ballot, attempting to vote for too many candidates for a single office, returning the ballot to the wrong location, or arriving at the wrong polling place.  *See id.*  Application of these rules does not deny the right to vote; nor does application of the date requirement.  *See id.* at 1825 ("Even the most permissive voting rules must contain some requirements, and the failure to follow those rules constitutes the forfeiture of the right to vote, not the denial of that right."); *id.* ("[I]t would be absurd to judge the validity of voting rules based on whether they are material to eligibility."); *see also Rosario v. Rockefeller*, 410 U.S. 752, 757 (1973) (application of neutral state-law voting requirement does not "disenfranchise" voters); *Timmons*, 520 U.S. at 358 ("States may, and inevitably must, enact reasonable regulations" for effectuating votes); *Brnovich*, 141 S. Ct. at 2338 ("Casting a vote, whether by following the directions for using a voting machine or completing a paper ballot, requires compliance with certain rules."); *Democratic Nat'l Comm. v.*

*Wis. State Legislature*, 141 S. Ct. 28, 35 (Mem.) (Oct. 26, 2020) (Kavanaugh, J., concurring) ("In other words, reasonable election deadlines do not 'disenfranchise' anyone under any legitimate understanding of that term."). As the Fifth Circuit has reasoned in a precedential, non-vacated decision, "[i]t cannot be that any requirement that may prohibit an individual from voting if the individual fails to comply denies the right of that individual to vote under" the federal materiality provision. *Vote.Org v. Callanen*, 39 F.4th 297, 305 n.6 (5th Cir. 2022).

    *Second*, the materiality provision requires that the error or omission affect a "determin[ation] whether such individual is qualified under State law to vote." 52 U.S.C. § 10101(a)(2)(B). It therefore regulates requirements and practices related to qualifications and registration to vote, not rules like the date requirement "that must be met in order to cast a ballot that will be counted." *Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay); *see also Vote.Org*, 39 F.4th at 305 n.6.

    Congress enacted the materiality statute and the broader § 10101 of which it is part "to enforce th[e] [Fifteenth] Amendment[,]" *United States v. Mississippi*, 380 U.S. 128, 138 (1965), which guarantees that "[t]he right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude," U.S. Const. amend. XV, § 1. Congress's purpose in enacting the materiality statute was to "forbid[] the practice of *disqualifying voters* for their failure to provide information irrelevant to their eligibility to vote." *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003) (emphasis added). In particular, Congress addressed "the practice of requiring unnecessary information for voter registration"—such as listing the registrant's "exact number of months and days in his age"—"with the intent that such requirements would increase the number of errors or omissions on the application forms, thus providing an excuse to disqualify potential voters." *Id.*

In other words, "[s]uch trivial information served no purpose other than as a means of inducing voter-generated errors that could be used to *justify rejecting applicants*." *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008) (emphasis added); *see also* H. Rep. No. 88-914, pt. 2, at 5 (1963) ("[R]egistrars [would] overlook minor misspelling errors or mistakes in age or length of residence of white applicants, while rejecting" an application from an African-American applicant "for the same or more trivial reasons.").

The federal materiality statute thus functions as a safeguard against discriminatory application of state voter qualification and registration rules. *See Mississippi*, 380 U.S. at 138; *Schwier*, 340 F.3d at 1294; *Browning*, 522 F.3d at 1173; *see also* H. Rep. No. 88-914, pt. 1, at 19 (recognizing that Title I of the Civil Rights Act, now codified in § 10101, was part of an effort "by which the Congress took steps to guarantee to all citizens the right to vote without discrimination as to race or color"). The two other subsections of § 10101(a)(2) further underscore this point: those subsections require election officials to apply uniform "standard[s], practice[s], [and] procedure[s] . . . in determining whether any individual is qualified to vote under state law," 52 U.S.C. § 10101(a)(2)(A), and restrict the use of literacy tests "as a qualification for voting in any election," *id.* § 10101(a)(2)(C).

Here, the date on the absentee or mail-in ballot declaration is not used to determine an individual's *qualifications* to vote, but rather the *validity* of a ballot. *Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay); *see also Vote.Org*, 39 F.4th at 305 n.6. Indeed, mandatory application of the date requirement results in invalidation of a noncompliant ballot, not a "determin[ation]" that the individual is or is not "qualified under State law to vote." 52 U.S.C. § 10101(a)(2)(B). In other words, mandatory application of the date requirement results in a ballot not being counted, not in an individual being removed from, or

prevented from joining, the list of registered voters.  *Compare, e.g.*, *Schwier*, 340 F.3d at 1294; *Browning*, 522 F.3d at 1173; H. Rep. No. 88-914, pt. 2, at 5; *see also Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay); *Vote.Org*, 39 F.4th at 305 n.6.  Because mandatory application of the date requirement does not result in a qualification determination, it is outside the plain terms and narrow scope of, and does not violate, the federal materiality provision.  *See Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay); *see also Vote.Org*, 39 F.4th at 305 n.6; *Schwier*, 340 F.3d at 1294; *Browning*, 522 F.3d at 1173.

*Third*, the materiality provision demands that the "record or paper" be related to an "application, registration, or other act requisite to voting."  52 U.S.C. § 10101(a)(2)(B).  To be sure, an absentee or mail-in ballot and accompanying declaration is a "record or paper."  *Id.*  But casting a ballot—which, under Pennsylvania law, requires completing the declaration, *see* 25 P.S. §§ 3146.6(a), 3150.16(a)—constitutes the *act* of voting, not an application, registration, or other act *requisite* to voting.  *Ritter*, 142 S. Ct. at 1826 n.2 (Mem.) (Alito, J., dissenting from the denial of the application for stay).  It therefore would be an "awkward" statutory construction at best to extend the materiality provision to absentee and mail-in ballots and the date requirement.  *Id.*  Voting is voting; it is not an act requisite to voting.

**B.      There Is No Tenable Basis To Conclude That Mandatory Application Of The Date Requirement Violates The Federal Materiality Provision**

In their Complaint, Plaintiffs offer two main arguments in support of their claim that the date requirement violates the federal materiality provision.  Both are not only unpersuasive but also, in fact, demonstrate that the Court should decline Plaintiffs' invitation to create a split of authority with the Pennsylvania Supreme Court on the date requirement's validity.

*First*, the entire thrust of Plaintiffs' Complaint is that the date requirement "is immaterial to determining whether an elector is qualified to vote in Pennsylvania," Compl. ¶ 38, which in Pennsylvania requires being at least 18 years of age on the date of the election; having been a citizen of Pennsylvania for at least one month; having lived in the relevant election district for at least 30 days; and not being imprisoned for a felony, *see* 25 P.S. § 1301; *see also* Compl. ¶ 18. Plaintiffs are entirely correct that compliance with the date requirement is not material to any individual's qualifications to vote. But that point *disproves* Plaintiffs' case. As explained above, the date requirement is not used to determine whether an individual is "qualified under State law to vote," 52 U.S.C. § 10101(a)(2)(B), so it does not implicate, let alone violate, the federal materiality provision, *see Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay); *see also Vote.Org*, 39 F.4th at 305 n.6; *Schwier*, 340 F.3d at 1294; *Browning*, 522 F.3d at 1173; *supra* Part II.A.

In fact, Plaintiffs' proposed reading of the federal materiality provision is breathtakingly broad—and, unsurprisingly, incorrect. Under Plaintiffs' reading, states could enact no mandatory rules against "errors or omissions" on any voting "record[s] or paper[s]" except those that merely implement the requirements for "determining whether [an] individual is qualified under State law to vote." Compl. ¶¶ 33, 37–38. In other words, under Plaintiffs' construction of the federal materiality provision, states could not adopt *any* requirements for completing ballots or ballot-return envelopes that do not confirm the individual's qualifications to vote.

Take, for example, the General Assembly's requirement that a voter sign an absentee or mail-in ballot return envelope, which appears in the very same statutory sentence as the date requirement. *See* 25 P.S. §§ 3146.6(a), 3150.16(a) (voter "shall . . . fill out, date and sign the declaration" printed on the outer envelope of the ballot); *see also Ritter*, 142 S. Ct. at 1826 n.2

13

(Mem.) (Alito, J., dissenting from the denial of the application for stay) (discussing signature requirement).  Before the Pennsylvania Supreme Court just last month, Acting Secretary Chapman agreed that the signature requirement is valid and mandatory and does not violate the federal materiality provision.  *See* Acting Sec'y Ans. 15–23, *Ball v. Chapman*, No. 102 MM 2022 (Oct. 19, 2022) ("Acting Sec'y Ans.") (Ex. B).  But under Plaintiffs' proposed reading, the signature requirement would violate the federal materiality provision: a failure to provide a signature is an "omission" or "an error" involving a "record or paper," and the signature requirement is "immaterial to determining whether an elector is qualified to vote in Pennsylvania."  Compl. ¶¶ 33, 37–38 (internal quotation marks omitted).

Take, as another example, the secrecy-envelope requirement contained in the same statutory section as the date requirement.  *See* 25 P.S. §§ 3146.6(a), 3150.16(a) (voter "shall . . . enclose and securely seal" the ballot in a secrecy envelope).  The Pennsylvania Supreme Court has upheld that requirement as mandatory, *see Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 379–80 (Pa. 2020), and the Acting Secretary conceded last month that it does not violate the federal materiality provision, *see* Acting Sec'y Ans. 39 n.15.  But it would on Plaintiffs' proposed reading: a failure to use a secrecy envelope is an "omission" or "an error" involving a "record or paper," and the signature requirement is "immaterial to determining whether an elector is qualified to vote in Pennsylvania."  Compl. ¶¶ 33, 37–38 (internal quotation marks omitted).

If another example were somehow needed, consider also the General Assembly's commonplace prohibition on "mark[ing] [a] ballot for more persons for any office than there are candidates to be voted for for such office."  25 P.S. § 3063(a).  Under the Election Code, any such overvotes are invalid, and the ballot "shall not be counted for such office."  *Id.*  Under Plaintiffs' proposed construction of federal law, the overvote prohibition would violate the materiality

provision: mismarking a ballot is an "omission" or "an error" involving a "record or paper," and the overvote prohibition is "immaterial to determining whether an elector is qualified to vote in Pennsylvania." Compl. ¶¶ 33, 37–38.

Thus, Plaintiffs' reading of federal law "would subject virtually every electoral regulation" related to voting records and papers to the superintendence of the federal materiality provision, "hamper the ability of States to run efficient and equitable elections, and compel federal courts to rewrite state electoral codes." *Clingman v. Beaver*, 544 U.S. 581, 593 (2005). Indeed, if Plaintiffs' construction were correct, numerous state election rules—such as the General Assembly's signature and secrecy-envelope requirements and overvote prohibition—have been invalid for nearly sixty years, since Congress enacted the federal materiality provision in 1964. But, of course, Plaintiffs' construction is not correct: states can and do enact a wide range of laws that regulate how voting is conducted and prohibit omissions and errors on voting records or papers without running afoul of the federal materiality provision. That is because application of those laws—like mandatory application of the General Assembly's date requirement—does not "deny the right of any individual to vote" or result in a determination whether that individual "is qualified under State law to vote." 52 U.S.C. § 10101(a)(2)(B); *see also supra* Part I.A.

*Second*, Plaintiffs cite to the Third Circuit panel's vacated opinion in *Migliori* as "persuasive" authority. Compl. ¶ 27. But "of necessity [the Supreme Court's] decision vacating the judgment of the [Third Circuit] deprives that court's opinion of precedential effect." *County of Los Angeles v. Davis*, 440 U.S. 625, 634 n.6 (1979) (addressing consequences of *Munsingwear* vacatur); *see also Polychrome Int'l Corp. v. Krigger*, 5 F.3d 1522, 1534 n.30 (3d Cir. 1993) (court is not "bound" by holding in a vacated opinion) (cited at Compl. ¶ 47). *Munsingwear* vacatur "is commonly utilized … to prevent a judgment, unreviewable because of mootness, from spawning

15

any legal consequences." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 41 (1950).  The Third Circuit's decision becoming moot prevented its review by the Supreme Court, and the subsequent vacatur "eliminate[d] [the] judgment, review of which was prevented through happenstance." *Id.* at 40.  The Court should not rely on the Third Circuit's untested—and accordingly erased—analysis.  Moreover, for the reasons explained above, that opinion was wrongly decided.  *See supra* Part I.A.

Nor should the Court follow the two Commonwealth Court decisions from earlier this year holding that the date requirement violates the federal materiality provision.  *See* Compl. ¶¶ 28–29 (discussing *Chapman*); *see also McCormick*, 2022 WL 2900112.  Those decisions relied upon the now-vacated *Migliori* decision, have been superseded by the Pennsylvania Supreme Court's holding in *Ball* last week, and, in all events, were incorrect.  *See McCormick*, 2022 WL 2900112; *Chapman*, 2022 WL 4100998; *Ball* Order at 1; *supra* Part I.A.

## III.   MANDATORY APPLICATION OF THE DATE REQUIREMENT DOES NOT VIOLATE THE UNITED STATES CONSTITUTION

The Court also should dismiss Count Two because Plaintiffs "fail[] to state a claim upon which relief can be granted" under the U.S. Constitution.  Fed. R. Civ. P. 12(b)(6).

The U.S. Constitution empowers the Pennsylvania General Assembly to regulate the time, place, and manner of federal elections in the Commonwealth.  U.S. Const. art. I, § 4, cl. 1.  While this power "may not be exercised in a way that violates other . . . provisions of the Constitution," *Williams v. Rhodes*, 393 U.S. 23, 29 (1968), it is a bedrock principle of our federalist system that not all state election laws raise constitutional concerns, *see Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (recognizing that state election laws "will invariably impose some burden upon individual voters").

To determine whether a state voting or election law unconstitutionally burdens the right to vote, courts weigh the character and magnitude of the burden, if any, imposed by the law on protected rights against the state's interests in and justifications for the law. *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189–91 (2008). Under this analytical approach—commonly known as the *Anderson/Burdick* test for the two Supreme Court cases from which it derives— "[r]egulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest," while those imposing "[l]esser burdens . . . trigger less exacting review, and [the] State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Timmons*, 520 U.S. at 358–59 (internal quotation marks omitted).

The date requirement is constitutional under the *Anderson/Burdick* framework because it imposes no more than the usual burdens of voting and is amply justified by the State's interests in protecting the integrity of its elections.

### A.      The Date Requirement Involves Nothing More Than The Usual Burdens Of Voting And Is Constitutional

The General Assembly's commonsense date requirement's "burdens" are too light and its justifications too reasonable to violate the Constitution. The U.S. Supreme Court's decision in *Crawford* demonstrates as much. The plaintiffs in that case claimed that an Indiana law requiring in-person voters to present a photo ID imposed an unconstitutional burden under the *Anderson/Burdick* framework. *See* 553 U.S. at 185 (Opinion of Stevens, J.). The Supreme Court noted that because the plaintiffs brought a facial challenge "that would invalidate the statute in all its applications, they bear a heavy burden of persuasion." *Id.* at 200. The plaintiffs, however, did not introduce "evidence of a single, individual Indiana resident who [would] be unable to vote" under the challenged law. *Id.* at 187 (internal quotation marks omitted). The Supreme Court

ultimately held that the plaintiffs had failed to carry that burden and rejected their claim.  *See id.* at 200–04.

The Supreme Court analyzed the character and magnitude of the burden imposed by the photo ID requirement.  *See id.* at 198.  The Supreme Court recognized that the law placed some burden on voters, particularly voters who lacked a photo ID.  *See id.*  The Supreme Court noted that voters who did not already have a photo ID must bear "the inconvenience of making a trip to the [Bureau of Motor Vehicles], gathering the required documents, and posing for a photograph." *Id.*  The Supreme Court concluded, however, that such inconvenience "surely does not qualify as a substantial burden on the right to vote, or even represent a significant increase over the usual burdens of voting." *Id.*

The Supreme Court also addressed the State's asserted interests in adopting the photo ID requirement—"deterring and detecting voter fraud," "moderniz[ing] election procedures," and "safeguarding voter confidence." *Id.* at 191.  The Supreme Court concluded that those interests were "legitimate" and that the photo ID requirement "is unquestionably relevant to the State's interest in protecting the integrity and reliability of the election process." *Id.*  Accordingly, the Supreme Court held that the plaintiffs' unconstitutional burden claim failed.  *See id.* at 200–04.

Plaintiffs in this case have failed plausibly to allege that the date requirement unconstitutionally burdens the right to vote.  In fact, the date requirement is no different than the "usual burdens of voting." *Id.* at 198.  The Pennsylvania Election Code provides that absentee and mail-in voters "shall . . . fill out, date and sign" the ballot declaration.  25 P.S. §§ 3146.6(a), 3150.16(a).  No one disputes that such voters must "sign" their ballot declarations.  It cannot be a significant burden to require voters to write a date *on that same declaration*.  And in all events, any burden flowing from the requirement to write a date on a paper is certainly less onerous than

"the inconvenience of making the trip to the [Bureau of Motor Vehicles], gathering the required documents, and posing for a photograph" upheld as minimal and constitutional in *Crawford*.  553 U.S. at 198.

Furthermore, the date requirement advances "legitimate" and "unquestionably relevant" State interests related to "protecting the integrity and reliability of the election process."  *Crawford*, 553 U.S. at 191.  The date requirement serves weighty interests and an "unquestionable purpose." *In re 2020 Canvass*, 241 A.3d at 1090 (Opinion of Justice Dougherty, Chief Justice Saylor, and Justice Mundy); *see also id.* at 1087 (Opinion of Justice Wecht) (noting that "colorable arguments . . . suggest [the date requirement's] importance"); Affidavit of Probable Cause ¶ 2, Police Criminal Complaint, *Commonwealth v. Mihaliak*, No. CR-126-22 (June 3, 2022).  Such cases as *Mihaliak* prove the point, but are not even necessary.  "[I]t should go without saying that a State may take action to prevent election fraud without waiting for it to occur and be detected within its own borders."  *Brnovich*, 141 S. Ct. at 2348.  The date requirement clearly serves the purpose of preventing election fraud.

Furthermore, even if the *Anderson/Burdick* analysis were a close one (and it is not), it would be inappropriate even in the name of those principles to change the General Assembly's election laws at this time.  The Supreme Court "has repeatedly emphasized that federal courts ordinarily should not alter state election laws in the period close to an election."  *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 30 (2020) (Kavanaugh, J., concurring in denial of application to vacate stay).  The *Purcell* principle provides an "alternative and independent reason[]" to refrain from changing a state's election laws so close to an election, even apart from entering the *Anderson/Burdick* analysis at all.  *See id.* at 30, 35 (concluding that, "[i]n light of the

three alternative and independent conclusions outlined above [including the *Purcell* principle], I do not think that we may conduct" "the ordinary *Anderson-Burdick* balancing test").

Changing election rules on the eve of an election is "bad enough." *Republican Party of Pa. v. Degraffenreid*, 141 S. Ct. 732, 735 (2021) (Thomas, J., dissenting from the denial of certiorari). "Late judicial tinkering with election laws can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others." *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring in grant of applications for stays). But changing the rules "after election day" is even worse: it risks "severely damage[ing] the electoral system on which our self[-]governance so heavily depends," *Republican Party of Pa.*, 141 S. Ct. at 734–35 (Thomas, J., dissenting from the denial of certiorari), by engendering "the chaos and suspicions of impropriety" that follow when invalid ballots are counted "after election day and potentially flip the results of an election," *Democratic Nat'l Comm.*, 141 S. Ct. at 33 (Kavanaugh, J., concurring in denial of application to vacate stay). Such post-election judicial changes to election rules also undercut the finality vital to functioning democracy because they encourage losing candidates to invoke the judicial process "to undo the ballot results." *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1180 (9th Cir. 1988).

For the foregoing reasons, the date requirement's service of the state's legitimate interests easily justifies its reasonable and nondiscriminatory command. The date requirement is constitutional.

### B. There Is No Tenable Basis To Conclude That Mandatory Application Of The Date Requirement Violates The Constitution

Plaintiffs provide two reasons for the Court to find that the commonsense, nondiscriminatory, and longstanding date requirement is unconstitutional. Neither is convincing.

*First*, Plaintiffs argue that, in evaluating the burden of an election regulation, courts "may consider . . . the consequences of noncompliance." Compl. ¶ 44. Accordingly, Plaintiffs would have the Court find the date requirement to impose a "significant burden[]" because the consequences of not complying with it is that the ballot will not be counted. *Id.* In other words, Plaintiffs would argue that *every* election regulation that must be complied with—that is, every election regulation that matters—imposes a "significant burden" on the right to vote and must therefore pass some form of strict scrutiny. *See Appeal of Pierce*, 843 A.2d 1223, 1232 (Pa. 2004) (construing an election regulation "as merely directory would render its limitation meaningless and, ultimately, absurd"); *Pa. Democratic Party*, 238 A.3d at 391 (Wecht, J., concurring) ("[A] mandate without consequence is no mandate at all.").

That is not the law. Plaintiffs' argument threatens to "subject virtually every electoral regulation to strict scrutiny" and "hamper the ability of States to run efficient and equitable elections." *Clingman v. Beaver*, 544 U.S. 581, 593 (2005). And, in fact, *Crawford* completely forecloses Plaintiffs' analysis. The challenged statute in *Crawford* required that voters present photo identification to vote on election day; failure to do so would prevent that voter from having her vote counted. 553 U.S. at 185–86. If Plaintiffs were correct, the Supreme Court would have held that the challenged statute imposed a significant burden. It did not; instead, the Supreme Court said that "the inconvenience of making a trip to the BMV, gathering the required documents, and posing for a photograph surely does not qualify as a substantial burden on the right to vote, or even represent a significant increase over the usual burdens of voting." *Id.* at 198.

Unsurprisingly, none of the cases cited in Plaintiffs' complaint supports their preferred burdens analysis. In *Democratic Executive Committee of Florida v. Lee*, the Eleventh Circuit focused not on the *consequences* of the challenged rule, but on the matching-signatures

requirement itself.  915 F.3d 1312, 1319 (11th Cir. 2019).  Because it was not a foolproof process, "legitimate vote-by-mail and provisional voters, through factors out of their control, are burdened with the risk that their ballots will incorrectly be rejected for signature mismatch."  *Id.* at 1320.  In contrast, nothing about writing a date on a piece of paper—after the voter had *already* signed the same paper—is "out of [the voter's] control."  *Id.*

Plaintiffs' citation to *Northeast Ohio Coalition for the Homeless v. Husted* is even farther off the mark.  837 F.3d 612 (6th Cir. 2016).  Plaintiffs quote that court as saying that "[r]equiring boards of elections to reject the ballots of absentee and provisional voters who fail to accurately complete birthdate and address fields directly and measurably disenfranchises some voters."  *Id.* at 631.  But there the court was not describing the *burden* of that election regulation; it was merely describing the regulation as being mandatory.  Plaintiffs did not include what the court actually said about the burden on the next page: "Ohio's important interests in provisional-voter registration and identification eclipse the *small* burden of accurately completing the two fields—a burden that actually impacts just a few hundred voters each election, an impact wholly in their own control." *Id.* at 632 (emphasis added).

Finally, Plaintiffs cite *Council of Alternative Political Parties v. Hooks*, where the Third Circuit considered the difficulty of polling the minimum ten percent of votes to obtain "party" status in determining the burden of a filing deadline.  121 F.3d 876, 880 (3d Cir. 1997).  But that the challenged law at issue there was not a ballot regulation; it was a ballot *access* regulation on aspiring political parties.  It therefore does not support Plaintiffs' view that affecting *anyone's* vote *at all* is enough to render a law's burden significant.

Plaintiffs' citation to *Donald J. Trump for President v. Boockvar* is similarly deficient. Compl. ¶ 44.  In that case, the district court held that a "notice-and-cure procedure . . . in fact lift[s]

a burden on the right to vote." *Trump for President*, 502 F. Supp. 3d at 919.  At most, that proves that nonmandatory election regulations (for which noncompliance does not lead to automatic ballot invalidation) do not burden the right to vote.  It does not—and cannot—mean that mandatory election regulations always significantly burden the right to vote.

*Second*, Plaintiffs argue that—regardless of the burden—the date requirement "serves no legitimate purpose" and its "burdens thus necessarily outweigh its benefits because there is nothing to place on the state-interest side of the scale."  Compl. ¶ 46.  That is not an argument; that is abdication.  As mentioned earlier, *supra* Part III.A, the date requirement serves an "unquestionable purpose."  *In re 2020 Canvass*, 241 A.3d at 1090 (Opinion by Justice Dougherty, Chief Justice Saylor, and Justice Mundy); *id.* at 1087 (Opinion of Justice Wecht) (noting that "colorable arguments . . . suggest [the date requirement's] importance").  In Plaintiffs' haste to create a split of authority on the validity of the date requirement, they also seek to have the Court declare the state law date requirement serves "no legitimate purpose" in stark tension with what a majority of the Pennsylvania Supreme Court has already said.  In all events, Plaintiffs say nothing to defend the propriety of asking the Court to change Pennsylvania's election laws *after* the election has already passed.  *See Purcell*, 549 U.S. at 4–5; *Democratic Nat'l Comm.*, 141 S. Ct. at 35 (Kavanaugh, J., concurring in denial of application to vacate stay).

## CONCLUSION

The Court should dismiss Plaintiffs' Complaint.

Dated:  November 9, 2022          Respectfully submitted,

/s/ Kathleen A. Gallagher
Kathleen A. Gallagher
PA I.D. #37950
Russell D. Giancola
PA. I.D. #200058
GALLAGHER GIANCOLA LLC
436 Seventh Avenue, 31st Floor
Pittsburgh, PA 15219
Phone: (412) 717-1900
kag@glawfirm.com
rdg@glawfirm.com

John M. Gore *
E. Stewart Crosland
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com

Thomas W. King, III
Thomas E. Breth
DILLON, McCANDLESS, KING,
 COULTER & GRAHAM, LLP
128 W. Cunningham St.
Butler, PA  16001
Phone: (724) 283.2200
tking@dmkcg.com
tbreth@dmkcg.com

*Counsel for Intervenor-Defendants*

* *Pro hac vice application forthcoming*

24

Exhibit A

# POLICE CRIMINAL COMPLAINT

| COMMONWEALTH OF PENNSYLVANIA | | |
|---|---|---|
| COUNTY OF: Lancaster | | |

**COMMONWEALTH OF PENNSYLVANIA**
**VS.**

| Magisterial District Number: 02-2-02 | DEFENDANT: *(NAME and ADDRESS):* |
|---|---|
| MDJ: Hon. BRUCE A. ROTH, ESQ | |
| Address: 150 NORTH QUEEN STREET SUITE 120 LANCASTER, PA 17603 | |
| Telephone: 717-295-2000 | |

DEFENDANT: *(NAME and ADDRESS):*

| CHERYL | | MIHALIAK | |
|---|---|---|---|
| First Name | Middle Name | Last Name | Gen |
| 831 | 3RD ST | | |
| LANCASTER | | PA | 17603 |

### NCIC Extradition Code Type

| | | | Distance: |
|---|---|---|---|
| ☐ 1-Felony Full | ☐ 5-Felony Pend. | ☐ C-Misdemeanor Surrounding States | |
| ☐ 2-Felony Ltd. | ☐ 6-Felony Pend. Extradition Determ. | ☐ D-Misdemeanor No Extradition | |
| ☐ 3-Felony Surrounding States | ☐ A-Misdemeanor Full | ☐ E-Misdemeanor Pending | |
| ☐ 4-Felony No Ext | ☒ B-Misdemeanor Limited | ☐ F-Misdemeanor Pending Extradition Determ. | |

### DEFENDANT IDENTIFICATION INFORMATION

| Docket Number | Date Filed | OTN/Live Scan Number | Complaint | Incident Number | Request Lab Services? |
|---|---|---|---|---|---|
| CR-126-22 | 06/03/22 | R 300522-5 | 150 | DA-22-0138 | ☐ YES ☒ NO |

| GENDER | DOB 6/13/1961 | POB | | Add'l DOB | Co-Defendant(s) |
|---|---|---|---|---|---|
| ☐ Male ☒ Female | AKA | First Name | Middle Name | Last Name | Gen. |

| RACE | ☒ White | ☐ Asian | ☐ Black | ☐ Native American | ☐ Unknown |
|---|---|---|---|---|---|

| ETHNICITY | ☐ Hispanic | ☒ Non-Hispanic | ☐ Unknown |
|---|---|---|---|

| HAIR COLOR | ☒ GRY (Gray) | ☐ RED (Red/Aubn.) | ☐ SDY (Sandy) | ☐ BLU (Blue) | ☐ PLE (Purple) | ☐ BRO (Brown) |
|---|---|---|---|---|---|---|
| | ☐ BLK (Black) | ☐ ONG (Orange) | ☐ WHI (White) | ☐ XXX (Unk/Bald) | ☐ GRN (Green) | ☐ PNK (Pink) |
| | ☐ BLN (Blonde /Strawberry) | | | | | |

| EYE COLOR | ☐ BLK (Black) | ☒ BLU (Blue) | ☐ BRO (Brown) | ☐ GRN (Green) | ☐ GRY (Gray) |
|---|---|---|---|---|---|
| | ☐ HAZ (Hazel) | ☐ MAR (Maroon) | ☐ PNK (Pink) | ☐ MUL (Multicolored) | ☐ XXX (Unknown) |

| DNA ☐ YES ☒ NO | DNA Location | | WEIGHT (lbs.) |
|---|---|---|---|
| FBI Number 688907JA3 | MNU Number | | 160 |
| Defendant Fingerprinted? ☐ YES ☐ NO | | | Ft. HEIGHT In. |
| Fingerprint Classification: | | | 5  11 |

### DEFENDANT VEHICLE INFORMATION

| Plate # | State | Hazmat ☐ | Registration Sticker (MM/YY) | Comm'l Veh. Ind. ☐ | School Veh. ☐ | Oth. NCIC Veh. Code | Reg. same |
|---|---|---|---|---|---|---|---|
| VIN | | Year | Make | Model | Style | Color | as Def. ☐ |

Office of the attorney for the Commonwealth ☒ Approved   ☐ Disapproved Because: _____

(The attorney for the Commonwealth may require that the complaint, arrest warrant affidavit, or both be approved by the attorney prior to filing. See Pa.R.Crim.P.507.)

| Andrew J. Gonzalez | | 8/3/22 |
|---|---|---|
| (Name of the attorney for the Commonwealth) | (Signature of the attorney for the Commonwealth) | (Date) |

I, **MARTIN, LARRY**                                    **10158**
(Name of the Affiant)                         PSP/MPOETC Assigned Affiant ID Number and Badge #

of **LANCASTER CO DETECTIVES**                          **PA036013A**
(Identify Department or Agency Represented and Political Subdivision)      (Police Agency ORI Number)

do hereby state: (check appropriate box)

1. ☒ I accuse the above named defendant who lives at the address set forth above
   ☐ I accuse the defendant whose name is unknown to me but who is described as _____

   ☐ I accuse the defendant whose name and popular designation or nickname are unknown to me and whom I have therefore designated as John Doe or Jane Doe

with violating the penal laws of the Commonwealth of Pennsylvania at [ **301** ] **Lancaster City**
(Subdivision Code)      (Place-Political Subdivision)

**150 N QUEEN ST   LANCASTER, PA 17603**

in **Lancaster**      County [ **36** ] on or about **Between 04/26/2022 0001 and 04/26/2022 2359**
(County Code)      (Offense Date)

# POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed: 06/03/2022 | OTN/LiveScan Number | | Complaint 150 | Incident Number DA-22-0138 |
|---|---|---|---|---|---|
| Defendant Name | First: CHERYL | | Middle: | Last: MIHALIAK | |

2. I ask that a warrant of arrest or a summons be issued and that the defendant be required to answer the charges I have made.

3. I verify that the facts set forth in this complaint are true and correct to the best of my knowledge or information and belief. This verification is made subject to the penalties of Section 4904 of the Crimes Code (18 Pa.C.S. § 4904) relating to unsworn falsification to authorities.

4. This complaint consists of the preceding page(s) numbered ___1___ through _4_.

5. I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing of confidential information and documents differently than non-confidential information and documents.

The acts committed by the accused, as listed and hereafter, were against the peace and dignity of the Commonwealth of Pennsylvania and were contrary to the Act(s) of the Assembly, or in violation of the statutes cited. **(Before a warrant of arrest can be issued, an affidavit of probable cause must be completed, sworn to before the issuing authority, and attached.)**

_June 3_____, _2022_
(Date)          (Signature of Affiant)

AND NOW, on this date _____ I certify that the complaint has been properly completed and verified.

An affidavit of probable cause must be completed before a warrant can be issued.

02-2-02
(Magisterial District Court Number)          (Issuing Authority)

# POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed:<br>06/03/2022 | OTN/LiveScan Number | Complaint<br>150 | Incident Number<br>DA-22-0138 |
|---|---|---|---|---|

| Defendant Name | First:<br>CHERYL | Middle: | Last:<br>MIHALIAK |
|---|---|---|---|

The acts committed by the accused are described below with each Act of Assembly or statute allegedly violated, if appropriate. When there is more than one offense, each offense should be numbered chronologically.

(Set forth a *brief* summary of the facts sufficient to advise the defendant of the nature of the offense(s) charged. A citation to the statute(s) allegedly violated, without more, is not sufficient. In a summary case, you must cite the specific section(s) and subsection(s) of the statute(s) or ordinance(s) allegedly violated.)

| Inchoate Offense | ☐ Attempt<br>18 901 A | ☐ Solicitation<br>18 902 A | ☐ Conspiracy<br>18 903 | Number of Victims Age 60 or Over _____ |
|---|---|---|---|---|

| ☒ | 1 | 4101 | (a)(3) | of the | PA Crimes Code | 1 | M1 | | 250 |
|---|---|---|---|---|---|---|---|---|---|
| Lead? | Offense # | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |

| PennDOT Data<br>(if Applicable) | Accident<br>Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (Include the name of the statute or ordinance):
**FORGERY-UTTER FORGED WRIT**

Acts of the accused associated with this Offense:

**PACC 4101(a)3 Forgery**

 **IN THAT, on or about April 26, 2022, THE DEFENDANT did unlawfully utter a writing, namely, a commercial instrument or other document evidencing, creating, transferring, altering, terminating, or otherwise affecting legal relations, which said actor knew to be forged, with intent to defraud or injure TO WIT: Cheryl Mihaliak completed a mail in voter ballot for her deceased mother and signed her mother's name to the ballot. It was returned to the Lancaster County Board of Elections.**

| Inchoate Offense | ☐ Attempt<br>18 901 A | ☐ Solicitation<br>18 902 A | ☐ Conspiracy<br>18 903 | Number of Victims Age 60 or Over _____ |
|---|---|---|---|---|

| ☐ | 2 | 3517 | - | of the | 25 | 1 | M2 | | |
|---|---|---|---|---|---|---|---|---|---|
| Lead? | Offense # | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |

| PennDOT Data<br>(if Applicable) | Accident<br>Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (Include the name of the statute or ordinance):

Acts of the accused associated with this Offense:

**Any person who shall forge or falsely make the official endorsement on any ballot or wilfully destroy or deface any ballot or willfully delay the delivery of ant ballot. TO WIT: Cheryl Mihaliak completed a mail in voter ballot for her deceased mother and signed her mother's name to the ballot.**

 **Police Criminal Complaint**

| Docket Number: | Date Filed:<br>06/03/2022 | OTN/LiveScan Number | | Complaint<br>150 | Incident Number<br>DA-22-0138 |
|---|---|---|---|---|---|
| Defendant Name | First:<br>CHERYL | Middle: | | Last:<br>MIHALIAK | |

## AFFIDAVIT OF PROBABLE CAUSE

1)  On April 28, 2022, I (Detective Larry R. Martin) was assigned to investigate an alleged voter fraud incident. I received information from Christa Miller Chief Clerk/ Chief Registrar of the Lancaster County Board of Elections and Registration Commission.

2)  Christa Miller stated she received a mail in ballot from Teresa J. Mihaliak signed and dated April 26, 2022. The ballot for the democrat primary was received on April 28, 2022, by her office. However, Christa Miller reported that Teresa J. Mihaliak was deceased on April 14, 2022. Christa Miller said this was confirmed by an obituary and records from the Department of Health. She said Teresa J. Mihaliak was removed from the voter rolls on April 25, 2022.

3)  Christa Miller stated that Teresa J. Mihaliak's ballot was requested by Cheryl Mihaliak on March 17, 2022, Cheryl Mihaliak requested her own ballot on March 17, 2022. Christa Miller reported both Teresa Mihaliak and Cheryl Mihaliak's ballots were returned on April 28, 2022.

4)  On May 5, 2022, at 1641 hours I spoke with Cheryl Mihaliak. During that conversation Cheryl Mihaliak told me that she did vote for her mother and signed her ballot after her mother died. Cheryl Mihaliak said that she knew who her mother was going to vote for  and decided to vote for her after she died. Cheryl Mihaliak said she filled out her mother Teresa J. Mihaliak ballot and signed her ballot.

5)  Due to the above information, I request that a summons be issued for defendant Cheryl Mihaliak.

I, LARRY MARTIN , BEING DULY SWORN ACCORDING TO THE LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

I CERTIFY THAT THIS FILING COMPLIES WITH THE PROVISIONS OF THE CASE RECORDS PUBLIC ACCESS POLICY OF THE UNIFIED JUDICIAL SYSTEM OF PENNSYLVANIA THAT REQUIRE FILING OF CONFIDENTIAL INFORMATION AND DOCUMENTS DIFFERENTLY THAN NO-CONFIDENTIAL INFORMATION AND DOCUMENTS.

_____
(Signature of Affiant)

Sworn to me and subscribed before me this _____ day of _____, _____.

_____ Date                                    , Magisterial District Judge

My commission expires first Monday of January,

| SEAL |
|------|

# Magisterial District Judge 02-2-02

## DOCKET TRANSCRIPT



Docket Number: MJ-02202-CR-0000126-2022

# Criminal Docket

Commonwealth of Pennsylvania
v.
Cheryl Mihaliak

Page 1 of 4

## CASE INFORMATION

| | | | |
|---|---|---|---|
| Judge Assigned: | Magisterial District Judge Bruce A. Roth | Issue Date: | 06/03/2022 |
| OTN: | R 300522-5 | File Date: | 06/03/2022 |
| Arresting Agency: | Lancaster County, District Attorney | Arrest Date: | |
| Complaint No.: | DA-22-0138 | Incident No.: | DA-22-0138 |
| Disposition: | Waived for Court | Disposition Date: | 07/25/2022 |
| County: | Lancaster | Township: | Lancaster City |
| Case Status: | Closed | | |

## STATUS INFORMATION

| Case Status | Status Date | Processing Status |
|---|---|---|
| Closed | 07/25/2022 | Completed |
| | 06/03/2022 | Awaiting Preliminary Hearing |

## CALENDAR EVENTS

| Case Calendar Event Type | Schedule Start Date | Start Time | Room | Judge Name | Schedule Status |
|---|---|---|---|---|---|
| Preliminary Hearing | 06/29/2022 | 2:00 pm | | Magisterial District Judge Bruce A. Roth | Continued |

*Continuance Reason:* Defendant Attorney Request
*Requested By:* Attorney Michael Todd Winters

| | | | | | |
|---|---|---|---|---|---|
| Preliminary Hearing | 07/25/2022 | 2:00 pm | | Magisterial District Judge Bruce A. Roth | Scheduled |
| Formal Arraignment | 08/26/2022 | 9:00 am | Courtroom A | | Scheduled |

## DEFENDANT INFORMATION

| | | | |
|---|---|---|---|
| Name: | Mihaliak, Cheryl | Sex: | Female |
| Date of Birth: | 06/13/1961 | Race: | |
| Address(es): | | | |

**Other**
831 Third Street
Lancaster, PA 17603

| | |
|---|---|
| Advised of His Right to Apply for Assignment of Counsel? | Yes |
| Public Defender Requested by the Defendant? | No |
| Application Provided for Appointment of Public Defender? | No |
| Has the Defendant Been Fingerprinted? | No |

MDJS 1200

Printed: 07/25/2022   2:08 pm

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assumes any liability for inaccurate or delayed data, errors or omissions on these docket sheets. Docket sheet information should not be used in place of a criminal history background check, which can only be provided by the Pennsylvania State Police. Employers who do not comply with the provisions of the Criminal History Record Information Act (18 Pa.C.S. Section 9101 et seq.) may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# Magisterial District Judge 02-2-02

## DOCKET TRANSCRIPT

Docket Number: MJ-02202-CR-0000126-2022

# Criminal Docket

Commonwealth of Pennsylvania
v.
Cheryl Mihaliak



Page 2 of 4

## CASE PARTICIPANTS

| Participant Type | Participant Name | OTN/LOTN | Docket Number | Was Sworn In? | Has Testified? |
|---|---|---|---|---|---|
| Prosecution | Commonwealth of Pennsylvania | | | | |
| Arresting Officer | Martin, Larry R. | | | | |
| Defendant | Mihaliak, Cheryl | | | | |
| Witness for the Commonwealth | Miller, Christa | | | | |

## BAIL

Bail Set:            Nebbia Status: None

| Bail Action Type | Bail Action Date | Bail Type | Percentage | Amount |
|---|---|---|---|---|
| Set | 07/25/2022 | Unsecured | | $2,500.00 |

## CHARGES

| # | Charge | Grade | Description | Offense Dt. | Disposition |
|---|---|---|---|---|---|
| 1 | 18 § 4101 §§ A3 | M1 | Forgery - Utters Forged Writing | 04/26/2022 | Withdrawn |
| 2 | 25 § 3517 | M2 | Forging And Destroying Ballots | 04/26/2022 | Waived for Court |

## DISPOSITION / SENTENCING DETAILS

| Case Disposition | Disposition Date | Was Defendant Present? |
|---|---|---|
| Waived for Court | 07/25/2022 | Yes |

| Offense Seq./Description | Offense Disposition |
|---|---|
| 1 Forgery - Utters Forged Writing | Withdrawn |
| 2 Forging And Destroying Ballots | Waived for Court |

## ATTORNEY INFORMATION

**Private**

Name: Michael Todd Winters, Esq.
Representing: Mihaliak, Cheryl
Counsel Status: Active
Supreme Court No.: 077976
Phone No.: 717-584-1895
Address: 53 N Duke St
Ste 318
Lancaster, PA 17602

**Assistant District Attorney**

Name: Jennifer Lauren Ponessa, Esq.
Representing: Commonwealth of Pennsylvania
Counsel Status: Active
Supreme Court No.: 319222
Phone No.: 717-299-8100
Address: Lancaster County Da's Office
50 N Duke St
Lancaster, PA 17602-2805

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assumes any liability for inaccurate or delayed data, errors or omissions on these docket sheets.  Docket sheet information should not be used in place of a criminal history background check, which can only be provided by the Pennsylvania State Police. Employers who do not comply with the provisions of the Criminal History Record Information Act (18 Pa.C.S. Section 9101 et seq.) may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# Magisterial District Judge 02-2-02

## DOCKET TRANSCRIPT

Docket Number: MJ-02202-CR-0000126-2022

# Criminal Docket

Commonwealth of Pennsylvania
v.
Cheryl Mihaliak

Page 3 of 4



## DOCKET ENTRY INFORMATION

| Filed Date | Entry | Filer | Applies To |
|---|---|---|---|
| 07/25/2022 | Bail Set | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 07/25/2022 | Formal Arraignment Scheduled | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 07/25/2022 | Waiver of Preliminary Hearing | Cheryl Mihaliak | Cheryl Mihaliak, Defendant |
| 07/25/2022 | Waived for Court | Magisterial District Judge Bruce A. Roth | Cheryl Mihaliak, Defendant |
| 07/25/2022 | Docket Transcript Printed | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 07/22/2022 | Attorney Active | Jennifer Lauren Ponessa, Esq. | Commonwealth of Pennsylvania, Prosecution |
| 06/24/2022 | First Class Summons Accepted | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 06/13/2022 | Subpoena Issued | Magisterial District Court 02-2-02 | Christa Miller, Witness for the Commonwealth |

*Event:   Preliminary Hearing-07/25/2022 2:00PM- 2:05PM*
*Testify On Behalf Of:   Commonwealth of Pennsylvania*

| Filed Date | Entry | Filer | Applies To |
|---|---|---|---|
| 06/13/2022 | First Class Subpoena Issued | Magisterial District Court 02-2-02 | Christa Miller, Witness for the Commonwealth |
| 06/13/2022 | Preliminary Hearing Scheduled | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 06/13/2022 | Preliminary Hearing Continued | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 06/09/2022 | Attorney Active | Michael Todd Winters, Esq. | Cheryl Mihaliak, Defendant |
| 06/06/2022 | Certified Summons Accepted | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 06/06/2022 | Certified Fingerprint Order Accepted | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 06/03/2022 | Summons Issued | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 06/03/2022 | Subpoena Issued | Magisterial District Court 02-2-02 | Christa Miller, Witness for the Commonwealth |

*Event:   Preliminary Hearing-06/29/2022 2:00PM- 2:15PM*
*Testify On Behalf Of:   Commonwealth of Pennsylvania*

| Filed Date | Entry | Filer | Applies To |
|---|---|---|---|
| 06/03/2022 | First Class Subpoena Issued | Magisterial District Court 02-2-02 | Christa Miller, Witness for the Commonwealth |
| 06/03/2022 | Certified Summons Issued | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 06/03/2022 | First Class Fingerprint Order Issued | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 06/03/2022 | Fingerprint Order Issued | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |

*Report to Agency:   Lancaster Police Dept*
*Authority:   Roth, Bruce A.*
*Report From:   6/3/2022 12:00:00 AM*
*Report To:   6/29/2022 12:00:00 AM*

| Filed Date | Entry | Filer | Applies To |
|---|---|---|---|
| 06/03/2022 | Certified Fingerprint Order Issued | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 06/03/2022 | Preliminary Hearing Scheduled | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |
| 06/03/2022 | Criminal Complaint Filed | Magisterial District Court 02-2-02 | |

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assumes any liability for inaccurate or delayed data, errors or omissions on these docket sheets. Docket sheet information should not be used in place of a criminal history background check, which can only be provided by the Pennsylvania State Police. Employers who do not comply with the provisions of the Criminal History Record Information Act (18 Pa.C.S. Section 9101 et seq.) may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# Magisterial District Judge 02-2-02



Docket Number: MJ-02202-CR-0000126-2022

## Criminal Docket

Commonwealth of Pennsylvania
v.
Cheryl Mihaliak

Page 4 of 4



### DOCKET ENTRY INFORMATION

| Filed Date | Entry | Filer | Applies To |
|---|---|---|---|
| 06/03/2022 | First Class Summons Issued | Magisterial District Court 02-2-02 | Cheryl Mihaliak, Defendant |

July 25, 2022
Date

Magisterial District Judge Bruce A. Roth

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assumes any liability for inaccurate or delayed data, errors or omissions on these docket sheets. Docket sheet information should not be used in place of a criminal history background check, which can only be provided by the Pennsylvania State Police. Employers who do not comply with the provisions of the Criminal History Record Information Act (18 Pa.C.S. Section 9101 et seq.) may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# EXHIBIT B

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

────────

## No. 102 MM 2022

────────

## DAVID BALL, ET AL.,

**Petitioners**

**v.**

## LEIGH M. CHAPMAN, ACTING SECRETARY OF THE COMMONWEALTH, ET AL.,

**Respondents**

────────

## LEIGH M. CHAPMAN'S ANSWER TO THE APPLICATION TO EXERCISE KING'S BENCH POWER OR EXTRAORDINARY JURISDICTION

────────

Robert A. Wiygul (No. 310760)
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933

Joshua A. Matz*
Raymond P. Tolentino*
Carmen Iguina González*
KAPLAN HECKER & FINK LLP
1050 K Street NW | Suite 1040
Washington, DC 20001
*Pro Hac Vice motion forthcoming*

October 19, 2022

Michael J. Fischer (No. 322311)
Jacob B. Boyer (No. 324396)
Elizabeth Lester-Abdalla (No. 327276)
OFFICE OF ATTORNEY GENERAL
1600 Arch Street, Suite 300
Philadelphia, PA 19103
Phone: (267) 768-3968

J. Bart Delone (No. 42540)
Sean Kirkpatrick (No. 92960)
OFFICE OF ATTORNEY GENERAL
15th Floor, Strawberry Square
Harrisburg, PA 17120

*Counsel for Respondent Leigh M. Chapman*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ................................................................................1

STATEMENT OF JURISDICTION........................................................4

STATEMENT OF THE CASE..............................................................5

ARGUMENT ....................................................................................10

I.  Petitioners Seek to Upend Election Procedures After the 2022
General Election Has Begun..........................................................10

II. The Election Code Requires County Boards to Canvass Timely
Received Absentee and Mail-in Ballots from Qualified Voters
Who Neglected to Date the Return Envelope's Declaration.........15

A. Signed but Undated Declarations Are "Sufficient"..................15

B. Instructing that Voters Shall Date Their Declaration Does
Not Require Disenfranchising Voters Who Forget to Write a
Date..........................................................................................23

C. Any Statutory Ambiguity Must Be Interpreted to Support
the Right to Vote .....................................................................29

III. Federal Law Requires Respondent Boards to Include in their
Certified Results Timely Received Absentee and Mail-in
Ballots Cast by Qualified Voters ...................................................35

IV.   No Petitioner Has Standing ...................................................40

CONCLUSION ...................................................................................42

# TABLE OF AUTHORITIES

## Cases

*Appeal of James*, 105 A.2d 64 (Pa. 1954) ................................................................23

*Chapman v. Berks Cnty. Bd. of Elections*, No. 355 MD 2022, 2022
    WL 4100998 (Pa. Commw. Ct. Aug. 19, 2022)........................................ passim

*Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020) ........................................24

*Commonwealth v. Williams*, 129 A.3d 1199 (Pa. 2015)...........................................5

*Crown Castle NG E. LLC v. Pa. Pub. Util. Comm'n*, 234 A.3d 665
    (Pa. 2020)..............................................................................................................16

*Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017)......................................14

*Democratic Cong. Campaign Comm. v. Kosinski*, No. 22-1029 (RA),
    2022 WL 2712882 (S.D.N.Y. July 13, 2022)......................................................39

*Democratic Nat'l Comm. v. Wisc. State Legislature*, 141 S. Ct. 28
    (2020)....................................................................................................................12

*Doe I v. Governor of Pennsylvania*, 977 F.3d 270 (3d Cir. 2020) .........................14

*Donald J. Trump for President v. Boockvar*, 502 F. Supp. 3d  919
    (M.D. Pa. 2020) ...................................................................................................42

*Election Integrity Project Cal., Inc. v. Weber*, No. 21-32, 2021 WL
    4501998 (C.D. Cal. June 14, 2021) .....................................................................41

*Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153 (11th Cir.
    2008) .....................................................................................................................36

*Fumo v. City of Phila.*, 972 A.2d 487 (Pa. 2009) ....................................................40

*In re Bruno*, 101 A.3d 635 (Pa. 2014) ......................................................................5

*In re Canvass of Absentee and Mail-in Ballots of Nov. 3, 2020 Gen.
    Election, 241 A.3d 1058 (Pa. 2020)* ............................................................ passim

*In re Election in Region 4 for Downingtown Sch. Bd. Precinct Uwchlan 1*, 272 A.3d 993 (Pa. Commw. Ct. 2022)..............................................7

*In re Nov. 3, 2020 Gen. Election*, 240 A.3d 591 (Pa. 2020)........................... passim

*Kauffman v. Osser*, 271 A.2d 236 (Pa. 1970) .................................................. 40, 41

*King v. Whitmer*, 505 F. Supp. 3d 720 (E.D. Mich. 2020) .....................................41

*Markham v. Wolf*, 136 A.3d 134 (Pa. 2016) .............................................................40

*Martin v. Crittenden*, 347 F. Supp. 3d 1302 (N.D. Ga. 2018)................................40

*McCormick for U.S. Senate v. Chapman*, No. 286 MD 2022, 2022 WL 2900112 (Pa. Commw. Ct. June 2, 2022).......................................... 1, 8, 13, 14

*Merrill v. Milligan*, 142 S. Ct. 879 (2022)................................................................12

*MERSCORP, Inc. v. Del. Cnty.*, 207 A.3d 855 (Pa. 2019) .............................. 28, 29

*Migliori v. Lehigh Cnty. Bd. of Elections*, 36 F.4th 153 (3d Cir. 2022).......... passim

*Mixon v. Commonwealth*, 759 A.2d 442 (Pa. Commw. Ct. 2000) ..........................31

*Moore v. Circosta*, 494 F. Supp. 3d 289 (M.D.N.C. 2020) ....................................41

*O'Rourke v. Dominion Voting Sys., Inc.*, No. 21-1161, 2022 WL 1699425 (10th Cir. May 27, 2022) ........................................................41

*Pa. Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020) ....................... passim

*Ritter v. Lehigh Cnty. Bd. of Elections*, 272 A.3d 989 (Pa. Commw. Ct. 2022) .................................................................................................7

*Ritter v. Migliori*, 142 S.Ct. 1824 (Mem.) (2022) .....................................................8

*Ritter v. Migliori*, 2022 WL 6571686 (Mem.) (Oct. 11, 2022) ................................8

*Stone Crushed P'ship v. Kassab Archbold Jackson & O'Brien*, 908 A.2d 875 (Pa. 2006)..........................................................................................37

*United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950) ..........................................8

*Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020) .......................................41

## Constitutions

Pa. Const. art. V, § 2(a)................................................................................4

Pa. Const. art. VII, § 1......................................................................... 30, 31

U.S. Const. amend. XXVI .....................................................................31

U.S. Const. art. I, § 4...........................................................................17

## Statutes

1 Pa.C.S. § 1921 ............................................................................. 16, 17

25 P.S. § 2811 ................................................................................ 30, 31

25 P.S. § 3050 ......................................................................................34

25 P.S. § 3055 ......................................................................................27

25 P.S. § 3146.1 .....................................................................................5

25 P.S. § 3146.4 ................................................................................ 6, 16

25 P.S. § 3146.6 ............................................................................. passim

25 P.S. § 3146.8 ............................................................................. passim

25 P.S. § 3150.11 ...................................................................................5

25 P.S. § 3150.14 .............................................................................. 6, 16

25 P.S. § 3150.16 ........................................................................... passim

25 P.S. § 3553 ......................................................................................17

25 Pa.C.S. § 1301 ..................................................................................31

42 Pa.C.S. § 502......................................................................................5

42 Pa.C.S. § 726......................................................................................4

52 U.S.C. § 10101 ................................................................. 36, 37, 38, 39

Act of Aug. 1, 1941, P.L. 672, No. 273, 1941 Pa. Laws 672 ...................19

Act of Aug. 13, 1963, P.L. 707, No. 379, 1963 Pa. Laws 707 ......................... 20, 21

Act of Dec. 11, 1968, P.L. 1183, No. 375 ...................................................... 21, 32

Act of June 3, 1937, P.L. 1333, No. 320, 1937 Pa. Laws 1333....................... 18, 19

Act of Mar. 9, 1945, P.L. 29, No. 17, 1945 Pa. Laws 29 .........................................20

Act of Oct. 31, 2019, P.L. 552 ................................................................... 21, 22

## Other Authorities

1972 Op. Atty. Gen. No. 121 ...................................................................................31

Brief for Appellant, *Republican Nat'l Comm. v. Chapman*, No. 100
    MAP 2022 (Pa. Oct. 5, 2022) .........................................................................3

*McCormick v. Chapman*, No. 67 MAP 2022 (Pa. 2022)................................ 2, 9, 13

Order, *McCormick v. Chapman*, No. 46 MM 2022 (Pa. May 31, 2022)...................5

Order, *McLinko v. Degraffenreid*, No. 244 MD 2021 (Pa. Commw.
    Ct. Sept. 24, 2021) ........................................................................................12

Petition for Review, *Bonner v. Chapman*, No. 364 MD 2022 (Pa.
    Commw. Ct. July 20, 2022)........................................................................ 3, 14

*Sufficient*, Oxford English Dictionary (2d ed.) .......................................................16

## INTRODUCTION

More than 1.2 million Pennsylvanians have applied to vote by absentee or mail-in ballot for the 2022 General Election. Almost 300,000 of those voters have already returned their ballots. And some of those hundreds of thousands of voters surely neglected to date the declaration printed on their ballot's return envelope. But a voter who inadvertently omitted the date still had every reason to expect that their vote will be counted.

Indeed, since May, Commonwealth and federal courts have held three times that a timely received absentee or mail-in ballot cannot be set aside merely because the voter neglected to hand write an inconsequential date on the return envelope. *Migliori v. Lehigh Cnty. Bd. of Elections*, 36 F.4th 153 (3d Cir. 2022), *judgment vacated as moot*, *Ritter v. Migliori*, 2022 WL 6571686 (Mem.) (U.S. Oct. 11, 2022); *Chapman v. Berks Cnty. Bd. of Elections*, No. 355 MD 2022, 2022 WL 4100998 (Pa. Commw. Ct. Aug. 19, 2022); *McCormick for U.S. Senate v. Chapman*, No. 286 MD 2022, 2022 WL 2900112 (Pa. Commw. Ct. June 2, 2022). For the 2022 General Primary Election, all but one county board properly canvassed and counted ballots where the voter's only error was to omit the date on the return envelope, or reported that they had no such ballots (with the one exception reflecting only an administrative oversight).

Now, with the election underway and only three weeks remaining until Election Day, Petitioners ask this Court to sow widespread confusion by changing the voting rules to prohibit county boards from counting ballots submitted in return envelopes without a date declaration. They also want this Court to prohibit county boards from counting ballots returned in envelopes with "incorrectly" dated declarations, a position that has no legal support, that has never been considered by any court and that, in any event, would be impossible to implement because county boards have no means of determining the "correct" date.

Petitioners claim "the time for the Court to act is now." Br. at 3. But there is no justifiable reason for Petitioners to have waited until the most disruptive moment before asking this Court to intervene. County boards' obligation to count the class of ballots at issue here has been litigated and decided repeatedly, as the petition itself makes clear. In fact, two of the Petitioners in this case were involved in litigation about the same issue earlier this year, and appealed a Commonwealth Court order requiring county boards to canvass mailed ballots returned without a dated declaration. *See McCormick v. Chapman*, No. 67 MAP 2022 (Pa. 2022). But those Petitioners voluntarily dismissed their own appeal, forgoing that avenue for ordinary resolution of the issues raised here.

Nor is there any reason that this Court must resolve these issues in the expedited, extraordinary fashion that Petitioners seek. If Petitioners believe there

are unanswered questions about the consequence of a declaration date, they can raise those issues through the normal course.[1] That Petitioners may not like the answers they have previously gotten from other courts does not justify forgoing the lower courts entirely.

Even if these equitable considerations did not alone require denying Petitioners' request for this Court to act pursuant to its extraordinary powers, Petitioners' legal claims are without merit.[2] There is no basis for disenfranchising voters who neglect to write an inconsequential date, or who write the "incorrect" date, on their return-envelope declaration. Rather, Pennsylvania and federal law require that such ballots be counted.

Petitioners make no meaningful argument that Pennsylvania law permits excluding ballots based on an omitted or incorrect date on the return-envelope declaration. For undated declarations, Petitioners fail to engage with the reasoning set forth in the comprehensive Commonwealth Court opinions rejecting their

---

[1] There already exists litigation—brought by several members of the General Assembly's Republican caucus—that raises the issue Petitioners raise here. *See* Petition for Review, *Bonner v. Chapman*, No. 364 MD 2022 (Pa. Commw. Ct. July 20, 2022). That case is fully briefed and was already argued before the *en banc* Commonwealth Court.

[2] All three Republican Committee Petitioners in this case also urge this Court to conclude that any such voter would be prohibited from adding or correcting the date. *See generally* Brief for Appellant, *Republican Nat'l Comm. v. Chapman*, No. 100 MAP 2022 (Pa. Oct. 5, 2022).

position. Nor do they engage with the relevant text, history, and structure of the Election Code, all of which belie their position. And Petitioners make no argument at all in support of their request that county boards be ordered to set aside ballots returned with an "incorrectly" dated declaration. They fail to do so even though county boards have consistently counted these ballots, no court has ever questioned that practice, and county boards would be unable to verify a date's accuracy.

Moreover, Petitioners' interpretation of the federal statute that independently prohibits county boards from refusing to count the ballots at issue here (and would do so even assuming Pennsylvania law authorized such refusal) depends on basic mistakes about Pennsylvania election law and would render the relevant federal statute a nullity.

For all these reasons, this Court should deny the request to exercise jurisdiction and should not grant Petitioners any of their requested relief.

## STATEMENT OF JURISDICTION

This Court may opt to "assume plenary jurisdiction of" matters "of immediate public importance" at any stage of litigation. 42 Pa.C.S. § 726. This Court also is endowed with the "supreme judicial power of the Commonwealth," Pa. Const. art. V, § 2(a), and may exercise that power "as fully and amply, to all intents and purposes, as the justices of the Court of King's Bench, Common Pleas

and Exchequer, at Westminster, or any of them, could or might do on May 22, 1722," 42 Pa.C.S. § 502.

These extraordinary powers are to be "exercised with extreme caution." *Commonwealth v. Williams*, 129 A.3d 1199, 1206 (Pa. 2015). This Court's unique jurisdictional powers are reserved for questions of exceptional public importance that must be resolved with urgency. *In re Bruno*, 101 A.3d 635, 671 (Pa. 2014). They are not available so that parties may "bypass an existing constitutional or statutory adjudicative process." *Id.* at 669. And this Court should not allow parties that affirmatively abandoned an opportunity to raise legal challenges through ordinary litigation to invoke its extraordinary sources of jurisdiction.

Relevant here, this Court—in a post-election challenge that needed to be resolved for the 2022 General Primary Election to conclude—previously denied a request to exercise extraordinary jurisdiction to consider the very sorts of ballots Petitioners ask the Court to consider in this action. *See* Order, *McCormick v. Chapman*, No. 46 MM 2022 (Pa. May 31, 2022).

## STATEMENT OF THE CASE

Pennsylvania law allows any qualified elector to vote by mail as either an absentee or no-excuse mail-in voter. 25 P.S. §§ 3146.1, 3150.11. The Election Code provides materially identical instructions to voters who vote by either method. Among those instructions, voters are to mark their ballot before 8 p.m. on

Election Day, put the completed ballot in a secrecy envelope, and then put the secrecy envelope in a ballot return envelope. *Id.* §§ 3146.6(a), 3150.16(a). The return envelope has a pre-printed declaration, prescribed by the Secretary of the Commonwealth, that contains "a statement of the electors qualifications, together with a statement that such elector has not already voted in such primary or election." *Id.* §§ 3146.4, 3150.14. Voters are instructed that they "shall … fill out, date and sign" the declaration before submitting their envelope to the appropriate county board of election. *Id.* §§ 3146.6(a), 3150.16(a).

A separate section of the Election Code sets forth county boards' responsibilities with respect to the canvassing and counting of absentee and mail-in ballots after they have been returned. *Id.* § 3146.8. That section lays out the specific process county boards are to follow in canvassing and counting ballots. For instance, it provides that county boards may "meet no earlier than seven o'clock A.M. on election day" to begin pre-canvassing ballots. *Id.* § 3146.8(g)(1.1). Of particular relevance here, it directs county boards to "examine the declaration on the envelope of each ballot" and to determine whether the return-envelope "declaration is sufficient." *Id.* § 3146.8(g)(3).

Over the last two years there have been multiple disputes about whether the omission of a date on the return-envelope declaration requires excluding an otherwise legal ballot. This Court resolved one such dispute in an expedited post-

election challenge during the 2020 General Election. *See In re Canvass of Absentee and Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058 (Pa. 2020). Just five days after exercising extraordinary jurisdiction in that case, this Court ordered, without a majority opinion, that ballots returned with a signed but undated declaration could be counted for the 2020 General Election. *Id.*

Following the 2021 Municipal Election, two divided panels of the Commonwealth Court ruled that certain timely received ballots returned by a qualified voter in an envelope with a signed but undated declaration would not be counted. *Ritter v. Lehigh Cnty. Bd. of Elections*, 272 A.3d 989 (Pa. Commw. Ct. 2022); *In re Election in Region 4 for Downingtown Sch. Bd. Precinct Uwchlan 1*, 272 A.3d 993 (Pa. Commw. Ct. 2022).

One of those two decisions—related to a judicial election in Lehigh County—resulted in federal litigation in which the Third Circuit ultimately held that federal law prohibits county boards from setting aside timely received mailed ballots merely because a qualified voter forgot to date the return envelope's declaration. *Migliori v. Lehigh Cnty. Bd. of Elections*, 36 F.4th 153 (3d Cir. 2022).[3] After the U.S. Supreme Court denied one candidate's request to stay the Third

---

[3] *Migliori* was brought by individual voters whose ballots had been excluded because they omitted the declaration date. There were 252 ballots at issue in that case; as the Third Circuit noted, an analysis showed that the average age of the voters whose ballots were excluded was 71, while 15 of the voters were over the age of 90. *Migliori*, 36 F.4th at 156 n.18

Circuit's judgment, *Ritter v. Migliori*, 142 S. Ct. 1824 (Mem.) (2022), all lawfully cast ballots were counted and the winner was certified. A week ago, after the losing candidate had conceded his defeat, the U.S. Supreme Court granted a request to vacate the Third Circuit's judgment under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), because the case became moot. *Ritter v. Migliori*, 2022 WL 6571686 (Mem.) (Oct. 11, 2022). That Court did not express a view of the merits.

Finally, in cases related to the 2022 General Primary Election, the Commonwealth Court twice issued comprehensive decisions explaining why neither Pennsylvania law nor federal law allows county boards to set aside timely received ballots that qualified voters return with a signed but undated declaration. *See Chapman v. Berks Cnty. Bd. of Elections*, No. 355 MD 2022, 2022 WL 4100998 (Pa. Commw. Ct. Aug. 19, 2022); *McCormick for U.S. Senate v. Chapman*, No. 286 MD 2022, 2022 WL 2900112 (Pa. Commw. Ct. June 2, 2022).

Two Petitioners here—the Republican National Committee and the Republican Party of Pennsylvania—were parties in *McCormick* and argued in Commonwealth Court that no ballot returned in an undated declaration may be counted. Those parties appealed the Commonwealth Court's preliminary injunction, but then decided to abandon their own appeal, preventing this Court from reviewing the relevant questions well before the general election. *See*

8

*McCormick v. Chapman*, No. 67 MAP 2022 (Pa. 2022). Once the appeal was dismissed, the petitioner discontinued his action in Commonwealth Court.

In the second case, the Acting Secretary brought an action against three counties that had refused to include any ballots returned in envelopes lacking dated declarations in their certified totals. *Chapman v. Berks Cnty. Bd. of Elections*, No. 355 MD 2022, 2022 WL 4100998 (Pa. Commw. Ct. Aug. 19, 2022). The Commonwealth Court entered judgment for the Acting Secretary and, with that decision, 66 of the 67 counties certified results for the 2022 General Primary Election that did not exclude timely received absentee or mail-in ballots from qualified electors even if the declaration on the ballot-return envelope was undated.[4]

---

[4] Butler County, the one exception, was not named as a respondent in *Berks* because the Department of State had not properly recorded Butler County's statement that it would not count the ballots at issue. *Berks*, 2022 WL 4100998, at *6.

9

## ARGUMENT

### I.   Petitioners Seek to Upend Election Procedures After the 2022 General Election Has Begun

Petitioners filed this suit barely three weeks before Election Day, with voting already well underway. As of October 18, 2022, over 1.2 million voters have applied for an absentee or mail ballot for the 2022 General Election and almost 300,000 of those ballots have been returned.[5] Coming into this election, voters and county officials have been told by multiple courts that ballots will be counted even if the voter forgot to date the declaration printed on the return envelope. *Migliori*, 36 F.4th 153; *Berks*, 2022 WL 4100998; *McCormick*, 2022 WL 2900112.[6] And in the 2022 General Primary Election, 66 of 67 counties did

---

[5] The Daily Mail Ballot Report is publicly available on the Department of State's website at: https://www.vote.pa.gov/About-Elections/Pages/Election-Results.aspx.

[6] The Department of State's current guidance to counties reflects these judicial decisions. Pa. Dep't of State, *Guidance Concerning Examination of Absentee and Mail-in Ballot Return Envelopes*, Version 3.0, at 2-3 (Sept. 26, 2022) (attached as Exhibit A to Petitioners' Application for Extraordinary Jurisdiction). Although Petitioners argue that the Acting Secretary's guidance requires county boards to canvass and count timely received mailed ballots from qualified voters who neglected to date their return-envelope declaration, Br. at 23-24, the Acting Secretary does not claim the power to instruct county boards which ballots must be canvassed and counted. Those instructions come from the Election Code, and from federal law to the extent there is a conflict. The Acting Secretary's guidance merely reflects the law as interpreted by Pennsylvania and federal courts.

not disqualify votes based on the omission of a date on the return-envelope declaration.

Despite this consensus, Petitioners request that this Court exercise extraordinary jurisdiction and enter an order that would change election practices for the 2022 General Election while mail-in voting is already in process. To grant this relief would upset the interests of all voters who already applied for—and in many cases already submitted—absentee or mail-in ballots under the current state of the law. Any voter who already returned an absentee or mail-in ballot without a dated declaration likely will be disenfranchised despite multiple courts' recent contrary holdings.

Worse than that, Petitioners make the radical request that county boards be ordered to segregate and exclude ballots returned with an "incorrectly" dated declaration. No court has *ever* questioned that ballots returned with "incorrectly" dated declarations must be canvassed and counted, and there is no evidence that any county board has ever excluded them. Indeed, in all relevant cases, the record has established that county boards do not set aside ballots returned with "incorrectly" dated declarations. *Berks*, 2020 WL 4100998, at *5-*6, *18; *see also Migliori*, 36 F.4th at 164; *id.* at 165 n.3 (Matey, J., concurring). What is more, Petitioners make no attempt to even explain how county boards could verify whether a date on a declaration is "correct."

11

Granting Petitioners' application would not only threaten to disenfranchise legal voters, it would cause confusion and uncertainty by requiring county boards to alter established election administration procedures after voting has already begun. Petitioners seek the sort of disruptive and belated relief that courts should decline to provide. "When an election is close at hand, the rules of the road must be clear and settled. Late judicial tinkering with election laws can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others." *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring); *see also* Order, *McLinko v. Degraffenreid*, No. 244 MD 2021 (Pa. Commw. Ct. Sept. 24, 2021) ("[P]rospective relief, as requested by petitioners, is not available for the November 2021 election because it is already underway").

This "important principle of judicial restraint" is aimed at preventing two separate types of prejudice: (1) "voter confusion," and (2) "election administrator confusion." *Democratic Nat'l Comm. v. Wisc. State Legislature*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring). Avoiding late judicial intervention in elections "protects the State's interest in running an orderly, efficient election and in giving citizens (including the losing candidates and their supporters) confidence in the fairness of the election." *Id.*

Petitioners have no excuse for waiting until the 2022 General Election was underway to file this action. They certainly were aware that 66 of 67 counties either included undated ballots in their certified returns for the 2022 General Primary Election or reported to the Department of State that they had no such ballots. And they were aware of the Commonwealth Court's two comprehensive opinions concluding that state and federal law require undated ballots to be counted. *Chapman v. Berks Cnty. Bd. of Elections*, 2022 WL 4100998 (Pa. Commw. Ct. Aug. 19, 2022); *McCormick for U.S. Senate v. Chapman*, 2022 WL 2900112 (Pa. Commw. Ct. June 2, 2022). Indeed, two of the Petitioners were parties in *McCormick*. Nor can Petitioners justify trying to bypass the court that has recently entered orders contrary to the relief Petitioners seek, or for avoiding normal procedures.

The U.S. Supreme Court's recent order vacating the judgment in *Migliori* after the case become moot does not excuse Petitioners' delay. That order did not alter the legal landscape in any meaningful way. The Supreme Court vacated the Third Circuit's judgment because the case had become moot upon the certification of the underlying election. The Court said nothing about the merits of the case. The unanimous decision in *Migliori* thus remains highly persuasive authority.[7]

---

[7] Federal appellate courts continue to treat cases where the Supreme Court has vacated the judgment as persuasive authority. *See, e.g., Czyzewski v. Jevic*

Regardless, the Commonwealth Court made clear in both *Berks* and *McCormick* that it was not bound by *Migliori*, but rather found its analysis persuasive. *Berks*, 2022 WL 4100998, at *27; *McCormick*, 2022 WL 2900112, at *10. So the order vacating *Migliori* in no way undermines the interpretation of federal law (and certainly not the interpretation of Pennsylvania law) set forth in either opinion.

Moreover, there is no reason that any outstanding questions cannot be raised in the normal course after the election. As it is, litigation already exists—brought by several members of the General Assembly's Republican caucus—that involves whether the Election Code allows county boards to set aside ballots returned in envelopes lacking a dated declaration. *See* Petition for Review, *Bonner v. Chapman*, No. 364 MD 2022 (Pa. Commw. Ct. July 20, 2022).

Hundreds of thousands of Pennsylvania voters have already voted by mail. They have done so in a legal landscape that confirms if the voter neglects to date the declaration on their return envelope, their vote still will count. To change course at this late stage will surely disenfranchise thousands of voters and is the

---

*Holding Corp.*, 137 S. Ct. 973, 986 (2017) (citing *In re Chrysler LLC*, 576 F.3d 108, 118 (2d Cir.), *cert. granted, judgment vacated sub nom. Indiana State Police Pension Tr. v. Chrysler LLC*, 558 U.S. 1087 (2009)); *Doe I v. Governor of Pennsylvania*, 977 F.3d 270, 273 (3d Cir. 2020) (citing *Beers v. Att'y Gen. United States*, 927 F.3d 150 (3d Cir. 2019), *cert. granted, judgment vacated sub nom. Beers v. Barr*, 140 S. Ct. 2758 (2020)).

exact sort of disruption that cannot happen. The confusion to the electorate that would ensue from such a late-breaking order would undermine the public's faith in our electoral process.

> II.     **The Election Code Requires County Boards to Canvass Timely Received Absentee and Mail-in Ballots from Qualified Voters Who Neglected to Date the Return Envelope's Declaration**

The timing of Petitioners' application is reason enough to deny it. Even if it were not, this Court should not grant any of Petitioners' requested relief because the Election Code does not allow county boards to disqualify any absentee or mail-in ballot simply because the voter failed to write an inconsequential date on the return envelope's declaration. The text, history, structure, and purpose of the Election Code all confirm that omitting a handwritten date from the declaration of a voter's ballot return envelope is not a disqualifying defect.

### A. Signed but Undated Declarations Are "Sufficient"

County boards' canvassing and counting of absentee and mail-in ballots are governed by 25 P.S. § 3146.8, entitled "Canvassing of official absentee ballots and mail-in ballots." That section provides boards with criteria for which absentee and mail-in ballots to canvass and count: ballots that satisfy the statutory criteria "shall be counted and included with the returns of the applicable election district." *Id.* § 3146.8(g)(4).

The canvassing section directs county boards to canvass and count timely received mailed ballots submitted by qualified voters if the board "is satisfied that the declaration is sufficient" and certain other criteria are met. *Id.* § 3146.8(g)(3). By statute, the declaration is pre-printed on the back of a ballot's return envelope in a form prescribed by the Secretary of the Commonwealth and contains a statement that the voter is qualified and has not already voted. *Id.* § 3146.4; *id.* § 3150.14. The Election Code states that voters "shall … fill out, date and sign" that declaration before returning their ballot. *Id.* § 3146.6(a); *id*. § 3150.16 (a).

The meaning of any statute should be determined based on evidence of the General Assembly's intention. 1 Pa.C.S. § 1921(a). Statutory text is the best indicator of the General Assembly's intentions, *id.* § 1921(b), and should be read in context, with words bearing their common meaning. *Crown Castle NG E. LLC v. Pa. Pub. Util. Comm'n*, 234 A.3d 665, 674 (Pa. 2020).

Here, the General Assembly required only that a declaration be "sufficient." The ordinary meaning of "sufficient" has long been "[o]f a quantity, extent, or scope adequate to a certain purpose or object." *Sufficient*, Oxford English Dictionary (2d ed.) (dating this use of "sufficient" to 1380). The purpose for which the declaration must be sufficient is for the voter to swear to their eligibility to vote. 25 P.S. § 3146.4; 25 P.S. § 3150.14. As the Election Code elsewhere indicates, the voter's signature on a declaration by itself constitutes the voter's

16

attestation of their qualifications. 25 P.S. § 3553 (creating criminal penalties for anyone who falsely *signs* the declaration).

With a signature alone, "a board can reasonably determine that a voter's declaration is sufficient." *In re Canvass of Absentee and Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1077 (Pa. 2020) (opinion announcing judgment); *see also Berks*, 2022 WL 4100998, at *20 ("[T]he Court concludes that the inclusion of a handwritten date on the declaration is not needed to make the declaration sufficient ….").[8]

Tracing the Election Code's history conclusively confirms that a signed but undated "declaration is sufficient." *See* 1 Pa.C.S. § 1921(c) (courts may look to "[t]he former law" to resolve questions of legislative intent); *In re Nov. 3, 2020 Gen. Election*, 240 A.3d 591, 609 (Pa. 2020) (looking to the history of 25 P.S. § 3146.8(g)(3) to determine if county boards were authorized to reject mailed ballots based on signature analysis). In particular, the statutory genealogy shows that (1) assessing if a "declaration is sufficient" has never included review of a date and (2) section 3146.8 once included a *separate* directive that county boards

---

[8] Petitioners wrongly assert that counting mailed ballots without a dated declaration would usurp power that the General Assembly possesses under Article I, § 4 of the U.S. Constitution. Br. at 17-18. Putting aside flaws in Petitioners' view of the U.S. Constitution, there is no problem with this Court employing principles of statutory construction that the General Assembly enacted to require county boards to follow statutory language that the General Assembly also enacted.

disqualify mailed ballots based on the declaration's date, but the General Assembly removed that requirement in 1968.

*1937*. The initial version of the Election Code allowed some active military members—referred to as detached electors—to vote by mail. Act of June 3, 1937, P.L. 1333, No. 320, §§ 1327-1330, 1937 Pa. Laws 1333, 1442-44. Detached electors had to enclose their ballot in a secrecy envelope, which was then enclosed in another envelope on which was "printed the affidavit of the detached elector, together with the jurat of the officer in whose presence the ballot is marked and before whom the affidavit is made." *Id.* § 1328. There was no requirement to date either the affidavit or the jurat; the Code provided only that the elector "shall … take out, subscribe and swear to the affidavit … and the jurat shall be subscribed by the [witnessing] officer." *Id.* § 1329.

Detached electors had to vote "on or before the day of the election," *id.*, but counties were instructed not to complete canvassing of their returns until the third Friday after Election Day. *Id.* § 1317. During canvassing, county boards were required to "compare the signature of such absent voter with his signature upon any register or other record in their possession." *Id.* § 1330. If the boards were "satisfied that the signatures correspond and that the affidavit and jurat are sufficient," the boards were to announce the name of the elector and provide an opportunity for any person present to challenge the ballot for any reason that a

18

ballot cast in person could be challenged.[9] *Id*. Without a challenge, the inner envelope was to be opened and the ballot counted. *Id.* Because there was no instruction to date either the affidavit or jurat, the boards' determination of whether the affidavit and jurat were "sufficient" did not include any assessment of whether either was dated.

*1941*. Following the 1941 amendments to the Election Code, county boards were still instructed not to complete canvassing until the second Friday after Election Day. Act of Aug. 1, 1941, P.L. 672, No. 273, sec. 4, § 1303, 1941 Pa. Laws 672. And eligible electors were still instructed to complete the ballot "on or before the day of the election." *Id.*, sec. 4, § 1306. This version of the Election Code also did not require that either the affidavit or jurat be dated, but it did mandate that county boards "set aside" during canvassing any ballot with a return envelope that "bear[s] a postmark later than the date of the particular Election Day involved." *Id.*, sec. 4, § 1307. *After* setting aside those untimely ballots, counties were directed to review the remaining ballots to determine if the "affidavit and jurat are sufficient." *Id.*

*1945*. The 1945 version of the Election Code continued to require voters to cast absentee ballots no later than Election Day, Act of Mar. 9, 1945, P.L. 29, No.

---

[9] Both the signature-comparison language and time-of-canvassing challenges have since been removed from the Election Code. *See In re Nov. 3, 2020 Gen. Election*, 240 A.3d at 609-10.

17, sec. 10, § 1306, 1945 Pa. Laws 29, 37, and explicitly made the second Friday after Election Day the deadline for receipt of an absentee ballot. *Id.*, sec. 10, § 1307. These amendments added, for the first time, language instructing voters that the jurat on the ballot-return envelope "shall be … dated." *Id*., sec. 10, § 1306.

Consistent with the new dating language, the canvassing section was amended to replace counties' review of the postmark with a review of the date on the jurat. *Id.*, sec. 10, § 1307. Under the 1945 version of the canvassing section, counties were specifically directed to "set aside" all ballots in which the "jurat bears a date later than the date of the election." *Id.* After setting aside those ballots, counties were to review the remaining ballots to determine whether "the affidavit and jurat are sufficient." *Id.*

*1963*. As part of the 1963 amendments permitting certain categories of civilians to vote absentee, the requirement of a separate affidavit and jurat was replaced with the single declaration that is still in use today. Act of Aug. 13, 1963, P.L. 707, No. 379, sec. 22, § 1304, 1963 Pa. Laws 707, 736. Reflecting this consolidation, the previous instruction to date the jurat became an instruction to date the declaration: "The elector shall … fill out, date and sign the declaration printed on [the outer ballot-return] envelope." *Id.*, sec. 22, § 1306. As before, the received-by deadline for absentee ballots was the second Friday after Election Day. *Id.*, sec. 24, § 1308(a). And as before, the canvassing provision specifically

20

required county boards to set aside ballots returned in envelopes bearing dates after Election Day. *Id.*, sec. 24, § 1308(c). All other relevant parts of the Election Code remained materially unchanged.

*1968*. In 1968, the General Assembly aligned, for the first time, the deadline for absentee voters to complete their ballot, and for county boards to receive those ballots. Act of Dec. 11, 1968, P.L. 1183, No. 375, sec. 8, § 1308(a). After creating a single deadline, the General Assembly deleted from the Election Code's canvassing section the requirement that counties set aside ballots based on the date appearing on the ballot-return envelope. *Id.*, sec. 8, § 1308(c).

*2019*. From 1968 to 2019, these provisions of the Election Code were materially unchanged. When the General Assembly passed Act 77 of 2019, giving all qualified voters the option to vote by mail, it adopted almost wholesale the pre-existing text and procedures for absentee voting, including the language that voters "shall … fill out, date and sign the declaration" on the return envelope. Act of Oct. 31, 2019, P.L. 552, sec. 8 (adding Article XIII-D to the Election Code). The General Assembly likewise extended the existing canvassing procedures for absentee ballots to no-excuse mail-in ballots. *Id.*, sec. 7, § 1308. Act 77 continued to impose a single deadline for voters to cast, and for counties to receive, most absentee and all mail-in ballots. *Id.* sec. 6, § 1306; *id.*, sec. 7, § 1308; *id.*, sec. 8.

This statutory history illustrates two irrefutable points relevant to the proper interpretation of "sufficient." First, since 1937, the Code's canvassing procedures entailed reviewing the sufficiency of some form of a voter attestation, and that determination of sufficiency has always been distinct from any review of a date written on that attestation.  Second, the General Assembly "understands how to craft language requiring [canvassers to review an envelope date] when it chooses to do so," *In re Nov. 3, 2020 Gen. Election*, 240 A.3d at 609, and that requirement was eliminated in 1968.

Finally, there is even greater, and independent, reason to interpret "sufficient" consistent with its ordinary meaning and consistent with the clear lessons of this statutory history. For "election matters specifically," this Court interprets statutes "mindful of the longstanding and overriding policy in this Commonwealth to protect the elective franchise." *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 360-61 (Pa. 2020). That means that election statutes should be construed in favor of the right to vote. *Id.* at 361. And "[t]he power to throw out a ballot for minor irregularities … must be exercised very sparingly and with the idea in mind that either an individual voter or a group of voters are not to be disfranchised at an election except for compelling reasons." *Appeal of James*, 105 A.2d 64, 66 (Pa. 1954) (cleaned up).

22

Amendments to the Election Code establish that the purpose of the "shall … date" language was to separate timely and untimely ballots. Once the General Assembly aligned the deadline for a voter to send, and for a county board to receive, a mailed ballot, it removed the specific provision directing county boards to set aside certain ballots based on the written date. *See supra* at 21. So while the "shall … date" language still appears in the Election Code, the date written on the declaration no longer serves its intended function.[10] Because the date no longer serves any function, *see infra* at 30-35, a "sufficient" declaration should not be interpreted to require disenfranchising voters who fail to supply that inconsequential information.

### B. Instructing that Voters Shall Date Their Declaration Does Not Require Disenfranchising Voters Who Forget to Write a Date

Apart from this history, language that voters "shall … date" the return-envelope declaration, 25 P.S. §§ 3146.6(a), 3150.16(a), does not require—or even permit—disenfranchising voters who neglect to do so.

---

[10] This Court previously recognized that the Election Code contains artifacts of prior voting regimes. *In re Nov. 3, 2020 Gen. Election*, 240 A.3d at 610 n.24 ("[T]here are some vestiges remaining in the Election Code of the prior, now eliminated system for time-of-canvassing ballot challenges…. Now untethered to a procedure for asserting time-of-canvassing challenges in Section 3146.8(g)(3), however, we view the references to ballots in these provisions to be the overlooked remnants of a prior, now eliminated process.").

23

**1.** Petitioners wrongly suggest that this Court already has held that the "shall … date" language means ballots lacking an envelope date cannot be counted. Br. at 13-15. In *In re Canvass*, this Court held, without producing a majority opinion that certain counties could count mailed ballots returned without a handwritten date for the 2020 General Election. When this Court rules without a majority opinion, the holding is the narrowest opinion *in support of the result*. *Commonwealth v. Alexander*, 243 A.3d 177, 197-98 (Pa. 2020). Because the result was that counties could count the sorts of ballots at issue here, the Court's holding is the narrowest rationale *for* counting ballots in that election without a handwritten date.

Thus, even if *In re Canvass* might be read to interpret the Election Code as permitting county boards to set aside ballots based on a voter's failure to date the return-envelope declaration, this Court should not adhere to that interpretation. The arguments and record that have been developed since *In re Canvass* were not presented in that case, which—due to the urgent need to certify presidential and other election results following the November 2020 election—was a post-election challenge resolved only five days after this Court exercised extraordinary jurisdiction. Indeed, the difficulty of resolving that action in an expedited proceeding that departed from the ordinary course is all the more reason to avoid doing so now, especially when there is no necessity for doing so.

**2.** Language stating that mail-in and absentee voters "shall fill out, date and sign" the declaration on the outer ballot-return envelope is not located in the section of the Election Code that in fact governs which mailed ballots county boards must or must not canvass. Rather the "shall … date" language is located in sections of the Election Code that provide instructions to voters. 25 P.S. §§ 3146.6(a), 3150.16(a). Disqualifying a mailed ballot for a reason that the General Assembly has not included in the canvassing directives given to county boards would distort the structure and operation of the Election Code.

Indeed, this Court has repeatedly (and correctly) looked to the canvassing provision to resolve when and whether county boards may or may not canvass and count mailed ballots. In *In re November 3, 2020 General Election*, for example, this Court ruled that nothing in § 3146.8 permits county boards to disqualify mailed ballots based on an analysis of the voter's signature. 240 A.3d at 605-11. Likewise, in *Pennsylvania Democratic Party*, this Court reviewed § 3146.8 to determine that county boards may not canvass and count mailed ballots not placed in the inner secrecy envelope. 238 A.3d at 378-80.

History again confirms that the "shall … date" language found in §§ 3146.6 and 3150.16 does not answer whether ballots returned with an undated declaration should be disqualified. Since 1945, the Election Code has included language that the voter attestation on a ballot return envelope "shall be … dated" or language

25

that voters "shall . . . date" the attestation. *See supra* at 19-21. And from 1945 to 1968 the Election Code *separately included in the canvassing section* an instruction that county boards set aside ballots returned in an envelope bearing a date after Election Day. *Id.* Thus, the General Assembly has never used language that a voter "shall" date their attestation to indicate that the consequence of failing to do so is disqualification. When the General Assembly intends for a mailed ballot to be disqualified, that instruction has always appeared in the section of the Election Code governing county boards' canvassing of mailed ballots. That is not the case here.

**3.** Determining the consequences of omitting a date solely by reference to the "shall … date" language in §§ 3146.6(a) and 3150.16(a) would conflict with the Statutory Construction Act.

Assigning "shall … date" dispositive weight would lead to absurd results. *Contra* 1 Pa.C.S. § 1922(1). Applying the same strict interpretation elsewhere in the Election Code would disenfranchise voters for exceedingly trivial reasons. For example, the Election Code directs that voters who vote in person by ballot "shall retire to one of the voter compartments, and draw the curtain or shut the screen door." 25 P.S. § 3055(a). Those same voters are told that they "shall fold [their] ballot … in the same way it was folded when received" before returning it. *Id.* § 3055(d). "[N]o one would reasonably argue" that the General Assembly meant to

use "shall" in these instances to indicate that voters who do not satisfactorily draw a curtain or shut a door, or who do not fold their ballot properly before returning it, must have their ballot thrown out. *Berks*, 2022 WL 4100998, at *14.

Nothing in the Election Code suggests the General Assembly intended such absurd results. Rather, when the General Assembly means for certain conduct or omissions to be disqualifying, it says so explicitly. *See, e.g.*, 25 P.S. § 3146.8(g)(1)(ii) (limiting the set of absentee and mail-in ballots that may be canvassed to those "received in the office of the county board of elections no later than eight o'clock P.M. on the day of the primary or election"); *id.* § 3146.8(g)(4)(ii) (if a voter returns an absentee or mail-in ballot with identifying markings on the secrecy envelope, "the envelopes and the ballots contained therein shall be set aside and declared void"); *id.* § 3146.8(d) (absentee and mail-in ballots cast by voters who died before Election Day "shall be rejected").

Another perverse result would be that, because the date itself no longer serves a purpose relevant to voting, *see infra* at 30-35, voters would be disenfranchised for failing to write inconsequential information. The absurdity of such a result is underscored by the Election Code's silence about *what* date a voter is expected to write. *See Berks*, 2022 WL 4100998, at *18. At the very least, voters could reasonably understand it to mean the date the declaration is signed or the

27

date the ballot was completed. In practice, county boards understand the instruction to mean *any* date. *See id.* at *5-*6, *18; *see also Migliori*, 36 F.4th at 164.

**4.** Even if this Court were to disregard the statutory structure and context, and limits its analysis in the text of 25 P.S. §§ 3146.6(a) and 3150.16(a), the "shall … date" language found in those sections still would not require setting aside a ballot because the voter failed to date the return-envelope declaration. Use of "shall" in a statute does not necessarily reflect an intention to impose a mandatory requirement. *See MERSCORP, Inc. v. Del. Cnty.*, 207 A.3d 855, 865-70 (Pa. 2019); *see also In re Canvass*, 241 A.3d at 1071 (opinion announcing judgment). Both mandatory and directory text is meant to be followed, but only noncompliance with a mandatory provision warrants disqualifying a ballot. *Berks*, 2022 WL 4100998, at *15. The distinction between directory and mandatory uses of "shall" is by no means limited to the Election Code or election cases. *See id.* at *22 (collecting cases). Nor is the distinction unique to Pennsylvania law; it is recognized in a variety of other jurisdictions. *See id.* at *16-*17 (collecting election cases from other jurisdictions); *id.* at *22 (collecting non-election cases from other jurisdictions).

"Whether a particular statute is mandatory or directory does not depend upon its form, but upon the intention of the [General Assembly], to be ascertained from a consideration of the entire act, its nature, its object, and the consequences

28

that would result from construing it one way or the other." *MERSCORP*, 207 A.3d at 866 (internal citations omitted).

For the reasons described in the following section, those factors do not permit disqualifying a voter for neglecting to date their declaration.

### C. Any Statutory Ambiguity Must Be Interpreted to Support the Right to Vote

If § 3146.8's use of "sufficient," either on its own or read *in pari materia* with the "shall … date" language, were somehow ambiguous, county boards still could not set aside a qualified voter's timely received mailed ballot just because the voter forgot to date the return envelope's declaration.

Ambiguous statutes should be interpreted in light of the "occasion and necessity for the statute," the "mischief to be remedied," "the object to be attained," and the "consequences of a particular interpretation." 1 Pa.C.S. § 1921(c)(1), (3), (4), (6). For the Election Code, "the purpose and objective … is to obtain freedom of choice, a fair election and an honest election return." *Pa. Democratic Party*, 238 A.3d at 356 (cleaned up). Therefore, the Election Code "should be liberally construed so as not to deprive, *inter alia*, electors of their right to elect a candidate of their choice," *id.* (cleaned up), and interpreted "mindful of the longstanding and overriding policy in this Commonwealth to protect the elective franchise," *id.* at 360-61 (cleaned up).

Following these tenets of interpretation, the Election Code must be read to forbid excluding ballots of voters who neglect to date the declaration on their ballot's return envelope. That handwritten date is not necessary for any relevant purpose, does not remedy any mischief, and does not advance any other objective. *In re Canvass*, 241 A.3d at 1077 (opinion announcing judgment) (explaining why a handwritten date is "unnecessary and, indeed, superfluous"); *Berks*, 2022 WL 4100998, at *20 ("[T]he parties have not identified a specific purpose served by dating the declaration on the return envelope, and the Court cannot discern any."); *see also Migliori*, 36 F.4th at 164 ("Ignoring ballots because the outer envelope was undated, even though the ballot was indisputably received before the deadline for voting[,] serves no purpose other than disenfranchising otherwise qualified voters.").

First, the date on the declaration is not used to determine a voter's qualification. In Pennsylvania, a person may vote if, as of Election Day, they are 18 years old, have been a citizen for at least one month, have lived in Pennsylvania and in their election district for at least thirty days, and are not imprisoned for a felony conviction. Pa. Const. art. VII, § 1; 25 P.S. § 2811(2), (3); 25 Pa.C.S.

§ 1301(a).[11] Whether the declaration on a return envelope is dated is not relevant to any of these criteria.

Relatedly, the date does not provide a point in time against which to measure the elector's eligibility to cast the ballot. Eligibility to vote is based on an elector's qualification *as of Election Day*. *See* Pa. Const. art. VII, § 1 (imposing residency requirements for the time period "immediately preceding the election"); 25 P.S. § 2811(2), (3) (same); *id.* § 3146.8(d) (directing county boards to discard absentee and mail-ballots cast by individuals who died before Election Day); 25 Pa. C.S. § 1301 (allowing anyone "who will be at least 18 years of age on the day of the next election" to register). Although Petitioners suggest the date on the declaration serves this function, Br. at 15, they later correctly concede that "[t]he date requirement has nothing to do with whether [an] individual satisfies the four qualifications to vote in Pennsylvania," *id.* at 22.

Second, the voter's handwritten date on the return envelope no longer assists in separating timely absentee or mail-in ballots from untimely ones.[12] Again, the

---

[11] *See also Mixon v. Commonwealth*, 759 A.2d 442, 451 (Pa. Commw. Ct. 2000) (holding that individuals with felony convictions, other than those currently incarcerated, may register to vote); 1972 Op. Atty. Gen. No. 121 (concluding durational residency requirements longer than 30 days are unenforceable); U.S. Const. amend. XXVI (prohibiting denial of right to vote to citizens 18 years of age or older because of age).

[12] In 2020, three Justices suggested a declaration date may serve this purpose. *In re Canvass*, 241 A.3d at 1091 (Dougherty, J., dissenting). Yet, for the

General Assembly *removed* language directing county boards to set aside untimely mailed ballots based on the declaration date once it aligned the deadlines for sending and receiving a mailed ballot. Act of Dec. 11, 1968, P.L. 1183, No. 375, sec. 8, § 1308(c). The "shall … date" language is simply an artifact of an older version of the Election Code, no longer serving any relevant purpose. *See In re Nov. 3, 2020 Gen. Election*, 240 A.3d at 610 n.24 (recognizing that the Election Code contains "vestiges" of prior processes).

Of course, it is still the case that the deadline for a voter to send, and for the county to receive, a mailed ballot are the same. 25 P.S. §§ 3146.6(c), 3146.8(g)(1)(ii), 3150.16(c). County boards have a statutory obligation to track the date that every absentee or mail-in ballot was received and make that information available for public inspection. 25 P.S. §§ 3146.9(b)(5), 3150.17(b)(5). They have procedures for doing so—including stamping ballots as "received" and scanning return envelopes' barcodes into the SURE system. *See* Pa. Dep't of State, *Guidance Concerning Examination of Absentee and Mail-in Ballot Return Envelopes*, Version 3.0, at 2-3 (Sept. 26, 2022) (attached as Exhibit A to Petitioners' Application for Extraordinary Jurisdiction); *In re Canvass*, 241 A.3d at

election at issue there, this Court had extended the received-by deadline such that, as with elections before 1968, it was not the same as the sent-by deadline. *Pa. Democratic Party*, 238 A.3d at 371-72. That unique circumstance is inapplicable to the 2022 General Election.

32

1077 (opinion announcing judgment); *Berks*, 2020 WL 4100998, at *6. Plus, timely and untimely ballots remain segregated. Pennsylvania law and procedures thus provide "a clear and objective indicator of timeliness, making any handwritten date unnecessary and, indeed, superfluous." *In re Canvass,* 241 A.3d at 1077 (opinion announcing judgment). In fact, the date written on a return envelope would be an exceedingly poor proxy for determining if a ballot was received by 8 p.m. on Election Day, as ballots dated in advance of that day certainly may arrive sometime after.

Because in all cases county boards independently verify if a ballot was received by Election Day's 8 p.m. deadline without reference to the date handwritten on the return envelope, the handwritten date is not a tool for preventing fraudulently back-dated votes. And because Pennsylvania employs only a received-by deadline, 25 P.S. §§ 3146.6(c), 3150.16(c), back-dating is not a way to fraudulently convert an ineligible ballot into a seemingly eligible one. A ballot is either received by the deadline or it is not.

Third, the handwritten date on a mailed ballot's return envelope does not determine which vote to count in the event someone voted absentee or by mail and also tried to vote in person. Election district registers identify which voters have requested an absentee or mail-in ballot. 25 P.S. §§ 3146.6(b)(1), 3150.16(b)(1). Those voters may not vote in person unless they surrender their blank absentee or

mail-in ballot, and its return envelope, to their polling place; otherwise, they may vote only provisionally. *Id.* §§ 3146.6(b)(2)-(3), 3150.16(b)(2)-(3). If a voter returns a completed absentee or mail-in ballot before the deadline and also casts a provisional ballot at a polling place, only the absentee or mail-in ballot is counted, regardless of the date written on it. *Id.* § 3050(a.4)(5)(ii)(F).[13]

Consistent with the date's insignificance, county boards have, without any incident, counted ballots with "incorrect" dates—meaning dates that do not accurately reflect when the envelope declaration was signed (or perhaps when the ballot was completed). *Berks*, 2020 WL 4100998, at \*5-\*6, \*18; *Migliori*, 36 F.4th at 164; *id.* at 165 n.3 (Matey, J., concurring). And while Petitioners want this Court to order county boards to deviate from this common practice, but for obviously wrong dates—such as birth dates or dates with the incorrect year—there is no way for county boards to determine that every date written on a declaration envelope is actually the date the declaration was signed (or even the date the ballot was

---

[13] Petitioners cite an instance in which the handwritten date was cited as evidence in a criminal complaint against an individual who allegedly attempted to fraudulently vote. Br. at 15. But even there, the date played no role in determining that the ballot at issue would not be counted. By the time the alleged fraud was discovered, county commissioners had *already* determined to exclude the ballot because the SURE system records showed—without reference to the handwritten date—that "the elector had died prior to the Primary Election Day." *Berks*, 2022 WL 4100998, at \*21 n.14; *see also* Affidavit of Probable Cause ¶ 2 (attached as Ex. A to Petitioners' Application for Extraordinary Jurisdiction) (stating that deceased individual had been removed from voting rolls before Lancaster County received fraudulent vote).

completed). *Berks*, 2020 WL 4100998, at *18. That county boards do count—and indeed have no way to identify—"incorrectly" dated declarations underscores that the underlying information is unimportant.

In sum, the date serves no "weighty interest." *In re Canvass*, 241 A.3d at 1077-78 (opinion announcing judgment); *Berks*, 2022 WL 4100998, at *24. The consequence of interpreting the Election Code to require that ballots be excluded if the voter does not include a date on the declaration would therefore be to deprive individuals of their right to elect their preferred candidate for failing to provide their county board with inconsequential information, without serving *any* interest to the state. That would be contrary to the presumption this Court applies when confronted with ambiguous directives in the Election Code.

### III.   Federal Law Requires Respondent Boards to Include in their Certified Results Timely Received Absentee and Mail-in Ballots Cast by Qualified Voters

Because Pennsylvania law provides an independent and adequate basis to require county boards to canvass and count timely received absentee and mail-in ballots cast by qualified voters who neglected to date the return envelope's declaration, this Court need not consider what result federal law may separately require. But if this Court concludes that only a dated and signed declaration is "sufficient" under the Election Code, federal law still prohibits county boards from

setting aside a ballot on the basis that the voter omitted a date from the return envelope's declaration.

Under federal law:

> No person acting under color of law shall … deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B). This section, passed initially as part of the Civil Rights Act of 1964, was enacted to end trivial requirements that "served no purpose other than as a means of inducing voter-generated errors that could be used to justify" denying the right to vote. *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008).

When this Court last considered the class of ballots at issue here, four Justices observed that voiding ballots for minor errors might conflict with 52 U.S.C. § 10101(a)(2)(B). *In re Canvass*, 241 A.3d at 1074 n.5 (opinion announcing judgment); *id.* at 1089 n.54 (Wecht, J., concurring and dissenting). But because the relevance of that federal statute had not been briefed, and because this Court ordered that, under state law, timely received ballots without the voter's handwritten date on the return envelope must be counted in the 2020 election, there was no reason to resolve whether § 10101(a)(2)(B) also required counting those ballots.

Since then, the Third Circuit has addressed the federal question that this Court first identified. In a case about ballots identical in all relevant respects to those at issue here, the Third Circuit determined that because the date on a return envelope's declaration is not material to determining a voter's qualifications, omitting a date cannot justify refusing to count a ballot. *Migliori*, 36 F.4th at 164. This Court should follow the Third Circuit's persuasive analysis because disqualifying ballots based on omitting a date from the return-envelope declaration denies the right to vote for an immaterial omission.[14]

Applying the federal statute here, setting aside a ballot return envelope prior to canvassing "den[ies] the right … to vote." 52 U.S.C. § 10101(a)(2)(B). Indeed, § 10101 itself defines its use of "vote" to include "all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast with respect to candidates for public office and propositions for which votes are received in an election." 52

---

[14] The Supreme Court's order vacating the judgment in *Migliori*, a consequence only of the case becoming moot after one party conceded the election following the Third Circuit's judgment, is not an assessment of the merits of the Third Circuit's analysis. *See supra* at 13-14 n.7. In any event, an order vacating the Third Circuit's judgment is particularly irrelevant here given that this Court was never bound by the Third Circuit's judgment. *Stone Crushed P'ship v. Kassab Archbold Jackson & O'Brien*, 908 A.2d 875, 884 (Pa. 2006).

U.S.C. § 10101(e). Next, a mailing envelope is a "record or paper." Assuming omission of a date is a disqualifying error, then dating the return-envelope declaration is an "act requisite to voting." Finally, dating the declaration is not "material" because the date does not assist in determining if the ballot was cast by someone eligible to vote under Pennsylvania law.

Petitioners' exclusive reliance on a dissent by Justice Alito is misguided. In addition to the obvious fact that it is a dissent, even Justice Alito confessed that he had only limited time to study the issue and did not rule out changing his view. *Ritter*, 142 S. Ct. at 1824 (Alito, J., dissenting). Petitioners ignore that cautionary note, instead repeating a number of observations that are inconsistent with § 10101's text or with Pennsylvania law.

Petitioners insist that § 10101 has no application when a ballot is not filled out correctly, Br. at 20, or when an error is made during the "act of voting," *id.* at 22. But here, the mistake is not on the ballot or in the act of voting. The mistake is on the return-envelope declaration that Petitioners believe must be properly dated if the envelope is to be opened and the ballot within is to be counted. If Petitioners are right that Pennsylvania law demands setting aside all return envelopes lacking a date, or containing the "incorrect" date, then the ballots within those envelopes will never be opened. 25 P.S. § 3146.8(g)(4) (directing that only ballots are opened only if they satisfy the canvassing criteria in § 3146.8(g)(3)).

38

Additionally, Petitioners suggest that a voter whose vote will not count for failing to comply with some state rule has not been denied the chance to vote, but instead has not followed the rules for voting. Br. at 20-21. That argument not only renders § 10101—which presumes noncompliance with some state-imposed prerequisite to voting—completely null, it also ignores that § 10101 itself defines denials or the right to vote to include when someone's ballot has not been counted and included in the final election results. 52 U.S.C. § 10101(e).[15]

Finally, § 10101(a)(2)(B) is not inapplicable, as Petitioners urge, Br. at 21-22, because the declaration date is, as they concede, immaterial to eligibility. Petitioners' argument flips § 10101 on its head, and encourages this Court to conclude that errors and omissions may allow disenfranchisement so long as the requested information is "not material in determining whether [an] individual is qualified under State law to vote." Section 10101(a)(2)(B) applies when state law would disenfranchise a voter for making an error or omission on a record or paper

---

[15] Petitioners identify other conceivable errors, such as voting after Election Day, not using the secrecy envelope, or returning a ballot to the wrong location which might prevent a voter's ballot from being counted. Br. at 20. These errors are outside the limited scope of § 10101(a)(2)(B) because none is an "error or omission on any record or paper," not because the voters have not been denied the right to vote as defined under § 10101(e). *See Democratic Cong. Campaign Comm. v. Kosinski*, No. 22-1029 (RA), 2022 WL 2712882, at *21 (S.D.N.Y. July 13, 2022) (noting that with respect to the scope of the materiality provision, "[a] ballot that is cast in a polling place at which a voter is ineligible to vote is not analogous" to "missing handwritten dates on absentee ballot envelopes" or "the inclusion of social security numbers on voter registration forms").

if the erroneous or omitted information was not needed to judge the voter's qualifications. *See Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1308 (N.D. Ga. 2018). In other words, where the required information was "not material in determining whether [an] individual is qualified under State law." 52 U.S.C. § 10101(a)(2)(b).

## IV.   No Petitioner Has Standing

Last, neither the Voter Petitioners nor the Republican Committee Petitioners have the "substantial, direct, and immediate interest" needed to establish standing. *See Markham v. Wolf*, 136 A.3d 134, 140 (Pa. 2016).

The Voter Petitioners and Political Committee Petitioner each allege an injury to their general interest in obedience to the law. Br. at 6, 8-9. Their professed interest in obedience with the law is not an interest that surpasses that of any other citizen or the public generally. *Fumo v. City of Phila.*, 972 A.2d 487, 496 (Pa. 2009).

The Voter Petitioners also claim that counting other people's votes injures them by diluting their own vote. Br. at 6. Courts in Pennsylvania and elsewhere have overwhelmingly rejected this theory of standing, repeatedly explaining that claims of "vote dilution" assert only a generalized grievance.

In *Kauffman v. Osser*, 271 A.2d 236 (Pa. 1970), for example, several voters sought to challenge statutes allowing certain electors to vote absentee, insisting

that their votes would be "diluted by the [allegedly invalid] absentee votes." *Id.* at 239. That is precisely the injury the voter Petitioners allege here. But this Court concluded that "the interest which appellants claim is nowise peculiar to them but rather it is an interest common to that of all other qualified electors." *Id.* at 240.

Federal courts across the country have consistently come to the same conclusion, reasoning that one voter does not suffer any particularized injury from another person being allowed to vote (particularly where, as here, that other person is an indisputably qualified elector). *E.g.*, *Wood v. Raffensperger*, 981 F.3d 1307, 1314-15 (11th Cir. 2020); *Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 356-60 (3d Cir. 2020), *cert. granted and judgment vacated on other grounds*, 141 S. Ct. 2508 (2021); *O'Rourke v. Dominion Voting Sys., Inc.*, No. 21-1161, 2022 WL 1699425, at *2 (10th Cir. May 27, 2022); *Election Integrity Project Cal., Inc. v. Weber*, No. 21-32, 2021 WL 4501998, at *4 (C.D. Cal. *June* 14, 2021); *King v. Whitmer*, 505 F. Supp. 3d 720, 735-36 (E.D. Mich. 2020); *Moore v. Circosta*, 494 F. Supp. 3d 289, 312-13 (M.D.N.C. 2020).

The judicial consensus makes sense. Allowing one person to vote does not prevent any Petitioners from voting, and no Petitioner's vote is "otherwise disadvantaged relative to those of the entire population of Pennsylvania." *Toth v. Chapman*, No. 22-208, 2022 WL 821175, at *7 (M.D. Pa. Mar. 16, 2022) (three-judge panel).

41

Moreover, the voters still must show that counting ballots returned in an envelope with an undated declaration inflicts a particularized injury on them. Yet, removing a burden on one person's right to vote does not injure anyone else. *Donald J. Trump for President v. Boockvar*, 502 F. Supp. 3d 899, 919 (M.D. Pa. 2020). Put differently, no single voter is injured because an election is made accessible to another qualified voter, or because representative government has been made a better reflection of the will of the people.

## CONCLUSION

For the reasons above, this Court should deny the request to exercise either King's Bench Power or Extraordinary Jurisdiction.

October 19, 2022

Respectfully submitted,

Robert A. Wiygul (No. 310760)
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933

Michael J. Fischer (No. 322311)
Chief Counsel and Executive Deputy
Attorney General

/s/ *Jacob B. Boyer*

Jacob B. Boyer (No. 324396)

Joshua A. Matz*
Raymond P. Tolentino*
Carmen Iguina González*
KAPLAN HECKER & FINK LLP
1050 K Street NW | Suite 1040
Washington, DC 20001

Elizabeth Lester-Abdalla (No. 327276)
Deputy Attorneys General
OFFICE OF ATTORNEY GENERAL
1600 Arch Street, Suite 300
Philadelphia, PA 19103
Phone: (267) 768-3968

* *Pro Hac Vice motion forthcoming*

J. Bart Delone (No. 42540)
Chief Deputy Attorney General
Sean Kirkpatrick (No. 92960)
Senior Deputy Attorney General
OFFICE OF ATTORNEY GENERAL
15th Floor, Strawberry Square
Harrisburg, PA 17120

*Counsel for Respondent Leigh M. Chapman*

## **CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Dated: October 19, 2022                              /s/ *Jacob B. Boyer*
                                                                     Jacob B. Boyer

## <u>**CERTIFICATE OF LENGTH**</u>

I certify that this brief complies with the word count requirement set forth in Pennsylvania Rule of Appellate Procedure 2135(a)(1). This brief is 10,123 words. I have relied on Word's word count function to determine the length of this brief.

Dated: October 19, 2022                    /s/ *Jacob B. Boyer*
                                                       Jacob B. Boyer