IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA STATE CONFERENCE OF THE NAACP, *et al.*,<br><br>    *Plaintiffs,*<br><br>v.<br><br>LEIGH M. CHAPMAN, Acting Secretary of the Commonwealth, *et al.*,<br><br>    *Defendants.* | Case No. 1:22-cv-339 |
| BETTE EAKIN, *et al.*,<br><br>    *Plaintiffs,*<br><br>v.<br><br>ADAMS COUNTY BOARD OF ELECTIONS, *et al.*,<br><br>    *Defendants.* | Case No. 1:22-cv-340 |

**DEFENDANTS ALLEGHENY, BUCKS, CHESTER, MONTGOMERY, AND PHILADELPHIA COUNTY BOARDS OF ELECTIONS' MEMORANDUM IN RESPONSE TO INTERVENOR-DEFENDANTS' MOTIONS TO DISMISS**

    The right to vote is the most fundamental of American rights—the right that preserves all other rights. The Philadelphia, Allegheny, Bucks, Chester, and Montgomery County Boards of Elections ("Responding Counties") are charged with administering fair and orderly elections in their respective Counties and ensuring that voters in those Counties are meaningfully able to exercise the elective franchise. In addition to the processes and protections provided to voters at the State and local level, Congress sought to protect each qualified voter's right to vote by prohibiting

1

States from disqualifying timely and eligible votes, and thus from disenfranchising the voters who cast such votes, due to immaterial paperwork omissions or errors. 52 U.S.C. § 10101(a)(2)(B). This "materiality provision" was enacted to end immaterial requirements that "served no purpose other than as a means to inducing voter-generated errors that could be used to justify" denying the right to vote. *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008).

The "materiality provision" prohibits the denial of the right to vote solely because of a voter's failure to comply with a meaningless requirement to handwrite a date on the outer return envelope of their mail-in or absentee ballot. Responding Counties do not rely on the handwritten date to determine a voter's qualification or the timeliness of the ballot. Thus, in Philadelphia, Allegheny, Bucks, Chester, and Montgomery County, strict enforcement of the handwritten date requirement has had—and will continue to have—the practical effect of collectively disenfranchising thousands of otherwise eligible electors who cast timely ballots but failed to include a "correct" date on the outer return envelope of those ballots. The materiality provision prohibits such disenfranchisement—as Plaintiffs have correctly argued in these two related actions. And that disenfranchisement will be borne on the shoulders of elderly Pennsylvania residents, many of whom hold dear the right to vote and have been regular voters in Pennsylvania elections for decades. Indeed, Responding Counties' data from the 2022 General Election collectively shows that elderly voters were disproportionately overrepresented in the number of segregated and uncounted ballots. The Civil Rights Act was intended for situations like this one,

where those who have difficulty legibly writing the date or are unable to leave their homes for reasons related to health or age will be disenfranchised because of a mere technicality—one that has no bearing on a voter's eligibility to vote or the timeliness of a ballot.

Responding Counties recognize that, as defendants, they need not respond to Defendant-Intervenors' motion to dismiss and that their decision to respond is somewhat atypical. But this unresolved issue of federal law is too important for Responding Counties to sit idly by without expressing their strongly held view that this dating requirement violates the materiality provision of the Civil Rights Act.[1] For the reasons that follow, Responding Counties urge this Court to deny the Intervenor-Defendants' motions to dismiss and declare that the handwritten date requirement should not be enforced in upcoming elections because it violates the Civil Rights Act.

## ARGUMENT

### A. The Dating Requirement Violates the Materiality Provision.

The dating requirement violates the Civil Rights Act of 1964 because a voter's handwritten date on the ballot's outer return envelope does not determine the voter's qualification or the timeliness of the ballot. The Civil Rights Act provides in relevant part:

> No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act

---

[1] The Responding Counties takes no position on the merit of the separate constitutional claims raised by Plaintiffs in these actions.

> requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B). This section was enacted to end immaterial requirements that "served no purpose other than as a means of inducing voter-generated errors that could be used to justify" denying the right to vote. *Browning*, 522 F.3d at 1173; *see also, e.g.*, *Schwier v. Cox*, 340 F. 3d 1284, 1294 (11th Cir. 2003) (explaining that the materiality provision serves to prevent States from "requiring unnecessary information" and then using the omission of that information to deny a person's right to vote).

To fall within the materiality provision, four distinct requirements must be satisfied. There must be (1) a denial of the right to "vote" (2) "because of an error or omission," (3) "on any record or paper relating to . . . [an] act requisite to voting," (4) that is "not material" in determining the voter's qualification to vote. All four requirements are satisfied here, where in the 2022 General Election (pursuant to orders of the Supreme Court of Pennsylvania), Responding Counties were required to set aside and thus invalidate thousands of timely ballots from eligible voters solely because those voters did not include a correct, handwritten date on the outer return envelope of their ballots.

*First*, when the Commonwealth invalidates a ballot because the voter failed to handwrite a date, it plainly "den[ies] the right of any individual to vote."

*Second*, when a voter does not handwrite a date, or does so illegibly or incorrectly, that voter has committed an "error or omission."

4

*Third*, the placement of an absentee or mail-in ballot into the outer envelope is an act "requisite to voting," and the outer envelope is a "paper" that relates to that act. The Election Code requires a voter to place the voted ballot into the secrecy envelope and place that secrecy envelope into the outer (paper) mailing envelope. 25 P.S. 41 §§ 3146.6(a), 3150.16(a). If the voter did not place the absentee or mail-in ballot in the paper envelopes, then the county boards of elections cannot count that voter's ballot. *Id.* § 3146.8(g)(3). Thus, an incorrect date is an error "on any record or paper" (the outer envelope), "relating to . . . [an] act requisite to voting" (placing and mailing the ballot inside the outer envelope). 52 U.S.C. § 10101(a)(2)(B).

*Finally*, a voter's missing or incorrect date is "not material in determining whether such individual is qualified under State law to vote." *Id.* § 10101(a)(2)(B). Under Pennsylvania law, a voter is qualified if, *by Election Day*, they are at least eighteen-years old, have been a citizen of Pennsylvania for at least one month, have lived in the relevant election district for at least thirty days, and have not been imprisoned for a felony. *See* 25 P.S. §§ 2811, 1301. Responding Counties do not examine the handwritten date on a ballot's outer return envelope to make these determinations. And that makes sense: Election Day—not the day the voter completed the ballot—is the date against which a voter's eligibility is measured. *Id.* So the date on the outer ballot is irrelevant to any concern about voter eligibility.[2]

---

[2] Unlike the date, which is not relevant to verifying the right to vote, a signature is a voter's verification that he or she is qualified elector in the election. 25 P.S. §§ 3146.4, 3150.14, 3553.

5

There is also no concern that without a handwritten date a ballot may be cast outside the proper time frame. Every absentee or mail-in ballot must be received by the Responding Counties before the 8:00 p.m. deadline on Election Day. 25 P.S. §§ 3146.6(a), 3150.16(a); *see also Migliori v. Cohen*, 36 F.4th 153, 1574 (3d Cir. 2022) *cert. granted and judgment vacated, Ritter v. Migliori*, No. 22-30, 2022 WL 6571686 (U.S. Oct. 11, 2022) (Mem.).[3] This deadline—not a voter's handwritten date—ensures the voter completed the ballot within the proper timeframe and prevents the supposed backdating of ballots. As Third Circuit thoroughly explained, there is no "persuasive reason" for how a handwritten date on the outer envelope helps to determine any of these qualifications or requirements. *Migliori*, 36 F.4th at 162-63.

In a futile attempt to show the importance of the dating requirements, the Intervenor-Defendants cite one instance where a handwritten date was used in an affidavit of probable cause against a woman who cast and dated a fraudulent ballot in her deceased mother's name twelve days after her mother had died. *See NAACP v. Chapman*, Intervenor-Defendants' Brief ("*NAACP I-D*"), at 6; *Eakin v. Adams County*, Intervenor-Defendants' Brief ("*Eakin I-D*"), at 6. But even there, the date played no role in determining the eligibility of the voter and hence the validity of the ballot. Because the mother died before the date of that election, her vote could not be

---

[3] The U.S. Supreme Court vacated the judgment in *Migliori* because the case had become moot after one party conceded the election following the Third Circuit's judgment. It is not an assessment of the merits of the Third Circuit's analysis. *See United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950) (noting that reversing or vacating a decision that became moot on its way to the U.S. Supreme Court is the "established practice" of the Court).

counted, regardless of the handwritten date on the ballot. Indeed, even before the daughter's fraud was discovered, the mother's ballot was already excluded because records showed—without any reference to the handwritten date—that the mother had died before Primary Election Day. *Chapman v. Berks Cnty. Bd. of Elections*, 2022 WL 4100998 at *21 n.14 (Pa. Commw. Ct. Aug. 19, 2022). And because the date had no role in determining the validity of the deceased mother's ballot, its role as a piece of criminal evidence against the daughter's fraud is entirely beside the point: the date is still "not material in determining" the eligibility of a voter.

**B.     The Intervenor-Defendants' Contrary Arguments Lack Merit.**

The Intervenor-Defendants' reliance on a dissent by Justice Alito is misguided. In addition to the obvious fact that it is a dissent by a single Justice (not an opinion of the Court), even Justice Alito confessed that he had only limited time to study the issue and did not rule out changing his view. *Ritter v. Migliori*, 142 S. Ct. 1824 (2022) (Alito, J., dissenting). The Intervenor-Defendants ignore that cautionary note and reiterate three arguments that are inconsistent with Section 10101's text and Pennsylvania law.

1.     The Intervenor-Defendant's contend that when a voter's ballot is invalidated for lacking a handwritten date, then "the voter was not denied the right to vote . . . . [r]ather that individual's vote is not counted because he or she did not follow the rules for casting a ballot." *See NAACP* I-D at 7; *Eakin* I-D at 9.

This is sophistry. When a voter's ballot is invalidated because of a failed literacy test, that voter is denied the right to vote. When voter's ballot is invalidated because of a misspelling on a voting application, that voter is denied the right to vote.

7

And when a voter's ballot is invalidated because there is no date, or an "incorrect" date, on the outer return envelope, that voter too is denied the right vote.

The plain language of the Civil Rights Act confirms this conclusion. Section 10101 itself defines "vote" to include "all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, *casting a ballot, and having such ballot counted and included* in the appropriate totals of votes cast with respect to candidates for public office and propositions for which votes are received in an election." 52 U.S.C. § 10101(e) (emphasis added). A voter who does not correctly date the outer return envelope does not have their absentee or mail-in "ballot counted and included in the appropriate totals of votes cast with respect to candidates for public office and propositions for which votes are received in an election," and is therefore denied the right to vote.

True, when a voter shows up at the polls on the wrong day or after the polls have closed, then that voter has also in some sense been denied the right to vote. But that is a red herring because, unlike here, those denials are not based on an "error or omission on any record or paper" and therefore they do not fall within the scope of the materiality provision. Similarly, when a voter who fails to place a ballot into a secrecy envelope—it may be an omission, but it is not an omission "on a record or paper." The same is true for a voter fails to adequately indicate the intent to vote for a particular candidate, or indicates too many candidates for a single office, that error is in the act of voting itself, and therefore does not relate to a "registration, application, or other act requisite to voting"—as required by the materiality

8

provision. The same is not true for the failure to correctly handwrite a date on an envelope in which a ballot is placed: that failure is an error or omission on a paper that relates to act requisite to voting (*i.e.*, placing the ballot into an outer envelope).

2. Next, the Intervenor-Defendants mistakenly argue that the materiality provision is inapplicable here because the dating requirements does not "affect a determination whether such individual is qualified under State law to vote." *See NAACP* I-D at 8; *Eakin* I-D at 10. In their view, only a requirement that determines whether an individual is qualified to vote can violate the materiality provision.

Precisely the opposite is true. The materiality provision prohibits the denial of the right to vote based on errors or omissions that are "**not material** in determining whether such individual is qualified under State law to vote." 52 U.S.C. § 10101(a)(2)(b). If an error is material—that is, "it goes to determining age, citizenship, residency, or current imprisonment for a felony," *Migliori*, 36 F.4th at 163, then denial of the right to vote would not violate the materiality provision. Here, the Intervenor-Defendants themselves agree, "the date requirement is not used to determine whether an individual is qualified under State law to vote." *See NAACP* I-D Brief at 11; *Eakin* I-D at 13. So, it violates the materiality provision.

3. Finally, the Intervenor-Defendants argue that the act of handwriting the date on the outer envelope does not fall within the scope of the materiality provision because it would be "awkward" to consider "casting a ballot" as an "act requisite to voting." *See NAACP* I-D at 11; *Eakin* I-D at 12. But the flaw in their argument is that when a voter inserts the ballot into an outer return envelope, that

9

voter is not casting a ballot or engaging in an act of voting. Instead, that voter is simply taking an act requisite to casting the ballot, which occurs when the absentee or mail-in ballot is formally submitted. As a result, the requirement to date that outer envelope involves a prerequisite act to voting—not the act of voting itself—and therefore comfortably falls within the scope of the materiality provision.

## **CONCLUSION**

In the end, a plain reading of the materiality provision shows that federal law prohibits invalidating a voter's ballot simply because that voter did not include a correct date on the outer return envelope. Doing so would deny the right to vote, based on an error or omission, on a record or paper, that relates to a prerequisite act of voting, that is not material to determining a voter's qualification. For these reasons, the Court should deny the Intervenor-Defendants' motion to dismiss the first counts asserted in Plaintiffs' respective complaints.

Dated: February 3, 2023

By: /s/ *George M. Janocsko*
George M. Janocsko (PA 26408)
Allan J. Opsitnick (PA 28126)
Lisa G. Michel (PA 59997)
Allegheny County Law Department
445 Fort Pitt Boulevard
Fort Pitt Commons Suite 300
Pittsburgh, PA 15129
george.janocsko@alleghenycounty.us
opsitnick@opsitnickslaw.com
lisa.michel@alleghenycounty.us
T (412) 350-1120

*Counsel for the Allegheny County Board of Elections*

By: /s/ *Amy M. Fitzpatrick*
Amy M. Fitzpatrick (pro hac vice)
(PA 324672)
Daniel D. Grieser (PA 325445)
Law Department – County of Bucks
55 E. Court St., 5th Floor
Doylestown, PA 18901
amfitzpatrick@buckscounty.org
ddgrieser@buckscounty.org

*Counsel for the Bucks County Board of Elections*

By: /s/ *Colleen M. Frens*
Colleen M. Frens (*pro hac vice*)
 (PA 309604)
Faith Mattox-Baldini (PA 323868)
Chester County Solicitor's Office
313 W. Market Street, Suite 6702
West Chester, PA 19382
T 610.344.6195
cfrens@chesco.org
fmattoxbaldini@chesco.org

*Counsel for the Chester County Board of Elections*

Respectfully submitted,

By: /s/  *Ilana H. Eisenstein*
Ilana H. Eisenstein (*pro hac vice*)
  (PA 94907)
Brian H. Benjet (*pro hac vice*)
  (PA 205392)
DLA Piper LLP (US)
1650 Market Street, Suite 5000
Philadelphia, PA 19103
T (215) 656-3300
ilana.eisenstein@us.dlapiper.com
brian.benject@us.dlapiper.com

Zachary G. Strassburger
  (PA 313991)
Aimee D. Thomson (*pro hac vice*)
  (PA 326328)
Philadelphia Law Department
1515 Arch Street, 17th Floor
Philadelphia, PA 19102
zachary.strassburger@phila.gov
aimee.thomson@phila.gov

*Counsel for Defendant Philadelphia County Board of Elections*

By: /s/ *John A. Marlatt*
John A. Marlatt (PA 210141)
Maureen Calder (*pro hac vice*)
 (PA 68055)
Montgomery County Solicitor's Office
PO Box 311
Norristown, PA 19404

*Counsel for Respondent Montgomery County Board of Elections*

**CERTIFICATE OF CONSENT**

I hereby certify that I have obtained the consent of the non-filing signatories to this Memorandum in Response to the Intervenor-Defendants' Motion to Dismiss—the above-listed counsel for Defendants the Allegheny, Bucks, Chester, and Montgomery County Boards of Elections.

Dated: February 3, 2023                By: */s/ Ilana H. Eisenstein*

*Counsel for Defendant Philadelphia County Board of Elections*