# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA
## ERIE DIVISION

|  |  |
|---|---|
| BETTE EAKIN, *et al.*,<br><br>               Plaintiffs,<br><br>    v.<br><br>ADAMS COUNTY BOARD OF ELECTIONS, *et al.*,<br><br>             Defendants. | Case No. 1:22-cv-00340-SPB |

# PLAINTIFFS' OPPOSITION TO INTERVENORS'
# MOTION TO DISMISS

## INTRODUCTION

Pennsylvania's requirement that county boards reject timely-received mail-in or absentee ballots (collectively, "mail ballots") contained in envelopes on which the voter failed to write a "correct" date is a quintessential Materiality Provision violation. The date written on the ballot envelope is not used by election officials to determine whether the voter is eligible to vote in the election, or indeed for *any* purpose. The voters who are disenfranchised as a result, moreover, have already registered to vote and successfully applied for a mail ballot, clearly demonstrating their eligibility to participate in the election.

In enacting the Civil Rights Act of 1964, Congress intended the Act's Materiality Provision to dispense with precisely these sorts of technical obstacles standing in the way of eligible voters having their votes counted. That is why a unanimous Third Circuit panel held last year that enforcement of the Date Instruction violates the Materiality Provision. *Migliori v. Cohen*, 36 F.4th 153, 164 (3d Cir. 2022), *vacated sub nom. Ritter v. Migliori*, 143 S. Ct. 297 (2022). That decision was later vacated, but only because the case became moot while on appeal. Thus, while no longer binding precedent, the Third Circuit's reasoning and decision remain highly persuasive authority. *See, e.g.*, *Gregoire v. Centennial Sch. Dist.*, 674 F. Supp. 172, 178 (E.D. Pa. 1987) ("That [Third Circuit] opinion was ordered vacated by the United States Supreme Court because the appellant lacked standing; however, the reasoning is persuasive in pertinent aspects even though the holding is not binding precedent."). For the same reasons that the Third Circuit found the Date Instruction violates the Materiality Provision in *Migliori*, Plaintiffs have not only stated a cognizable claim under that provision—they are highly likely to succeed on it. Intervenors' argument that the claim should be dismissed at the outset are easily rejected.

What is more, by requiring county boards to reject ballots because the voters wrote an "incorrect" date on the ballot envelope without offering any guidance to voters or counties as to

what the *correct* date is, the Date Instruction ensures that county boards will reject voters' ballots on an arbitrary basis. Voters and counties are entirely in the dark as to whether a ballot should be counted if, for example, a voter writes the date they mailed the ballot, rather than the date they signed or completed the ballot, or uses a date format that the county board does not recognize. While the Supreme Court of Pennsylvania provided date parameters specific to the 2022 general election, it has provided no such guidance for future elections. The resulting arbitrary rejection of eligible voters' mail ballots imposes burdens on Pennsylvanians' fundamental right to vote that cannot be justified by any sufficiently weighty state interests. As a result, the Date Instruction also violates the First and Fourteenth Amendments.

Intervenors' motion to dismiss Plaintiffs' claims repeatedly gets the law wrong. In seeking dismissal of this case because Pennsylvania's Acting Secretary of the Commonwealth is not listed as a defendant, Intervenors fail to explain not only why the Acting Secretary is a necessary party, but also why this Court must *dismiss* the case on that basis. As Federal Rule of Civil Procedure 19 clearly explains, if the Acting Secretary is necessary to this litigation (which he is not), the result is joinder, not dismissal.

Intervenors' attack on Plaintiffs' Materiality Provision claim is premised on interpretations that are squarely foreclosed by the plain statutory text. Intervenors' claim that the Provision applies only to obstacles that prevent voters from *casting* a ballot—and does not reach obstacles to a voter's ballot being *counted*—ignores the Provision's explicit statement that it applies to regulations restricting not just a voter's ability to cast a ballot, but also to "hav[e] such ballot *counted and included* in the appropriate totals of votes cast." 52 U.S.C. § 10101(a)(3)(A), (e) (emphasis added). And Intervenors' assertion that the Provision applies only to mistakes or omissions made on papers that county boards use to determine a voter's eligibility to vote is

similarly foreclosed by the statute's unambiguous prohibition against denying an individual the right to vote because of an immaterial mistake or omission on "*any* record or paper relating to *any* application, registration, or *other* act requisite to voting." *Id*. § 10101(a)(2)(B) (emphases added).

Intervenors' arguments that Plaintiffs' constitutional claim should be dismissed fare no better. Intervenors do not, and cannot, explain how any of the interests they claim to be served by the Date Instruction make it necessary to reject ballots based on a missing or "incorrect" date, or to subject voters to arbitrary treatment by leaving them entirely in the dark about which dates (or date format) their county board might find "incorrect."

The Court should deny Intervenors' motion to dismiss.

## BACKGROUND

Plaintiffs challenge Pennsylvania's requirement that county boards of elections reject qualified voters' mail ballots if a voter fails to write a correct date on the ballot's outer envelope. The relevant statutory provisions—referred to here as the "Date Instruction"—require voters submitting a mail ballot to "fill out, date and sign the declaration printed" on the outer envelope containing their completed ballot. 25 P.S. §§ 3146.6(a), 3150.16(a). The Supreme Court of Pennsylvania recently concluded that the Date Instruction requires county boards to reject "any ballots contained in undated or incorrectly dated outer envelopes." *Ball v. Chapman*, 284 A.3d 1189, 1192 (Pa. 2022) (per curiam).

Plaintiffs assert that rejecting ballots on this basis violates federal law in two ways. First, it denies Pennsylvanians the right to vote "because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting," and that "error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B); *see* ECF No. 1 ("Compl.") ¶¶ 32–40. Second, and separately, the Date Instruction imposes an undue burden on the right to vote because it results in

- 3 -

the arbitrary denial of undated or "incorrectly dated" ballots, *Ball*, 284 A.3d at 1192, but advances no sufficiently weighty state interest to justify disenfranchising voters. U.S. Const. amends. I, XIV; Compl. ¶¶ 41–47.

The Date Instruction's legality has been the subject of several rounds of recent litigation. The Supreme Court of Pennsylvania first addressed the issue in November 2020, when it ordered—for purposes of the 2020 general election only—that county boards must count *all* timely and otherwise valid mail ballots even if their outer envelopes did not conform to the Date Instruction. *In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058 (Pa. 2020) ("*In re 2020 Canvass*"), *cert. denied sub nom. Donald J. Trump for President, Inc. v. Degraffenreid*, 141 S. Ct. 1451 (2021). While the issue of whether rejecting ballots due to a failure to conform to the Date Instruction would violate the Materiality Provision arose in that litigation, the court did not reach it; instead, Justice Wecht—who provided the tie-breaking vote—concluded that the equities of that particular case required counting timely and otherwise valid mail ballots notwithstanding their noncompliance with the Date Instruction. *See id.* at 1087–89. Nonetheless, a majority of the court expressed serious concerns that rejecting mail ballots due to a voter's failure to write certain information on the ballot envelope may violate the Materiality Provision. *Id.* at 1074 n.5 (opinion announcing judgment of the court) (noting that this argument has "persuasive force" and that "federal courts have barred the enforcement of similar administrative requirements to disqualify electors" under the Materiality Provision); *id.* at 1089 n.54 (Wecht, J., concurring in part) ("It is inconsistent with protecting the right to vote to insert more impediments to its exercise than considerations of fraud, election security, and voter qualifications require.").

In the two years since *In re 2020 Canvass*, it has become clear not only that the Date Instruction offers no indication as to whether an individual is qualified to vote, but also that its

enforcement serves no legitimate state interest at all. Counties do not use the written date, for example, to determine whether the voter is eligible to have their ballot counted, whether the county board received the ballot in time for it to be counted, or for "any other purpose." *Migliori*, 36 F.4th at 164. This reality led a unanimous Third Circuit panel to conclude in May 2022 that enforcement of the Date Instruction violates the Materiality Provision. *Id.* And the U.S. Supreme Court denied an application to stay that decision, allowing undated ballots to be counted in a county judicial race, with only three justices dissenting from that order. *Ritter v. Migliori*, 142 S. Ct. 1824 (2022).

*Migliori* was brought in the context of a county-judge election, and soon after the Third Circuit issued its opinion, the results of that election were certified, mooting the case. As a result, the U.S. Supreme Court vacated the Third Circuit's decision without commenting on the merits. *Ritter*, 143 S. Ct. 297 (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)). That vacatur did not call the reasoning behind the Third Circuit's decision into question in any way; rather, the Supreme Court simply followed its "established practice" in cases that become moot while an appeal is pending, "which is to reverse or vacate the judgment below and remand with a direction to dismiss." *Munsingwear*, 340 U.S. at 39. Thus, the Third Circuit's *Migliori* holding and reasoning remain highly persuasive authority. *U.S. ex rel Espinoza v. Fairman*, 813 F.2d 117, 125 n.7 (7th Cir. 1987) (explaining that circuit court decisions vacated by Supreme Court "remain[] persuasive" precedent when vacatur did not "reject [the decision's] underlying reasoning"); *see also Gregoir*, 674 F. Supp. at 178 (noting when a Third Circuit opinion was "ordered vacated by the United States Supreme Court because the appellant lacked standing," its reasoning remained "persuasive in pertinent aspects even though the holding is not binding precedent").

In a pair of related cases stemming from the 2022 primary election, the Commonwealth Court of Pennsylvania independently concluded that the Date Instruction violates the Materiality

Provision. *Chapman v. Berks Cnty. Bd. of Elections*, No. 355 MD 2022, 2022 WL 4100998, at *18 (Pa. Cmwlth. Aug. 19, 2022); *see also McCormick for U.S. Senate v. Chapman*, No. 286 MD 2022, 2022 WL 2900112 (Pa. Cmwlth. June 2, 2022) (granting preliminary injunction). In August 2022, the President Judge of that court relied on a fully developed evidentiary record and concluded in a thorough, well-reasoned 67-page opinion that, while Justice Dougherty's dissenting opinion in *In re 2020 Canvass* identified "in the abstract" certain purposes that the Date Instruction *could* serve, in reality, it did not serve those purposes at all. *Chapman*, 2022 WL 4100998, at *18.

Shortly before the 2022 general election, the Intervenors in this case and a group of Republican voters filed a petition in the Supreme Court of Pennsylvania, asking the court to exercise its extraordinary jurisdiction to enter an order prohibiting county boards from counting mail ballots contained in envelopes that did not conform to the Date Instruction. *See* Ex. A. After accepting jurisdiction, the court asked the parties to brief multiple questions, including (1) whether Pennsylvania law required county boards to reject ballots contained in envelopes that do not conform to the Date Instruction, and (2) whether rejecting ballots on that basis would violate the Materiality Provision. Order, *Ball v. Chapman*, No. 102 MM 2022 (Pa. Oct. 21, 2022) (attached as Exhibit B). On November 1, 2022, the court issued an order—accompanied by an indication that "opinions [would] follow"— concluding that the Date Instruction prohibits county boards from counting mail ballots "contained in undated or incorrectly dated outer envelopes." *Ball*, 284 A.3d at 1192. The court did not reach any decision, however, about whether this result would violate the Materiality Provision because the justices split evenly on the issue. *Id.* Four days later, the court issued a supplemental order clarifying that,

> For purposes of the November 8, 2022 general election, 'incorrectly dated outer envelopes' are as follows: (1) mail-in ballot outer envelopes with dates that fall outside the date range of September 19, 2022, through November 8, 2022; and (2) absentee ballot outer envelopes with dates that fall outside the date range of August 30, 2022, through November 8, 2022.

Supp. Order, *Ball v. Chapman*, No. 102 MM 2022 (Pa. Nov. 5, 2022) (citing 25 P.S. §§ 3150.12a, 3150.15, 3146.2a(a), 3146.5(a)) (attached as Exhibit C). The court has not yet published opinions explaining the reasoning behind its orders.

## LEGAL STANDARD

In resolving a Rule 12(b)(6) motion to dismiss, the court "accept[s] as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom," and determines whether those allegations "state a plausible claim for relief." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). "This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits." *Brookville Equip. Corp. v. A. L. Lee Corp.*, No. 13-cv-0059, 2013 WL 1195116, at *2 (W.D. Pa. Mar. 22, 2013). "Generally speaking, a Complaint that provides adequate facts to establish 'how, when, and where' will survive a Motion to Dismiss." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009)).

## ARGUMENT

### I.   Plaintiffs did not fail to join a necessary party.

The Court can quickly dispose of Intervenors' claim that Plaintiffs' failure to name the Acting Secretary as a defendant somehow requires dismissal. *See* Mem. In Support of Intervenor-Defs.' Mot. to Dismiss ("Mot."), ECF No. 196, at 6–7.[1] The Acting Secretary is not a necessary party to this litigation. But even if he were, that would not be a reason to *dismiss* this suit; it would simply require adding the Acting Secretary as a defendant.

Intervenors argue that the Acting Secretary's absence prevents "the court [from] accord[ing] complete relief among existing parties," Fed. R. Civ. P. 19(a)(1)(A), but Intervenors

---

[1] On January 17, 2023, at the start of the new gubernatorial administration, Al Schmidt was appointed Acting Secretary of the Commonwealth, replacing Leigh Chapman.

fail to reconcile this claim with the Secretary's duties under Pennsylvania law. First, Intervenors point out that the process for certifying statewide elections involves the county boards sending their certified results to the Acting Secretary, who then "combines" those results "to determine the election winner." Mot. at 7 (quoting Compl. ¶ 17). But nothing in that process makes the Acting Secretary's presence necessary in this litigation, which seeks an order instructing the county boards to include the votes contained on undated and misdated ballots within their certified results. Intervenors do not (and cannot) suggest that the Acting Secretary has the power to alter the certified results received from the county boards based on his independent interpretation of federal law. His ministerial role of tabulating those certified election results has no impact on Plaintiffs' claims.

Second, Intervenors note that the now-former Acting Secretary Chapman had previously issued guidance to county boards about the Date Instruction's enforceability based on recent court decisions. Mot. at 7. That guidance, however, is not binding on the county boards. *See Republican Party of Pa. v. Boockvar*, No. 20A84, 2020 WL 6536912, at *1 (Nov. 6, 2020) ("[N]either the applicant nor the Secretary has been able to verify that all [county] boards [are] complying with the Secretary's guidance, which, it is alleged, is not legally binding on them."). And, even if the guidance were binding, Intervenors offer no reason to believe that if this Court ordered the county boards to include undated and misdated ballots in their certified totals, the new Acting Secretary would issue contrary guidance.[2]

Finally, even if Intervenors' necessary-party arguments had any merit, that would not be a reason to *dismiss* Plaintiffs' claims. Mot. at 7. Rather, the appropriate remedy would be to order Plaintiffs to join the Acting Secretary as a defendant. Fed. R. Civ. P. 19(a)(2) ("If a person has not

___
[2] Intervenors also note that the plaintiffs in the related *Pennsylvania State Conference of the NAACP* litigation named the Acting Secretary as a defendant. Mot. at 7. Of course, that says nothing about whether the Acting Secretary is *necessary* to this litigation.

been joined as required, the court must order that the person be made a party."). Dismissal becomes an option *only* when the necessary party "cannot be joined" because of obstacles such as subject-matter or personal jurisdiction concerns. Fed. R. Civ. P. 19(b); *see also* 7 Fed. Prac. & Proc. Civ. § 1611 (3d ed.) ("[T]he nonjoinder of someone described in Rule 19(a) does not result in a dismissal if that person can be made a party to the action."). Because there is no question that the Acting Secretary could easily be added as a defendant in this case if deemed necessary, "it would be error for [the Court] to dismiss the complaint" based solely on the Acting Secretary's absence. *A. & M. Gregos, Inc. v. Robertory*, 384 F. Supp. 187, 194 (E.D. Pa. 1974).

## II.     Plaintiffs have alleged a plausible violation of the Materiality Provision.

The complaint states a plausible claim that the Materiality Provisions prohibits Defendants from rejecting mail ballots because of a voter's failure to follow the Date Instruction. Rejecting ballots on this basis violates the Materiality Provision's plain text and purpose. In suggesting otherwise, Intervenors ask the Court to rewrite the statute to better fit their view of what the law *should* be. The Court should reject that invitation.

Before addressing the sufficiency of Plaintiffs' allegations, it is necessary to correct a blatant mischaracterization made by the Intervenors about prior litigation over this issue. At the very start of their memorandum, Intervenors falsely state the outcome of *their own case* by claiming that, in *Ball*, the Supreme Court of Pennsylvania "upheld the date requirement under the federal materiality provision." Mot. at 2. That is wrong. In *Ball*, Intervenors petitioned the court asking it to declare that the Date Instruction does not violate the Materiality Provision. Ex. A at 19–22. The court did not grant that relief; instead, it failed to reach a decision on the question because the justices were evenly split. *Ball*, 284 A.3d at 1192.

The Materiality Provision makes it unlawful to:

deny the right of any individual to vote in any election because of an error or

omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B). Congress enacted this provision to rid the country of state laws "that increase the number of errors or omissions on papers or records related to voting and provide an excuse to disenfranchise otherwise qualified voters." *League of Women Voters of Ark. v. Thurston*, No. 5:20-CV-05174, 2021 WL 5312640, at *4 (W.D. Ark. Nov. 15, 2021). As remedial legislation, the Materiality Provision must be "liberally construed." *Peyton v. Rowe*, 391 U.S. 54, 65 (1968).

The Materiality Provision's text consists of three clauses, giving rise to a three-element claim. The first two clauses identify the universe of voting regulations to which the Materiality Provision applies. Clause 1 requires that the regulation result in the "den[ial of] the right of any individual to vote." 52 U.S.C. § 10101(a)(2)(B). Clause 2 requires that the cause of that denial be "an error or omission on any record or paper relating to any application, registration, or other act requisite to voting." *Id.* Clause 3 creates the test for determining the regulation's legality: If the "error or omission is not material in determining whether such individual is qualified under State law to vote in such election," enforcement of the regulation is unlawful. *Id.* Because enforcement of the Date Instruction falls squarely (and at the very least, for purposes of this motion, plausibly) within each of these three elements, Plaintiffs have stated a claim for relief under the Materiality Provision.

**Clause 1: Denial of the Right to Vote.** The Date Instruction's requirement that county boards reject a mail ballot due to a missing or incorrect written date on its envelope unquestionably denies the right to vote. The right to vote includes not only the ability to "cast a ballot," but also to "*have it counted*." *United States v. Classic*, 313 U.S. 299, 318 (1941) (emphasis added). Congress wrote this understanding directly into the Materiality Provision, explicitly defining the word "vote" as used in the Provision as "all action[s] necessary to make a vote effective,

including . . . having [a] ballot counted and included in the appropriate totals of votes cast." 52 U.S.C. § 10101(e); *id.* § 10101(a)(3)(A) (incorporating this definition for purposes of the Materiality Provision's use of the term "vote"). By prohibiting county boards from counting otherwise valid mail ballots due to a missing or incorrect written date on the envelope, the Date Instruction denies the right to vote as Congress has explicitly defined that term.

This explicit definition of the term "vote" forecloses Intervenors' argument that the Date Instruction's enforcement does not violate the Materiality Provision because it does not prevent voter from *casting* a ballot. Mot. at 8–9. Applying the plain text of the Provision, courts have repeatedly found that it applies to state laws that, like the Date Instruction here, do not stand in the way of a voter casting a ballot but instead require rejecting that ballot after submission because of a mistake or omission made by the voter. *See Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*, No. 1:21-CV-01284-JPB, 2021 WL 6495360, at *14 (N.D. Ga. Dec. 9, 2021) (finding plaintiffs stated a plausible Materiality Provision claim in challenge against requirement that absentee voters write their birth date on their absentee ballot envelope); *Thurston*, 2021 WL 5312640, at *4 (finding plaintiffs stated a plausible Materiality Provision claim in challenge against requirement that absentee voters who have already demonstrated their eligibility to provide similar evidence with their absentee ballot as well); *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1309 (N.D. Ga. 2018) (enjoining county from rejecting absentee ballots due to voter's failure to write correct year of birth on envelope because doing so likely violates the Materiality Provision); *Ford v. Tenn. S.*, No. 06-2031-DV, 2006 WL 8435145, at *11 (W.D. Tenn. Feb. 1, 2006) (explaining Materiality Provision prohibits rejecting a voter's ballot envelope because of the voter's failure to sign both ballot and poll book). Intervenors' atextual theory would mean that every single one of these cases was wrongly decided.

- 11 -

**Clause 2: Cause of Denial.** The Date Instruction requires county boards to reject a ballot "because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting." 52 U.S.C. § 10101(a)(2)(B). It prohibits counties from counting mail ballots due to an "omission" (failing to write the date) or "error" (writing the wrong date) made by the voter on a "paper" (the envelope) relating to an "act requisite to voting" (completing the voter declaration). *Id.*

Intervenors seek to rewrite the Materiality Provision by arguing that it should apply only when "the error or omission affect[s] a 'determin[ation] whether such individual is qualified under State law to vote.'" Mot. at 10 (quoting 52 U.S.C. § 10101(a)(2)(B)); *see also id.* at 11–12. This argument badly misconstrues the structure of the statutory text and has been rejected by other courts. *Ford*, 2006 WL 8435145, at *11 (rejecting argument that the Materiality Provision applies "solely [to] determining eligibility to vote"). It is Clauses 1 and 2 of the Materiality Provision, not Clause 3, that delineate the *type* of voting regulation governed. Those clauses' plain text makes clear that the Provision applies to any regulation that denies the right to vote "because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting." 52 U.S.C. § 10101(a)(2)(B). This is why, in *Migliori*, the Third Circuit determined that the Materiality Provision "applies" to the Date Instruction by asking only whether "mail-in ballot[s] [] constitute a paper relating to an act for voting." 36 F.4th at 162 n.56. Having found that the Date Instruction "squarely" does so, the court moved on to Clause 3's test, which determines not whether a regulation falls within the Materiality Provision's ambit, but instead whether the regulation is lawful. *Id.* at 163–64. Under that test, if the omission or mistake at issue is "material in determining whether such individual is qualified under State law to vote in such election," the regulation's enforcement is lawful; if it is immaterial, enforcement is unlawful. 52 U.S.C.

§ 10101(a)(2)(B). As explained below, *infra* 14–15, the *Migliori* court easily concluded (and Intervenors concede) that the Date Instruction fails that test.

If Congress had intended to limit the Materiality Provision to papers and records used to determine a person's eligibility, it would have stated that it applies only to papers and records relating to *registration*, the phase during which state actors determine a voter's eligibility. *See Thurston*, 2021 WL 5312640, at *4. But Congress did the opposite, making clear that the Materiality Provision's scope applies to any record or paper relating not only to "registration," but "any application" or "*other* act requisite to voting." 52 U.S.C. 10101(a)(2)(B) (emphasis added). To accept Intervenors' reading of the statute would render that last phrase superfluous. *See Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir. 1998) ("In interpreting a statute, courts should endeavor to give meaning to every word which Congress used and therefore should avoid an interpretation which renders an element of the language superfluous.").

In sum, nothing in the Materiality Provision's text constrains its scope only to instances when state actors use the information provided to determine a voter's eligibility. If Congress intended to circumscribe the Materiality Provision in this significant way, "it would have said so." *Puerto Rico v. Franklin Cal. Tax-Free Trust*, 579 U.S. 115, 128 (2016). Not only did Congress not do so—it included language making clear that it intended the Provision to have a much broader reach. The plain text of the statute forecloses Intervenors' atextual theory.

Intervenors also attempt to make a policy argument, claiming that applying the Materiality Provision's plain text would give it a "breathtakingly broad" reach that would prevent states from enacting "*any* requirements for completing ballots . . . that do not confirm the individual's qualifications to vote." Mot. at 13. But the examples that Intervenors offer to demonstrate this point proves the opposite—*none* would violate the Materiality Provision's plain text the way the

- 13 -

Date Instruction does. The requirement that voters place their mail ballot in a secrecy envelope, *id.* at 14 (citing 25 P.S. §§ 3146.6(a), 3150.16(a)), does not relate to "an error or omission *on* any record or paper." 52 U.S.C. § 10101(a)(2)(B) (emphasis added). Similarly, when a county board declines to count a ballot submitted by a voter who shows up at the polls after Election Day, returns their ballot to the wrong location, or arrives at the wrong polling place, Mot. at 9, they do not do so because of an error or omission on any *record or paper*. And when a county board declines to count an overvote, *id.* at 14, it does not deny that voter the ability to vote; rather, it effectuates the voter's ballot to the fullest practicable extent. *See* 25 P.S. § 3063(a) ("the ballot shall be counted for all offices for which it is properly marked"). Despite Intervenors' hysterics that basic application of the Materiality Provision's text would invalidate a wide range of state voting laws, they fail to identify a single example.

Finally, Intervenors attempt to drag the Date Instruction outside of the Materiality Provision's scope by claiming that "casting a ballot . . . constitutes the *act* of voting, not an . . . act *requisite* to voting." Mot. at 12. But this argument immediately falls apart in light of Intervenors' simultaneous admission that "casting a ballot . . . *requires* completing the declaration." *Id.* (emphasis added). If a voter is required to complete the declaration to cast a ballot, completing the declaration is a requisite to voting. In any event, this imagined distinction cannot be squared with the statutory text. As explained, the Materiality Provisions expressly defines "vote" as including "all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted." 52 U.S.C. § 10101(a)(3)(A), (e).

**Clause 3: Immateriality.** Defendants wisely concede that Plaintiffs' allegations satisfy the third element of their Materiality Provision claim. As they explain, "Plaintiffs are entirely correct

that compliance with the date requirement is not material to any individual's qualifications to vote." Mot. at 12. A person is eligible to vote in Pennsylvania if they are at least 18 years old on the day of the next election, have been a citizen of the United States for at least one month before the next election, and have resided in the Pennsylvania election district where they plan to vote for at least 30 days prior to the next election, provided they have not been convicted of a felony within the last five years. 25 P.S. § 2811; 25 Pa. C.S.A. § 1301(a). As the *Migliori* court unanimously concluded, a voter's failure to write a correct date on the envelope containing their mail ballot has nothing to do with their qualifications to vote. 36 F.4th at 163.

In sum, Intervenors have effectively conceded that the Date Instruction violates the Materiality Provision. Their motion to dismiss this claim should be denied.[3]

### III.   Plaintiffs have alleged a plausible violation of the First and Fourteenth Amendments.

Intervenors' motion to dismiss Plaintiffs' constitutional claim should also be denied. Plaintiffs' allegations more than satisfy the threshold of plausibility and state a cognizable basis for finding that rejecting mail ballots for failure to comply with the Date Instruction places an undue burden on the right to vote in violation of the First and Fourteenth Amendments. This type of federal right-to-vote claim is evaluated under the *Anderson-Burdick* test, which requires the

---

[3] In a two-sentence footnote, Intervenors suggest that Plaintiffs do not have a private right of action to pursue their Materiality Provision claim. Mot. at 8 n.2. Given Intervenors' decision not to offer any substantial argument on this issue, the Court should decline to address it. *Orner v. Int'l Lab'ys., Inc.*, No. 1:20-CV-00449, 2020 WL 9749413, at *2 n.2 (M.D. Pa. Dec. 21, 2020) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived.") (quoting *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 (3d Cir. 1997)). In any event, the argument is wrong. The Materiality Provision unambiguously protects "the right of any individual to vote in any election." 52 U.S.C. § 10101(a)(2)(B). As a result, it is "presumptively enforceable by § 1983." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 274 (2002). For this reason, courts have repeatedly rejected this argument, including the unanimous Third Circuit panel in *Migliori.* 36 F.4th at 162 (holding Materiality Provision contains a private right of action); *see also Schwier v. Cox*, 340 F.3d 1284, 1297 (11th Cir. 2003) (same).

Court to carefully balance the character and magnitude of the injury to the voter's constitutional rights against the precise justifications put forward by the state for the need to impose those burdens. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). This is a highly contextual and factual test, and "even when a law imposes only a slight burden on the right to vote, relevant and legitimate interests of sufficient weight still must justify that burden." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1318–19 (11th Cir. 2019). In all cases, there must be a fit or nexus between the challenged rule and the state's justification; in other words, it must actually advance that interest. *Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 109 (2d Cir. 2008). The burden on the state as to how extensive that justification must be depends on the burden imposed on the voters. *Wilmoth v. Sec'y of N.J.*, 731 F. App'x 97, 102 (3d Cir. 2018). These types of claims are almost never amenable to decision on a motion to dismiss. *See Duke v. Cleland*, 5 F.3d 1399, 1405 & n.6 (11th Cir. 1993) (noting it was "impossible" at the pleadings stage "to undertake the proper review" under *Anderson-Burdick* because the existence of a state interest is "a matter of proof"); *Soltysik v. Padilla*, 910 F.3d 438, 447 (9th Cir. 2018). For reasons discussed further below, this does not present the rare case where dismissal is appropriate.[4]

---

[4] Intervenors' motion to dismiss Plaintiffs' constitutional claim also includes a bizarre detour to discuss the *Purcell* principle, which counsels against judicial interference with a state's election laws on the eve of an election where the change could "result in voter confusion and consequent incentive to remain away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006); *see* Mot. at 19. Both predicates are missing here: Intervenors do not identify any imminent election, nor do they attempt to explain how an order preventing counties from discarding allegedly misdated ballots could create confusion or an incentive not to vote. To the contrary, an injunction is necessary to *mitigate* confusion caused by the ambiguous Date Instruction. *Purcell* cannot be invoked to prevent challenges to the Date Instruction from ever being adjudicated.

**A.** **Plaintiffs allege that the Date Instruction burdens the right to vote by subjecting voters to arbitrary disenfranchisement.**

Plaintiffs more than adequately allege that the Date Instruction burdens the right to vote for individuals whose ballots are rejected as a result of its arbitrary and unnecessary requirements. To have their mail ballot counted, Pennsylvania voters must not only date the ballot's outer envelope, but also divine *which* date they must write, with no guidance about the possible dates— or date formats—that county boards may deem to be "correct." While the Supreme Court of Pennsylvania identified a specific range of "correct" dates for the 2022 general election, *see* Ex. C, it has provided no guidance for any future elections or explained any principle justifying its instructions in 2022. Voters are thus left helpless to determine whether their ballot envelope should contain the date they marked the ballot, the date they placed the ballot in the mail, or some other alternative. The answer will depend entirely on the arbitrary whims of the county board that receives the ballot. Given the Date Instruction's ambiguity and the Supreme Court of Pennsylvania's lack of guidance as to future elections, officials may choose to reject a mail ballot because, for example, the written date is too far from the envelope's postmark or the numeral format of the date does not follow a *month-day-year* convention.

Further compounding this burden, the consequence of a voter's wrong guess or innocent mistake is disenfranchisement. Courts regularly factor the consequences of noncompliance with a challenged provision in their analysis of that provision's burdens. In *Democratic Executive Committee of Florida v. Lee*, for example, the Eleventh Circuit recognized that the burdens imposed by an absentee ballot signature matching requirement included the increased risk of disenfranchisement from a perceived signature mismatch. 915 F.3d at 1319. Intervenors purport to dispute this characterization, Mot. at 21, but their own chosen quote from that decision confirms the close analogy: Just as legitimate voters in Florida were "burdened with the risk that their ballots

w[ould] incorrectly be rejected for [an incorrect] signature," *id.* (quoting *Democratic Exec. Comm. of Fla.*, 915 F.3d at 1320), legitimate Pennsylvania voters are being burdened with the risk that their ballots will be rejected because it is deemed undated or "incorrectly" dated. Contrary to Intervenors' suggestion, the Eleventh Circuit did not limit its analysis to the burden of accurately signing or dating the envelope—it focused on the harsh consequence that would result from a county's determination that the markings on the ballot envelope were inadequate. *Democratic Exec. Comm. of Fla.*, 915 F.3d at 1319–21. The severity of that burden, according to the Eleventh Circuit, was aggravated by the problem that "voters who signatures were deemed a mismatch might not learn that their vote would not be counted until it was too late to do anything about it." *Id.* at 1320-21. In the same way here, there are no standards to county boards in determining "correctness" of a written date on ballot envelopes, and there is no guarantee of any recourse for voters whose envelope dates are deemed to be incorrect.[5] The Eleventh Circuit had "no trouble finding that Florida's scheme imposes at least a serious burden on the right to vote," *id.* at 1321; this Court should reach the same conclusion on the analogous facts here.

Other courts—including the Third Circuit—routinely engage in similar analysis. In *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 881 (3d. Cir. 1997), for example, the Third Circuit recognized that the burdens imposed on minor political parties by an early filing deadline included not only the burden of complying with the deadline but also the burdens that would result from missing the deadline. Intervenors attempt to distinguish this case on the ground that it is a "ballot access regulation," Mot. at 22, but that makes no difference. The *Anderson-*

---

[5] In *Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345, 374 (Pa. 2020), the Supreme Court of Pennsylvania held that county boards of elections are not required to implement a "notice and opportunity to cure" procedure for mail-in and absentee ballots that voters have filled out incompletely or incorrectly.

*Burdick* analysis applies the same way in ballot-access and voter-burden cases; indeed, *Anderson*—the case that introduced the test governing this claim—was itself a dispute brought by an independent candidate over restrictive ballot access rules. 460 U.S. at 782.

Similarly, in *Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016), the Sixth Circuit held unconstitutional a provision of Ohio law requiring boards of elections to reject the ballots of absentee voters who failed to accurately print their birthdate and address on the absentee ballot envelope. The court recognized that this requirement "directly and measurably disenfranchises some voters," creating a burden that outweighed any legitimate state interest. *Id.* at 631–34. The problems with Ohio's birthdate requirement echo those here: as the Sixth Circuit recited, voters are burdened when they "may be disenfranchised based only on a technicality, [such as] transposing the location of the month and year numerals of a birthdate, writing the current date by mistake, and inverting digits[.]" *Id.* at 632. Intervenors attempt a retort by pointing out that the *Husted* court identified legitimate interests that justified Ohio's requirement that *provisional* voters print their date and address, given that many provisional voters are not registered. Mot. at 22 (citing 837 F.3d at 632). But Plaintiffs' claim here has nothing to do with provisional ballots cast by unregistered voters. *Husted* is relevant because of what the Sixth Circuit said *after* addressing the interests unique to provisional ballots: "Ohio has made no such justification for mandating technical precision in the address and birthdate fields of the *absentee-ballot identification envelope*." 837 F.3d at 632 (emphasis added). Because Plaintiffs challenge Pennsylvania's similar technical-precision requirement for writing a date on a mail-ballot envelope, *Husted* is directly analogous and highly persuasive. The burdens imposed by the Date Instruction are severe.

### B.      The Date Instruction is not justified by any legitimate state interest.

Under *Anderson-Burdick*, every burden imposed by a challenged election law, "[h]owever slight[,] must be justified by relevant and legitimate state interests 'sufficiently weighty to justify

the limitation.'" *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (controlling op.) (quoting *Norman v. Reed*, 502 U.S. 279, 288–89 (1992)). Here, no legitimate interests can justify conditioning the franchise on a voter's ability to enter a correct date on their mail ballot envelope or accurately guess how a local official might decide what constitutes a "correct" date.

Intervenors themselves seem unsure what interests could justify the Date Instruction. They quote an unrelated case's reference to state interests in "protecting the integrity and reliability of the election process," Mot. at 19 (quoting *Crawford*, 553 U.S. at 191), but they fail to connect those abstract interests in any way to the Date Instruction. Instead, Intervenors rest on a state court concurring opinion that refused to "indulge" any debate over the provision's purpose, and a dissent from the same case that purported to identify an "unquestionable purpose"—even as Intervenors conspicuously shy from naming just what that purpose could be. *Id.* (quoting *In re 2020 Canvass*, 241 A.3d at 1087 (Wecht, J., concurring in part and dissenting in part), 1090 (Dougherty, J., concurring in part and dissenting in part)).

A closer analysis confirms that the lack of guidance to voters or counties on the meaning of an "incorrectly dated" ballot does not serve any legitimate interest, much less a compelling one. In his *In re 2020 Canvass* dissent, Justice Dougherty identified three possible purposes of the provision: (1) the date on the ballot envelope could provide proof of when the "elector actually executed the ballot in full, ensuring their desire to cast it in lieu of appearing in person at a polling place"; (2) the date could "establish[] a point in time against which to measure the elector's eligibility to cast the ballot"; (3) and the date could "ensure the elector completed the ballot within the proper time frame and prevent[] the tabulation of potentially fraudulent back-dated votes." 241 A.3d at 1090–91. But the opinion announcing the judgment in that very case refutes each of these rationales by showing that they cannot justify the Date Instruction.

First, "[d]uplicate voting is detected by the use of bar codes through the SURE system, and the board identifies the earlier cast vote by referencing the date it received the ballot, not the date on which the declaration was signed." *Id.* at 1078. Second, Pennsylvania's "statutory framework includes no requirement that a county board of elections investigate whether an individual who had been confirmed as a qualified elector at the time of approval to receive a mail-in ballot remains as a qualified elector on Election Day." *Id.* at 1077.[6] And third, because "upon receipt of the ballot, the county board stamps the date of receipt on the ballot-return and records the date the ballot is received in the SURE system," the "date stamp and the SURE system provide a clear and objective indicator of timeliness, making any handwritten date unnecessary and, indeed, superfl[u]ous." *Id.* Other courts have similarly refuted any interest offered in defense of the Date Instruction— including the Third Circuit in *Migliori*. *See* 36 F.4th at 162–64; *see also Chapman*, 2022 WL 4100998, *18–21; *McCormick for U.S. Senate*, 2022 WL 2900112, *12–14.

Finally, Intervenors assert that the Date Instruction "clearly serves the purpose of preventing election fraud," citing a single instance in which the date written on an envelope caused county officials to suspect that the person who cast the ballot was not the voter named on the ballot. Mot. at 19. But the question here is not whether forcing voters to write a date on an envelope could possibly produce evidence of fraud. Instead, it is whether that remote possibility is "sufficiently weighty to justify" disenfranchising voters because they failed to comply with the Date Instruction. *Crawford*, 553 U.S. at 191 (controlling op.) (quoting *Norman*, 502 U.S. at 288–89). Plaintiffs have plausibly alleged that it is not.

In sum, Plaintiffs have adequately alleged that the Date Instruction imposes burdens on

---

[6] Under Pennsylvania law, voter eligibility is assessed as of the date of the election, not the date the ballot is cast. *See* 25 Pa. C.S.A. § 1301(a).

voters that are not justified by any compelling or even legitimate state interest. As a result, the Court should deny Intervenors' motion to dismiss Plaintiffs' *Anderson-Burdick* claim.

## CONCLUSION

The Court should deny Intervenors' motion to dismiss.

Dated: February 3, 2023

Adam C. Bonin
**THE LAW OFFICE OF ADAM C. BONIN**
121 South Broad Street, Suite 400
Philadelphia, PA 19107
Telephone: (267) 242-5014
Facsimile: (215) 827-5300
adam@boninlaw.com

Respectfully submitted,

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta*
Justin Baxenberg*
Daniel C. Osher*
Jacob D. Shelly*
Dan Cohen*
Daniela Lorenzo*
**ELIAS LAW GROUP LLP**
10 G St. NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
unkwonta@elias.law
jbaxenberg@elias.law
dosher@elias.law
jshelly@elias.law
dcohen@elias.law
dlorenzo@elias.law

*\* Admitted Pro Hac Vice*

*Counsel for Plaintiffs*