**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BETTE EAKIN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.: 1:22-cv-00340 |
| | ) | |
| v. | ) | |
| | ) | Judge Susan P. Baxter |
| ADAMS COUNTY BOARD OF | ) | |
| ELECTIONS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY IN SUPPORT OF INTERVENOR-DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Plaintiffs and their supporting counties do not provide any convincing reason for the Court to invalidate Pennsylvania's longstanding date requirement.  Thus, as Intervenor-Defendants have explained, the Court should dismiss Plaintiffs' Complaint.  *See* ECF No. 196.

## I.      THE MATERIALITY PROVISION DOES NOT APPLY.

Plaintiffs' and the counties' briefs largely duplicate each other's arguments that this Court should read the federal materiality provision, 52 U.S.C. § 10101(a)(2)(B), to invalidate Pennsylvania's longstanding date requirement.  None is convincing.

To begin, both continue to urge this Court to rely on the Third Circuit's vacated decision in *Migliori v. Cohen*, 36 F.4th 153 (3d Cir. 2022), which they view as "highly persuasive authority," ECF No. 220 at 6; *see also* ECF No. 218 at 6 & n.3, 9.  They are wrong.  The entire purpose of the Supreme Court's vacatur is that the moot *Migliori* decision should not "spawn[] any legal consequences." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 41 (1950).  It therefore is not precedential.  *See County of Los Angeles v. Davis*, 440 U.S. 625, 634 (1979); *see also Vote.Org v. Callanen*, 39 F.4th 297, 305 n.6 (5th Cir. 2022) (disagreeing with *Migliori*).

In any event, the Third Circuit was wrong, and the Court should not make the same mistake. *See Ritter v. Migliori*, 142 S. Ct. 1824, 1826 (2022) (Alito, J., dissenting from the denial of the application for stay) (Third Circuit's decision was "very likely incorrect"). The motion to dismiss provided three independent statutory grounds to demonstrate that there is no basis to invalidate Pennsylvania's date requirement. Plaintiffs have failed to undermine them.

*First*, the materiality provision prohibits only "deny[ing] the right of any individual to vote," 52 U.S.C. § 10101(a)(2)(B), and enforcing the date requirement does not deny anyone the "right to vote." Plaintiffs argue that because the statute defines "vote" to include "having [a] ballot counted," *any* "prohibit[ion]" on "county boards from counting otherwise valid mail ballots" constitutes a denial of the right to vote. ECF No. 220 at 11-12. But that argument illustrates Plaintiffs' confusion. By their logic, "[r]efusing to count" the vote of a person who came to the polls on Wednesday instead of Tuesday "is a denial of the right to vote." The counties in fact charge into that absurdity, *see* ECF No. 218 at 8 (such a voter "has also in some sense been denied the right to vote"), confirming that their construction of the materiality provision is incorrect.

Indeed, what is at issue is not the meaning of "vote," but the meaning of the "*right to* vote." A person who shows up on the wrong day has not "voted," but she most certainly had the right to vote. So, too, did Plaintiffs here; "the failure to follow [the date requirement] constitutes the forfeiture of the right to vote, not the denial of that right." *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissenting).

*Second*, Plaintiffs contend that "Clauses 1 and 2" of the materiality provision, "not Clause 3," are what "delineate the *type* of voting regulation required," and thereby accuse Intervenor-Defendants of "rewrit[ing]" the statute. ECF No. 220 at 13. Wrong again. In fact, Plaintiffs' method of haphazardly picking apart clauses in isolation ignores the Supreme Court's instruction

that "[i]nterpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. USPS*, 546 U.S. 481, 486 (2006).

Reading the statute as a whole demonstrates that the materiality provision applies only to those errors or omissions that affect a "determin[ation] whether such individual is qualified under State law to vote." 52 U.S.C. § 10101(a)(2)(B). It does not apply to rules, like the date requirement, that have nothing to do with registration. Plaintiffs would subject every paper-based voting requirement to an illogical measuring line. But "[t]here is no reason why the requirements that must be met in order to register (and thus be 'qualified') to vote should be the same as the requirements that must be met in order to cast a ballot that will be counted." *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissenting).

The attempts to reassure the Court that Plaintiffs' reading would not disrupt ordinary election regulations ring hollow. Plaintiffs never address the most obvious victim of their statutory misconstruction—the signature requirement. As Intervenor-Defendants have explained, that too must fall if Plaintiffs' interpretation of the materiality provision is correct. ECF No. 196 at 13-14. Already, then, Plaintiffs' suggestion that Intervenor-Defendants have failed "to identify a single example" is wrong. Before accusing Intervenor-Defendants of engaging in "hysterics," Plaintiffs should respond to the arguments Intervenor-Defendants made. ECF No. 220 at 15. In all events, in addition to the signature requirement, Intervenor-Defendants have explained that Plaintiffs' reading would invalidate Pennsylvania's commonsense rule against overvotes. *See* ECF No. 196 at 14. And for good measure, Plaintiffs' reading would also cast in doubt the validity of commonplace voter assistance declarations, and requirements that in-person voters sign pollbooks. *see* 25 P.S. §§ 3050, 3058.

The counties attempt to salvage their reading of the materiality provision by arguing that a signature is somehow relevant to whether a voter is qualified. ECF No. 218 at 5 n.2. But all that Pennsylvania requires to be qualified to vote is being at least 18 years of age on the date of the election; having been a citizen of Pennsylvania for at least one month; having lived in the relevant election district for at least 30 days; and not being imprisoned for a felony. *See* 25 P.S. § 1301. Those qualifications do *not* include whether the voter signed his ballot declaration, which under the counties' reading is an *attestation* of qualification, not a qualification itself.

*Third*, Plaintiffs' insistence that voting is an "act requisite to voting" continues to violate the principle that words in a statute be given "their ordinary, contemporary, common meaning," *Perrin v. United States*, 444 U.S. 37, 42 (1979). As three Justices of the Supreme Court have opined, the materiality provision "must be given a strained meaning in order to make it applicable to the validity of a rule about filling out a mail-in ballot." *Ritter*, 142 S. Ct. at 1826 n.2 (Alito, J., dissenting). An "act requisite to voting" is not an ordinary way to refer to the very act of *voting*.[1]

## II.    PENNSYLVANIA'S DATE REQUIREMENT IS CONSTITUTIONAL.

Plaintiffs stand alone in arguing to the Court that the date requirement somehow violates the United States Constitution. *See* ECF No. 223 at 3 n.1 ("The Responding Counties takes no position on the merit of the separate constitutional claims raised by Plaintiffs in these actions."). They provide no convincing argument for that outlandish conclusion.

*First*, Plaintiffs appear to argue that, because the consequence of noncompliance is ballot invalidation, asking voters to fill in a date on an envelope is a "severe" burden. ECF No. 220 at

---

[1] Intervenor-Defendants continue to preserve the argument that 52 U.S.C. § 10101(a)(2)(B) does not provide a private right of action, and that 42 U.S.C. § 1983 does not provide a separate basis to sue. All must acknowledge that there is a circuit split on these questions. *See Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 630 (6th Cir. 2016).

20. That ignores *Crawford v. Marion County Election Board*, in which six Justices upheld a voter ID requirement where noncompliance resulted in not even permitting the voter to cast a ballot. *See* 553 U.S. 181 (2008) (plurality op). Moreover, six Justices agreed in *Crawford* that a voting regulation which imposed on many voters "the inconvenience of making a trip to the BMV, gathering the required documents, and posing for a photograph" did *not* impose a severe burden. *Id.* at 198 (plurality op.); *id.* at 209 (Scalia, J., concurring in the judgment). Merely requiring voters to write *a date* next to their signatures is indisputably a lesser burden than that.

*Second*, Plaintiffs have changed their position from saying that there is "nothing to place on the state-interest side of the scale" to belated arguments that the state interest is insufficient. *Compare* Compl. ¶ 46 *with* ECF No. 220 at 22 *and* Proposed Am. Compl. ¶ 48. Given that the burden of complying with the date requirement is *de minimis* at most, it is dubious whether the Court should engage in balancing at all. But in all events, the interests discussed even at this preliminary stage easily justify the date requirement. Plaintiffs argue that "the question here is not whether forcing voters to write a date on an envelope could possibly produce evidence of fraud." ECF No. 220 at 22. But it is not just "possible"—Intervenor-Defendants have already produced an instance where it *actually* produced evidence of fraud. And, regardless, "a State may take action to prevent election fraud without waiting for it to occur and be detected within its own borders." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2348 (2021). Plaintiffs cannot simply wave away Pennsylvania's "compelling interest in preserving the integrity of its election process," *id.* at 2347 (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006), by asserting that fraud is "merely" possible.

## CONCLUSION

The Court should dismiss Plaintiffs' Complaint.

Dated:  February 8, 2023

Respectfully submitted,

*/s/ Kathleen A. Gallagher*
Kathleen A. Gallagher
PA I.D. #37950
Russell D. Giancola
PA. I.D. #200058
GALLAGHER GIANCOLA LLC
436 Seventh Avenue, 31st Floor
Pittsburgh, PA 15219
Phone: (412) 717-1900
kag@glawfirm.com
rdg@glawfirm.com

John M. Gore (*pro hac vice*)
E. Stewart Crosland
Louis J. Capozzi III
Joshua S. Ha
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com

Thomas W. King, III
Thomas E. Breth
DILLON, McCANDLESS, KING,
  COULTER & GRAHAM, LLP
128 W. Cunningham St.
Butler, PA  16001
Phone: (724) 283.2200
tking@dmkcg.com
tbreth@dmkcg.com

*Counsel for Intervenor-Defendants*