# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF PENNSYLVANIA
# ERIE DIVISION

| | |
|---|---|
| BETTE EAKIN, DSCC, DCCC, and AFT PENNSYLVANIA, | Civil Action |
| *Plaintiffs*, | Case No. 1:22-cv-340-SPB |
| v. | |
| ADAMS COUNTY BOARD OF ELECTIONS, ALLEGHENY COUNTY BOARD OF ELECTIONS, ARMSTRONG COUNTY BOARD OF ELECTIONS, BEAVER COUNTY BOARD OF ELECTIONS, BEDFORD COUNTY BOARD OF ELECTIONS, BERKS COUNTY BOARD OF ELECTIONS, BLAIR COUNTY BOARD OF ELECTIONS, BRADFORD COUNTY BOARD OF ELECTIONS, BUCKS COUNTY BOARD OF ELECTIONS, BUTLER COUNTY BOARD OF ELECTIONS, CAMBRIA COUNTY BOARD OF ELECTIONS, CAMERON COUNTY BOARD OF ELECTIONS, CARBON COUNTY BOARD OF ELECTIONS, CENTRE COUNTY BOARD OF ELECTIONS, CHESTER COUNTY BOARD OF ELECTIONS, CLARION COUNTY BOARD OF ELECTIONS, CLEARFIELD COUNTY BOARD OF ELECTIONS, CLINTON COUNTY BOARD OF ELECTIONS, COLUMBIA COUNTY BOARD OF ELECTIONS, CRAWFORD COUNTY BOARD OF ELECTIONS, CUMBERLAND COUNTY BOARD OF ELECTIONS, DAUPHIN COUNTY BOARD OF ELECTIONS, DELAWARE COUNTY BOARD OF ELECTIONS, ELK COUNTY BOARD OF ELECTIONS, ERIE COUNTY BOARD OF ELECTIONS, FAYETTE COUNTY BOARD OF ELECTIONS, FOREST COUNTY BOARD OF ELECTIONS, FRANKLIN COUNTY BOARD OF ELECTIONS, FULTON COUNTY BOARD OF ELECTIONS, GREENE COUNTY BOARD OF ELECTIONS, HUNTINGDON COUNTY BOARD OF ELECTIONS, INDIANA COUNTY BOARD OF ELECTIONS, JEFFERSON COUNTY BOARD OF ELECTIONS, JUNIATA COUNTY BOARD OF ELECTIONS, LACKAWANNA COUNTY BOARD OF ELECTIONS, LANCASTER COUNTY BOARD | |

OF ELECTIONS, LAWRENCE COUNTY BOARD OF ELECTIONS, LEBANON COUNTY BOARD OF ELECTIONS, LEHIGH COUNTY BOARD OF ELECTIONS, LUZERNE COUNTY BOARD OF ELECTIONS, LYCOMING COUNTY BOARD OF ELECTIONS, MCKEAN COUNTY BOARD OF ELECTIONS, MERCER COUNTY BOARD OF ELECTIONS, MIFFLIN COUNTY BOARD OF ELECTIONS, MONROE COUNTY BOARD OF ELECTIONS, MONTGOMERY COUNTY BOARD OF ELECTIONS, MONTOUR COUNTY BOARD OF ELECTIONS, NORTHAMPTON COUNTY BOARD OF ELECTIONS, NORTHUMBERLAND COUNTY BOARD OF ELECTIONS, PERRY COUNTY BOARD OF ELECTIONS, PHILADELPHIA COUNTY BOARD OF ELECTIONS, PIKE COUNTY BOARD OF ELECTIONS, POTTER COUNTY BOARD OF ELECTIONS, SCHUYLKILL COUNTY BOARD OF ELECTIONS, SNYDER COUNTY BOARD OF ELECTIONS, SOMERSET COUNTY BOARD OF ELECTIONS, SULLIVAN COUNTY BOARD OF ELECTIONS, SUSQUEHANNA COUNTY BOARD OF ELECTIONS, TIOGA COUNTY BOARD OF ELECTIONS, UNION COUNTY BOARD OF ELECTIONS, VENANGO COUNTY BOARD OF ELECTIONS, WARREN COUNTY BOARD OF ELECTIONS, WASHINGTON COUNTY BOARD OF ELECTIONS, WAYNE COUNTY BOARD OF ELECTIONS, WESTMORELAND COUNTY BOARD OF ELECTIONS, WYOMING COUNTY BOARD OF ELECTIONS, and YORK COUNTY BOARD OF ELECTIONS,

*Defendants*.

**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Bette Eakin, DSCC, DCCC, and AFT Pennsylvania, by and through undersigned counsel, file this Complaint for Declaratory and Injunctive Relief against Defendants, which consist of Pennsylvania's 67 county boards of elections (full list recited in caption), and allege as follows:

## NATURE OF THE CASE

1. The constitutional right to vote is fundamental and "preservative of all rights." *Reynolds v. Sims*, 377 U.S. 533, 562 (1964). To secure its free exercise, the Civil Rights Act of 1964 prohibits election officials from denying any individual access to the franchise because of an "error or omission on any record or paper relating to any application, registration, or other act requisite to voting" that is "not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B) (the "Materiality Provision"). In essence, the Materiality Provision prohibits the use of needless technical requirements to deny citizens their most fundamental right.

2. On November 1, 2022, the Pennsylvania Supreme Court—for the first time—ordered election officials to *not count* qualified voters' mail-in and absentee ballots (collectively, "mail ballots") due to an immaterial omission of a written date, or the entry of an incorrect date, on the outside of the ballot envelope. That decision was based on an interpretation of a Pennsylvania Election Code provision that directs voters to "fill out, date and sign the declaration" provided on the envelope in which they place their ballot. 25 P.S. §§ 3146.6(a), 3150.16(a) (the "Date Instruction").

3. Within just a few days of the Pennsylvania Supreme Court order, county boards of elections identified thousands of mail ballots that would not be counted because a missing or incorrect date on the ballot envelope, rejecting qualified voters who accidentally failed to write the date on their ballot envelope, and more still will be rejected when voters enter an incorrect date, such as their birthdate, instead of the date they completed or signed their ballot. Election officials have been ordered to reject such ballots even when there is no question that they were timely received and properly signed by a qualified voter.

4.     The Date Instruction has no relevance to determining whether an individual is qualified to vote under Pennsylvania law. Pennsylvania residents are eligible to vote so long as, on the date of the election, they (1) are at least 18 years of age, (2) have been a citizen of the United States for at least one month, (3) have resided in the Commonwealth for at least 90 days, (4) have resided in the district they intend to vote in for at least 30 days, and (5) have not been confined for a felony within the last five years. *See* 25 P.S. §§ 2811, 2602(t); 25 Pa. C.S. § 1301.

5.     To the extent any date is relevant to a voter's qualifications to participate in a particular election under Pennsylvania law, it is the date of that *election*, not the date that the voter completed, signed, or mailed their ballot. *See* 25 P.S. § 2602(t); 25 Pa. C.S. § 1301. Moreover, a mail ballot's timeliness depends not on the day that the voter completed, signed, and submitted it, but instead solely on the date and time the board of elections receives it. 25 P.S. §§ 3146.6(c), 3150.16(c) (requiring mail ballots to be received by 8 p.m. on Election Day).

6.     The date on a mail ballot envelope thus has no bearing on a voter's qualifications and serves no purpose other than to erect barriers to qualified voters exercising their fundamental constitutional right to vote. This unnecessary impediment violates the Civil Rights Act and the First and Fourteenth Amendments to the U.S. Constitution.

## JURISDICTION AND VENUE

7.     Plaintiffs bring this action under 52 U.S.C. § 10101 and 42 U.S.C. §§ 1983 and 1988 to redress the deprivation, under color of state law, of rights secured by the federal Civil Rights Act and the U.S. Constitution.

8.     This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws

of the United States and involve the assertion of deprivation, under color of state law, of rights under the U.S. Constitution and federal law.

9. This Court has personal jurisdiction over Defendants, who are government entities in Pennsylvania.

10. Venue is proper in this Court, and in the Erie Division specifically, because a substantial part of the events that give rise to Plaintiffs' claims occurred and will occur in this Division. *See* 28 U.S.C. § 1391(b)(2). Plaintiff Eakin lives in Erie County, AFT Pennsylvania has two affiliates in Erie County, and Defendants Crawford, Elk, Erie, Forest, McKean, Venango, and Warren County Boards of Elections are all located in the Erie Division. *See* W.D. Pa. LCvR 3. Furthermore, of the 2,992,341 mail ballots received in Pennsylvania for the 2020 General Election, over 28% (839,493) were sent from counties located in this District.[1] Venue is therefore appropriate in the Erie Division of the Western District of Pennsylvania.

11. This Court has the authority to enter declaratory judgment and provide injunctive relief under Federal Rules of Civil Procedure 57 and 65, and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

12. Plaintiff Bette Eakin is a veteran and registered Democrat in Erie County. In the 2022 general election, Ms. Eakin submitted a mail ballot to the Erie County Board of Elections but did not enter a handwritten date on the ballot return envelope. At the time she submitted the ballot, Ms. Eakin was undergoing care for a condition that has made her legally blind and was unable to cast an in-person ballot. Ms. Eakin learned that her ballot would be rejected unless the missing date was rectified, but due to her medical condition, she requires assistance to travel to

---

[1] *Report on the 2020 General Election*, PA. DEP'T OF STATE (May 14, 2021), *available at* https://www.dos.pa.gov/VotingElections/Documents/2020-General-Election-Report.pdf, at 18 (last visited Nov. 4, 2022).

her county board of elections office. As a result, her husband was forced to return home early from a hunting trip nearly two hours away to help Ms. Eakin to cure her undated ballot envelope. Ms. Eakin is concerned that her ballot will be similarly rejected in future elections, either because she forgets to include a date on her mail ballot or because the lack of guidance as to what constitutes a "correct" date creates a serious risk that she will date her ballot in a manner that her county board will deem incorrect. As a result, Ms. Eakin would face additional burdens in seeking to have her future ballots counted because of the Date Instruction.

13.  Plaintiff DSCC is the Democratic Party's national senatorial committee, as defined by 52 U.S.C. § 30101(14). Its mission is to elect candidates of the Democratic Party across the country, including in Pennsylvania, to the U.S. Senate. DSCC works to accomplish its mission by, among other things, assisting state parties throughout the country, including in Pennsylvania, and mobilizing and supporting voters. DSCC has spent millions of dollars in contributions and expenditures to persuade and mobilize voters to support U.S. Senate candidates who affiliate with the Democratic Party, and it will continue to do so again in 2024, including to influence the 2024 senatorial campaign in Pennsylvania. DSCC asserts the claims in this complaint on behalf of itself and its members and constituents. Defendants' failure to count otherwise valid ballots of eligible voters for no other reason than a missing or incorrect date will result in disenfranchisement, including of voters DSCC seeks to mobilize, and impede DSCC's mission of getting Democratic candidates elected to the U.S. Senate. This will force DSCC to divert resources away from its existing voter outreach and mobilization efforts towards voter education necessitated specifically by this requirement, and other efforts to ensure that voters who would be disenfranchised as a result have their votes counted.

14. Plaintiff DCCC is the Democratic Party's national congressional committee as defined by 52 U.S.C. § 30101(14). Its mission is to elect candidates of the Democratic Party from across the country, including those running in Pennsylvania's congressional districts, to the U.S. House of Representatives. DCCC works to accomplish its mission by, among other things, assisting state parties throughout the country, including in Pennsylvania, and assisting and mobilizing voters. DCCC has spent millions of dollars in contributions and expenditures to persuade and mobilize voters to support congressional candidates who affiliate with the Democratic Party, and it will continue to do so again in 2024, including to influence the 2024 congressional campaigns in Pennsylvania. DCCC asserts the claims in this complaint on behalf of itself and its members and constituents. Defendants' failure to count otherwise valid ballots of eligible voters for no other reason than a missing or incorrect date will result in disenfranchisement, including of voters DCCC seeks to mobilize, and impede DCCC's mission of getting Democratic candidates elected to the U.S. House of Representatives. This will force DCCC to divert resources away from its existing voter outreach and mobilization efforts towards voter education necessitated specifically by this requirement, and other effort to ensure that voters who would be disenfranchised as a result have their votes counted.

15. Plaintiff AFT Pennsylvania (the "Federation") is the Pennsylvania affiliate of the American Federation of Teachers and a union of professionals representing approximately 25,117 members in 55 local affiliates across Pennsylvania, including 179 members across two affiliates in Erie County. The Federation's members include public school educators and support staff, higher-education faculty and support staff, and other public employees such as social workers. The Federation advocates for sound, commonsense public education policies, including high academic and conduct standards for students and greater professionalism for teachers and school staff, as

well as excellence in public service through cooperative problem-solving and workplace innovations. In furtherance of its mission, the Federation and its individual members devote significant resources to advocating for education policies that improve the daily lives and livelihood of the Federation's members, and correlatively, to ensure that those members are successfully able to access the franchise to support these policies at the ballot box. The Federation asserts the claims in this complaint on behalf of itself and its members. Defendants' failure to count otherwise valid ballots because of a missing or incorrect date is substantially likely to disenfranchise members of the Federation. Defendants' rejection of such ballots also frustrates the Federation's mission and will force it to divert its scarce resources away from its current activities towards educating its members on Defendants' practices and helping its members, particularly its retired members, ensure their ballots are counted.

16. Defendants are the county boards of elections for the 67 counties of the Commonwealth of Pennsylvania as set forth in 25 P.S. § 2641. They "have jurisdiction over the conduct of primaries and elections in such count[ies], in accordance with the provision of [the Election Code]." *Id.* § 2641(a); *see generally id.* § 2642. In this capacity, they are charged with accepting applications for mail ballots and mailing these ballots to the requesting voter. *Id.* §§ 3146.2(a), 3150.12(a), 3150.15; 25 Pa.C.S. § 3302. They also receive the mail ballots that voters return, 25 P.S. §§ 3146.6(a), 3150.16(a), which are held until Election Day and then opened and canvassed, *id.* § 3146.8. On the third day following the election, each Defendant combines its count of mail ballots with its count of in-person votes received from each election district, and then enters the results on a tabulation sheet. *Id.* § 3154. For statewide elections, Defendants send a certificate showing the totals of the returns cast to the Secretary of the Commonwealth, who, in

turn, combines each of the certified counts she receives in order to determine the election winner. *Id.* §§ 3158, 3159. Defendants are sued for the manner in which they enforce the Date Instruction.

## STATEMENT OF FACTS AND LAW

17. Under Pennsylvania law, a resident qualifies to vote if, on the date of the election, she (1) is at least 18 years old, (2) has been a citizen of the United States for at least one month, (3) has resided in the Commonwealth for at least 90 days, (4) has resided in the district she intends to vote in for at least 30 days, and (5) has not been confined for a felony within the last five years. *See* 25 P.S. §§ 2811, 2602(t); 25 Pa. C.S. § 1301.

18. Before 2019, only limited categories of qualified voters were permitted to vote by mail. This changed in 2019 when the Pennsylvania General Assembly enacted Act 77, which made sweeping changes to pre-existing Pennsylvania election law, and for the first time in the Commonwealth's history allowed any qualified and registered Pennsylvania voter to vote by mail.[2]

19. The Election Code instructs voters casting mail ballots to (1) mark their ballot "on or before eight o'clock p.m. the day of the primary or election"; (2) use only "black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen"; (3) "fold the ballot, enclose and securely seal the same in the envelope on which it is printed, stamped or endorsed 'official election ballot'"; (4) place their completed ballot in a blank, secrecy envelope; (5) place the secrecy envelope into a separate, outer envelope, "on which is printed the form of declaration of the elector"; and (6) "fill out, date and sign the declaration printed on such envelope" before returning it to the voter's county board of elections. 25 P.S. §§ 3150.16(a), 3146.6(a).

---

[2] House Republican Caucus, Historic Election Reform, https://www.pahousegop.com/electionreform (last visited Nov. 2, 2022); *see also* 25 P.S. § 3150.11.

20. The Date Instruction serves no meaningful purpose and is immaterial to whether a voter is qualified to vote under Pennsylvania law, as has been shown by ample evidentiary records developed through extensive litigation since the 2020 election. In July 2022, the Deputy Secretary for Elections and Commissions at the Pennsylvania Department of State, Jonathan Marks, testified that he "cannot think of any administrative purpose" to the handwritten date and that counties do not use the handwritten date to determine timeliness, and have no mechanism of verifying whether the handwritten date is accurate. Marks also testified that he didn't believe there was any situation in which the handwritten date would be relevant to whether the vote is counted.

21. The Pennsylvania Supreme Court initially considered the effect of a voter's failure to comply with the Date Instruction on a Petition for Discretionary Review in *In re Canvass of Absentee and Mail-In Ballots of November 3, 2020 General Election*, 241 A.3d 1058, 1062 (Pa. 2020) (opinion announcing judgment) (hereinafter "*In re Canvass*"). There, the court was asked to determine whether the Date Instruction should be read as a directory or mandatory provision under Pennsylvania law.

22. Three of the court's seven justices concluded that the Date Instruction was "a directory, rather than a mandatory, instruction, and thus the inadvertent failure to comply does not require that ballots lacking a date be excluded from counting." *Id.* at 1076. These three justices reasoned that the Date Instruction did not serve any "weighty interest," and that an interpretation of the Pennsylvania Election Code requiring that mail ballots be rejected any time a voter does not strictly comply with official directions when filling out the envelope would likely violate the Materiality Provision of the Civil Rights Act. *Id.* at 1074 n.5 (citing 52 U.S.C. § 10101(a)(2)(B)).

23. Three other justices, dissenting in relevant part, concluded that the Date Instruction was mandatory, and that the Pennsylvania Code prohibited counties from counting any ballots if

they were contained in envelopes that did not comply with the Date Instruction. *Id.* at 1090 (Dougherty, J., concurring and dissenting). The dissenting opinion did not address whether reading Pennsylvania law in this way conflicted with the Materiality Provision of the Civil Rights Act.

24.     Concurring and writing for himself, Justice Wecht provided the tie-breaking vote. He concluded that the Date Instruction was mandatory, meaning Pennsylvania law required rejecting ballots contained in undated envelopes. *Id.* at 1079–80 (Wecht, J., concurring and dissenting). However, because candidates and voters did not have notice of these harsh consequences, Justice Wecht concluded that the Date Instruction's prohibitory effect should not be applied to the 2020 election. *Id.* at 1090.

25.     Justice Wecht did not express an opinion on whether the Date Instruction violated the Materiality Provision because the question had not been adequately briefed. *Id.* at 1089 n.54. But he expressed hope that the Pennsylvania General Assembly would amend the Election Code "bear[ing] that binding provision in mind" because "[i]t is inconsistent with protecting the right to vote to insert more impediments to its exercise than considerations of fraud, election security, and voter qualifications require." *Id.*

26.     Nearly two years after the Pennsylvania Supreme Court's decision in *In re Canvass*, the U.S. Court of Appeals for the Third Circuit held—based on undisputed evidence developed during the 2021 General Election—that the Date Instruction ran afoul of the Materiality Provision because the date on the mail ballot envelope was immaterial to whether an individual was eligible to vote under Pennsylvania law. *Migliori v. Cohen*, 36 F.4th 153, 163–64 (3d Cir. 2022). The Supreme Court declined to disrupt the Third Circuit's ruling when one of the parties in *Migliori* sought an emergency injunction to prevent the counting of consequential undated ballots pending appeal. *Ritter v. Migliori*, 142 S. Ct. 1824 (2022).

27. While the U.S. Supreme Court recently vacated the Third Circuit's *Migliori* decision as moot without commenting on the merits, that vacatur does not call into question the Third Circuit's analysis. *Ritter v. Migliori*, No. 22-30, 2022 WL 6571686, at *1 (U.S. Oct. 11, 2022) (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)). Rather, "[t]he established practice of the [U.S. Supreme] Court in dealing with a civil case . . . which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss."[3] *Munsingwear*, 340 U.S. at 39. The Third Circuit's ruling and consideration of the evidence in that case remain highly persuasive authority. *See L.A. Cnty. v. Davis*, 440 U.S. 625, 646 n.10 (1979) (Powell, J. dissenting) (noting that even where a decision has been vacated "the expressions of the court below on the merits, if not reversed, will continue to have precedential weight and, until contrary authority is decided, are likely to be viewed as persuasive authority"); *U.S. ex rel Espinoza v. Fairman*, 813 F.2d 117, 125 n.7 (7th Cir. 1987), *cert. denied*, 483 U.S. 1010 (1987) (decision vacated by Supreme Court remains persuasive precedent where Court did not reject decision's underlying reasoning).

28. A few months later, the President Judge of the Pennsylvania Commonwealth Court reached the same conclusion as the Third Circuit. *Chapman v. Berks County Board of Elections*, No. 355 MD 2022, 2022 WL 4100998 (Pa. Cmwlth. Aug. 19, 2022). In a thorough, 67-page opinion where the court analyzed the robust evidentiary record before it, as well as the text and purpose of the Materiality Provision, it held that "invalidating ballots for the sole reason that the

---

[3] The Date Instruction issue was raised before the Third Circuit in *Migliori* by voters whose mail ballots—all of which were received by county election officials prior to 8 p.m. on election day—were nevertheless rejected in a 2021 local judicial race in Lehigh County, solely because the ballot envelopes lacked handwritten dates. By the time the petition for a writ of certiorari was fully briefed before the Supreme Court in October 2022, the 2021 election had been certified and the winning judicial candidate installed months earlier.

declaration on the return envelope does not contain a handwritten date violates the materiality provision of the Civil Rights Act." *Id.* at 29. The extensive, undisputed record before the court showed that the Date Instruction is not used to establish whether an elector is eligible to vote, identify fraudulent ballots, or even ensure that a ballot is timely cast. *See, e.g.*, *id.* at 19 ("the date the declaration is signed is not relevant to the voter's qualifications as of election day"); *see also id.* at 17–24 (providing thorough recitation of the evidence before the court showing that the Date Instruction serves no legitimate purpose).

29. Despite the ample evidence developed in *Migliori* and *Berks County* that the Date Instruction serves no compelling interest or meaningful purpose, Republican Party committees and their supporters again asked the Pennsylvania Supreme Court to enforce the Date Instruction in Pennsylvania's Election Code and order all county boards not to count undated or incorrectly dated mail ballots and to invalidate Pennsylvania Department of State guidance directing election officials to count such ballots if they were timely received. *Ball v. Chapman*, No. 102 MM 2022, Pet'rs' Appl. (Pa. Oct. 16, 2022). In doing so, they argued that the Date Instruction required rejecting ballots contained in envelopes with missing or inaccurate dates, and that such a result did not violate the Materiality Provision of the Civil Rights Act. *Id.*[4]

30. After an expedited briefing schedule, the Pennsylvania Supreme Court ordered all Pennsylvania county boards to segregate and refrain from counting mail ballots received for the November 8, 2022 General Election containing undated or incorrectly dated outer envelopes. *Ball v. Chapman*, No. 102 MM 2022, 2022 WL 16569702, at *1 (Pa. Nov. 1, 2022) (per curiam). The court concluded that the Date Instruction required this result as a matter of state law but was evenly

---

[4] Plaintiff DCCC joined the Pennsylvania Supreme Court proceedings as an Intervenor-Respondent, while the remaining plaintiffs were not parties to those proceedings.

split—and thus did not reach a decision—on whether rejecting undated or incorrectly dated mail ballots would violate the Materiality Provision of the Civil Rights Act. Three justices concluded that the Date Instruction violates the Materiality Provision, and three concluded that it does not. *Id.* at 1.[5]

31. On November 5, 2022, the Pennsylvania Supreme Court issued a Supplemental Order clarifying what it meant by "incorrectly dated" ballots, stating that "mail-in ballot outer envelopes with dates that fall outside the date range of September 19, 2022, through November 8, 2022" and "absentee ballot outer envelopes with dates that fall outside the date range of August 30, 2022, through November 8, 2022" would be considered "incorrectly dated."

## CLAIMS FOR RELIEF

## COUNT I

**52 U.S.C. § 10101; 42 U.S.C. § 1983**
**VIOLATION OF SECTION 101 OF THE CIVIL RIGHTS ACT OF 1964**

32. Plaintiffs reallege and reincorporate by reference all prior paragraphs of this Complaint and the paragraphs in the count below as though fully set forth herein.

33. Section 101(a) of the Civil Rights Act of 1964, as amended, provides:

> No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2).

34. The right to "vote" protected by the statute is expansively defined to include:

> all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted and included in the appropriate totals of votes

---

[5] Chief Justice Max Baer passed away on September 30, 2022, leaving the Court with six justices.

cast with respect to candidates for public office and propositions for which votes are received in an election.

*Id.* §§ 10101(a)(3)(A), 10101(e).

35. Defendants are "persons" acting "under color of law": Pennsylvania's county boards of elections are units of local government to which 52 U.S.C. § 10101 applies. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–91 (1978) (recognizing § 1983 claim against units of local government); *Rogin v. Bensalem Twp.*, 616 F.2d 680, 686 (3d Cir. 1980) (same); *United States v. Holmes Cnty., Miss.*, 385 F.2d 145, 148 (5th Cir. 1967) (holding that "person" bears same meaning in both 52 U.S.C. § 10101 (formerly 42 U.S.C. § 1971) and 42 U.S.C.A. § 1983).

36. Defendants are now required under Pennsylvania law to deny the "right of an[] individual to vote" due to non-compliance with the Date Instruction by refusing to count otherwise-legitimate ballots cast by qualified electors. 52 U.S.C. § 10101(a)(2)(B). Defendants are withholding "action necessary to make a vote effective including . . . action required by State law prerequisite to . . . having such ballot counted and included in the appropriate totals of votes cast." *Id.* § 10101(e).

37. This denial of the right to vote is based upon an omission on a "record or paper" relating to an "act requisite to voting." *Id.* § 10101(a)(2)(B). The omission in question is the failure of an elector to write the correct date on the outer envelope for their ballot. The "record or paper" is the outer envelope in which an elector's mail ballot is enclosed and the affirmation statement printed thereon. The "act requisite to voting" is the making of the required declaration.

38. Finally, the Date Instruction is immaterial to determining whether an elector is qualified to vote in Pennsylvania. Because Pennsylvania law determines voter eligibility based on

the date of the election—rather than the date of marking the ballot—the Date Instruction provides no information about whether a voter is qualified.

39. In fact, the Date Instruction serves no legitimate purpose. For example, the date on the envelope is not used to verify whether the ballot was timely marked: the deadline for marking a ballot and the deadline for the elections board receiving the ballot are identical, so any ballot received after the ballot-marking deadline is not timely and any ballot received prior is definitionally timely.

40. Defendants' enforcement of the Date Instruction will deprive Pennsylvanians—including Plaintiffs—of the rights secured to them by 52 U.S.C. § 10101(a)(2)(B).

## COUNT II

### U.S. CONST. AMENDS. I, XIV; 42 U.S.C. § 1983
### VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS

41. Plaintiffs reallege and reincorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

42. Under the First and Fourteenth Amendments to the U.S. Constitution, a state cannot utilize election practices that unduly burden the right to vote.

43. When addressing a challenge to a state election practice, a court balances the character and magnitude of the burden that the challenged practice imposes on the First and Fourteenth Amendment rights the plaintiff seeks to vindicate against the justifications offered by the state in support of the challenged law. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

44. In conceptualizing the burden that a state electoral regulation places on constitutional rights, courts are not limited to considering only the effort needed to comply with the regulation; they also may consider the law's broader ramifications, including the consequences

of noncompliance. Federal courts have accordingly recognized that disenfranchising voters for defects in their absentee ballots imposes significant burdens on voting rights even if the effort needed for a voter to complete the ballot correctly appears slight when considered in isolation. *See, e.g.*, *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1319 (11th Cir. 2019) (stating burdens of absentee ballot signature matching requirement included increased risk of disenfranchisement from perceived signature mismatch); *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 631 (6th Cir. 2016) ("Requiring boards of elections to reject the ballots of absentee and provisional voters who fail to accurately complete birthdate and address fields directly and measurably disenfranchises some voters."); *see also Donald J. Trump for President v. Boockvar*, 502 F. Supp. 3d 899, 919 (M.D. Pa. 2020) ("Defendant Counties, by implementing a notice-and-cure procedure, have in fact *lifted* a burden on the right to vote, even if only for those who live in those counties.")

45. Similarly, when evaluating an early filing deadline for minor-party candidates, the Third Circuit did not only limit its analysis to the burden of complying with the deadline, but also considered the burden of the consequences of a missed deadline. *See Council of Alt. Pol. Parties v. Hooks*, 121 F.3d 876, 881 (3d Cir. 1997). Specifically, the court considered the negative impact that individual candidates' missing the deadline would have on a minor party's chances of achieving major party status, which required the party's candidates to collectively garner 10% of the total vote cast in all legislative races in state. *Id.*

46. Even if the Court were to consider only the effort needed for a voter to find and correctly fill in the "Date" field on the ballot envelope, the Date Instruction would still constitute an undue burden on voting rights. "However slight th[e] burden may appear . . . it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford*

*v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (controlling op.) (quoting *Norman v. Reed*, 502 U.S. 279, 288–89 (1992)).

47. Pennsylvania's vague requirement that voters do not "incorrectly" date their ballot envelopes is unduly burdensome because it provides no guidance to a voter on how to determine whether the date they write on their ballot is correct and subjects voters to arbitrary disenfranchisement. Voters and counties are thus entirely in the dark as to whether a ballot should be counted if, for example, a voter writes the date they mailed the ballot, rather than the date signed or completed the ballot, or uses a date format that the county board does not recognize. While the Supreme Court of Pennsylvania's November 5, 2022 supplemental order provided the date parameters specific to the 2022 general election, it has provided no such guidance for future elections.

48. Rejecting ballots that are "incorrectly" dated, moreover, serves no legitimate purpose. It does not, for example, help counties determine whether a ballot was timely submitted because a ballot's timeliness depends on the date and time the board of elections *receives* it, not the date and time the ballot was completed, signed, or submitted. Rejecting ballots on the ground that they are "incorrectly" dated is nothing more than a trivial procedural formality that functions only to disenfranchise eligible voters.

49. The Date Instruction imposes an unnecessary hurdle that eligible Pennsylvanians must clear to exercise their most fundamental right, resulting in otherwise valid votes being arbitrarily rejected, while advancing no compelling (or even legitimate) governmental interest. Consequently, the burden imposed on voters—including Plaintiffs—violates the First and Fourteenth Amendments to the U.S. Constitution.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment:

a.  Declaring that the Date Instruction, as it appears in 25 P.S. § 3146.6(a) and 25 P.S. § 3150.16(a), and any other provision that requires counties to reject ballots contained in envelopes that do not contain a correct date violates Section 101 of the Civil Rights Act of 1964 and the First and Fourteenth Amendments to the U.S. Constitution;

b.  Permanently enjoining Defendants, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from rejecting or refusing to count absentee and mail-in ballots for failure to comply with the Date Instruction;

c.  Awarding Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action under 42 U.S.C. § 1988 and other applicable laws; and

d.  Granting such other and further relief as the Court deems just and proper.

Dated: January 31, 2023

Adam C. Bonin
**THE LAW OFFICE OF ADAM C. BONIN**
121 South Broad Street, Suite 400
Philadelphia, PA 19107
Telephone: (267) 242-5014
Facsimile: (215) 827-5300
adam@boninlaw.com

Respectfully submitted,

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta*
Justin Baxenberg*
Daniel C. Osher*
Jacob D. Shelly*
Dan Cohen*
Daniela Lorenzo*
**ELIAS LAW GROUP LLP**
10 G St. NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
unkwonta@elias.law
jbaxenberg@elias.law
dosher@elias.law
jshelly@elias.law
dcohen@elias.law
dlorenzo@elias.law

* *Admitted pro hac vice*

*Counsel for Plaintiffs*