**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BETTE EAKIN, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) Civil Action No.: 1:22-cv-00340 |
| | ) |
| v. | ) |
| | ) Judge Susan P. Baxter |
| ADAMS COUNTY BOARD OF | ) |
| ELECTIONS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF INTERVENOR-DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Intervenor-Defendants the Republican National Committee, National Republican Congressional Committee, and the Republican Party of Pennsylvania support and seek to uphold free and fair elections on behalf of all Pennsylvanians.  Intervenor-Defendants therefore respectfully move the Court to uphold the General Assembly's duly enacted laws governing Pennsylvania's elections and to dismiss Plaintiffs' Amended Complaint (Dkt. 228).

The General Assembly has mandated that a voter who uses an absentee or mail-in ballot "shall . . . fill out, date and sign the declaration" printed on the outer envelope of the ballot.  25 P.S. §§ 3146.6(a), 3150.16(a).  Less than four months ago, the Pennsylvania Supreme Court held that the General Assembly's date requirement is mandatory and, thus, that election officials may not count any absentee or mail-in ballot that fails to comply with it.  *See Ball v. Chapman*, 284 A.3d 1189 (Pa. Nov. 1, 2022) (unpublished).

Plaintiffs' Amended Complaint is the latest in a series of lawsuits asking courts to erode the General Assembly's date requirement.  But Plaintiffs' two counts wholly "fail[] to state a claim upon which relief can be granted" because the date requirement does not violate the federal

materiality provision, 52 U.S.C. § 10101(a)(2)(B), or the U.S. Constitution.   Indeed, as to Plaintiffs' first count, the Pennsylvania Supreme Court declined to invalidate the date requirement under the federal materiality provision, *see Ball*, 284 A.3d at 1192, and three Justices of the U.S. Supreme Court have already concluded that the notion that the date requirement violates the federal materiality provision is "very likely wrong," *Ritter v. Migliori*, 142 S. Ct. 1824, 1824 (2022) (Mem.) (Alito, J., dissenting from the denial of the application for stay).   No other U.S. Supreme Court Justices addressed the merits in the stay posture of that case.

These decisions are correct: the plain statutory text and governing case law confirm that the date requirement does not even *implicate* the federal materiality provision, let alone violate it. The federal materiality provision prohibits "deny[ing] the right of an[] individual to vote" as part of an election official's determination whether that "individual is qualified under State law to vote," 52 U.S.C. § 10101(a)(2)(B)—but application of the date requirement to absentee and mail-in ballots does not deny anyone the right to vote or determine anyone's qualifications to vote.   And neither can the Plaintiffs show a constitutional violation in this longstanding, commonsense, and unburdensome election regulation.   The Court should dismiss Plaintiffs' Amended Complaint and uphold the General Assembly's lawful and constitutional date requirement.

## BACKGROUND

Plaintiffs acknowledge that this suit is merely the latest salvo in a long line of attempts to persuade the courts to undo the General Assembly's date requirement for absentee and mail-in ballots.   *See* Am. Compl. ¶¶ 21–31 (Dkt. No. 228).   In 2020, a majority of the Pennsylvania Supreme Court held that the date requirement is mandatory and, thus, that election officials may not count any noncompliant ballot in any election after the 2020 general election.   *See In re Canvass of Absentee and Mail-In Ballots of November 3, 2020 General Election*, 241 A.3d 1058,

1079–80 (2020) (Opinion of Justice Wecht); *id.* at 1090–91 (Opinion of Justice Dougherty, Chief Justice Saylor, and Justice Mundy).

In the first two cases following that ruling, the Pennsylvania Commonwealth Court upheld mandatory application of the date requirement.  The Pennsylvania Supreme Court allowed both decisions to stand.  *See In re Election in Region 4 for Downington Sch. Bd. Precinct Uwchlan 1*, 272 A.3d 993 (Pa. Commw. 2022) (unpublished), *appeal denied*, 273 A.3d 508 (Pa. 2022); *Ritter v. Lehigh Cnty. Bd. of Elecs.*, 272 A.3d 989 (Pa. Commw. 2022) (unpublished), *appeal denied*, 271 A.3d 1285 (Pa. 2022).

Four days after the Pennsylvania Supreme Court resolved *Ritter*, individual voters filed a new lawsuit in federal court claiming that the date requirement violates the federal materiality provision, 52 U.S.C. § 10101(a)(2)(B).  The Third Circuit agreed, but the U.S. Supreme Court vacated that decision.  *See Migliori v. Cohen*, 36 F.4th 153 (3d Cir. 2022), *cert. granted and judgment vacated*, *Ritter v. Migliori*, No. 22-30, 2022 WL 6571686 (U.S. Oct. 11, 2022) (Mem.).  And when addressing a request for a stay at an earlier stage in that case, three Justices opined that the Third Circuit's now-vacated holding was "very likely wrong" on the merits because it rested upon a misconstruction of the materiality provision.  *Ritter*, 142 S. Ct. at 1824 (Mem.) (Alito, J., dissenting from the denial of the application for stay).  No other Justices addressed the merits in that stay posture.

Meanwhile, the Commonwealth Court twice has invoked the now-vacated decision in *Migliori* to depart from the General Assembly's date requirement in unpublished, non-precedential cases arising out of the 2022 primary election.  *See McCormick for U.S. Senate v. Chapman*, 2022 WL 2900112 (Pa. Commw. June 2, 2022) (unpublished); *Chapman v. Berks Cnty. Bd. of Elections*, 2022 WL 4100998 (Pa. Commw. Aug. 19, 2022) (unpublished).

Finally, late last year, the Pennsylvania Supreme Court held that the date requirement is mandatory and, thus, that any absentee or mail-in ballot that fails to comply with it is invalid. *See Ball*, 284 A.3d at 1192. The Pennsylvania Supreme Court therefore ordered county boards of elections "to refrain from counting any absentee and mail-in ballots received for the November 8, 2022 general election that are contained in undated or incorrectly dated outer envelopes." *Id.* Its order noted that "[t]he Court is evenly divided on the issue of whether failing to count such ballots violates 52 U.S.C. § 10101(a)(2)(B)." *Id.* The Pennsylvania Supreme Court issued the opinions in *Ball* on February 8, 2023. *See Ball v. Chapman*, No. 102 MM 2022, 2022 WL 18716006 (Pa. issued Feb. 8, 2023).

Thus, as Plaintiffs acknowledge—after seven cases in five courts over two years—the current state of the law is that the General Assembly's date requirement is mandatory and that any noncompliant absentee or mail-in ballot may not be counted in the 2022 general election and beyond. *See* Am. Compl. ¶¶ 21–31; *McCormick*, 2022 WL 2900112; *In re Election in Region 4*, 272 A.3d 993; *Ritter*, 272 A.3d 989. Even so, Plaintiffs bring yet another challenge to the date requirement. *See* Am. Compl. ¶¶ 32–49.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Accordingly, federal courts "disregard[] allegations in the complaint that are legal conclusions," *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 330 (3d Cir. 2022), and must grant motions to dismiss under Rule 12(b)(6) where the complaint fails

to "raise a right to relief above the speculative level," including because it asserts a legally deficient theory of liability, *Twombly*, 550 U.S. at 555.

## ARGUMENT

"States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cty. Area New Party*, 520 U.S. 351, 358 (1997). "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983) (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)); *see also Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2347–48 (2021) (because voter "[f]raud is a real risk," a state may act prophylactically to prevent fraud "without waiting for it to occur and be detected within its own borders").

The General Assembly has prescribed such a regulation through its mandatory date requirement for absentee and mail-in ballots. *See* 25 P.S. §§ 3146.6(a), 3150.16(a); *Ball*, 284 A.3d at 1192. As three Justices of the Pennsylvania Supreme Court have observed, "[t]he date requirement … carrie[s] an unquestionable purpose." *Ball*, 2022 WL 18716006, at *3 (internal quotation marks omitted). The date "provides proof of when the elector actually executed the ballot in full, ensuring their desire to cast it in lieu of appearing in person at the polling place." *In re Canvass of Absentee and Mail-In Ballots of November 3, 2020 General Election*, 241 A.3d at 1090 (Opinion of Justice Dougherty, Chief Justice Saylor, and Justice Mundy) (citing then-Judge Brobson's "observ[ations] below"). It "establishes a point in time against which to measure the elector's eligibility to cast the ballot." *Id.* And it "ensures the elector completed the ballot within the proper time frame and prevents tabulation of potentially fraudulent back-dated votes." *Id.* at

1091; *see also id.* at 1087 (Opinion of Justice Wecht) (noting that "colorable arguments also suggest [the] importance" of the date requirement).

These are no mere theoretical interests.  Last year, officials in Lancaster County discovered that an individual had cast a fraudulent ballot in her deceased mother's name.  Under the Pennsylvania Supreme Court's current precedent, the Lancaster County Board of Elections lacks authority to conduct signature comparisons.  *See In re November 3, 2020 General Election*, 240 A.3d 591 (Pa. 2020).  Thus, the *only* evidence on the face of the ballot envelope indicating that someone other than the decedent had completed the ballot was the handwritten date of April 26, 2022, which was twelve days after the decedent had passed away.  *See* Affidavit of Probable Cause ¶ 2, Police Criminal Complaint, *Com. v. Mihaliak*, No. CR-126-22 (June 3, 2002) (Ex. A).

In all events, Plaintiffs' Amended Complaint is riddled with errors that demand dismissal. *First*, Plaintiffs' contention that the date requirement violates the federal materiality provision contravenes the provision's plain statutory text and governing law, resting instead on a misreading of federal law that would invalidate a broad swath of duly enacted state election rules.  *Second*, Plaintiffs argument that the date requirement violates the First and Fourteenth Amendments of the U.S. Constitution misreads governing case law and would subject virtually every meaningful election regulation to strict scrutiny.  The Court should dismiss the Amended Complaint and uphold the General Assembly's date requirement and its authority to enact commonsense laws governing Pennsylvania's elections.

## I.   MANDATORY APPLICATION OF THE DATE REQUIREMENT DOES NOT VIOLATE THE FEDERAL MATERIALITY PROVISION

When informing the Court that the U.S. Supreme Court "declined to disrupt the Third Circuit's ruling [in *Migliori*] when one of the parties . . . sought an emergency injunction," Plaintiffs leave out that three Justices of the U.S. Supreme Court dissented from denial of the stay

in *Migliori*.  *See* Am. Compl. ¶ 26.  Those Justices concluded that the Third Circuit panel's view that mandatory application of the date requirement violates the federal materiality provision is "very likely wrong."  *Ritter*, 142 S. Ct. at 1824 (Mem.) (Alito, J., dissenting from the denial of the application for stay).  The plain statutory text and governing law confirm that the General Assembly's date requirement does not even implicate, let alone violate, 52 U.S.C. § 10101(a)(2)(B).  The Court should dismiss Count I.

### A.    Plaintiffs Lack A Private Right To Enforce The Materiality Provision

As an initial matter, the Court should dismiss Count I because neither 52 U.S.C. § 10101(a)(2)(B) nor 42 U.S.C. § 1983 grants Plaintiffs a right to sue.  Section 10101 provides only that "the Attorney General may institute … a civil action" under that statute.  52 U.S.C. § 10101(c).  "[T]he negative implication of Congress's provision for enforcement by the Attorney General is that the statute does not permit private rights of action."  *See Ne. Ohio Coal. For the Homeless v. Husted*, 837 F.3d 612, 630 (6th Cir. 2016) (reiterating holding that there is no private right to sue and recognizing circuit split); *see also Vote.Org v. Callanen*, 39 F.4th 297, 305 n.5 (5th Cir. 2022) (reserving question for upcoming merits panel); *but see Schwier v. Cox*, 340 F.3d 1284, 1294-96 (11th Cir. 2003).  Neither should the Court let Plaintiffs evade that limit through § 1983, which provides a private right of action to enforce only "unambiguously conferred right[s]."  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 282 (2002).  And again, the fact that the materiality provision authorizes only suits by the Attorney General suggests Congress did not intend to permit private suits under § 1983.  *See City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005) (noting that "the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others" (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001))

(alteration omitted)).[1]

### B.   Application Of The Date Requirement Does Not Violate Federal Law

The Court should also dismiss Count I because the General Assembly's date requirement does not even implicate, let alone violate, the materiality provision.   The materiality provision states:

> No person acting under color of law shall … deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B).

Application of the General Assembly's date requirement to preclude counting of undated or incorrectly dated absentee or mail-in ballots does not violate this provision for at least three reasons.   *First*, the materiality provision prohibits only "deny[ing] the right of any individual to vote," not imposing mandatory rules on the act of completing and casting a ballot.   *Id.*   The materiality provision therefore has no application to the date requirement because "[w]hen a mail-in ballot is not counted because it was not filled out correctly, the voter is not denied 'the right to vote.'"   *Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay) (quoting 52 U.S.C. § 10101(a)(2)(B)).   Rather, "that individual's vote is not counted because he or she did not follow the rules for casting a ballot."   *Id.*

An individual "may be unable to cast a vote for any number of reasons," such as showing up to the polls after Election Day, failing to sign or to use a secrecy envelope for an absentee or mail-in ballot, attempting to vote for too many candidates for a single office, returning the ballot

---

[1] The U.S. Supreme Court is currently considering a case in which the existence of a cause of action to enforce a federal statute under § 1983 is at issue.   *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, No. 21-806 (U.S. argued Nov. 8, 2022).

to the wrong location, or arriving at the wrong polling place.  *See id.*  Application of these rules does not deny the right to vote; nor does application of the date requirement.  *See id.* at 1825 ("Even the most permissive voting rules must contain some requirements, and the failure to follow those rules constitutes the forfeiture of the right to vote, not the denial of that right."); *id.* ("[I]t would be absurd to judge the validity of voting rules based on whether they are material to eligibility."); *see also Rosario v. Rockefeller*, 410 U.S. 752, 757 (1973) (application of neutral state-law voting requirement does not "disenfranchise" voters); *Timmons*, 520 U.S. at 358 ("States may, and inevitably must, enact reasonable regulations" for effectuating votes); *Brnovich*, 141 S. Ct. at 2338 ("Casting a vote, whether by following the directions for using a voting machine or completing a paper ballot, requires compliance with certain rules."); *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 35 (Mem.) (Oct. 26, 2020) (Kavanaugh, J., concurring) ("In other words, reasonable election deadlines do not 'disenfranchise' anyone under any legitimate understanding of that term.").  As the Fifth Circuit has reasoned in a precedential, non-vacated decision, "[i]t cannot be that any requirement that may prohibit an individual from voting if the individual fails to comply denies the right of that individual to vote under" the federal materiality provision.  *Vote.Org*, 39 F.4th at 305 n.6.

*Second*, the materiality provision requires that the error or omission affect a "determin[ation] whether such individual is qualified under State law to vote."  52 U.S.C. § 10101(a)(2)(B).  It therefore regulates requirements and practices related to qualifications and registration to vote, not rules like the date requirement "that must be met in order to cast a ballot that will be counted."  *Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay); *see also Vote.Org*, 39 F.4th at 305 n.6.  To fall within the scope of the materiality provision, "it is not enough that the error or omission be immaterial *to* whether the

individual is qualified to vote; the paper or record must also be used 'in determining' the voter's qualifications."  *Ball*, 2022 WL 18716006, at *24 (Opinion of Justice Brobson) (emphasis original).

Congress enacted the materiality statute and the broader § 10101 of which it is part "to enforce th[e] [Fifteenth] Amendment[,]" *United States v. Mississippi*, 380 U.S. 128, 138 (1965), which guarantees that "[t]he right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude," U.S. Const. amend. XV, § 1.  Congress's purpose in enacting the materiality statute was to "forbid[] the practice of *disqualifying voters* for their failure to provide information irrelevant to their eligibility to vote."  *Schwier*, 340 F.3d at 1294 (emphasis added).  In particular, Congress addressed "the practice of requiring unnecessary information for voter registration"—such as listing the registrant's "exact number of months and days in his age"—"with the intent that such requirements would increase the number of errors or omissions on the application forms, thus providing an excuse to disqualify potential voters."  *Id.*  In other words, "[s]uch trivial information served no purpose other than as a means of inducing voter-generated errors that could be used to *justify rejecting applicants*."  *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008) (emphasis added); *see also* H. Rep. No. 88-914, pt. 2, at 5 (1963) ("[R]egistrars [would] overlook minor misspelling errors or mistakes in age or length of residence of white applicants, while rejecting" an application from an African-American applicant "for the same or more trivial reasons.").

The federal materiality statute thus functions as a safeguard against discriminatory application of state voter qualification and registration rules.  *See Mississippi*, 380 U.S. at 138; *Schwier*, 340 F.3d at 1294; *Browning*, 522 F.3d at 1173; *see also* H. Rep. No. 88-914, pt. 1, at 19

(recognizing that Title I of the Civil Rights Act, now codified in § 10101, was part of an effort "by which the Congress took steps to guarantee to all citizens the right to vote without discrimination as to race or color"). The two other subsections of § 10101(a)(2) further underscore this point: those subsections require election officials to apply uniform "standard[s], practice[s], [and] procedure[s] . . . in determining whether any individual is qualified to vote under state law," 52 U.S.C. § 10101(a)(2)(A), and restrict the use of literacy tests "as a qualification for voting in any election," *id.* § 10101(a)(2)(C). Thus, "like the other two [subsections]," the materiality provision "relates to determinations of *who* may vote—*i.e.*, voter qualifications." *Ball*, 2022 WL 18716006, at *24 (Opinion of Justice Brobson) (emphasis original).

Here, the date on the absentee or mail-in ballot declaration is not used to determine an individual's *qualifications* to vote, but rather the *validity* of a ballot. *Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay); *see also Vote.Org*, 39 F.4th at 305 n.6. Indeed, mandatory application of the date requirement results in invalidation of a noncompliant ballot, not a "determin[ation]" that the individual is or is not "qualified under State law to vote." 52 U.S.C. § 10101(a)(2)(B). In other words, mandatory application of the date requirement results in a ballot not being counted, not in an individual being removed from, or prevented from joining, the list of registered voters. *Compare, e.g.*, *Schwier*, 340 F.3d at 1294; *Browning*, 522 F.3d at 1173; H. Rep. No. 88-914, pt. 2, at 5; *see also Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay); *Vote.Org*, 39 F.4th at 305 n.6. Because mandatory application of the date requirement does not result in a qualification determination, it is outside the plain terms and narrow scope of, and does not violate, the federal materiality provision. *See Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial

of the application for stay); *see also Vote.Org*, 39 F.4th at 305 n.6; *Schwier*, 340 F.3d at 1294; *Browning*, 522 F.3d at 1173; *Ball*, 2022 WL 18716006, at \*25-26 (Opinion of Justice Brobson).

*Third*, the materiality provision demands that the "record or paper" be related to an "application, registration, or other act requisite to voting."  52 U.S.C. § 10101(a)(2)(B).  To be sure, an absentee or mail-in ballot and accompanying declaration is a "record or paper."  *Id.*  But casting a ballot—which, under Pennsylvania law, requires completing the declaration, *see* 25 P.S. §§ 3146.6(a), 3150.16(a)—constitutes the *act* of voting, not an application, registration, or other act *requisite* to voting.  *Ritter*, 142 S. Ct. at 1826 n.2 (Mem.) (Alito, J., dissenting from the denial of the application for stay).  It therefore would be an "awkward" statutory construction at best to extend the materiality provision to absentee and mail-in ballots and the date requirement.  *Id.*  Voting is voting; it is not an act requisite to voting.

### C. There Is No Tenable Basis To Conclude That Mandatory Application Of The Date Requirement Violates The Federal Materiality Provision

In their Complaint, Plaintiffs offer two main arguments in support of their claim that the date requirement violates the federal materiality provision.  Both are unpersuasive.

*First*, the entire thrust of Plaintiffs' Complaint is that the date requirement "is immaterial to determining whether an elector is qualified to vote in Pennsylvania," Am. Compl. ¶ 38, which in Pennsylvania requires being at least 18 years of age on the date of the election; having been a citizen of Pennsylvania for at least one month; having lived in the relevant election district for at least 30 days; and not being imprisoned for a felony, *see* 25 P.S. § 1301; *see also* Am. Compl. ¶ 17.  Plaintiffs are entirely correct that compliance with the date requirement is not a qualification to vote.  But that point *disproves* Plaintiffs' case.  As explained above, the date requirement is not used to determine whether an individual is "qualified under State law to vote," 52 U.S.C. § 10101(a)(2)(B), so it does not implicate, let alone violate, the federal materiality provision, *see*

12

*Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay); *see also Vote.Org*, 39 F.4th at 305 n.6; *Schwier*, 340 F.3d at 1294; *Browning*, 522 F.3d at 1173; *supra* Part II.B.

In fact, Plaintiffs' proposed reading of the federal materiality provision is breathtakingly broad.  *See also Ball*, 2022 WL 18716006, at \*15-16 & n.146 (Opinion of Justice Wecht). Unsurprisingly, that reading is incorrect.  Under Plaintiffs' reading, states could enact no mandatory rules against "error[s] or omission[s]" on any voting "record[s] or paper[s]" except those that merely implement the requirements for "determining whether [an] individual is qualified under State law to vote." Am. Compl. ¶¶ 33, 37–38.  In other words, under Plaintiffs' construction of the federal materiality provision, states could not adopt *any* requirements for completing ballots or ballot-return envelopes that do not confirm the individual's qualifications to vote.

Take, for example, the General Assembly's requirement that a voter sign an absentee or mail-in ballot return envelope, which appears in the very same statutory sentence as the date requirement.  *See* 25 P.S. §§ 3146.6(a), 3150.16(a) (voter "shall . . . fill out, date and sign the declaration" printed on the outer envelope of the ballot); *see also Ritter*, 142 S. Ct. at 1826 n.2 (Mem.) (Alito, J., dissenting from the denial of the application for stay) (discussing signature requirement).  Before the Pennsylvania Supreme Court, Acting Secretary Chapman agreed that the signature requirement is valid and mandatory and does not violate the federal materiality provision. *See* Acting Sec'y Ans. 15–23, *Ball v. Chapman*, No. 102 MM 2022 (Oct. 19, 2022) ("Acting Sec'y Ans.") (Ex. B).  But under Plaintiffs' proposed reading, the signature requirement would violate the federal materiality provision: a failure to provide a signature is an "omission" or "an error" involving a "record or paper," and the signature requirement is "immaterial to determining whether

an elector is qualified to vote in Pennsylvania."  Am. Compl. ¶¶ 33, 37–38 (internal quotation marks omitted).

Take, as another example, the secrecy-envelope requirement contained in the same statutory section as the date requirement.  *See* 25 P.S. §§ 3146.6(a), 3150.16(a) (voter "shall . . . enclose and securely seal" the ballot in a secrecy envelope).  The Pennsylvania Supreme Court has upheld that requirement as mandatory, *see Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 379–80 (Pa. 2020), and the Acting Secretary conceded last month that it does not violate the federal materiality provision, *see* Acting Sec'y Ans. 39 n.15.  But it would on Plaintiffs' proposed reading: a failure to use a secrecy envelope is an "omission" or "an error" involving a "record or paper," and the signature requirement is "immaterial to determining whether an elector is qualified to vote in Pennsylvania."  Am. Compl. ¶¶ 33, 37–38 (internal quotation marks omitted).

If another example were somehow needed, consider also the General Assembly's commonplace prohibition on "mark[ing] [a] ballot for more persons for any office than there are candidates to be voted for for such office."  25 P.S. § 3063(a).  Under the Election Code, any such overvotes are invalid, and the ballot "shall not be counted for such office."  *Id.*  Under Plaintiffs' proposed construction of federal law, the overvote prohibition would violate the materiality provision: mismarking a ballot is an "omission" or "an error" involving a "record or paper," and the overvote prohibition is "immaterial to determining whether an elector is qualified to vote in Pennsylvania."  Am. Compl. ¶¶ 33, 37–38.

These examples are illustrative of the disruption that would be caused by Plaintiffs' (wrong) interpretation of the materiality provision.  There are surely many more.  To name just a few, Plaintiffs would also cast in doubt the validity of commonplace voter assistance declarations, and requirements that in-person voters sign pollbooks.  *See* 25 P.S. §§ 3050, 3058.  As Justice

Brobson noted, under Plaintiffs' reading "no election law that imposes informational requirements on a record or paper unrelated to determining voter qualification can survive a [§ 10101(a)(2)(B)] challenge." *Ball*, 2022 WL 18716006, at *26 (Opinion of Justice Brobson).

Thus, Plaintiffs' reading of federal law "would subject virtually every electoral regulation" related to voting records and papers to the superintendence of the federal materiality provision, "hamper the ability of States to run efficient and equitable elections, and compel federal courts to rewrite state electoral codes." *Clingman v. Beaver*, 544 U.S. 581, 593 (2005).  Indeed, if Plaintiffs' construction were correct, numerous state election rules—such as the General Assembly's signature and secrecy-envelope requirements and overvote prohibition—have been invalid for nearly sixty years, since Congress enacted the federal materiality provision in 1964.  This novel interpretation not only defies the statute's plain text, but also the rule that "if Congress intends to alter the usual constitutional balance between the States and Federal Government, it must make its intention to do so unmistakably clear in the language of the statute." *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)); *see Alabama. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021) (per curiam) (applying federalism canon).  But, of course, Plaintiffs' construction is not correct: states can and do enact a wide range of laws that regulate how voting is conducted and prohibit omissions and errors on voting records or papers without running afoul of the federal materiality provision.  That is because application of those laws—like mandatory application of the General Assembly's date requirement—does not "deny the right of any individual to vote" or result in a determination whether that individual "is qualified under State law to vote."  52 U.S.C. § 10101(a)(2)(B); *see also supra* Part II.B.

*Second*, Plaintiffs cite the Third Circuit panel's vacated opinion in *Migliori* as "highly persuasive" authority.  Am. Compl. ¶ 27.  But "of necessity [the Supreme Court's] decision vacating the judgment of the [Third Circuit] deprives that court's opinion of precedential effect." *County of Los Angeles v. Davis*, 440 U.S. 625, 634 n.6 (1979) (addressing consequences of *Munsingwear* vacatur); *see also Polychrome Int'l Corp. v. Krigger*, 5 F.3d 1522, 1534 n.30 (3d Cir. 1993) (court is not "bound" by holding in a vacated opinion).  *Munsingwear* vacatur "is commonly utilized … to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences."  *United States v. Munsingwear, Inc.*, 340 U.S. 36, 41 (1950).  The Third Circuit's decision becoming moot prevented its review by the Supreme Court, and the subsequent vacatur "eliminate[d] [the] judgment, review of which was prevented through happenstance."  *Id.* at 40.  The Court should not rely on the Third Circuit's untested—and accordingly erased—analysis.  Moreover, for the reasons explained above, that opinion was wrongly decided.  *See supra* Part II.B.

Nor should the Court follow the two Commonwealth Court decisions from last year holding that the date requirement violates the federal materiality provision.  *See* Am. Compl. ¶¶ 28 (discussing *Chapman*); *see also McCormick*, 2022 WL 2900112.  Those decisions relied upon the now-vacated *Migliori* decision, have been superseded by the Pennsylvania Supreme Court's recent holding in *Ball*, and, in all events, were incorrect.  *See McCormick*, 2022 WL 2900112; *Chapman*, 2022 WL 4100998; *Ball*, 284 A.3d at 1192; *supra* Part II.B.

## II.   MANDATORY APPLICATION OF THE DATE REQUIREMENT DOES NOT VIOLATE THE UNITED STATES CONSTITUTION

The Court also should dismiss Count Two because Plaintiffs "fail[] to state a claim upon which relief can be granted" under the U.S. Constitution.  Fed. R. Civ. P. 12(b)(6).

The U.S. Constitution empowers the Pennsylvania General Assembly to regulate the time, place, and manner of federal elections in the Commonwealth.  U.S. Const. art. I, § 4, cl. 1.  While this power "may not be exercised in a way that violates other . . . provisions of the Constitution," *Williams v. Rhodes*, 393 U.S. 23, 29 (1968), it is a bedrock principle of our federalist system that not all state election laws raise constitutional concerns, *see Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (recognizing that state election laws "will invariably impose some burden upon individual voters").

To determine whether a state voting or election law unconstitutionally burdens the right to vote, courts weigh the character and magnitude of the burden, if any, imposed by the law on protected rights against the state's interests in and justifications for the law.  *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189–91 (2008).  Under this analytical approach—commonly known as the *Anderson/Burdick* test for the two Supreme Court cases from which it derives— "[r]egulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest," while those imposing "[l]esser burdens . . . trigger less exacting review, and [the] State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Timmons*, 520 U.S. at 358–59 (internal quotation marks omitted).

The date requirement is constitutional under the *Anderson/Burdick* framework because it imposes no more than the usual burdens of voting and is amply justified by the State's interests in protecting the integrity of its elections.

## A.    The Date Requirement Involves Nothing More Than The Usual Burdens Of Voting And Is Constitutional

The commonsense date requirement's "burdens" are too light and its justifications too reasonable to violate the Constitution.  The U.S. Supreme Court's decision in *Crawford* demonstrates as much.  The plaintiffs in that case claimed that an Indiana law requiring in-person

17

voters to present a photo ID imposed an unconstitutional burden under the *Anderson/Burdick* framework. *See* 553 U.S. at 185 (Opinion of Stevens, J.). The Supreme Court noted that because the plaintiffs brought a facial challenge "that would invalidate the statute in all its applications, they bear a heavy burden of persuasion." *Id.* at 200. The plaintiffs, however, did not introduce "evidence of a single, individual Indiana resident who [would] be unable to vote" under the challenged law. *Id.* at 187 (internal quotation marks omitted). The Supreme Court ultimately held that the plaintiffs had failed to carry that burden and rejected their claim. *See id.* at 200–04.

The Supreme Court analyzed the character and magnitude of the burden imposed by the photo ID requirement. *See id.* at 198. The Supreme Court recognized that the law placed some burden on voters, particularly voters who lacked a photo ID. *See id.* The Supreme Court noted that voters who did not already have a photo ID must bear "the inconvenience of making a trip to the [Bureau of Motor Vehicles], gathering the required documents, and posing for a photograph." *Id.* The Supreme Court concluded, however, that such inconvenience "surely does not qualify as a substantial burden on the right to vote, or even represent a significant increase over the usual burdens of voting." *Id.*

The Supreme Court also addressed the State's asserted interests in adopting the photo ID requirement—"deterring and detecting voter fraud," "moderniz[ing] election procedures," and "safeguarding voter confidence." *Id.* at 191. The Supreme Court concluded that those interests were "legitimate" and that the photo ID requirement "is unquestionably relevant to the State's interest in protecting the integrity and reliability of the election process." *Id.* Accordingly, the Supreme Court held that the plaintiffs' unconstitutional burden claim failed. *See id.* at 200–04.

Plaintiffs in this case have failed plausibly to allege that the date requirement unconstitutionally burdens the right to vote. In fact, the date requirement is no different than the

"usual burdens of voting." *Id.* at 198.  The Pennsylvania Election Code provides that absentee and mail-in voters "shall . . . fill out, date and sign" the ballot declaration.  25 P.S. §§ 3146.6(a), 3150.16(a).  No one disputes that such voters must "sign" their ballot declarations.  It cannot be a significant burden to require voters to write a date *on that same declaration*.  And in all events, any burden flowing from the requirement to write a date on a paper is certainly less onerous than "the inconvenience of making the trip to the [Bureau of Motor Vehicles], gathering the required documents, and posing for a photograph" upheld as minimal and constitutional in *Crawford*.  553 U.S. at 198.

Furthermore, the date requirement advances "legitimate" and "unquestionably relevant" State interests related to "protecting the integrity and reliability of the election process." *Crawford*, 553 U.S. at 191.  The date requirement serves weighty interests and an "unquestionable purpose." *In re 2020 Canvass*, 241 A.3d at 1090 (Opinion of Justice Dougherty, Chief Justice Saylor, and Justice Mundy); *see also id.* at 1087 (Opinion of Justice Wecht) (noting that "colorable arguments . . . suggest [the date requirement's] importance"); Affidavit of Probable Cause ¶ 2, Police Criminal Complaint, *Commonwealth v. Mihaliak*, No. CR-126-22 (June 3, 2022).  Such cases as *Mihaliak* prove the point, but are not even necessary.  "[I]t should go without saying that a State may take action to prevent election fraud without waiting for it to occur and be detected within its own borders." *Brnovich*, 141 S. Ct. at 2348.  The date requirement clearly serves—at the very least—the purpose of preventing election fraud.

For the foregoing reasons, the date requirement's service of the state's legitimate interests easily justifies its reasonable and nondiscriminatory command.  The date requirement is constitutional.

**B.      There Is No Tenable Basis To Conclude That Mandatory Application Of The Date Requirement Violates The Constitution**

Plaintiffs provide two reasons for the Court to find that the commonsense, nondiscriminatory, and longstanding date requirement is unconstitutional.  Neither is convincing.

*First*, Plaintiffs argue that, in evaluating the burden of an election regulation, courts "may consider . . . the consequences of noncompliance."  Am. Compl. ¶ 44.  Accordingly, Plaintiffs would have the Court find the date requirement to impose a "significant burden[]" because the consequences of not complying with it is that the ballot will not be counted.  *Id.*  In other words, Plaintiffs would argue that *every* election regulation that must be complied with—that is, every election regulation that matters—imposes a "significant burden" on the right to vote and must therefore pass some form of strict scrutiny.  *See Appeal of Pierce*, 843 A.2d 1223, 1232 (Pa. 2004) (construing an election regulation "as merely directory would render its limitation meaningless and, ultimately, absurd"); *Pa. Democratic Party*, 238 A.3d at 391 (Wecht, J., concurring) ("[A] mandate without consequence is no mandate at all.").

That is not the law.  Plaintiffs' argument threatens to "subject virtually every electoral regulation to strict scrutiny" and "hamper the ability of States to run efficient and equitable elections."  *Clingman*, 544 U.S. at 593.  And, in fact, *Crawford* completely forecloses Plaintiffs' analysis.  The challenged statute in *Crawford* required that voters present photo identification to vote on election day; failure to do so prevented that voter from even casting a ballot.  553 U.S. at 185–86.  If Plaintiffs were correct, the Supreme Court would have held that the challenged statute imposed a significant burden.  It did not; instead, the Supreme Court said that "the inconvenience of making a trip to the BMV, gathering the required documents, and posing for a photograph surely does not qualify as a substantial burden on the right to vote, or even represent a significant increase over the usual burdens of voting."  *Id.* at 198.

Unsurprisingly, none of the cases cited in Plaintiffs' complaint supports their preferred burdens analysis.  In *Democratic Executive Committee of Florida v. Lee*, the Eleventh Circuit focused not on the *consequences* of the challenged rule, but on the matching-signatures requirement itself.  915 F.3d 1312, 1319 (11th Cir. 2019).  Because it was not a foolproof process, "legitimate vote-by-mail and provisional voters, through factors out of their control, are burdened with the risk that their ballots will incorrectly be rejected for signature mismatch." *Id.* at 1320.  In contrast, nothing about writing a date on a piece of paper—after the voter had *already* signed the same paper—is "out of [the voter's] control." *Id.*

Plaintiffs' citation to *Northeast Ohio Coalition for the Homeless v. Husted* is even farther off the mark.  837 F.3d 612 (6th Cir. 2016).  Plaintiffs quote that court as saying that "[r]equiring boards of elections to reject the ballots of absentee and provisional voters who fail to accurately complete birthdate and address fields directly and measurably disenfranchises some voters."  *Id.* at 631.  But there the court was not describing the *burden* of that election regulation; it was merely describing the regulation as mandatory.  Plaintiffs did not include what the court actually said about the burden on the next page: "Ohio's important interests in provisional-voter registration and identification eclipse the *small* burden of accurately completing the two fields—a burden that actually impacts just a few hundred voters each election, an impact wholly in their own control." *Id.* at 632 (emphasis added).

Plaintiffs also cite *Council of Alternative Political Parties v. Hooks*, where the Third Circuit considered the difficulty of polling the minimum ten percent of votes to obtain "party" status in determining the burden of a filing deadline.  121 F.3d 876, 880 (3d Cir. 1997).  But the challenged law at issue there was not a ballot regulation; it was a ballot *access* regulation on

aspiring political parties.  It therefore does not support Plaintiffs' view that affecting *anyone's* vote *at all* is enough to render a law's burden significant.

Finally, Plaintiffs' citation to *Donald J. Trump for President v. Boockvar* is similarly deficient.  Am. Compl. ¶ 44.  In that case, the district court held that a "notice-and-cure procedure . . . in fact lift[s] a burden on the right to vote."  *Trump for President*, 502 F. Supp. 3d at 919.  At most, that proves that election practices do not burden the right to vote are (axiomatically) valid under the *Anderson-Burdick* test.  It therefore confirms that the unburdensome date requirement is constitutional.

*Second*, Plaintiffs argue that complying with the date requirement "serves no legitimate purpose," and characterize the requirement as "unduly burdensome" because voters might not know what date to put on the envelope.  Am. Compl. ¶ 47.  But Plaintiffs' quest to have the Court declare that the state-law date requirement serves "no legitimate purpose" contravenes the conclusion of multiple Pennsylvania Supreme Court Justices that the date requirement serves an "unquestionable purpose."  *In re 2020 Canvass*, 241 A.3d at 1090 (Opinion by Justice Dougherty, Chief Justice Saylor, and Justice Mundy); *see also id.* at 1087 (Opinion of Justice Wecht) (noting that "colorable arguments . . . suggest [the date requirement's] importance").  The Pennsylvania Supreme Court has also dispensed with Plaintiffs' confusion over what date to write on the declaration, holding that "[i]mplicit in the Election Code's textual command … is the understanding that 'date' refers to the day upon which an elector signs the declaration."  *Ball*, 2022 WL 18716006 at *13.  Plaintiffs' constitutional challenge to the date requirement simply fails.

## CONCLUSION

The Court should dismiss Plaintiffs' Amended Complaint.

Dated:  February 17, 2023                    Respectfully submitted,

                                             /s/ Kathleen A. Gallagher
                                             Kathleen A. Gallagher
                                             PA I.D. #37950
                                             Russell D. Giancola
                                             PA. I.D. #200058
                                             GALLAGHER GIANCOLA LLC
                                             436 Seventh Avenue, 31st Floor
                                             Pittsburgh, PA 15219
                                             Phone: (412) 717-1900
                                             kag@glawfirm.com
                                             rdg@glawfirm.com

                                             John M. Gore (*pro hac vice*)
                                             E. Stewart Crosland
                                             JONES DAY
                                             51 Louisiana Avenue, N.W.
                                             Washington, D.C. 20001
                                             Phone: (202) 879-3939
                                             jmgore@jonesday.com
                                             scrosland@jonesday.com

                                             Thomas W. King, III
                                             Thomas E. Breth
                                             DILLON, McCANDLESS, KING,
                                               COULTER & GRAHAM, LLP
                                             128 W. Cunningham St.
                                             Butler, PA  16001
                                             Phone: (724) 283.2200
                                             tking@dmkcg.com
                                             tbreth@dmkcg.com

                                             *Counsel for Intervenor-Defendants*