**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF PENNSYLVANIA**
**ERIE DIVISION**

| | |
|---|---|
| BETTE EAKIN, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:22-cv-00340-SPB |
| ADAMS COUNTY BOARD OF ELECTIONS, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO INTERVENORS'**
**MOTION TO DISMISS AMENDED COMPLAINT**

## INTRODUCTION

Pennsylvania's requirement that county boards reject timely-received mail-in or absentee ballots (collectively, "mail ballots") contained in envelopes on which the voter failed to write a "correct" date is a quintessential Materiality Provision violation. The date written on the ballot envelope is not used by election officials to determine whether the voter is eligible to vote in the election, or indeed for *any* purpose. The voters who are disenfranchised as a result, moreover, have already registered to vote and successfully applied for a mail ballot, clearly demonstrating their eligibility to participate in the election.

In enacting the Civil Rights Act of 1964, Congress intended the Act's Materiality Provision to dispense with precisely these sorts of technical obstacles standing in the way of eligible voters having their votes counted. That is why a unanimous Third Circuit panel held last year that enforcement of the Date Instruction violates the Materiality Provision. *Migliori v. Cohen*, 36 F.4th 153, 164 (3d Cir. 2022), *vacated sub nom. Ritter v. Migliori*, 143 S. Ct. 297 (2022). That decision was later vacated, but only because the case became moot while on appeal. Thus, while no longer binding precedent, the Third Circuit's reasoning and decision remain highly persuasive authority. *See, e.g.*, *Gregoire v. Centennial Sch. Dist.*, 674 F. Supp. 172, 178 (E.D. Pa. 1987) ("That [Third Circuit] opinion was ordered vacated by the United States Supreme Court because the appellant lacked standing; however, the reasoning is persuasive in pertinent aspects even though the holding is not binding precedent."). For the same reasons that the Third Circuit found the Date Instruction violates the Materiality Provision in *Migliori*, Plaintiffs have not only stated a cognizable claim under that provision—they are highly likely to succeed on it.

Furthermore, by requiring county boards to reject ballots because the voters wrote an "incorrect" date on the ballot envelope without offering any guidance to voters or counties as to how to determine correctness, the Date Instruction ensures that county boards will reject voters'

ballots on an arbitrary basis, imposing burdens on Pennsylvanians' fundamental right to vote that cannot be justified by any sufficiently weighty state interests. As a result, the Date Instruction also violates the First and Fourteenth Amendments.

Intervenors' motion to dismiss these claims repeatedly gets the law wrong. Intervenors assert that private litigants cannot enforce the Materiality Provision through 28 U.S.C. § 1983 but they ignore the statute's unambiguous rights-creating language; their argument that the Attorney General's enforcement authority precludes private enforcement contradicts Supreme Court precedent; and they repeatedly advance theories that contradict the statutory text. Their assertion that the Provision applies only to obstacles that prevent voters from *casting* a ballot—and does not reach obstacles to a voter's ballot being *counted*—for instance is foreclosed by the statute's explicit statement that the Materiality Provision protects not just the right to cast a ballot, but also to "hav[e] such ballot *counted and included* in the appropriate totals of votes cast." 52 U.S.C. § 10101(a)(3)(A), (e) (emphasis added). And Intervenors' circular argument that the Provision applies only to mistakes or omissions made on papers that county boards use to determine a voter's eligibility to vote disregards the statute's unambiguous prohibition against denying an individual the right to vote because of an immaterial mistake or omission on "*any* record or paper relating to *any* application, registration, or *other* act requisite to voting." *Id*. § 10101(a)(2)(B) (emphases added).

Finally, Intervenors fail to explain how any of the state interests they attempt to invoke on the government's behalf make it necessary to reject ballots based on a missing or "incorrect" date, or to subject voters to arbitrary treatment based on the date (or date format) their county board might deem "incorrect." The Date Instruction is nothing more than an arbitrary compliance test that disenfranchises voters but fails to advance any legitimate, much less compelling, state interest.

The Court should deny Intervenors' motion to dismiss.

## BACKGROUND

Plaintiffs challenge Pennsylvania's requirement that county boards of elections reject qualified voters' mail ballots if a voter fails to write a correct date on the ballot's outer envelope. The relevant statutory provisions—referred to here as the "Date Instruction"—require voters submitting a mail ballot to "fill out, date and sign the declaration printed" on the outer envelope containing their completed ballot. 25 P.S. §§ 3146.6(a), 3150.16(a). The Supreme Court of Pennsylvania recently concluded that the Date Instruction requires county boards to reject "any ballots contained in undated or incorrectly dated outer envelopes." *Ball v. Chapman*, 284 A.3d 1189, 1192 (Pa. 2022) (per curiam).

Plaintiffs assert that rejecting ballots on this basis violates federal law in two ways. First, it denies Pennsylvanians the right to vote "because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting," and that "error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B); *see* ECF No. 228 ("Am. Compl.") ¶¶ 32–40. Second, and separately, the Date Instruction imposes an undue burden on the right to vote because it results in the arbitrary denial of undated or "incorrectly dated" ballots, *Ball*, 284 A.3d at 1192, but advances no sufficiently weighty state interest to justify disenfranchising voters. U.S. Const. amends. I, XIV; Am. Compl. ¶¶ 41–49.

The Date Instruction's legality has been the subject of several rounds of recent litigation. The Supreme Court of Pennsylvania first addressed the issue in November 2020, when it ordered— for purposes of the 2020 general election only—that county boards must count *all* timely and otherwise valid mail ballots even if their outer envelopes did not conform to the Date Instruction. *In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058 (Pa.

2020) ("*In re 2020 Canvass*"), *cert. denied sub nom. Donald J. Trump for President, Inc. v. Degraffenreid*, 141 S. Ct. 1451 (2021). While the issue of whether rejecting ballots due to a failure to conform to the Date Instruction would violate the Materiality Provision arose in that litigation, the court did not reach it; instead, Justice Wecht—who provided the tie-breaking vote—concluded that the equities of that particular case required counting timely and otherwise valid mail ballots notwithstanding their noncompliance with the Date Instruction. *See id.* at 1087–89. Nonetheless, a majority of the court expressed serious concerns that rejecting mail ballots due to a voter's failure to write certain information on the ballot envelope may violate the Materiality Provision. *Id.* at 1074 n.5 (opinion announcing judgment of the court) (noting that this argument has "persuasive force" and that "federal courts have barred the enforcement of similar administrative requirements to disqualify electors" under the Materiality Provision); *id.* at 1089 n.54 (Wecht, J., concurring in part) ("It is inconsistent with protecting the right to vote to insert more impediments to its exercise than considerations of fraud, election security, and voter qualifications require.").

In the two years since *In re 2020 Canvass*, it has become clear that the Date Instruction offers no indication as to whether an individual is qualified to vote and, furthermore, that its enforcement serves no legitimate state interest at all. Counties do not use the written date, for example, to determine whether the voter is eligible to have their ballot counted, whether the county board received the ballot in time for it to be counted, or for "any other purpose." *Migliori*, 36 F.4th at 164. This led a unanimous Third Circuit panel to conclude in May 2022 that enforcement of the Date Instruction violates the Materiality Provision. *Id.* And the U.S. Supreme Court denied an application to stay that decision, allowing undated ballots to be counted in a county judicial race, with only three justices dissenting from that order. *Ritter v. Migliori*, 142 S. Ct. 1824 (2022).

*Migliori* was brought in the context of a county-judge election, and soon after the Third

Circuit issued its opinion, the results of that election were certified, mooting the case. As a result, the U.S. Supreme Court vacated the Third Circuit's decision without commenting on the merits. *Ritter*, 143 S. Ct. 297 (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)). That vacatur did not call the reasoning behind the Third Circuit's decision into question; the Supreme Court simply followed its "established practice" in cases that become moot while an appeal is pending, which "is to reverse or vacate the judgment below and remand with a direction to dismiss." *Munsingwear*, 340 U.S. at 39. Thus, the Third Circuit's *Migliori* holding and reasoning remain highly persuasive authority. *U.S. ex rel Espinoza v. Fairman*, 813 F.2d 117, 125 n.7 (7th Cir. 1987) (explaining that circuit court decisions vacated by the Supreme Court "remain[] persuasive" precedent when vacatur did not "reject [the decision's] underlying reasoning"); *see also Gregoire*, 674 F. Supp. at 178 (noting when a Third Circuit opinion was "ordered vacated by the United States Supreme Court because the appellant lacked standing," its reasoning remained "persuasive in pertinent aspects even though the holding is not binding precedent").

In a pair of related cases stemming from the 2022 primary election, the Commonwealth Court of Pennsylvania independently concluded that the Date Instruction violates the Materiality Provision. *Chapman v. Berks Cnty. Bd. of Elections*, No. 355 MD 2022, 2022 WL 4100998, at *18 (Pa. Cmwlth. Aug. 19, 2022); *see also McCormick for U.S. Senate v. Chapman*, No. 286 MD 2022, 2022 WL 2900112 (Pa. Cmwlth. June 2, 2022) (granting preliminary injunction). In August 2022, the President Judge of that court relied on a fully developed evidentiary record and concluded in a thorough, well-reasoned 67-page opinion that, while Justice Dougherty's dissenting opinion in *In re 2020 Canvass* identified "in the abstract" certain purposes that the Date Instruction *could* serve, in reality, it does not serve those purposes at all. *Chapman*, 2022 WL 4100998, at *18.

Shortly before the 2022 general election, the Intervenors in this case and a group of

Republican voters filed a petition in the Supreme Court of Pennsylvania, asking the court to exercise its extraordinary jurisdiction to enter an order prohibiting county boards from counting mail ballots contained in envelopes that did not conform to the Date Instruction. After accepting jurisdiction, the court asked the parties to brief multiple questions, including (1) whether Pennsylvania law required county boards to reject ballots in envelopes that do not conform to the Date Instruction, and (2) whether rejecting ballots on that basis would violate the Materiality Provision. Order, *Ball v. Chapman*, No. 102 MM 2022 (Pa. Oct. 21, 2022) (attached as Exhibit A). On November 1, 2022, the court issued an order—noting that "opinions [would] follow"— concluding that the Date Instruction prohibits county boards from counting mail ballots "contained in undated or incorrectly dated outer envelopes." *Ball*, 284 A.3d at 1192. The court did not reach any decision, however, about whether this result would violate the Materiality Provision because the justices split evenly on the issue. *Id.* Four days later, the court issued a supplemental order clarifying that,

> For purposes of the November 8, 2022 general election, "incorrectly dated outer envelopes" are as follows: (1) mail-in ballot outer envelopes with dates that fall outside the date range of September 19, 2022, through November 8, 2022; and (2) absentee ballot outer envelopes with dates that fall outside the date range of August 30, 2022, through November 8, 2022.

Suppl. Order, *Ball v. Chapman*, No. 102 MM 2022 (Pa. Nov. 5, 2022) (citing 25 P.S. §§ 3150.12a, 3150.15, 3146.2a(a), 3146.5(a)) (attached as Exhibit B).

On February 8, 2023, the Supreme Court of Pennsylvania published its opinions explaining the November 1 and 5, 2022 orders. *Ball v. Chapman*, --- A.3d ---, 2023 WL 2031284 (Pa. Feb. 8, 2023). Justice Wecht's majority opinion explained that the "correct" date for purposes of the Date Instruction is "the day upon which an elector signs the declaration" on the mail ballot's envelope. *Id.* at *13. It warned, however, that "[h]ow county boards are to verify that the date an elector provides is, in truth, the day upon which he or she completed the declaration is a question that falls

beyond [the court's] purview." *Id.* Thus, "county boards of elections retain authority to evaluate the ballots that they receive in future elections—including those that fall within the date ranges derived from statutes indicating when it is possible to send out mail-in and absentee ballots—for compliance with the Election Code." *Id.* County boards are thus free to choose for themselves how to evaluate the date written on a mail-ballot envelope for correctness.

## LEGAL STANDARD

In resolving a Rule 12(b)(6) motion to dismiss, the court "accept[s] as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom," and determines whether those allegations "state a plausible claim for relief." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). "This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits." *Brookville Equip. Corp. v. A. L. Lee Corp.*, No. 13-cv-0059, 2013 WL 1195116, at *2 (W.D. Pa. Mar. 22, 2013). "Generally speaking, a Complaint that provides adequate facts to establish 'how, when, and where' will survive a Motion to Dismiss." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009)).

## ARGUMENT

I.   **Plaintiffs have alleged a plausible violation of the Materiality Provision.**

A.   **Plaintiffs may enforce the Materiality Provision.**

As the unanimous Third Circuit panel in *Migliori* (and several other courts) concluded, "private plaintiffs may enforce the Materiality Provision via [28 U.S.C.] § 1983." 36 F.4th at 162; *see also Schwier v. Cox*, 340 F.3d 1284, 1297 (11th Cir. 2003); *La Union del Pueblo Entero v. Abbott*, No. 5:21-CV-0844-XR, 2022 WL 3045657, at *29–30 (W.D. Tex. Aug. 2, 2022); *League of Women Voters of Ark. v. Thurston*, No. 5:20-CV-05174, 2021 WL 5312640, at *4 (W.D. Ark. Nov. 15, 2021); *Tex. Democratic Party v. Hughs*, 474 F. Supp. 3d 849, 859–60 (W.D. Tex. 2020),

*rev'd on other grounds by Tex. Democratic Party v. Hughs*, 860 F. App'x 874 (5th Cir. 2021).

Section 1983 presumptively creates a private right of action to enforce any law that "unambiguously confers an individual right." *Migliori*, 26 F.4th at 159. The Materiality Provision easily meets this standard because it has "an unmistakable focus" on the individual right to vote. *Grammer v. John J. Kane Reg'l Ctrs.-Glen Hazel*, 570 F.3d 520, 528 (3d Cir. 2009). Specifically, the Materiality Provision prohibits denying "any individual" the right to vote based on "an error or omission on any record or paper relating to any application, registration, or other act requisite to voting" that is "not material in determining whether such person is qualified . . . to vote." 52 U.S.C. § 10101(a)(2)(B). As the Third Circuit explained, by "plac[ing] all citizens qualified to vote at the center of its import and provid[ing] that they shall be entitled and allowed to vote," this language "unambiguously confers a personal right." *Migliori*, 36 F.4th at 159 (cleaned up).

In this respect, the Materiality Provision's language is "clearly analogous" to Title VI of the Civil Rights Act ("No person in the United States shall on the ground of race, color, or national origin . . . be subjected to discrimination . . .") and Title IX of the Education Amendments of 1972 ("No person in the United States shall, on the basis of sex . . . be subjected to discrimination . . ."), *Schwier*, 340 F.3d at 1291, 1296, which contain epitomic rights-creating language, *see Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 & n.3 (2002). Like Titles VI and IX, the Materiality Provision's "No person . . . shall" formulation targets "the denial of rights to individuals," creating an unmistakable federal right. *Schwier*, 340 F.3d at 1291, 1296. "Indeed, the rights-creating language here may be even stronger" than that of Titles VI and IX because the Materiality Provision "explicitly include[s] the word 'right.'" *Grammer*, 570 F.3d at 531; *see also Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 524 (1990) (finding Medicaid Act provision that *required states* to provide for payment of medical services for needy individuals using reasonable rates conferred private

rights on medical providers); 52 U.S.C. 10101(a)(2)(B) (protecting the "*right* of any individual to vote" (emphasis added)).

Because the Materiality Provision unambiguously confers an individual federal right, Intervenors have the burden to demonstrate that Congress intended to exclude the possibility of a private right of action by identifying either "express terms" in the statute excluding private enforcement or a "comprehensive remedial scheme" that is more restrictive than federal-court litigation. *Grammer*, 570 F.3d at 532. But their motion barely attempts to make that showing. It merely cites a provision authorizing suit by the Attorney General, which "is inadequate, without more, to rebut the presumption of a private right of action under § 1983." *Milgiori*, 36 F.4th at 162; *see also Schwier*, 340 F.3d at 1294–96 (holding Attorney General's authority to enforce Materiality Provision does not preclude private enforcement). Indeed, the Supreme Court has made clear that it does not "lightly conclude that Congress intended to preclude reliance on § 1983" and in the very few instances where it has, "the statutes at issue required plaintiffs to comply with particular procedures and/or to exhaust particular administrative remedies prior to filing suit," and they involved "unusually elaborate, carefully tailored, and restrictive enforcement schemes." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 254-55 (2009) (internal quotations omitted). Section 101 of the Civil Rights Act bears no resemblance to these schemes; to the contrary, the statutory text contemplates private litigation by explaining that federal courts "shall exercise" jurisdiction over "proceedings instituted pursuant to [the statute]" regardless of whether "the party aggrieved shall have exhausted any administrative or other remedies," 52 U.S.C. § 10101(d). And the legislative history confirms this: the Attorney General's testimony in support of that bill explained that his authority would "not tak[e] away the right of the individual to start his own action" and that "private parties w[ould] retain the right they have now to sue in their own name."

*Tex. Democratic Party*, 474 F. Supp. 3d at 858 (quoting Civil Rights Act of 1957: Hr'gs on S. 83 Before the Subcomm. on Constitutional Rts. of the S. Comm. on the Judiciary, 85th Cong. 73, 203, 1; 60–61, 67–73 (1957)).[1] In sum, the Materiality Provision's plain text and history make clear that private litigants can enforce its guarantees.

**B.    Plaintiffs' allegations state a plausible claim for relief under the Materiality Provision.**

The Amended Complaint states a plausible claim that the Materiality Provisions prohibits Defendants from rejecting mail ballots because of a voter's failure to follow the Date Instruction. Rejecting ballots on this basis violates the Materiality Provision's plain text and purpose. In suggesting otherwise, Intervenors ask the Court to rewrite the statute to better fit their view of what the law *should* be. The Court should reject that invitation.

The Materiality Provision makes it unlawful to:

> deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B). Congress enacted this provision to rid the country of state laws "that increase the number of errors or omissions on papers or records related to voting and provide an excuse to disenfranchise otherwise qualified voters." *League of Women Voters of Ark.*, 2021 WL 5312640, at *4. As remedial legislation, the Materiality Provision must be "liberally construed."

---

[1] *Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612, 630 (6th Cir. 2016)—cited by Intervenors, Mot. at 7—offers no reason to believe Congress intended to preclude private litigation under the Materiality Provision. In *Husted*, the panel noted only that it was bound by Sixth Circuit precedent on this issue by *McKay v. Thompson*, 226 F.3d 752, 756 (6th Cir. 2000). *Husted*, 837 F.3d at 630. In *McKay*, the court concluded in a single sentence—without any analysis—that the Materiality Provision "is enforceable by the Attorney General, not by private citizens." 226 F.3d at 756. That cursory conclusion has been thoroughly refuted by subsequent courts pointing to the Supreme Court's repeated holdings that Attorney General enforcement authority does not, by itself, preclude private enforcement under § 1983. *E.g.*, *Schwier*, 340 F.3d at 1294–96.

*Peyton v. Rowe*, 391 U.S. 54, 65 (1968).

The Materiality Provision's text consists of three clauses, giving rise to a three-element claim. The first two clauses identify the universe of voting regulations to which the Materiality Provision applies. Clause 1 requires that the regulation result in the "den[ial of] the right of any individual to vote." 52 U.S.C. § 10101(a)(2)(B). Clause 2 requires that the cause of that denial be "an error or omission on any record or paper relating to any application, registration, or other act requisite to voting." *Id.* Clause 3 creates the test for determining the regulation's legality: If the "error or omission is not material in determining whether such individual is qualified under State law to vote in such election," enforcement of the regulation is unlawful. *Id.* Because enforcement of the Date Instruction falls squarely (and at the very least, for purposes of this motion, plausibly) within each of these three elements, Plaintiffs have stated a claim for relief under the Materiality Provision.

**Clause 1: Denial of the Right to Vote.** The Date Instruction's requirement that county boards reject a mail ballot due to a missing or incorrect written date on its envelope unquestionably denies the right to vote. The right to vote includes not only the ability to "cast a ballot," but also to "*have it counted*." *United States v. Classic*, 313 U.S. 299, 318 (1941) (emphasis added). Congress wrote this understanding directly into the Materiality Provision, explicitly defining the word "vote" as used in the Provision as "all action[s] necessary to make a vote effective including . . . having [a] ballot counted and included in the appropriate totals of votes cast." 52 U.S.C. § 10101(e); *id.* § 10101(a)(3)(A) (incorporating this definition for purposes of the Materiality Provision's use of the term "vote"). By prohibiting county boards from counting otherwise valid mail ballots due to a missing or incorrect written date on the envelope, the Date Instruction denies the right to vote as Congress has explicitly defined that term.

This explicit definition of the term "vote" forecloses Intervenors' argument that the Date Instruction's enforcement does not violate the Materiality Provision because it does not prevent voters from *casting* a ballot. Mot. at 8–9. Applying the plain text of the Provision, courts have repeatedly found that it applies to state laws that, like the Date Instruction here, do not stand in the way of a voter accessing or filling out a ballot but instead require rejecting that ballot after submission because of a mistake or omission made by the voter. *See Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*, No. 1:21-CV-01284-JPB, 2021 WL 6495360, at *14 (N.D. Ga. Dec. 9, 2021) (finding plaintiffs stated a plausible Materiality Provision claim in challenge against requirement that absentee voters write their birth date on their absentee ballot envelope); *Thurston*, 2021 WL 5312640, at *4 (finding plaintiffs stated a plausible Materiality Provision claim in challenge against requirement that absentee voters who have already demonstrated their eligibility to provide similar evidence with their absentee ballot as well); *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1309 (N.D. Ga. 2018) (enjoining county from rejecting absentee ballots due to voter's failure to write correct year of birth on envelope because doing so likely violates the Materiality Provision); *Ford v. Tenn. S.*, No. 06-2031-DV, 2006 WL 8435145, at *11 (W.D. Tenn. Feb. 1, 2006) (explaining Materiality Provision prohibits rejecting a voter's ballot because of the voter's failure to sign both ballot and poll book). Intervenors' atextual theory would mean that every single one of these cases was wrongly decided.

**Clause 2: Cause of Denial.** The Date Instruction requires county boards to reject a ballot "because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting." 52 U.S.C. § 10101(a)(2)(B). It prohibits counties from counting mail ballots due to an "omission" (failing to write the date) or "error" (writing the wrong date) made by the voter on a "paper" (the envelope) relating to an "act requisite to voting" (completing

the voter declaration). *Id.*

Intervenors seek to rewrite the Materiality Provision by arguing that it should apply only when "the error or omission affect[s] a 'determin[ation] whether such individual is qualified under State law to vote.'" Mot. at 9 (second alteration in original) (quoting 52 U.S.C. § 10101(a)(2)(B)); *see also id.* at 9–12. This argument badly misconstrues the structure of the statutory text and has been rejected by other courts. *Ford*, 2006 WL 8435145, at *11 (rejecting argument that the Materiality Provision applies "solely [to] determining eligibility to vote"). It is Clauses 1 and 2 of the Materiality Provision, not Clause 3, that delineate the *type* of voting regulation governed. Those clauses' plain text makes clear that the Provision applies to any regulation that denies the right to vote "because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting." 52 U.S.C. § 10101(a)(2)(B). This is why, in *Migliori*, the Third Circuit determined that the Materiality Provision "applies" to the Date Instruction by asking only whether "mail-in ballot[s] [] constitut[e] a paper relating to an act for voting." 36 F.4th at 162 n.56. Having found that the Materiality Provision "squarely" applies to the Date Instruction, the court moved on to Clause 3's test, which determines not whether a regulation falls within the Materiality Provision's ambit, but instead whether the regulation is lawful. *Id.* at 163–64. Under that test, if the omission or mistake at issue is "material in determining whether such individual is qualified under State law to vote in such election," the regulation's enforcement is lawful; if it is immaterial, enforcement is unlawful. 52 U.S.C. § 10101(a)(2)(B). As explained below, the *Migliori* court easily concluded (and Intervenors concede) that the Date Instruction fails that test.

If Congress had intended to limit the Materiality Provision to papers and records used to determine a person's eligibility, it would have stated that it applies only to papers and records relating to *registration*, the phase during which state actors determine a voter's eligibility. *See*

*Thurston*, 2021 WL 5312640, at *4. But Congress did the opposite, making clear that the Materiality Provision's scope applies to any record or paper relating not only to "registration," but "any application" or "*other* act requisite to voting." 52 U.S.C. 10101(a)(2)(B) (emphasis added). To accept Intervenors' reading of the statute would render that last phrase superfluous. *See Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir. 1998) ("In interpreting a statute, courts should endeavor to give meaning to every word which Congress used and therefore should avoid an interpretation which renders an element of the language superfluous."). The plain text of the statute forecloses Intervenors' atextual theory.

The Court should also reject Intervenors' policy argument that the Materiality Provision's plain language would invalidate other election rules that are not at issue in this case. *See* Mot. at 13–15. The Materiality Provision is not a formula that can be applied mechanically to all Election Code provisions devoid of context. Here, several county boards of elections have admitted that the Date Instruction provides no information material to a voter's qualifications. *E.g.*, ECF No. 162 ¶ 21. But no county board has made similar concessions about the signature requirement or any other provision that Intervenors have raised. And this Court is not empowered to re-write the Materiality Provision's straightforward language based on Intervenors' unsupported predictions about how it might apply to other election administration rules that Plaintiffs did not challenge. As the Supreme Court has instructed time and again, courts must "presume Congress says what it means and means what it says." *Simmons v. Himmelreich*, 578 U.S. 621, 627 (2016).

Finally, Intervenors attempt to drag the Date Instruction outside of the Materiality Provision's scope by claiming that "casting a ballot . . . constitutes the *act* of voting, not an . . . act *requisite* to voting." Mot. at 12. But this argument immediately falls apart in light of Intervenors' simultaneous admission that "casting a ballot . . . *requires* completing the declaration." *Id.*

(emphasis added). If a voter is required to complete the declaration to cast a ballot, completing the declaration is a requisite to voting. In any event, this imagined distinction cannot be squared with the statutory text. As explained, the Materiality Provisions expressly defines "vote" as including "all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted." 52 U.S.C. § 10101(a)(3)(A), (e).

**Clause 3: Immateriality.** Defendants wisely concede that Plaintiffs' allegations satisfy the third element of their Materiality Provision claim. *See* Mot. at 12 ("Plaintiffs are entirely correct that compliance with the date requirement is not a qualification to vote."); *see also* Mot. to Dismiss, ECF No. 196 at 12 (stating in motion to dismiss Plaintiffs' original complaint that "Plaintiffs are entirely correct that compliance with the date requirement *is not material to any individual's qualifications to vote*" (emphasis added)). A person is eligible to vote in Pennsylvania if they are at least 18 years old on the day of the next election, have been a citizen of the United States for at least one month before the next election, and have resided in the Pennsylvania election district where they plan to vote for at least 30 days prior to the next election, provided they have not been convicted of a felony within the last five years. 25 P.S. § 2811; 25 Pa. C.S.A. § 1301(a). As the *Migliori* court unanimously concluded, a voter's failure to write a correct date on the envelope containing their mail ballot has nothing to do with their qualifications to vote. 36 F.4th at 163.

In sum, Intervenors have effectively conceded that the Date Instruction violates the Materiality Provision. Their motion to dismiss this claim should be denied.

## II.    Plaintiffs have alleged a plausible violation of the First and Fourteenth Amendments.

Intervenors' motion to dismiss Plaintiffs' constitutional claim should also be denied. Plaintiffs' allegations more than satisfy the threshold of plausibility and state a cognizable basis for finding that rejecting mail ballots for failure to comply with the Date Instruction places an

undue burden on the right to vote in violation of the First and Fourteenth Amendments. This type of federal right-to-vote claim is evaluated under the *Anderson-Burdick* test, which requires the Court to carefully balance the character and magnitude of the injury to the voter's constitutional rights against the precise justifications put forward by the state for the need to impose those burdens. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). This is a highly contextual and factual test, and "even when a law imposes only a slight burden on the right to vote, relevant and legitimate interests of sufficient weight still must justify that burden." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1318–19 (11th Cir. 2019). In all cases, there must be a fit or nexus between the challenged rule and the state's justification; in other words, it must actually advance that interest. *See Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 109 (2d Cir. 2008). The burden on the state as to how extensive that justification must be depends on the burden imposed on the voters. *Wilmoth v. Sec'y of N.J.*, 731 F. App'x 97, 102 (3d Cir. 2018). These types of claims are almost never amenable to decision on a motion to dismiss. *See Duke v. Cleland*, 5 F.3d 1399, 1405 & n.6 (11th Cir. 1993) (noting it was "impossible" at the pleadings stage "to undertake the proper review" under *Anderson-Burdick* because the existence of a state interest is "a matter of proof"); *see also Soltysik v. Padilla*, 910 F.3d 438, 447 (9th Cir. 2018). For reasons discussed further below, this does not present the rare case where dismissal is appropriate.

### A. Plaintiffs allege that the Date Instruction burdens the right to vote by subjecting voters to arbitrary disenfranchisement.

Plaintiffs more than adequately allege that the Date Instruction burdens the right to vote for individuals whose ballots are rejected as a result of its arbitrary and unnecessary requirements. To have their mail ballot counted, Pennsylvania voters must not only date the ballot's outer envelope, but also divine *how* they must write that date in a manner their county boards may deem

to be "correct." While the Supreme Court of Pennsylvania has clarified that voters are to write on the ballot envelope the "day upon which [the] elector signs the declaration," it left to the county boards the discretion to decide how they would "verify that the date an elector provides is, in truth, the day upon which he or she completed the declaration." *Ball*, 2023 WL 2031284, at *13. Because the fate of a mail ballot submitted by a voter who, for example, writes the date using a date/month/year (as opposed to month/date/year) will depend on their county's undefined standards (which counties have no obligation to clarify for voters), the Date Instruction places voters at significant risk of arbitrary disenfranchisement.

Further compounding this burden, the consequence of a voter's wrong guess or innocent mistake in many cases is the denial of the right to vote. Courts regularly factor the consequences of noncompliance with a challenged provision in their analysis of that provision's burdens. In *Democratic Executive Committee of Florida v. Lee*, for example, the Eleventh Circuit recognized that the burdens imposed by an absentee ballot signature matching requirement included the increased risk of disenfranchisement from a perceived signature mismatch. 915 F.3d at 1319. Intervenors purport to dispute this characterization, Mot. at 21, but their own chosen quote from that decision confirms the close analogy: Just as legitimate voters in Florida were "burdened with the risk that their ballots w[ould] incorrectly be rejected for [an incorrect] signature," *id.* (quoting *Democratic Exec. Comm. of Fla.*, 915 F.3d at 1320), legitimate Pennsylvania voters are being burdened with the risk that their ballots will be rejected because it is deemed undated or "incorrectly" dated. Contrary to Intervenors' suggestion, the Eleventh Circuit did not limit its analysis to the burden of accurately signing or dating the envelope—it focused on the harsh consequence that would result from a county's determination that the markings on the ballot envelope were inadequate. *Democratic Exec. Comm. of Fla.*, 915 F.3d at 1319–21. The severity

of that burden, according to the Eleventh Circuit, was aggravated by the problem that "voters whose signatures were deemed a mismatch might not learn that their vote would not be counted until it was too late to do anything about it." *Id.* at 1320-21. In the same way here, there are inadequate standards for determining "correctness" of a written date on ballot envelopes, and there is no guarantee of any recourse for voters whose envelope dates are deemed to be incorrect.[2] The Eleventh Circuit had "no trouble finding that Florida's scheme imposes at least a serious burden on the right to vote," *Democratic Exec. Comm. of Fla.*, 915 F.3d at 1321; this Court should reach the same conclusion on the analogous facts here.

Other courts—including the Third Circuit—routinely engage in similar analysis. In *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 881 (3d Cir. 1997), for example, the Third Circuit recognized that the burdens imposed on minor political parties by an early filing deadline included not only the burden of complying with the deadline but also the burdens that would result from missing the deadline. Intervenors attempt to distinguish this case on the ground that it is a "ballot access regulation," Mot. at 21–22, but that makes no difference. The *Anderson-Burdick* analysis applies the same way in ballot-access and voter-burden cases; indeed, *Anderson*—the case that introduced the test governing this claim—was itself a dispute brought by an independent candidate over restrictive ballot access rules. 460 U.S. at 782.

Similarly, in *Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016), the Sixth Circuit held unconstitutional a provision of Ohio law requiring boards of elections to reject the ballots of absentee voters who failed to accurately print their birthdate and address on

---

[2] In *Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345, 374 (Pa. 2020), the Supreme Court of Pennsylvania held that county boards of elections are not required to implement a "notice and opportunity to cure" procedure for mail-in and absentee ballots that voters have filled out incompletely or incorrectly.

the absentee ballot envelope. The court recognized that this requirement "directly and measurably disenfranchises some voters," creating a burden that outweighed any legitimate state interest. *Id.* at 631–34. The problems with Ohio's birthdate requirement echo those here: as the Sixth Circuit recited, voters are burdened when they "may be disenfranchised based only on a technicality, [such as] transposing the location of the month and year numerals of a birthdate, writing the current date by mistake, and inverting digits[.]" *Id.* at 632. Intervenors attempt a retort by pointing out that the *Husted* court identified legitimate interests that justified Ohio's requirement that *provisional* voters print their date and address, given that many provisional voters are not registered. Mot. at 21 (citing 837 F.3d at 632). But Plaintiffs' claim here has nothing to do with provisional ballots cast by unregistered voters. *Husted* is relevant because of what the Sixth Circuit said *after* addressing the interests unique to provisional ballots: "Ohio has made no such justification for mandating technical precision in the address and birthdate fields of the *absentee-ballot identification envelope.*" 837 F.3d at 632 (emphasis added). Because Plaintiffs challenge Pennsylvania's similar technical-precision requirement for writing a date on a mail-ballot envelope, *Husted* is directly analogous and highly persuasive. The burdens imposed by the Date Instruction are severe.

### B. The Date Instruction is not justified by any legitimate state interest.

Under *Anderson-Burdick*, every burden imposed by a challenged election law, "[h]owever slight[,] must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (controlling op.) (quoting *Norman v. Reed*, 502 U.S. 279, 288–89 (1992)). Here, no legitimate interests can justify conditioning the franchise on a voter's ability to enter a correct date on their mail ballot envelope, or to accurately guess how a local official might decide what constitutes a "correct" date and whether the voter complied with that requirement.

Intervenors themselves seem unsure what interests could justify the Date Instruction. They

quote an unrelated case's reference to state interests in "protecting the integrity and reliability of the election process," Mot. at 19 (quoting *Crawford*, 553 U.S. at 191), but they fail to connect those abstract interests in any way to the Date Instruction. Instead, Intervenors rest on a state court concurring opinion that refused to "indulge" any debate over the provision's purpose, and a dissent from the same case that purported to identify an "unquestionable purpose"—even as Intervenors conspicuously shy from naming just what that purpose could be. *Id.* (quoting *In re 2020 Canvass*, 241 A.3d at 1087 (Wecht, J., concurring in part and dissenting in part), 1090 (Dougherty, J., concurring in part and dissenting in part)).

A closer analysis confirms that the Date Instruction does not serve any legitimate interest, much less a compelling one. In his *In re 2020 Canvass* dissent, Justice Dougherty identified three possible purposes of the provision: (1) the date on the ballot envelope could provide proof of when the "elector actually executed the ballot in full, ensuring their desire to cast it in lieu of appearing in person at a polling place"; (2) the date could "establish[] a point in time against which to measure the elector's eligibility to cast the ballot"; (3) and the date could "ensur[e] the elector completed the ballot within the proper time frame and prevent[] the tabulation of potentially fraudulent back-dated votes." 241 A.3d at 1090–91. But the opinion announcing the judgment in that very case refutes each of these rationales by showing that they cannot justify the Date Instruction.

First, "[d]uplicate voting is detected by the use of bar codes through the SURE system, and the board identifies the earlier cast vote by referencing the date it received the ballot, not the date on which the declaration was signed." *Id.* at 1078. Second, Pennsylvania's "statutory framework includes no requirement that a county board of elections investigate whether an individual who had been confirmed as a qualified elector at the time of approval to receive a mail-in ballot remains

as a qualified elector on Election Day." *Id.* at 1077.[3] And third, because "upon receipt of the ballot, the county board stamps the date of receipt on the ballot-return and records the date the ballot is received in the SURE system," the "date stamp and the SURE system provide a clear and objective indicator of timeliness, making any handwritten date unnecessary and, indeed, superfl[u]ous." *Id.* Other courts have similarly refuted any interest offered in defense of the Date Instruction—including the Third Circuit in *Migliori*. *See* 36 F.4th at 162–64; *see also Chapman*, 2022 WL 4100998, *18–21; *McCormick for U.S. Senate*, 2022 WL 2900112, *12–14.

Finally, Intervenors assert that the Date Instruction "clearly serves the purpose of preventing election fraud," citing a single instance in which the date written on an envelope caused county officials to suspect that the person who cast the ballot was not the voter named on the ballot. Mot. at 19. But the question here is not whether forcing voters to write a date on an envelope could possibly produce evidence of fraud. Instead, it is whether that remote possibility is "sufficiently weighty to justify" disenfranchising voters because they failed to comply with the Date Instruction. *Crawford*, 553 U.S. at 191 (controlling op.) (quoting *Norman*, 502 U.S. at 288–89). Plaintiffs have plausibly alleged that it is not.

In sum, Plaintiffs have adequately alleged that the Date Instruction imposes burdens on voters that are not justified by any compelling or even legitimate state interest. As a result, the Court should deny Intervenors' motion to dismiss Plaintiffs' constitutional claim.

## CONCLUSION

The Court should deny Intervenors' motion to dismiss.

---

[3] Under Pennsylvania law, voter eligibility is assessed as of the date of the election, not the date the ballot is cast. *See* 25 Pa. C.S.A. § 1301(a).

Dated: March 9, 2023

Respectfully submitted,

Adam C. Bonin
**THE LAW OFFICE OF ADAM C. BONIN**
121 South Broad Street, Suite 400
Philadelphia, PA 19107
Telephone: (267) 242-5014
Facsimile: (215) 827-5300
adam@boninlaw.com

<u>/s/ Uzoma N. Nkwonta</u>
Uzoma N. Nkwonta*
Justin Baxenberg*
Daniel C. Osher*
Jacob D. Shelly*
Dan Cohen*
Daniela Lorenzo*
**ELIAS LAW GROUP LLP**
10 G St. NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
unkwonta@elias.law
jbaxenberg@elias.law
dosher@elias.law
jshelly@elias.law
dcohen@elias.law
dlorenzo@elias.law

*\* Admitted Pro Hac Vice*

*Counsel for Plaintiffs*