**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BETTY EAKIN, *et al.*, | Civil Action No.: 1:22-cv-00340 |
| Plaintiffs, | |
| v. | |
| ADAMS COUNTY BOARD OF ELECTIONS, *et al.*, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF INTERVENOR-DEFENDANTS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ...........................................................................................................1

LEGAL STANDARD.......................................................................................................2

ARGUMENT ..................................................................................................................2

    I.      MANDATORY APPLICATION OF THE DATE REQUIREMENT
           DOES NOT VIOLATE THE FEDERAL MATERIALITY PROVISION ............4

          A.      Plaintiffs Lack A Private Right To Enforce the Materiality
                 Provision ..........................................................................................4

          B.      Application Of The Date Requirement Does Not Violate
                 Federal Law .....................................................................................5

          C.      There Is No Tenable Basis To Conclude That Mandatory
                 Application Of The Date Requirement Violates The Federal
                 Materiality Provision .....................................................................12

    II.     MANDATORY APPLICATION OF THE DATE REQUIREMENT
           DOES NOT VIOLATE THE UNITED STATES CONSTITUTION ..................17

          A.      The Date Requirement Involves Nothing More Than The
                 Usual Burdens Of Voting And Is Constitutional ......................................18

          B.      The Record Provides No Tenable Basis To Conclude That
                 Mandatory Application Of The Date Requirement Violates
                 The Constitution..............................................................................23

CONCLUSION...............................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485 (2021) ....................................................15

*Alexander v. Sandoval*, 532 U.S. 275 (2001)....................................................................5

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ...................................................................2

*Anderson v. Liberty Lobby, Inc.*, 477 J.S. 24 (1986) .........................................................2

*Ball v. Chapman*, 284 A.3d 1189 (Pa. Nov. 1, 2022) ...............................................1, 3, 7

*Ball v. Chapman*, 289 A.3d 1 (Pa. 2023) ............................................................... passim

*Biener v. Calio*, 361 F.3d 206 (3d Cir. 2004) ..................................................................17

*Boumediene v. Bush*, 553 U.S. 723 (2008) .....................................................................11

*Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321 (2021)............................... passim

*Broyles v. Texas*, 618 F. Supp. 2d 661 (S.D. Tex. 2009).............................................10, 11

*Castro v. DHS*, 835 F.3d 422 (3d Cir. 2016) ....................................................................6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................................2

*City of Boerne v. Flores*, 521 U.S. 507 (1997) ...............................................................11

*City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005) .........................................5

*Clingman v. Beaver*, 544 U.S. 581 (2005).......................................................................15

*County of Los Angeles v. Davis*, 440 U.S. 625 (1979)....................................................16

*Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181 (2008) ................................. passim

*Davis v. G N Mortg. Corp.*, 244 F. Supp. 2d 950 (N.D. Ill. 2003) ................................21

*Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28 (2020) ..................7, 8

*Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524 (3d Cir. 2011)......................................24

*Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)................20

*Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008)........................9, 10, 11

*Friedman v. Snipes*, 345 F. Supp. 2d 1356 (S.D. Fla. 2004) ................................................................7

*FTC v. Bunte Bros., Inc.*, 312 U.S. 349 (1941)...............................................................................16

*Gonzaga Univ. v. Doe*, 536 U.S. 373 (2002) ....................................................................................5

*Gregory v. Ashcroft*, 501 U.S. 452 (1991)...............................................................................10, 15

*Health & Hosp. Corp. of Marion Cnty. V. Talevski*, No. 21-806 (U.S. argued Nov. 8, 2022)........5

*In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 Gen. Election*,
    241 A.3d 1058 (2020) ...............................................................................................3, 19, 20

*In re Nov. 3, 2020 Gen. Election*, 240 A.3d 591 (Pa. 2020)............................................................4

*Ind. Democratic Party v. Rokita*, 458 F. Supp. 2d 775 (S.D. Ind. 2006)................................10, 11

*Jarecki v. G.D. Searle & Co.*, 367 U.S. 303 (1961) .........................................................................9

*Mays v. LaRose*, 951 F.3d 775 (6th Cir. 2020) .............................................................................17

*Mazo v. N.J. Sec'y of State*, 54 F.4th 124 (3d Cir. 2022)...............................................................17

*McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802 (1969) .......................................................17

*Minn. Voters All. V. Mansky*, 138 S. Ct. 1876 (2018) .............................................................20, 21

*N. Sound Cap, LLC v. Merck & Co.*, 938 F.3d 482 (3d Cir. 2019) ...............................................12

*Ne. Ohio Coal. For the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016)............................5, 24

*Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193 (2009)...........................................11

*Pa. Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020).......................................................14

*Personnel Admn'r of Mass. V. Feeney*, 442 U.S. 256 (1979).......................................................24

*Polychrome Int'l Corp. v. Krigger*, 5 F.3d 1522 (3d Cir. 1993).....................................................16

*Ritter v. Migliori*, 142 S. Ct. 1824 (2022).............................................................................. passim

*Rosario v. Rockefeller*, 410 U.S. 752 (1973) ..............................................................................7, 8

*Schwier v. Cox*, 340 F3d 1284 (11th Cir. 2003) ..............................................................5, 9, 10, 11

*State v. Williams*, 565 N.E.2d 563 (Ohio 1991)........................................................21

*Storer v. Brown*, 415 U.S. 724 (1974) ....................................................................3

*Tashjian v. Republican Party*, 479 U.S. 208 (1986)................................................20

*Tex. Democratic Party v. Abbott*, 961 F.3d 389 (5th Cir. 2020) .....................................17

*Thatcher's Drug Store v. Consol. Supermarkets*, 636 A.2d 156 (Pa. 1994)................................21

*Thomas A. Armbruster, Inc. v. Barron*, 491 A.2d 882 (Pa. Super. 1985)......................................21

*Timmons v. Twin Cty. Area New Party*, 520 U.S. 351 (1997) ...........................................2, 7, 8, 18

*Tully v. Okeson*, 977 F.3d 608 (7th Cir. 2020) .............................................................17

*United States v. Am. Union Transp., Inc.*, 327 U.S. 437 (1946)......................................16

*United States v. Mississippi*, 380 U.S. 128 (1965).........................................................10, 11

*United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950) ..............................................16

*United States v. Tupone*, 442 F.3d 145 (3d Cir. 2006) ...................................................9

*Vote.Org v. Callahen*, 39 F.4[th] 297 (5th Cir. 2022) .....................................................5, 8, 9

## **Statutes and Rules**

10 Ill. Comp. Stat. Ann. 5/17-16.................................................................................15

15 Del. C. § 4972(b)(6).............................................................................................15

15 Del. C. § 5514(a)(1)..............................................................................................15

20 Pa. C.S. § 5442....................................................................................................22

20 Pa. C.S. § 5484....................................................................................................21

20 Pa. C.S. § 5601....................................................................................................22

20 Pa. C.S. § 5832....................................................................................................22

23 Pa. C.S. § 5331....................................................................................................22

23 Pa. C.S. § 6705 .................................................................................................... 22

24 P.S. § 17-1717 ..................................................................................................... 22

25 P.S. § 1301 ..................................................................................................... 6, 12

25 P.S. § 3050 .......................................................................................................... 15

25 P.S. § 3058 .......................................................................................................... 15

25 P.S. § 3063 .......................................................................................................... 14

25 P.S. § 3146 ..................................................................................................... passim

25 P.S. § 3150 ..................................................................................................... passim

25 Pa. C.S. § 1328 ..................................................................................................... 6

35 P.S. § 7607 .......................................................................................................... 22

35 P.S. § 10231.501 ................................................................................................. 22

35 Pa. C.S. § 52A04 ................................................................................................. 22

35 Pa. C.S. § 52B02 ................................................................................................. 22

35 Pa. C.S. § 5203 ................................................................................................... 22

42 Pa. C.S. § 6206 ................................................................................................... 22

42 Pa. C.S. § 8316 ................................................................................................... 22

51 Pa. C.S. § 9102 ................................................................................................... 22

52 U.S.C. § 10101 ............................................................................................... passim

53 P.S. § 13102 ........................................................................................................ 22

57 Pa. C.S. § 316 ...................................................................................................... 22

62 P.S. § 1407-C ...................................................................................................... 21

71 P.S. § 741.806 ..................................................................................................... 22

72 P.S. § 4712-106 ................................................................................................... 22

73 P.S. § 201-7 ...................................................................................................22

73 P.S. § 517 .....................................................................................................22

73 P.S. § 2186 ...................................................................................................22

73 P.S. § 2403 ...................................................................................................22

75 Pa. C.S. § 1731 .............................................................................................21

A.R.S. § 16-611 .................................................................................................15

Fed. R. Civ. P. 56(a) ..................................................................................... passim

Fla. Stat. § 101.5614(5) .....................................................................................15

N.C. Gen. Stat. § 163-182.1(a)(4) ......................................................................15

N.J. Stat. § 19:62-11 ..........................................................................................15

Ohio Rev. Code § 3505.28 ................................................................................15

**Other Authorities**

H. Rep. No. 88-914, pt. 1 (1963) ...............................................................6, 9, 11

**Constitutional Provisions**

U.S. Const. amend. XV, § 1 ...............................................................................10

## INTRODUCTION

Intervenor-Defendants the Republican National Committee, National Republican Congressional Committee, and the Republican Party of Pennsylvania support and seek to uphold free and fair elections on behalf of all Pennsylvanians. Intervenor-Defendants therefore respectfully move the Court to grant summary judgment against Plaintiffs and to uphold the General Assembly's duly enacted laws governing Pennsylvania's elections.

The General Assembly has mandated that a voter who uses an absentee or mail-in ballot "shall … fill out, date and sign the declaration" printed on the outer envelope of the ballot. 25 P.S. §§ 3146.6(a), 3150.16(a). Less than six months ago, the Pennsylvania Supreme Court held that the General Assembly's date requirement is mandatory and, thus, that election officials may not count any absentee or mail-in ballot that fails to comply with it. *See Ball v. Chapman*, 284 A.3d 1189 (Pa. Nov. 1, 2022) (unpublished).

Plaintiffs' suit is merely the latest effort to erode the General Assembly's date requirement. But Plaintiffs' two counts wholly fail "as a matter of law," Fed. R. Civ. P. 56(a), because the date requirement does not violate the federal materiality provision, 52 U.S.C. § 10101(a)(2)(B), or the U.S. Constitution. Indeed, the Pennsylvania Supreme Court declined to invalidate the date requirement under the federal materiality provision, *see Ball*, 284 A.3d at 1192, and three Justices of the U.S. Supreme Court have already concluded that the notion that the date requirement violates the federal materiality provision is "very likely wrong," *Ritter v. Migliori*, 142 S. Ct. 1824, 1824 (2022) (Mem.) (Alito, J., dissenting from the denial of the application for stay). No other U.S. Supreme Court Justices addressed the merits in the stay posture of that case.

These decisions are correct: the plain statutory text and governing case law confirm that the date requirement does not even *implicate* the federal materiality provision, let alone violate it. The federal materiality provision prohibits "deny[ing] the right of an[] individual to vote" as part

1

of an election official's determination whether that "individual is qualified under State law to vote," 52 U.S.C. § 10101(a)(2)(B)—but application of the date requirement does not deny anyone the right to vote or determine anyone's qualifications to vote.  Neither can the Plaintiffs show a constitutional violation in this longstanding, commonsense, and unburdensome election regulation.  The Court should grant summary judgment and uphold the General Assembly's lawful and constitutional date requirement.

## LEGAL STANDARD

"Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A plaintiff opposing summary judgment "may not rest upon mere allegation or denials of his pleading" or a mere "scintilla of evidence" in support of an essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 256 (1986).  Rather, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* Indeed, Rule 56 "mandates" entry of summary judgment against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Accordingly, summary judgment is warranted against any plaintiff who pursues a legally deficient theory of liability.  *See, e.g.*, *id.*; Fed. R. Civ. P. 56(a).

## ARGUMENT

"States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cty. Area New Party*, 520 U.S. 351, 358 (1997).  "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983) (quoting

*Storer v. Brown*, 415 U.S. 724, 730 (1974)); *see also Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2347-48 (2021) (because voter "[f]raud is a real risk," a state may act prophylactically to prevent fraud "without waiting for it to occur and be detected within its own borders").

The General Assembly has prescribed such a regulation through its mandatory date requirement for absentee and mail-in ballots. *See* 25 P.S. §§ 3146.6(a), 3150.16(a); *Ball*, 284 A.3d at 1192. As three Justices of the Pennsylvania Supreme Court have observed, "[t]he date requirement … carrie[s] an unquestionable purpose." *Ball v. Chapman*, 289 A.3d 1, 10 (Pa. 2023) (internal quotation marks omitted). The date "provides proof of when the elector actually executed the ballot in full, ensuring their desire to cast it in lieu of appearing in person at the polling place." *In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1090 (2020) (Opinion of Justice Dougherty, Chief Justice Saylor, and Justice Mundy) (citing then-Judge Brobson's "observ[ations] below"). It "establishes a point in time against which to measure the elector's eligibility to cast the ballot." *Id.* And it "ensures the elector completed the ballot within the proper time frame and prevents tabulation of potentially fraudulent back-dated votes." *Id.* at 1091; *see also id.* at 1087 (Opinion of Justice Wecht) (noting that "colorable arguments also suggest [the] importance" of the date requirement).

These are no mere theoretical interests. Last year, officials in Lancaster County discovered that an individual had cast a fraudulent ballot in her deceased mother's name. *See* SOF ¶¶ 45-50. The investigation was predicated upon the fraudster's completion of the date field on the ballot declaration. *See* SOF ¶ 50. Indeed, the declaration contained only two pieces of information to be supplied by the voter: a signature and the date. *See* SOF ¶ 47. But under the Pennsylvania Supreme Court's current precedent, the Lancaster County Board of Elections lacks authority to conduct signature comparisons, so it could not even check for a non-matching signature, much less

use any non-matching signature to detect fraud by a third party.  *See In re Nov. 3, 2020 Gen. Election*, 240 A.3d 591 (Pa. 2020).  Thus, the *only* evidence on the face of the ballot declaration indicating that someone other than the decedent had completed the ballot was the handwritten date of April 26, 2022, which was twelve days after the decedent had passed away.  *See* SOF ¶ 49.

Plaintiffs' two counts fail "as a matter of law."  Fed. R. Civ. P. 56(a).  *First*, Plaintiffs' contention that the date requirement violates the federal materiality provision contravenes the provision's plain statutory text and governing law, resting instead on a misreading of federal law that would invalidate a broad swath of duly enacted state election rules.  *Second*, Plaintiffs' argument that the date requirement violates the First and Fourteenth Amendment of the U.S. Constitution misreads governing case law and would subject virtually every meaningful election regulation to strict scrutiny.  The Court should grant summary judgment and uphold the General Assembly's date requirement and its authority to enact commonsense laws governing Pennsylvania's elections.

## I.   MANDATORY APPLICATION OF THE DATE REQUIREMENT DOES NOT VIOLATE THE FEDERAL MATERIALITY PROVISION

Three Supreme Court Justices already have concluded that the Third Circuit panel's now-vacated view that mandatory application of the date requirement violates the federal materiality provision is "very likely wrong."  *Ritter*, 142 S. Ct. at 1824 (Mem.) (Alito, J., dissenting from the denial of the application for stay).  The plain statutory text and governing law confirm that the General Assembly's date requirement does not even implicate, let alone violate, 52 U.S.C. § 10101(a)(2)(B).  The Court should enter summary judgment against Plaintiffs on Count I.

### A.   Plaintiffs Lack A Private Right To Enforce The Materiality Provision

As an initial matter, the Court should dismiss Count I because neither 52 U.S.C. § 10101(a)(2)(B) nor 42 U.S.C. § 1983 grants Plaintiffs a right to sue.  Section 10101 provides

that only "the Attorney General may institute … a civil action" under that statute.  52 U.S.C. § 10101(c).  "[T]he negative implication of Congress's provision for enforcement by the Attorney General is that the statute does not permit private rights of action."  *Ne. Ohio Coal. For the Homeless v. Husted*, 837 F.3d 612, 630 (6th Cir. 2016) (reiterating holding that there is no private right to sue and recognizing circuit split); *see also Vote.Org v. Callanen*, 39 F.4th 297, 305 n.5 (5th Cir. 2022) (reserving question); *but see Schwier v. Cox*, 340 F.3d 1284, 1294-96 (11th Cir. 2003).  Neither should the Court let Plaintiffs evade that limit through § 1983, which provides a private right of action to enforce only "unambiguously conferred right[s]."  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 282 (2002).  And again, the fact that the materiality provision authorizes suits only by the Attorney General suggests Congress did not intend to permit private suits under § 1983. *See City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005) (noting that "the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others" (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)) (alteration omitted)).[1]

### B.    Application Of The Date Requirement Does Not Violate Federal Law

If the Court reaches the merits, it should also grant summary judgment against Plaintiffs on Count I because the General Assembly's date requirement does not even implicate, let alone violate, the materiality provision.  The materiality provision states:

> No person acting under color of law shall … deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B).

---

[1] The U.S. Supreme Court is currently considering a case in which the existence of a cause of action to enforce a federal statute under § 1983 is at issue.  *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, No. 21-806 (U.S. argued Nov. 8, 2022).

For at least three reasons, the "plain and unambiguous" text demonstrates that application of the General Assembly's date requirement to preclude counting of undated or incorrectly dated absentee or mail-in ballots does not violate the materiality provision. *Castro v. DHS*, 835 F.3d 422, 429 (3d Cir. 2016) ("The first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."). *First*, the materiality provision prohibits only "deny[ing] the right of any individual to vote," not imposing mandatory rules on the act of completing and casting a ballot. 52 U.S.C. § 10101(a)(2)(B). The materiality provision therefore has no application to the date requirement because "[w]hen a mail-in ballot is not counted because it was not filled out correctly, the voter is not denied 'the right to vote.'" *Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay) (quoting 52 U.S.C. § 10101(a)(2)(B)). Rather, "that individual's vote is not counted because he or she did not follow the rules for casting a ballot." *Id.*; *see also* H. Rep. No. 88-914, pt. 1, at 19 (recognizing that Title I of the Civil Rights Act, now codified in § 10101, was part of an effort "by which the Congress took steps to guarantee to all citizens *the right to vote* without discrimination as to race or color" (emphasis added)).

Indeed, the "*right* to vote" protected by the materiality provision, 52 U.S.C. § 10101(a)(2)(B) (emphasis added), is obviously different from the *act* of voting. An individual possesses the "right to vote" when she satisfies the state-law qualifications; states, including Pennsylvania, use registration to confirm those qualifications. *See* 25 P.S. § 1301; 25 Pa. C.S. § 1328(a)(1)(ii), (b)(2)(ii). But even after qualifying and registering, a voter "may be unable to cast a vote for any number of reasons," such as showing up to the polls after Election Day, failing to sign or to use a secrecy envelope for an absentee or mail-in ballot, attempting to vote for too many candidates for a single office, returning the ballot to the wrong location, or arriving at the

wrong polling place.  *Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay).  Such a voter has not been denied the *right* to vote, but instead has failed to complete the *act* of voting in compliance with state law.  *See id.*; *see also Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1371 (S.D. Fla. 2004) (the materiality provision is not "intended to apply to the counting of ballots by individuals already deemed qualified to vote").

The consequence of such noncompliance is not disqualifying the voter, stripping the voter's eligibility to vote, or removing the voter from the list of registered voters, but rather declining to count the voter's (invalid) ballot.  *See Ball*, 284 A.3d 1189.  Indeed, any eligible, registered voter who fails to comply with such rules *retains* the right to vote in any election in compliance with the state-law rules for voting.  Accordingly, application of rules such as those requiring voting by Election Day, signing absentee or mail-in ballots, using secrecy envelopes, and voting at a specific location do not deny anyone the right to vote.  Nor does application of the date requirement.  *See Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay) ("Even the most permissive voting rules must contain some requirements, and the failure to follow those rules constitutes the forfeiture of the right to vote, not the denial of that right."); *id.* ("[I]t would be absurd to judge the validity of voting rules based on whether they are material to eligibility."); *see also Rosario v. Rockefeller*, 410 U.S. 752, 757 (1973) (application of neutral state-law voting requirement does not "disenfranchise" voters); *Timmons*, 520 U.S. at 358 ("States may, and inevitably must, enact reasonable regulations" for effectuating votes); *Brnovich*, 141 S. Ct. at 2338 ("Casting a vote, whether by following the directions for using a voting machine or completing a paper ballot, requires compliance with certain rules."); *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 35 (2020) (Mem.) (Kavanaugh, J., concurring)

("[R]easonable election deadlines do not 'disenfranchise' anyone under any legitimate understanding of that term.").

As the Fifth Circuit has reasoned, "[i]t cannot be that any requirement that may prohibit an individual from voting if the individual fails to comply denies the right of that individual to vote under" the federal materiality provision.  *Vote.Org v. Callanen*, 39 F.4th 297, 305 n.6 (5th Cir. 2022).  Yet that is precisely what Plaintiffs ask the Court to hold—indeed, various county boards of elections in this litigation contend that even "when a voter shows up at the polls on the wrong day or after the polls have closed," "that voter has also in some sense been denied the right to vote."  Def. Cnty. Bd. of Elections' Mem. In Resp. to Mot. To Dismiss 8, ECF No. 267.  This faulty premise, irreconcilable with the Supreme Court's jurisprudence, alone dooms Plaintiffs' materiality challenge to the date requirement as "a matter of law."  Fed. R. Civ. P. 56(a); *see also Ritter*, 142 S. Ct. at 1825 (Alito, J., dissenting from the denial of the application for stay); *Rosario*, 410 U.S. at 757; *Timmons*, 520 U.S. at 358; *Brnovich*, 141 S. Ct. at 2338; *Democratic Nat'l Comm.*, 141 S. Ct. at 35 (Kavanaugh, J., concurring).

*Second*, the materiality provision requires that the error or omission affect a "determin[ation] whether such individual is qualified under State law to vote."  52 U.S.C. § 10101(a)(2)(B).  It therefore regulates requirements and practices related to qualifications and registration to vote, not rules "that must be met in order to cast a ballot that will be counted." *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissenting from the denial of the application for stay); *see also Vote.Org*, 39 F.4th at 305 n.6.  To fall within the scope of the materiality provision, "it is not enough that the error or omission be immaterial *to* whether the individual is qualified to vote; the paper or record must also be used 'in determining' the voter's qualifications." *Ball*, 289 A.3d at 38 (Opinion of Justice Brobson) (emphasis original).

Here, the date on the absentee or mail-in ballot declaration is not used to determine an individual's *qualifications* to vote, but rather the *validity* of a ballot. *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissenting from the denial of the application for stay) ("There is no reason why the requirements that must be met in order to register (and thus be 'qualified') to vote should be the same as the requirements that must be met in order to case a ballot that will be counted."); *see also Vote.Org*, 39 F.4th at 305 n.6. Indeed, application of the date requirement results in invalidation of a noncompliant ballot, not a "determin[ation]" that the individual is or is not "qualified under State law to vote." 52 U.S.C. § 10101(a)(2)(B). In other words, mandatory application of the date requirement results in a ballot not being counted, not in an individual being stripped of the right to vote or removed from, or prevented from joining, the list of registered voters. *Compare, e.g.*, *Schwier*, 340 F.3d at 1294; *Browning*, 522 F.3d at 1173; H. Rep. No. 88-914, pt. 2, at 5; *see also Ritter*, 142 S. Ct. at 1825 (Alito, J., dissenting from the denial of the application for stay); *Vote.Org*, 39 F.4th at 305 n.6. Because mandatory application of the date requirement does not result in a qualification determination, it is outside the plain terms and narrow scope of, and does not violate, the federal materiality provision. *See Ritter*, 142 S. Ct. at 1825 (Alito, J., dissenting from the denial of the application for stay); *see also Vote.Org*, 39 F.4th at 305 n.6; *Schwier*, 340 F.3d at 1294; *Browning*, 522 F.3d at 1173; *Ball*, 289 A.3d at 37-40 (Opinion of Justice Brobson).

The two other subsections of § 10101(a)(2) further underscore this point. Just as "a word is known by the company it keeps," *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961), so too is a statutory provision, *see United States v. Tupone*, 442 F.3d 145, 151 (3d Cir. 2006) ("[T]he text of a statute must be considered in the larger context or structure of the statute in which it is found."). Those subsections require election officials to apply uniform "standard[s], practice[s], [and] procedure[s] … in determining whether any individual is qualified to vote under state law,"

52 U.S.C. § 10101(a)(2)(A), and restrict the use of literacy tests "as a qualification for voting in any election," *id.* § 10101(a)(2)(C). Thus, "like the other two [subsections]," the materiality provision "relates to determinations of *who* may vote—*i.e.*, voter qualifications," not what voters must *do* to cast a valid ballot, *Ball*, 289 A.3d at 37 (Opinion of Justice Brobson) (emphasis original). Indeed, it would be unusual, to say the least, to sandwich a provision governing *all* paper-based election regulations between two voter-qualification provisions. "Congress should make its intention clear and manifest if it intends to pre-empt the historic powers of the State." *Gregory v. Ashcroft*, 501 U.S. 452, 461 (1991). There is no such clear intention here, and the Court should not find Plaintiffs' purported federal authority over state elections without it.

This textual and commonsense construction comports with Congress's purpose in enacting the materiality provision. Congress enacted the provision and the broader § 10101 of which it is part "to enforce th[e] [Fifteenth] Amendment[]," *United States v. Mississippi*, 380 U.S. 128, 138 (1965), which guarantees that "[t]he right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude," U.S. Const. amend. XV, § 1; *see also Ind. Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 839 (S.D. Ind. 2006) ("[W]ell-settled law establishes that § 1971 was enacted pursuant to the Fifteenth Amendment for the purpose of eliminating racial discrimination in voting requirements."); *Broyles v. Texas*, 618 F. Supp. 2d 661, 697 (S.D. Tex. 2009) (same).

Congress's purpose was to "forbid[] the practice of *disqualifying voters* for their failure to provide information irrelevant to their eligibility to vote." *Schwier*, 340 F.3d at 1294 (emphasis added). In particular, Congress addressed "the practice of requiring unnecessary information for voter registration"—such as listing the registrant's "exact number of months and days in his age"—"with the intent that such requirements would increase the number of errors or omissions

on the application forms, thus providing an excuse to disqualify potential voters." *Id.*  In other words, "[s]uch trivial information served no purpose other than as a means of inducing voter-generated errors that could be used to justify rejecting *applicants*." *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008) (emphasis added); *see also* H. Rep. No. 88-914, pt. 2, at 5 (1963) ("[R]egistrars [would] overlook minor misspelling errors or mistakes in age or length of residence of white applicants, while rejecting" an application from an African-American applicant "for the same or more trivial reasons.").  The federal materiality statute thus functions as a safeguard against discriminatory application of state voter qualification and registration rules, not a limitation on rules that must be met for a ballot to be counted.  *See Mississippi*, 380 U.S. at 138; *Schwier*, 340 F.3d at 1294; *Browning*, 522 F.3d at 1173.

Indeed, some courts have declined even to *consider* claims brought under the materiality provision when, as now, the plaintiff has failed to allege racial discrimination in application of the challenged state law.  *See, e.g.*, *Rokita*, 458 F. Supp. 2d at 839; *Broyles*, 618 F. Supp. 2d at 697.  At minimum, that Congress adopted the materiality provision under the Fifteenth Amendment requires that it be strictly construed—and, thus, limited to state laws used to "determin[e]" whether an individual is or is not "qualified under State law to vote." 52 U.S.C. § 10101(a)(2)(B); *see Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009); *City of Boerne v. Flores*, 521 U.S. 507, 525-26 (1997); *see also Boumediene v. Bush*, 553 U.S. 723, 787 (2008) ("We are obligated to construe the statute to avoid constitutional problems if it is fairly possible to do so.").

*Third*, the materiality provision demands that the "record or paper" be related to an "application, registration, or other act requisite to voting." 52 U.S.C. § 10101(a)(2)(B).  True, an absentee or mail-in ballot and accompanying declaration is a "record or paper." *Id.*  But casting a ballot—which requires completing the declaration, *Ball*, 289 A.3d at 22-23—constitutes the *act* of

11

voting, not an application, registration, or other act *requisite* to voting. *Ritter*, 142 S. Ct. at 1826 n.2 (Alito, J., dissenting from the denial of the application for stay). It would be an "awkward" statutory construction at best to extend the materiality provision to absentee and mail-in ballots and the date requirement. *Id.*; *see also Ball*, 289 A.3d at 26 (Opinion of Justice Wecht) ("Logic and ordinary rules of statutory construction … dictate that an 'act requisite to voting' must be different from voting itself."). Voting is voting; it is not an act requisite to voting.

Indeed, the "time-honored canon *ejusdem generis*[] … teaches that where general words follow an enumeration of two or more things, those successive words refer only to … things of the same general kind or class specifically mentioned." *N. Sound Cap. LLC v. Merck & Co.*, 938 F.3d 482, 490 (3d Cir. 2019). Here, the two preceding items in § 10101(a)(2)(B)—"application" and "registration"—are acts "requisite to voting" and, in particular, acts to confirm a voter's qualifications. Thus, "other act requisite to voting" must similarly refer to acts relating to voter qualification. *See Ball*, 289 A.3d at 38 n.11 (Opinion of Justice Brobson) (the "understanding that the scope of the [materiality provision] is limited to records or papers used in determining a voter's qualifications is supported by the *ejusdem generis* canon of statutory construction").

### C.   There Is No Tenable Basis To Conclude That Mandatory Application Of The Date Requirement Violates The Federal Materiality Provision

In their Amended Complaint, Plaintiffs offer two main arguments in support of their claim that the date requirement violates the federal materiality provision. Both are unpersuasive.

*First*, the entire thrust of Plaintiffs' Amended Complaint is that the date requirement "is immaterial to determining whether an elector is qualified to vote in Pennsylvania," Am. Compl. ¶ 38, which in Pennsylvania requires being at least 18 years of age on the date of the election; having been a citizen of Pennsylvania for at least one month; having lived in the relevant election district for at least 30 days; and not being imprisoned for a felony, *see* 25 P.S. § 1301; *see also*

12

Am. Compl. ¶ 17.  Plaintiffs are entirely correct that compliance with the date requirement is not a qualification to vote.  But that point *disproves* Plaintiffs' case.  As explained above, the date requirement is not used to determine whether an individual is "qualified under State law to vote," 52 U.S.C. § 10101(a)(2)(B), so it does not implicate, let alone violate, the federal materiality provision, *see supra* Part I.B.

In fact, Plaintiffs' proposed reading of the federal materiality provision is breathtakingly broad—and, unsurprisingly, incorrect.  Under Plaintiffs' reading, states could enact no mandatory rules against "error[s] or omission[s]" on any voting "record[s] or paper[s]" except those that merely implement the requirements for "determining whether [an] individual is qualified under State law to vote."  Am. Compl., **Ex. 1**, ¶¶ 33, 37-38.  In other words, under Plaintiffs' construction of the federal materiality provision, states could not adopt *any* requirements for completing ballots or ballot-return envelopes that do not confirm the individual's qualifications to vote.

Take, for example, the General Assembly's requirement that a voter sign an absentee or mail-in ballot return envelope, which appears in the very same statutory sentence as—and is part and parcel with—the date requirement.  *See* 25 P.S. §§ 3146.6(a), 3150.16(a) (voter "shall … fill out, date and sign the declaration" printed on the outer envelope of the ballot).  Before the Pennsylvania Supreme Court in *Ball*, Acting Secretary Chapman agreed that the signature requirement is valid and mandatory and does not violate the federal materiality provision.  SOF ¶ 41.  And the signature requirement is not material to determining a voter's qualifications.  *Ritter*, 142 S. Ct. at 1826 n.2 (Mem.) (Alito, J., dissenting from the denial of the application for stay) (discussing signature requirement).  So under Plaintiffs' proposed reading, the signature requirement would violate the federal materiality provision: a failure to provide a signature is an "omission" or "an error" involving a "record or paper," and the signature requirement is

"immaterial to determining whether an elector is qualified to vote in Pennsylvania."  Am. Compl., **Ex. 1**, ¶ 33, 37-38 (internal quotation marks omitted).

Take, as another example, the secrecy-envelope requirement contained in the same statutory section as the date requirement.  *See* 25 P.S. §§ 3146.6(a), 3150.16(a) (voter "shall … enclose and securely seal" the ballot in a secrecy envelope).  The Pennsylvania Supreme Court has upheld that requirement as mandatory, *see Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 379-80 (Pa. 2020), and the Acting Secretary conceded in *Ball* that it does not violate the federal materiality provision, *see* SOF ¶ 42.  But it would on Plaintiffs' proposed reading: a failure to use a secrecy envelope is an "omission" or "an error" involving a "record or paper," and the secrecy envelope requirement is "immaterial to determining whether an elector is qualified to vote in Pennsylvania."  **Ex. 1** ¶ 33, 37-38 (internal quotation marks omitted); *Ball*, 289 A.3d at 38-39 (Opinion of Justice Brobson) ("it would not surprise me at all to see, in future litigation, an argument that" requiring secrecy envelopes violates the materiality provision).

If another example were somehow needed, consider also the General Assembly's commonplace prohibition on "mark[ing] [a] ballot for more persons for any office than there are candidates to be voted for such office."  25 P.S. § 3063(a).  Under the Election Code, any such overvotes are invalid, and the ballot "shall not be counted for such office."  *Id.*  Under Plaintiffs' proposed construction of federal law, the overvote prohibition would violate the materiality provision: mismarking a ballot is an "omission" or "an error" on a "record or paper," and the overvote prohibition is "immaterial to determining whether an elector is qualified to vote in Pennsylvania."  **Ex. 1** ¶ 33, 37-38 (internal quotation marks omitted).

These examples are illustrative of the disruption Plaintiffs' (wrong) interpretation of the materiality provision would cause.  There are surely many more.  To name just a few, Plaintiffs

would also cast in doubt the validity of commonplace voter assistance declarations, and requirements that in-person voters sign pollbooks.  *See* 25 P.S. §§ 3050, 3058.  In fact, under Plaintiffs' reading "no election law that imposes informational requirements on a record or paper unrelated to determining voter qualification can survive a [§ 10101(a)(2)(B)] challenge."  *Ball*, 289 A.3d at 39 (Opinion of Justice Brobson).

The mischief effected by Plaintiffs' proposed reading of the federal materiality provision would not be confined to Pennsylvania.  Plaintiffs' misconstruction imperils scores of state laws nationwide, including signature requirements, *see, e.g.*, N.J. Stat. § 19:62-11; 15 Del. C. § 5514(a)(1), and overvote prohibitions, *see, e.g.*, 15 Del. C. § 4972(b)(6); A.R.S. § 16-611; Fla. Stat. § 101.5614(5); 10 Ill. Comp. Stat. Ann. 5/17-16; Ohio Rev. Code § 3505.28; N.C. Gen. Stat. § 163-182.1(a)(4).

In short, Plaintiffs' reading "would subject virtually every electoral regulation" related to voting records and papers to the superintendence of the federal materiality provision, "hamper the ability of States to run efficient and equitable elections, and compel federal courts to rewrite state electoral codes."  *Clingman v. Beaver*, 544 U.S. 581, 593 (2005).  Indeed, if Plaintiffs are correct, numerous state election rules—such as the General Assembly's signature and secrecy-envelope requirements and overvote prohibition—have been invalid since Congress enacted the federal materiality provision nearly six decades ago.  That not only defies the statute's plain text, but also the rule that "if Congress intends to alter the usual constitutional balance between the States and Federal Government, it must make its intention to do so unmistakably clear in the language of the statute."  *Gregory*, 501 U.S. at 460; *see Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021) (applying federalism canon).  The absurdity of discovering, sixty years after the fact, that the materiality provision declares *all* these commonplace rules invalid confirms the folly of

Plaintiffs' interpretation.  *See FTC v. Bunte Bros., Inc.*, 312 U.S. 349, 352 (1941) ("[J]ust as established practice may shed light on the extent of power conveyed by general statutory language, so the want of assertion of power by those who presumably would be alert to exercise it, is equally significant in determining whether such power was actually conferred."); *United States v. Am. Union Transp., Inc.*, 327 U.S. 437, 459 (1946) (Frankfurter, J., dissenting) ("[A] consistent and unexplained failure to exercise power not obviously conferred by legislation may be … persuasive that the power claimed was never conferred.").

*Second*, Plaintiffs cite to the Third Circuit's vacated opinion in *Migliori* as "highly persuasive" authority.  **Ex. 1** ¶ 27.  But "of necessity [the Supreme Court's] decision vacating the judgment of the [Third Circuit] deprives that court's opinion of precedential effect."  *County of Los Angeles v. Davis*, 440 U.S. 625, 634 n.6 (1979) (addressing consequences of *Munsingwear* vacatur); *see also Polychrome Int'l Corp. v. Krigger*, 5 F.3d 1522, 1534 n.30 (3d Cir. 1993) (court is not "bound" by holding in a vacated opinion) (cited at **Ex. 1** ¶ 57).  *Munsingwear* vacatur "is commonly utilized … to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences."  *United States v. Munsingwear, Inc.*, 340 U.S. 36, 41 (1950).  The Third Circuit's decision becoming moot prevented review by the Supreme Court, and the subsequent vacatur "eliminate[d] [the] judgment, review of which was prevented through happenstance."  *Id.* at 40.  The Court should not rely on that analysis.  In all events, the Third Circuit's opinion was wrongly decided.  *See supra* Part I.B.

Nor should the Court follow the two Commonwealth Court decisions from last year.  *See* SOF ¶ 39.  Those decisions relied upon the now-vacated *Migliori* decision, have been superseded by the Pennsylvania Supreme Court's holding in *Ball*, and were incorrect.  *See id.*; *supra* Part I.B. The Court should grant summary judgment against Plaintiffs on Count I.

## II.   MANDATORY APPLICATION OF THE DATE REQUIREMENT DOES NOT VIOLATE THE UNITED STATES CONSTITUTION.

The Court also should grant summary judgment on Count II because Plaintiffs' constitutional challenge to the date requirement fails "as a matter of law."  Fed. R. Civ. P. 56(a).

At the threshold, any regulation of absentee and mail-in voting, such as the date requirement, does not implicate "fundamental rights," *Biener v. Calio*, 361 F.3d 206, 214 (3d Cir. 2004), because "there is no constitutional right to an absentee ballot," *Mays v. LaRose*, 951 F.3d 775, 792 (6th Cir. 2020); *Tully v. Okeson*, 977 F.3d 608, 611 (7th Cir. 2020); *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 406 (5th Cir. 2020); *see also McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 807 (1969) ("[A]bsentee statutes, which are designed to make voting more available to some groups who cannot easily get to the polls, do not themselves deny … the exercise of the franchise.").  Accordingly, the *Anderson-Burdick* framework Plaintiffs invoke, *see* **Ex. 1 ¶¶** 41-49, is inapplicable, *see Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 137 (3d Cir. 2022) ("The fact that an election law burdens a fundamental right is necessary … to trigger *Anderson-Burdick*.").  Instead, rational basis scrutiny applies.  *See McDonald*, 394 U.S. at 809.  For the reasons explained below, the date requirement is constitutional under that test because it "bear[s] some rational relationship to a legitimate state end."  *Id.*

In all events, the date requirement is constitutional even under the *Anderson-Burdick* framework.  That framework requires courts to weigh the character and magnitude of the burden, if any, imposed by the law on protected rights against the state's interests in and justifications for the law.  *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189-91 (2008) (Opinion of Stevens, J.).  "Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest," while those imposing "[l]esser burdens … trigger less exacting review, and [the] State's important regulatory interests will usually be enough to justify

17

reasonable, nondiscriminatory restrictions." *Timmons v. Twin Cty. Area New Party*, 520 U.S. 351, 358-59 (1997). The date requirement is constitutional because it imposes no more than the usual burdens of voting and is amply justified by the State's interests in protecting the integrity of its elections.

### A.   The Date Requirement Involves Nothing More Than The Usual Burdens Of Voting And Is Constitutional

The commonsense date requirement's "burdens" are too light and its justifications too reasonable to violate the Constitution. The U.S. Supreme Court's decision in *Crawford* demonstrates as much. The plaintiffs in that case claimed that an Indiana law requiring in-person voters to present a photo ID imposed an unconstitutional burden under the *Anderson/Burdick* framework. *See* 553 U.S. at 185 (Opinion of Stevens, J.). The Supreme Court noted that because the plaintiffs brought a facial challenge "that would invalidate the statute in all its applications, they bear a heavy burden of persuasion." *Id.* at 200. The plaintiffs, however, did not introduce "evidence of a single, individual Indiana resident who [would] be unable to vote" under the challenged law. *Id.* at 187 (internal quotation marks omitted). The Supreme Court ultimately held that the plaintiffs had failed to carry that burden and rejected their claim. *See id.* at 200-04.

The Supreme Court analyzed the character and magnitude of the burden imposed by the photo ID requirement. *See id.* at 198. The Supreme Court recognized that the law placed some burden on voters, particularly voters who lacked a photo ID. *See id.* The Supreme Court noted that voters who did not already have a photo ID must bear "the inconvenience of making a trip to the [Bureau of Motor Vehicles], gathering the required documents, and posing for a photograph." *Id.* The Supreme Court concluded, however, that such inconvenience "surely does not qualify as a substantial burden on the right to vote, or even represent a significant increase over the usual burdens of voting." *Id.*

The Supreme Court also addressed the State's asserted interests in adopting the photo ID requirement—"deterring and detecting voter fraud," "moderniz[ing] election procedures," and "safeguarding voter confidence."  *Id.* at 191.  The Supreme Court concluded that those interests were "legitimate" and that the photo ID requirement "is unquestionably relevant to the State's interest in protecting the integrity and reliability of the election process."  *Id.*  Accordingly, the Supreme Court held that the plaintiffs' unconstitutional burden claim failed.  *See id.* at 200-04.

Plaintiffs' unconstitutional burden claim likewise fails because the date requirement imposes no more than the "usual burdens of voting."  *Id.* at 198.  Plaintiffs concede that the signature requirement is constitutional.  It cannot be a significant burden to require voters to write a date *on the same declaration*.  Moreover, any burden in writing the date is a lesser burden than "[h]aving to identify one's own polling place and then travel there to vote," which "does not exceed the usual burdens of voting."  *Brnovich*, 141 S. Ct. at 2344 (internal quotation marks omitted).  And it certainly is less onerous than "the inconvenience of making the trip to the [Bureau of Motor Vehicles], gathering the required documents, and posing for a photograph" upheld as minimal and constitutional in *Crawford*.  553 U.S. at 198 (Opinion of Stevens, J.).

Moreover, the date requirement advances "legitimate" and "unquestionably relevant" State interests related to "protecting the integrity and reliability of the election process."  *Id.* at 191.  The date requirement serves several weighty interests and an "unquestionable purpose."  *In re 2020 Canvass*, 241 A.3d at 1090 (Opinion of Justice Dougherty, Chief Justice Saylor, and Justice Mundy); *see also id.* at 1087 (Opinion of Justice Wecht) (noting that "colorable arguments … suggest [the date requirement's] importance"); *see supra* pp. 2-4.

*First*, the date requirement advances the State's interests in "deterring and detecting voter fraud" and "protecting the integrity and reliability of the electoral process."  *Crawford*, 553 U.S.

at 191 (Opinion of Stevens, J.); *see also Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989); *In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d at 1091 (Opinion of Justice Dougherty, Chief Justice Saylor, and Justice Mundy).  Of course, "it should go without saying that a State may take action to prevent election fraud without waiting for it to occur and be detected within its own borders."  *Brnovich*, 141 S. Ct. at 2348.  And here, the date requirement's advancement of the interest in preventing fraud is actual, not hypothetical: just last year, the date requirement was used to detect voter fraud committed by a deceased individual's daughter in *Commonwealth v. Mihaliak*, No. CR-126-22 (June 3, 2022).  *See* SOF ¶¶ 45-50.  In fact, because current Pennsylvania Supreme Court precedent precludes county boards of elections from comparing the signature on the ballot envelope with one in the official record, the *only* evidence of third-party fraud on the face of the fraudulent ballot in *Mihaliak* was the handwritten date of April 26, 2022, which was twelve days after the decedent had passed away. *See id.*  The date requirement clearly serves—at the very least—the interest of combatting election fraud.

*Second*, the date requirement serves the State's interest in solemnity—*i.e.*, in ensuring that voters "contemplate their choices" and "reach considered decisions about their government and laws."  *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1887-88 (2018); *Tashjian v. Republican Party*, 479 U.S. 208, 221-22 (1986) (state has "legitimate interests" in "providing for educated and responsible voter decisions.").  The formalities that attend voting—namely, that the "elector shall then fill out, *date and sign* the declaration printed," 25 P.S. § 3146.6(a) (emphasis added); § 3150.16(a)—encourage such deliberation, *see Ball*, 289 A.3d at 10 (the date "provides proof of when the elector actually executed the ballot in full, ensuring their desire to cast it in lieu of appearing in person at the polling place").  "Signature requirements have long been recognized as

fulfilling cautionary functions in protecting an individual's rights." *State v. Williams*, 565 N.E.2d 563, 565 (Ohio 1991).  Formalities like signing and dating requirements serve the "cautionary function" by "impressing the parties with the significance of their acts and their resultant obligations."  *See Davis G N Mortg. Corp.*, 244 F. Supp. 2d 950, 956 (N.D. Ill. 2003).  Such formalities "guard[] against ill-considered action," *Thomas A. Armbruster, Inc. v. Barron*, 491 A.2d 882, 883-84 (Pa. Super. 1985), and the absence of formalities "prevent[s] … parties from exercising the caution demanded by a situation in which each ha[s] significant rights at stake," *Thatcher's Drug Store v. Consol. Supermarkets*, 636 A.2d 156, 161 (Pa. 1994).  Traditional signing and dating requirements aid persons "to appreciate the seriousness of their actions," *id.*, and for that reason are required in a range of instruments, including "wills" and "transfer[s] of real property," *Williams*, 565 N.E.2d at 565.

Pennsylvania can surely require its citizens to exercise the same caution when engaging in the solemn civic exercise of voting.  "Casting a vote is a weighty civic act, akin to a jury's return of a verdict, or a representative's vote on a piece of legislation."  *Minn. Voters All.*, 138 S. Ct. at 1888.  If states can require the formalities of signing and dating for wills and property transactions, they can do the same for voting.

Moreover, the date requirement is part and parcel with the signature requirement, and they together focus voters "on the important decisions immediately at hand."  *Id.*  Indeed, everyday experience confirms that signatures are frequently accompanied by dates—to name an easy example, on checks.  Pennsylvania law, for its part, often pairs signature and date requirements.[2]

---

[2] For example, see 75 Pa. C.S. § 1731(c.1) (form rejecting uninsured motorist protection "must be signed by the first named insured and dated to be valid"); *id.* § 1738(e) (form rejecting stacked limits of underinsured motorist coverage "must be signed by the first named insured and dated to be valid"); 62 P.S. § 1407-C(c)(1) ("In order to decline participation in the health information exchange, a patient must sign and date a form declining participation."); 20 Pa. C.S. § 5484(c), (d)

And the forms provided in Pennsylvania statute which provide spaces for both a signature and a date are too numerous to list here.[3]  It thus makes no sense to analyze the signature requirement and the date requirement separately—they appear in the same statutory clause, govern the same document, and together perform a cautionary function.

In fact, that Plaintiffs do not even bother contesting the constitutionality of the signature requirement confirms that the date requirement is similarly lawful.  Signing one's name is at least

---

(requiring "dated signature of the attending physician" on DNR bracelets and necklaces); 35 Pa. C.S. § 5203(b)(2) ("The patient executing and filing a voluntary nonopioid directive form with a practitioner shall sign and date the form."); 73 P.S. § 517.7(d)(4) (arbitration clause "shall not be effective unless both parties have assented as evidenced by signature and date, which shall be the date on which the contract was executed"); 35 Pa. C.S. § 52B02(b)(4) ("The treatment agreement form under subsection (a)(3) shall … include … [t]he signature of the individual and the date of signing."); 24 P.S. § 17-1717-A(i)(3) ("Each person signing a petition to appeal denial of a charter under clause (2) … shall include his or her .. signature … and the date of signing."); 51 Pa. C.S. § 9102(c) ("Each affidavit or acknowledgment taken as above authorized shall contain the date, signature and title of the officer or person administering the same."); 20 Pa. C.S. § 5601(b)(1) ("A power of attorney shall be dated, and it shall be signed by the principal by signature or mark."); 71 P.S. § 741.806 ("No resignation shall be made or shall be valid unless it bears the signature of the person resigning and the date of the resignation."); 23 Pa. C.S. § 6705(b) ("The Office of Victim Advocate shall certify an applicant as a program participant if … [t]he application contains the date[] [and] the applicant's signature."); 35 P.S. § 10231.501(c)(6) ("Each application must include … the signature of the applicant and date signed."); 53 P.S. § 13102(a) ("Each elector signing such petition shall add to his signature his occupation and residence and the date of signing."); 35 P.S. § 7607(c) ("A written consent to disclosure of confidential HIV-related information shall include" "[t]he signature of the subject" and "[t]he date on which the consent is signed."); 35 Pa. C.S. § 52A04(a)(3)(i)(E) (written consent for opioid prescription for a minor "must contain" "[t]he signature of the minor's parent or guardian or of an authorized adult and the date of signing."); 73 P.S. § 2403(1) (consent to appear in a directory "must be given by one of the following: (1) In writing in a separate written document or in a separate distinct section within a written document that includes the customer's signature and the date."); 72 P.S. § 4712-106(a)(9) (application for tax exemption "shall include … [t]he signature of the applicant and the date of signing."); 20 Pa. C.S. § 5442(b)(1) ("A living will shall be … dated and signed."); 20 Pa. C.S. § 5832(b)(1) ("A mental health power of attorney must be … [d]ated and signed.").

[3] To name a few, see 57 Pa. C.S. § 316 (short form certificates of notarial acts); 23 Pa. C.S. § 5331 (parenting plan); 73 P.S. § 201-7(j.1)(iii)(3)(ii) (emergency work authorization form); 42 Pa. C.S. § 8316.2(b) (childhood sexual abuse settlement form); 73 P.S. § 2186(c) (cancellation form for certain contracts); 42 Pa. C.S. § 6206 (unsworn declaration).

as "burdensome" as writing a date.  If signature requirement is valid and not unconstitutionally burdensome, then so too is the date requirement.

*Third*, the date requirement advances the State's interest in "safeguarding voter confidence" in Pennsylvania elections.  *Crawford*, 553 U.S. at 191 (Opinion of Stevens, J.). Pennsylvania law has long imposed the date requirement, *see* SOF ¶¶ 28-32, which encourages "citizen participation in the voting process" by ensuring voters that Pennsylvania elections are free, fair, trustworthy, and untainted by fraud, *Crawford*, 553 U.S. at 197 (Opinion of Stevens, J.).  The date requirement is constitutional.

### B. The Record Provides No Tenable Basis To Conclude That Mandatory Application Of The Date Requirement Violates The Constitution

Plaintiffs provide no evidence regarding any of the benefits of the date requirement or whether the requirement advances legitimate state interests.  *See* SOF ¶ 117.  Moreover, Plaintiffs provide no evidence that the date requirement imposes anything more than "the usual burdens of voting." *Crawford*, 553 U.S. at 198 (Opinion of Stevens, J.).

The only individual whom Plaintiffs identify in their Amended Complaint is Bette Eakin. *See* SOF ¶¶ 1-2.  But Plaintiffs do not even allege, much less prove, that Ms. Eakin is "unable to vote" due to the date requirement.  *Crawford*, 553 U.S. at 187 (Opinion of Stevens, J.).  To the contrary, Ms. Eakin was able to vote in the November 2022 election with her husband's assistance. *See* SOF ¶ 2.

Plaintiffs also proffered the testimony of a putative expert witness, Dr. Hopkins.  *See* SOF ¶¶ 116-40.  But Dr. Hopkins admitted that he did not measure or analyze the cost to any voter of complying with the date requirement.  *See* SOF ¶¶ 118-21, 127.  He therefore offered no probative evidence on the question whether the date requirement imposes a "burden" on voters for purposes of the *Anderson/Burdick* framework.  *See Crawford*, 553 U.S. at 198 (Opinion of Stevens, J.)

(burden on voters is the cost of complying with the challenged rule, such as "the inconvenience of making a trip to the [Bureau of Motor Vehicles], gathering the required documents, and posing for a photograph" to comply with a photo-ID requirement).

Moreover, Dr. Hopkins's purported opinions regarding the alleged effect of date requirement on "older, Black, and Hispanic voters," *see* SOF ¶¶ 121-25, are multiply flawed and fail to carry Plaintiffs' burden in any event.  In the first place, once again, Dr. Hopkins did not calculate the cost to any voter—including any older, African-American, or Hispanic voter—of complying with the date requirement.  *See* SOF ¶¶ 118-21, 127; *Crawford*, 553 U.S. at 198 (Opinion of Stevens, J.).  Moreover, even if he had, it is at best unclear whether such a subgroup analysis is even proper under the *Anderson/Burdick* framework.  *See, e.g.*, *Crawford*, 553 U.S. at 204-09 (Scalia, J., concurring); *Ne. Ohio Coalition for the Homeless*, 837 F.3d at 631 ("Zeroing in on the abnormal burden experienced by a small group of voters is problematic at best, and prohibited at worst.").  Indeed, any attempt to shoehorn a challenge based upon racial or ethnic subgroups such as African-American or Hispanic voters into the *Anderson/Burdick* framework is particularly problematic because it would require the Court to circumvent the rigorous requirements for proving racial discrimination enshrined in the Fourteenth Amendment.  *See, e.g.*, *Personnel Admn'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979); *Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 551 (3d Cir. 2011).

In all events, Plaintiffs have not provided through Dr. Hopkins or any other source any evidence to prove that any subgroup of voters experiences a heightened burden to comply with the date requirement, much less an unconstitutional one.  *Compare Crawford*, 553 U.S. at 200-03 (Opinion of Stevens, J.) (rejecting proposed subgroup analysis); *Ne. Ohio Coal. for the Homeless*, 837 F.3d at 631 (same).  At most, Dr. Hopkins opines that "older, Black, and Hispanic voters"

24

were "disproportionately likely" not to comply with the date requirement.  SOF ¶¶ 121-22, 124-25.  But that is evidence of the rate and attendant consequences of noncompliance, not the "burden" on voters of complying with the date requirement.  *See Crawford*, 553 U.S. at 198 (Opinion of Stevens, J.).  Even then, the effect Dr. Hopkins reports for "older" voters is that a 60-year-old voter is 0.2 percentage points more likely to fail to comply with the date requirement than a 20-year-old voter, SOF ¶ 138—a minor disparity hardly suggestive of anything more than the "usual burdens of voting," *see Crawford*, 553 U.S. at 198 (Opinion of Stevens, J.); *see also id.* at 197-98 (burdens arising from "life's vagaries" do not violate *Anderson/Burdick*).

Dr. Hopkins, moreover, offers no evidence at all regarding any "Black" or "Hispanic" voter for the simple reason that he *never* determined the race or ethnicity of any voter.  *See* SOF ¶ 126.  Rather, he performed regression analyses regarding the expected rate of noncompliance with the date requirement in *counties* or *census block groups* with certain demographic characteristics.  *See* SOF ¶¶ 129, 136.  In particular, Dr. Hopkins attempted to analyze how the rate of noncompliance would change in a hypothetical county or block group that experienced a change in population from either 0% to 100% Black or 0% to 100% Hispanic.  *See* SOF ¶ 136.  But even Dr. Hopkins conceded that it is not possible from those analyses to determine whether a Black or Hispanic voter is more likely not to comply with the date requirement than a white voter.  *See* SOF ¶ 137.  Plaintiffs have failed to show that the date requirement imposes an unconstitutional burden on any voter.  Their *Anderson/Burdick* claim therefore fails.

## CONCLUSION

The Court should grant summary judgment against Plaintiffs.

Dated:  April 21, 2023

Respectfully submitted,

*/s/ Kathleen A. Gallagher*
Kathleen A. Gallagher
PA I.D. #37950
Russell D. Giancola
PA. I.D. #200058
GALLAGHER GIANCOLA LLC
436 Seventh Avenue, 31st Floor
Pittsburgh, PA 15219
Phone: (412) 717-1900
kag@glawfirm.com
rdg@glawfirm.com

John M. Gore (*pro hac vice*)
E. Stewart Crosland
Louis J. Capozzi III
Joshua S. Ha
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com

Thomas W. King, III
Thomas E. Breth
DILLON, McCANDLESS, KING,
  COULTER & GRAHAM, LLP
128 W. Cunningham St.
Butler, PA  16001
Phone: (724) 283.2200
tking@dmkcg.com
tbreth@dmkcg.com

*Counsel for Intervenor-Defendants*