**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BETTE EAKIN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.: 1:22-cv-00340 |
| | ) | |
| v. | ) | |
| | ) | Judge Susan P. Baxter |
| ADAMS COUNTY BOARD OF | ) | |
| ELECTIONS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**INTERVENOR-DEFENDANTS' OPPOSITION TO
<u>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF CONTENTS ................................................................................................ ii

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................ 2

      I.     MANDATORY APPLICATION OF THE DATE REQUIREMENT
            DOES NOT VIOLATE THE FEDERAL MATERIALITY
            PROVISION ....................................................................................... 2

      II.    MANDATORY APPLICATON OF THE DATE REQUIREMENT
            DOES NOT VIOLATE THE UNITED STATES CONSTITUTION .................. 10

CONCLUSION ............................................................................................................. 20

# TABLES OF AUTHORITIES

**Page**

**Cases**

*Abbott v. Perez*, 138 S. Ct. 2305 (2018) ......................................................................16

*Ball v. Chapman*, 284 A.3d 1189 (Pa. 2022) ...........................................................1, 5

*Ball v. Chapman*, 289 A.3d 1 (Pa. 2023) ........................................................... passim

*Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321 (2021)....................6, 12, 16, 18

*Clingman v. Beaver*, 544 U.S. 581 (2005) ....................................................................8

*Council of Alternative Political Parties v. Hooks*, 121 F.3d 876 (3d Cir. 1997)....................14, 15

*Council of Alt. Pol. Parties v. Hooks*, 179 F.3d 64 (3d Cir. 1999) ................................15

*County of Los Angeles v. Davis*, 440 U.S. 625 (1979)...................................................9

*Crawford v. Marion County Election Board*, 533 U.S. 181 (2008)....................... passim

*Democratic Executive Committee of Florida v. Lee*, 915 F.3d 1312 (11th Cir. 2019)................14

*Democratic Nat'l Comm. V. Wis. State Legislature*, 141 S. Ct. 28 (2020)....................6

*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018) ........................................................9

*Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008)............7

*Ford v. Tenn. Senate*, No. 06-2031, 2006 WL 8435145 (W.D. Tenn. Feb. 1, 2006) ....................9

*Friedman v. Snipes*, 345 F. Supp. 2d 1356 (S.D. Fla. 2004) ........................................10

*Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197 (3d Cir. 1998) ....................8

*In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058 (Pa. 2020) ......................................................................18

*League of Women Voters of Ark. V. Thurston*, No. 5:20-cv-05174, 2021 WL 5312640 (W.D. Ark. Nov. 15, 2021) ....................................................9

*Martin v. Crittenden*, 347 F. Supp. 3d 1302 (N.D. Ga. 2018) ......................................9

*Mays v. LaRose*, 951 F.3d 775 (6th Cir. 2020) ..........................................................10

*McLinko v. Commonwealth*, 279 A.3d 539 (Pa. 2022) ................................................16

*Ne. Ohio Coal. For the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016) .....................16, 17, 19

*Pa. Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020) .......................................12

*Personnel Adm'r of Mass. V. Feeney*, 442 U.S. 256 (1979) ..........................................16

*Ritter v. Migliori*, 142 S. Ct. 1824 (2022) ........................................................... passim

*Rosario v. Rockefeller*, 410 U.S. 752 (1973) ...................................................6

*Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*, No. 1:21-cv-01284-JPB,
    2021 WL 6495360 (N.D. Ga. Dec. 9, 2021) ...............................................9

*Tavarez v. Klingensmith*, 372 F.3d 188 (3d Cir. 2004) .............................................8

*Thrasher v. Ill. Republican Party*, 2013 WL 442832 (C.D. Ill. Feb. 5, 2013) ............................10

*Timmons v. Twin Cty. Area New Party*, 520 U.S. 351 (1997) .......................................6

*United States v. Classic*, 313 U.S. 299 (1941) ...................................................6

*Vote.org v. Callanen*, 39 F.4th 297 (5th Cir. 2022) ...............................................4, 10

## **Statutes**

52 U.S.C. § 10101(a)(2)(B) ...............................................................3, 4, 5, 6

52 U.S.C. § 10101(a)(3)(A) ...............................................................5

Fed. R. Civ. P. 56(a) .....................................................................1

## INTRODUCTION

Intervenor-Defendants the Republican National Committee, National Republican Congressional Committee, and Republican Party of Pennsylvania support and seek to uphold free and fair elections on behalf of all Pennsylvanians. Intervenor-Defendants therefore respectfully ask the Court to deny Plaintiffs' motion for summary judgment and to uphold the General Assembly's duly enacted laws governing Pennsylvania's elections.

Plaintiffs' motion fails "as a matter of law," Fed. R. Civ. P. 56(a), to provide any basis for this Court to strike down the General Assembly's date requirement for absentee and mail-in ballots that the Pennsylvania Supreme Court upheld as mandatory just a few months ago, *see Ball v. Chapman*, 284 A.3d 1189 (Pa. 2022). Indeed, Plaintiffs' memorandum in support of their motion largely recycles their meritless arguments from the motion to dismiss stage. But no amount of discovery can cure the legal flaws in Plaintiffs' meritless theory that the date requirement violates the federal materiality provision and the U.S. Constitution.

*First*, Plaintiffs' Count I rests on a counter-textual and non-sensical statutory reading. As Intervenor-Defendants have explained—and three U.S. Supreme Court Justices have agreed—the date requirement does not even *implicate*, let alone violate, the federal materiality provision. *See Ritter v. Migliori*, 142 S. Ct. 1824, 1824-25 (2022) (Mem.) (Alito, J., dissenting from the denial of the application for stay). In fact, Plaintiffs' contrary construction of the federal materiality provision would invalidate broad swaths of commonplace and commonsense voting rules nationwide, subjecting state election laws to federal superintendence that Congress did not intend and did not enact.

*Second*, Plaintiffs' constitutional claim in Count II asks the Court to depart from the Supreme Court's controlling caselaw and its decision in *Crawford v. Marion County Election*

*Board*, 553 U.S. 181 (2008).  Plaintiffs, moreover, do not dispute that the date requirement was used to detect voter fraud in *Commonwealth v. Mihaliak*—or that the fraudster's handwritten date was the only evidence of fraud on the face of the ballot envelope in that case.  *See* Responsive Statement of Facts ("RSOF") ¶¶ 137-39.  Instead, Plaintiffs resort to mischaracterizing the record they compiled, including the testimony of their own putative expert witness, who never even examined or directly measured the benefits or alleged burdens of the date requirement.  But even on those mischaracterizations, Plaintiffs' constitutional claim makes no sense.  Plaintiffs have not challenged the signature requirement that is part of the same state-law voting rule as the date requirement—and they never explain how requiring a signature can be constitutional but requiring voters to date the declaration they have successfully signed imposes an unconstitutional burden.

Plaintiffs' claims fail on the law and the facts.  The Court should deny Plaintiffs' motion for summary judgment.

## ARGUMENT

**I.     MANDATORY APPLICATION OF THE DATE REQUIREMENT DOES NOT VIOLATE THE FEDERAL MATERIALITY PROVISION**

As Intervenor-Defendants already have explained, Plaintiffs' claim that the date requirement violates the federal materiality provision fails as a matter of law.  *See* ECF No. 282 at 4-16; *see also Ritter*, 142 S. Ct. at 1824-25 (Mem.) (Alito, J., dissenting from the denial of the application for stay).  At the threshold, Plaintiffs lack a private right of action to enforce the materiality provision, and Count I fails for that reason alone.  *See* ECF No. 282 at 4-5.  But even if the Court reaches the merits, Count I still fails because the date requirement does not even implicate, let alone violate, the federal materiality provision.  *See id.* at 5-16; *see also Ritter*, 142 S. Ct. at 1824-25 (Mem.) (Alito, J., dissenting from the denial of the application for stay).  Indeed, Count I fails at least three essential elements of the federal materiality provision because

mandatory application of the date requirement does not affect a "determin[ation] whether such individual is qualified under state law to vote," 52 U.S.C. § 10101(a)(2)(B), "deny the right of any individual to vote," *id.*, or pertain to an "application, registration, or other act requisite to voting," *id.*; *see also* ECF No. 282 at 5-16; *Ritter*, 142 S. Ct. at 1824-25 (Mem.) (Alito, J., dissenting from the denial of the application for stay).  Each of these failures independently requires summary judgment against Plaintiffs on Count I.  *See* ECF No. 282 at 5-16.

Plaintiffs offer five arguments in an attempt to shoehorn the date requirement into the narrow sweep of the federal materiality provision.  All fail.

*First*, Plaintiffs concede that the "the date written on the mail ballot's outer envelope" is not used in "'determining whether such individual is qualified under State law to vote in such election.'"  ECF No. 288 at 16-17 (quoting 52 U.S.C. § 10101(a)(2)(B)).  That concession *disproves* Plaintiffs' materiality provision claim and forecloses Count I as a matter of law.  *See* ECF No. 282 at 8-11.  By its express terms, the materiality provision applies only to paper-based errors or omissions that affect a "determin[ation] whether such individual is qualified under State law to vote."  52 U.S.C. § 10101(a)(2)(B); *see also* ECF No. 282 at 8-11.  It therefore regulates requirements and practices related to qualifications and registration to vote, not rules "that must be met in order to cast a ballot that will be counted."  *Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay); *see also id.* ("[I]t would be absurd to judge the validity of voting rules based on whether they are material to eligibility.").  In other words, to fall within the narrow scope of the materiality provision, "it is not enough that the error or omission be immaterial *to* whether the individual is qualified to vote; the paper or record must also be used 'in determining' the voter's qualifications."  *Ball v. Chapman*, 289 A.3d 1, 38 (Pa. 2023) (Opinion of Justice Brobson) (emphasis original).

3

Statutory context confirms this construction.  The materiality provision is nested within and among other statutory sections that address voter qualifications.  *See* ECF No. 282 at 9-10. Thus, like those other sections, the materiality provision "relates to determinations of *who* may vote—*i.e.*, voter qualifications," not what voters must *do* to complete and cast a valid ballot, *Ball*, 289 A.3d at 37 (Opinion of Justice Brobson) (emphasis original).

Accordingly, because "the date written on a mail ballot's outer envelope" is not used to determine any individual's qualifications to vote, ECF No. 288 at 16-17, it does not even implicate, let alone violate, the federal materiality provision, *see* ECF No. 282 at 8-11.  Count I fails as a matter of law for this reason alone.

*Second*, Plaintiffs argue that mandatory application of the date requirement "denies Pennsylvanians the right to vote."  ECF No. 288 at 13 (internal quotations omitted).  Not so. Mandatory rules governing the act of completing and casting a ballot do not deny anyone the right to vote. *See* ECF No. 282 at 5-8; *see also Ritter*, 142 S. Ct. at 1824-25 (Mem.) (Alito, J., dissenting from the denial of the application for stay); *Vote.org v. Callanen*, 39 F.4th 297, 305 n.6 (5th Cir. 2022) ("It cannot be that any requirement that may prohibit an individual from voting if the individual fails to comply denies the right of that individual to vote under" the federal materiality provision).  Thus, "[w]hen a mail-in ballot is not counted because it was not filled out correctly, the voter is not denied 'the right to vote.'"  *Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay) (quoting 52 U.S.C. § 10101(a)(2)(B)).  Rather, the right to vote has been "forfeit[ed]": "that individual's ballot is not counted because he or she did not follow the rules for casting a ballot."  *Id.*

After all, the consequence of failing to comply with the date requirement is not disqualifying the voter, stripping the individual's right to vote, or removing the individual from

the list of eligible voters.  *See Ball*, 284 A.3d at 1189; *see also* ECF No. 282 at 5-9.  Indeed, that individual *retains* the right to vote in compliance with the state-law rules for completing and casting a ballot and on equal terms with all other eligible voters in Pennsylvania.  *See Ball*, 284 A.3d at 1189; *see also* ECF No. 282 at 5-9.  Instead, the consequence is that election officials carry out the General Assembly's directive not to count the individual's ballot—which is exactly what occurs when a voter shows up to the polls after Election Day, fails to use a secrecy envelope for or to sign an absentee or mail-in ballot, attempts to vote for too many candidates for a single office, returns the ballot to the wrong location, or arrives at the wrong polling place.  *See Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay) ("Even the most permissive voting rules must contain some requirements, and the failure to follow those rules constitutes the forfeiture of the right to vote, not the denial of that right."); ECF No. 282 at 5-9.

Plaintiffs attempt to bolster their construction by invoking the statutory definition of "vote."  *See* ECF No. 288 at 13 (citing 52 U.S.C. § 10101(a)(3)(A), (e)).  But the materiality provision covers only denials of the "*right*" to vote, not application of neutral and mandatory rules to the *act* of voting.  52 U.S.C. § 10101(a)(2)(B) (emphasis added); *see* ECF No. 282 at 5-7.  The materiality provision therefore does not guarantee that an invalid ballot will be counted where an individual fails to cast it in compliance with state law, as Plaintiffs contend.  *See Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay); *see* ECF No. 282 at 5-9.  In other words, the question is not, as Plaintiffs argue, whether mandatory application of the date requirement results in a ballot not being "counted."  ECF No. 288 at 13.  Rather, the question is whether such mandatory application deprives any individual of the *right* to have their ballot counted where they have complied with the state-law rules for completing and casting it.  *See* ECF No. 282 at 5-7; 52 U.S.C. § 10101(a)(2)(B).  Mandatory application of the state-law date

requirement results in no such denial of the right to vote. *See Ritter*, 142 S. Ct. at 1825 (Mem.)

(Alito, J., dissenting from the denial of the application for stay); *see* ECF No. 282 at 5-9.

Plaintiffs' reliance on a Supreme Court decision that predated Congress's enactment of the

materiality provision by nearly two decades, *see* ECF No. 288 at 13 (citing *United States v. Classic*,

313 U.S. 299, 318 (1941)), is equally unavailing. *Classic*, of course, did not address the meaning

of the term "right to vote" in the then-nonexistent materiality provision. Nor does it stand for

Plaintiffs' proposition that the right to vote encompasses a right to have a ballot "counted" where

an individual fails to follow state-law rules for completing and casting it. *Classic*, 313 U.S. at 318;

*see also* ECF No. 288 at 13. To the contrary, the voters in *Classic had* complied with the state's

rules for casting a ballot; election officials were subject to federal criminal prosecution for failing

to count and tally those valid ballots. *See* 313 U.S. at 324. *Classic* is thus entirely consistent with

the Supreme Court's unwavering recognition that the application of mandatory state-law rules to

the act of voting does not result in "disenfranchisement" or denial of the right to vote. *See* ECF

No. 282 at 7-8 (citing *Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from denial of the

application for stay); *Rosario v. Rockefeller*, 410 U.S. 752, 757 (1973); *Timmons v. Twin Cty. Area*

*New Party*, 520 U.S. 351 (1997); *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321 (2021);

*Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 35 (2020) (Mem.) (Kavanaugh,

J., concurring).

*Third*, Plaintiffs argue that "correctly dating the outer envelope is … an act requisite to

voting" within the meaning of the materiality provision. ECF No. 288 at 15. That assertion,

however, fails as a matter of straightforward statutory construction. The materiality provision lists

"application, registration, and other act requisite to voting" as matters within its scope. 52 U.S.C.

§ 10101(a)(2)(B). Because "application" and "registration" refer to acts to confirm a voter's

qualifications, so too does "other act requisite to voting." *See, e.g.*, *Ball*, 289 A.3d at 38 n.11 (Opinion of Justice Brobson) (the "understanding that the scope of the [materiality provision] is limited to records or papers used in determining a voter's qualifications is supported by the *ejusdem generis* canon of statutory construction"); ECF No. 282 at 11-12.  It would be an "awkward" statutory construction at best to extend the materiality provision to absentee and mail-in ballots and the date requirement.  *Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay); *see also Ball*, 289 A.3d at 26 (Opinion of Justice Wecht) ("Logic and ordinary rules of statutory construction … dictate that an 'act requisite to voting' must be different from voting itself.").  Voting is voting; it is not an act requisite to voting.  *See* ECF No. 282 at 11-12.

This proper construction of the statutory list leaves plenty of work for the "other act requisite to voting" term to do.  In particular, this term prevents state and local election officials from circumventing the materiality provision by disqualifying voters and denying the right to vote based on practices they call something other than "application" or "registration."  The "other act requisite to voting" term therefore is part and parcel of Congress's effort "to counteract state and local government tactics of using, among other things, burdensome registration requirements to disenfranchise African-Americans." *Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008).

Plaintiffs nonetheless suggest that this correct reading renders the "other act requisite to voting" list item "superfluous."  ECF No. 288 at 16.  But, in fact, it is *Plaintiffs'* reading that renders items in the statutory list "entirely superfluous."  *Id.*  Indeed, under Plaintiffs' reading, "other act requisite to voting" would encompass not only "correctly dating an outer envelope" for an absentee or mail-in ballot but, in fact, *all* paper-based practices and rules related to voting.  *Id.*

at 15; *see also* ECF No. 282 at 11-12.  That reading, however, improperly renders the terms "application" and "registration" in the materiality provision "superfluous."  *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir. 1998).  After all, if Congress meant to sweep all paper-based practices and rules into the "other act[s] requisite to voting" list item, there would have been no reason for it to include "application" and "registration" in the statutory list.  *See, e.g.*, *id.*; *Tavarez v. Klingensmith*, 372 F.3d 188, 190 (3d Cir. 2004).  But Congress did include "application" and "registration" in the list—and those terms delineate, rather than are subsumed by, the "other act requisite to voting" term that completes the list.  *See, e.g.*, *Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay); *Ball*, 289 A.3d at 26 (Opinion of Justice Wecht); *id.* at 38 n.11 (Opinion of Justice Brobson) (the "understanding that the scope of the [materiality provision] is limited to records or papers used in determining a voter's qualifications is supported by the *ejusdem generis* canon of statutory construction"); *see also* ECF No. 282 at 11-12.

Moreover, the implications of Plaintiffs' proposed reading are breathtakingly broad—and, unsurprisingly, incorrect.  *See* ECF No. 282 at 12-16.  Plaintiffs' reading of the materiality provision "would subject virtually every electoral regulation" related to voting records and papers nationwide to the superintendence of the federal materiality provision, "hamper the ability of States to run efficient and equitable elections, and compel federal courts to rewrite state electoral codes."  *Clingman v. Beaver*, 544 U.S. 581, 593 (2005).  Indeed, under Plaintiffs' reading, "no election law that imposes informational requirements unrelated to determining voter qualification can survive a [§ 10101(a)(2)(B)] challenge."  *Ball*, 289 A.3d at 39 (Opinion of Justice Brobson).  For example, Plaintiffs' reading would imperil the signature requirement contained in the same statutory sentence as the date requirement, the secrecy-envelope requirement, the overvote

prohibition, and even commonplace voter assistance declarations.  *See* ECF No. 282 at 13-16.  In fact, under Plaintiffs' reading, numerous state election rules in Pennsylvania and elsewhere have been invalid since Congress enacted the federal materiality provision nearly six decades ago.  *See* ECF No. 282 at 15-16.

Merely to point out the implications of Plaintiffs' proposed reading of the materiality provision is to refute it.  Congress did not hide the "elephant" of federal superintendence of all paper-based state voting practices and rules in the "mousehole" of the federal materiality provision or the "other act requisite to voting" list item.  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1627 (2018).

*Fourth*, Plaintiffs cite a handful of cases that they contend support their reading of the materiality provision.  One is the Third Circuit's now-vacated panel decision in *Migliori*.  *See* ECF No. 288 at 13-17.  The Supreme Court's vacatur of that decision leaves it with no "precedential effect."  *County of Los Angeles v. Davis*, 440 U.S. 625, 634 n.6 (1979); *see also* ECF No. 288 at 16.  The *Migliori* panel's incomplete and incorrect analysis is simply of no help to the Court.  *See Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay).

Plaintiffs' other four cases are district court decisions, three of which are unpublished and none of which involves a final decision on the merits.  *See Martin v. Crittenden*, 347 F. Supp. 3d 1302 (N.D. Ga. 2018) (temporary restraining order) (cited at ECF No. 288 at 14); *Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*, No. 1:21-cv-01284-JPB, 2021 WL 6495360 (N.D. Ga. Dec. 9, 2021) (denying motion to dismiss) (cited at ECF No. 288 at 14); *League of Women Voters of Ark. v. Thurston*, No. 5:20-cv-05174, 2021 WL 5312640 (W.D. Ark. Nov. 15, 2021) (denying motion to dismiss) (cited at ECF No. 288 at 14); *Ford v. Tenn. Senate*, No. 06-2031, 2006 WL 8435145 (W.D. Tenn. Feb. 1, 2006) (cited at ECF No. 288 at 14).   None of these cases

meaningfully engaged the plain text of the materiality provision or its essential elements. Moreover, all of Plaintiffs' cases predate—and contravene—more persuasive authority from three Justices of the United States Supreme Court, the unvacated panel opinion of the Fifth Circuit, and Justices Brobson and Mundy in *Ball*. *See Ritter*, 142 S. Ct. at 1825 (Mem.) (Alito, J., dissenting from the denial of the application for stay); *Vote.org*, 39 F.4th at 305 n.6; *Ball*, 289 A.3d at 37-39 (Opinion of Justice Brobson); *see also Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1370-71 (S.D. Fla. 2004) (the materiality provision "was designed to eliminate practices that could encumber an individual's ability to register to vote"); *Thrasher v. Ill. Republican Party*, 2013 WL 442832, at *3 (C.D. Ill. Feb. 5, 2013) (the "actual harms the statute protects against" is "discrimination in the registration of voters," and "[c]ourts that have applied the statute have done so in the context of voter registration"); ECF No. 282 at 5-16.  The Court should deny Plaintiffs' motion for summary judgment.

## II.   MANDATORY APPLICATION OF THE DATE REQUIREMENT DOES NOT VIOLATE THE UNITED STATES CONSTITUTION.

As Intervenor-Defendants have already explained, Plaintiffs' claim that the date requirement violates the Constitution fails as a matter of law.  *See* ECF No. 282 at 17-25.  In the first place, rational basis scrutiny applies to the date requirement because "there is no constitutional right to an absentee ballot"—and the requirement easily satisfies such scrutiny.  *Mays v. LaRose*, 951 F.3d 775, 792 (6th Cir. 2020); *see also* ECF No. 282 at 17.  Moreover, even if the Court applies the *Anderson/Burdick* framework, the date requirement easily satisfies it as well.  *See* ECF No. 282 at 17-25; *see also Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189-91 (2008) (Opinion of Stevens, J.).  Indeed, the commonsense date requirement's "burdens" are too light and its justifications too reasonable to violate the Constitution.  *See* ECF No. 282 at 17-25.  After all, Plaintiffs do not challenge the signature requirement that is part of the same state-law voting rule

as the date requirement—and they never explain how it can be an unconstitutional burden to require voters to date the same declaration they have (successfully) signed.  *See id.* at 19.  The Court should deny Plaintiffs' motion for summary judgment on Count II.  *See id.*

Plaintiffs offer four arguments that the date requirement violates the Constitution under the *Anderson/Burdick* test.  None is persuasive.

*First*, Plaintiffs suggest that the date requirement is a "non-trivial barrier[] to voting" because compliance purportedly requires "[i]dentifying and replicating the precise date format that county boards will accept, research cure procedures for 'defective' ballots, [and] making last-minute arrangements and traveling to county board offices to correct undated or misdated ballots." ECF No. 288 at 19.  Plaintiffs, however, identify no evidence to establish the existence of these alleged burdens: even their own putative expert conceded that he did not identify or attempt to measure directly the burdens that the date requirement imposes on any voter.  RSOF ¶ 140.  Thus, on the record Plaintiffs compiled, "it is not possible to quantify … the magnitude of the burden imposed" by the date requirement, and Plaintiffs' motion for summary judgment should be denied. *Crawford*, 553 U.S. at 200 (Opinion of Stevens, J.).

Nonetheless, even if Plaintiffs' briefing is sufficient to prove the "burdens" imposed by the date requirement, any such burdens are minimal and easily pass constitutional muster.  Take, for example, the first burden on Plaintiffs' list: "[i]dentifying and replicating the precise date format that county boards will accept."  ECF No. 288 at 19.  The Pennsylvania Supreme Court has made clear that the date requirement is "unambiguous" and requires the voter to write the "day upon which [the] elector signs the declaration."  *Ball*, 289 A.3d at 21-22 & n.129.  Moreover, *every* county board of elections accepts as valid dates written in the standard "American" Month/Day/Year format.  *See* RSOF ¶ 135.  Thus, it is unsurprising that less than 1% of absentee

and mail-in ballots statewide were invalidated in the November 2022 election due to noncompliance with the date requirement—a rate *lower* than the invalidation rate under the secrecy-envelope requirement, which the Pennsylvania Supreme Court has upheld as mandatory and Plaintiffs do not challenge here. *See id.* ¶¶ 151-54; *see also Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 380 (Pa. 2020).

The remaining purported burdens that Plaintiffs list—"researching cure procedures for 'defective' ballots, making last-minute arrangements[,] and traveling to county board offices to correct undated or misdated ballots," ECF No. 288 at 19—are borne only by voters who fail to comply with the date requirement and choose to cure their absentee or mail-in ballot rather than to vote in person. In all events, even these burdens "surely do[] not qualify as a substantial burden on the right to vote, or even represent a significant increase over the usual burdens of voting." *Crawford*, 553 U.S. at 198 (Opinion of Stevens, J.). Indeed, "the usual burdens of voting" in person require "researching" ballot requirements and polling locations, "making" travel "arrangements," and "traveling" to the correct polling place. ECF No. 288 at 19; *see also Brnovich*, 141 S. Ct. at 2344 ("Having to identify one's own polling place and then travel there to vote does not exceed the usual burdens of voting.").

Moreover, all of the alleged burdens Plaintiffs identify in their brief are *lower* than the burdens that the Supreme Court upheld as constitutional in *Crawford*. *See* 553 U.S. at 198. The photo-ID law challenged in *Crawford* imposed on voters "the inconvenience" of making a *separate* "trip to the [Bureau of Motor Vehicles], gathering the required documents, and posing for a photograph." *Id*. Those burdens had to be borne *in addition to* the other research and travel burdens of voting in person—yet the Supreme Court still upheld them as minimal and constitutional. *See id*. All of the purported burdens Plaintiffs ascribe to the date requirement or

curing, *see* ECF No. 288 at 19, are *less* onerous than the burdens upheld in *Crawford*, *see* 553 U.S. at 198.  They therefore do not violate the Constitution.  *See* ECF No. 282 at 17-19.

Plaintiffs' statement that "10,657" ballots were not counted in the 2022 general election due to noncompliance with the date requirement, *see* ECF No. 288 at 18, also does not establish "a substantial burden on the right to vote, or even [indicate] a significant increase over the usual burdens of voting," *Crawford*, 553 U.S. at 198 (Opinion of Stevens, J.).  According to Plaintiffs, those ballots "had no other defect that would have prevented them from being counted."  ECF No. 288 at 18.  Thus, the individuals who submitted those ballots complied with all other requirements for absentee or mail-in ballots, including the secrecy-envelope requirement and the signature requirement.  *See id.*  Yet Plaintiffs never explain how compliance with the date requirement can be unconstitutionally burdensome for voters who have complied with the secrecy-envelope requirement and the signature requirement, which is part of the same voting rule as the date requirement.  *See id.*; *see also* ECF No. 282 at 19.

 In all events, the 10,657 figure represents 0.93% of all absentee and mail-in ballots returned statewide, a lower noncompliance rate than under the secrecy-envelope requirement.  *See* RSOF ¶ 151-54.  That figure also pales in comparison to the estimated "43,000" Indiana citizens who lacked a photo ID in *Crawford*, where the Supreme Court upheld the photo-ID requirement against an *Anderson/Burdick* challenge.  553 U.S. at 202 n.20.

*Second*, Plaintiffs contend that "the consequences of noncompliance" with the date requirement—that the absentee or mail-in ballot is not counted unless cured—somehow factor into the burden analysis.  *See* ECF No. 288 at 19.  That is incorrect.  The "burden" imposed by a voting rule for *Anderson/Burdick* purposes is the cost of compliance, not the consequence for noncompliance.  That is why the Supreme Court in *Crawford* identified "the inconvenience of

making a trip to the [Bureau of Motor Vehicles], gathering the required documents, and posing for a photograph" as the "burden[s]" of obtaining a photo ID.  553 U.S. at 198.  If Plaintiffs were correct that "the consequences of noncompliance" factor into the burden analysis, ECF No. 288 at 19, then *Crawford* should have invalidated the photo-ID requirement because the consequence for noncompliance was not being permitted to vote, *see* 553 U.S. at 185-86.  Instead, *Crawford* upheld the requirement because the burdens imposed were minimal and justified.  *See id.* at 200-04.

Likewise, if Plaintiffs' position were correct, Pennsylvania's rule requiring voters to return their absentee or mail-in ballots by Election Day would place a burden on voters whose ballots are not counted because they waited until after Election Day to complete them and place them in the mail.  *See* ECF No. 288 at 19.  This untenable implication alone refutes Plaintiffs' contention that the *Anderson/Burdick* burden analysis considers "the consequences of noncompliance."  *Id.*

Moreover, even Plaintiffs' own putative expert, Dr. Hopkins, conceded that the "impact" of the date requirement is not the "cost" of complying with it.  RSOF ¶ 145-46.  And Plaintiffs' own cited cases foreclose their effort to conflate the consequences of noncompliance with the burden of compliance.  The page Plaintiffs cite from *Democratic Executive Committee of Florida v. Lee*, 915 F.3d 1312, 1319 (11th Cir. 2019) (cited at ECF No. 288 at 19), says nothing about the consequences of noncompliance.  Instead, it recounts the Eleventh Circuit panel's conclusion that Florida's standardless signature-matching regime placed compliance "out of [voters'] control" and therefore imposed a burden on voters.  *See Dem. Exec. Comm.*, 915 F.3d at 1319-20.

Likewise, the page Plaintiffs cite from a Third Circuit panel's pre-*Crawford* decision in *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 881 (3d Cir. 1997) (cited at ECF No. 288 at 19), says nothing about the consequences of noncompliance.  Instead, it describes the burden on non-major political parties imposed by a New Jersey requirement that they "place [their]

candidates on the ballot in every Assembly district" in order to qualify for recognized "party" status.  *See Council of Alt. Pol. Parties*, 121 F.3d at 881.  Moreover, that decision issued in a preliminary injunction posture and over Judge Scirica's dissent.  *See id.* at 878.  A later panel of the Third Circuit—in a decision Plaintiffs nowhere mention—*rejected* the *Anderson/Burdick* claim on final review of the merits.  *See Council of Alt. Pol. Parties v. Hooks*, 179 F.3d 64, 70, 77, 80 (3d Cir. 1999) (Opinion of Alito, J.).

Nor is there any merit in Plaintiffs' assertion that "county boards will inevitably reject voters' mail ballots on an arbitrary basis."  ECF No. 288 at 20.  As explained, *every* county board of elections accepts as valid a date written in the standard "American" Month/Day/Year format. *See* RSOF ¶ 135.  Indeed, though Plaintiffs criticize county boards of elections for not accounting for the Day/Month/Year format, *see id.*; Plaintiffs' SOF ¶¶ 17-18, they neglect to mention that some county boards of elections *expressly specified* that the date should be provided in the Month/Day/Year format, *see* RSOF ¶¶ 17-18.  That some county boards may accept *additional* formats, *see* ECF No. 288 at 20, *reduces*, rather than increases, the burden on voters because it provides them multiple ways to cast a valid ballot, *see Crawford*, 553 U.S. at 201 (considering availability of "alternative" methods of voting).  This case thus bears no resemblance to *Democratic Executive Committee of Florida*: in that case, there was no "uniform standard[] for matching signatures" and no single signature format that was accepted statewide, leaving voters with no clear option for satisfying the requirement.  *See* 915 F.3d at 1319-20.

*Third*, Plaintiffs' assertion that the date requirement imposes "disproportionate[]" burdens on "Black, Hispanic, and older voters," ECF No. 288 at 18-19; *see also id.* at 21-22, fails as a matter of both law and fact.  Once again, Plaintiffs' proposed subgroup analysis improperly conflates the *cost* of complying with the date requirement with the *consequence* of noncompliance:

their argument that the date requirement "imposes the heaviest burdens on the least-resourced members of the electorate" rests on the alleged rate of noncompliance among such voters, not the cost of writing a date on a ballot that the voter already has signed and placed in a secrecy envelope in accordance with Pennsylvania law.  ECF No. 288 at 22; *see id.* at 21.

Moreover, Plaintiffs' proposed subgroup analysis is not proper under the *Anderson/Burdick* framework.  *See, e.g.*, *Crawford*, 553 U.S. at 204-09 (Scalia, J., concurring); *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 637 (6th Cir. 2016) ("Zeroing in on the abnormal burden experienced by a small group of voters is problematic at best, and prohibited at worst."); *see also* ECF No. 282 at 24.  This case illustrates precisely why.  Plaintiffs do not allege (and have no evidence to suggest) that Act 77 of 2019—which extended the date requirement to mail-in ballots and reiterated it for absentee ballots—was enacted with a discriminatory purpose. *See, e.g.*, *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979); *Abbott v. Perez*, 138 S. Ct. 2305, 2324-26 (2018).  Nor is any such allegation credible: Act 77 resulted from a grand bipartisan compromise between the Republican-controlled General Assembly and Democrat Governor Tom Wolf.  *See McLinko v. Commonwealth*, 279 A.3d 539, 543-44 (Pa. 2022). Moreover, Plaintiffs have not even attempted to, and cannot, satisfy the demanding burden to establish that Act 77 violates Section 2 of the Voting Rights Act.  *See Brnovich*, 141 S. Ct. at 2337-40.

Plaintiffs' proposed subgroup analysis is thus an attempt to pursue a theory of liability foreclosed by the Supreme Court's Fourteenth Amendment and Section 2 caselaw.  *See, e.g.*, *Personnel Adm'r*, 442 U.S. at 272; *Abbott*, 138 S. Ct. at 2324-26; *Brnovich*, 141 S. Ct. at 2337-40. The Court should reject it for that reason alone.

In all events, the record Plaintiffs compiled fails to support a finding that any subgroup of voters experiences a heightened burden to comply with the date requirement, much less an unconstitutional one. *Compare Crawford*, 553 U.S. at 200-03 (Opinion of Stevens, J.) (rejecting proposed subgroup analysis); *Ne. Ohio Coal. for Homeless*, 837 F.3d at 631 (same); *see also* ECF No. 282 at 24-25. Plaintiffs simply mischaracterize the testimony of their own putative expert, Dr. Hopkins, when they contend that it "established that mail ballots submitted by Black, Hispanic, and older voters" are "more likely to have dating errors" than ballots submitted by other voters. ECF No. 288 at 21.

Dr. Hopkins never demonstrated any such thing. Nor could he have: Dr. Hopkins never measured the cost of complying with the date requirement or "attempt[ed] to measure how easy or difficult it is for voters to comply with the date requirement." RSOF ¶ 144. In fact, Dr. Hopkins repeatedly disclaimed measuring the actual cost of the date requirement in deposition testimony which Plaintiffs do not bother acknowledging. *See id.* ¶¶ 143-45, 149.

 Even if Dr. Hopkins had attempted to do so, however, he *never* identified the race of any voter. *See id.* ¶ 43. Accordingly, he could not opine that "Black" or "Hispanic" voters bear heightened burdens from the date requirement or even are "more likely to have dating errors" than other voters. *Contra* ECF No. 288 at 21. Instead, Dr. Hopkins purported to use regression analyses to predict the rate of noncompliance with the date requirement in hypothetical counties and census block groups with either a Black population percentage of 0% or 100% or a Hispanic population percentage of 0% or 100%. *See* RSOF ¶¶ 35, 38. And even Dr. Hopkins conceded that it is impossible from those analyses to determine whether a Black or Hispanic voter is less likely to comply with the date requirement than a white voter. *See id.* ¶¶ 36, 40; *see also* ECF No. 282 at 24-25. Plaintiffs' contention that "[u]ndisputed evidence from … Dr. Hopkins" establishes an

*Anderson/Burdick* violation against any subgroup of voters, ECF No. 288 at 21, is unsupported at best and misleading at worst.

In fact, Dr. Hopkins's analysis is not even adequate to support Plaintiffs' premise that, "in Pennsylvania, Black, Hispanic, and older residents tend to have lower levels of income, formal educational attainment, economic security, English language proficiency, literacy, and health" than other residents. ECF No. 288 at 21. During his deposition, Dr. Hopkins conceded that he relied upon national studies, not anything "specific to Pennsylvania," for that premise. RSOF ¶ 49. Moreover, even such "differences in employment, wealth, and education" would not be sufficient to establish an actionable burden on the right to vote from the date requirement or any other state-law voting rule. *Brnovich*, 141 S. Ct at 2343. After all, such differences, while regrettable, "may make it virtually impossible for a State to devise rules that do not have some disparate impact." *Id.* Allowing those differences to trigger the highest levels of *Anderson/Burdick* scrutiny "would have the effect of invalidating a great many neutral voting regulations with long pedigrees that are a reasonable means of pursuing legitimate interests" and would improperly "transfer much of the authority to regulate election procedures from the States to the federal courts." *Id.* at 2341. The date requirement would be but the first casualty of Plaintiffs' erroneous subgroup methodology.

*Fourth*, Plaintiffs argue that the date requirement does not "serve[] *any* legitimate state interest." ECF No. 288 at 22 (emphasis original). But as Plaintiffs implicitly acknowledge, *see id.*, this position contradicts the Pennsylvania Supreme Court Justices who concluded that the date requirement serves "unquestionable purpose[s]," *Ball*, 289 A.3d at 10; *see also In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1090 (Pa. 2020) (Opinion of Justice Dougherty, Chief Justice Saylor, and Justice Mundy); ECF No. 282 at 19-23. It is also irreconcilable with the showing that the date requirement serves the crucial interests of

"safeguarding voter confidence" in Pennsylvania elections, solemnity, "deterring and detecting voter fraud," and "protecting the integrity and reliability of the electoral process." *Crawford*, 553 U.S. at 191 (Opinion of Stevens, J.); *see also* ECF No. 282 at 19-23.

Plaintiffs' effort to explain away the date requirement's detection of voter fraud in *Commonwealth v. Mihaliak*, *see* ECF No. 288 at 24, falls flat. Plaintiffs miss the point when they note that the ballot of a person who passes away before Election Day is not counted under Pennsylvania law, *see id.*, because the fraud in *Mihaliak* was committed not by the decedent but instead by someone else, *see* RSOF ¶ 138. Plaintiffs do not and cannot dispute that the *only* evidence of third-party fraud on the face of the fraudulent ballot in *Mihaliak* was the handwritten date of April 26, 2022, which was twelve days after the decedent had passed away. *See id.* ¶¶ 137-39; ECF No. 282 at 19-20. Thus, in other words, there would have been no reason or basis to launch an investigation into voter fraud in that case but for the date requirement. *See* ECF No. 282 at 19-20. The date requirement thus demonstrably serves—and already has served—the State's interest in "deterring and detecting voter fraud." *Crawford*, 553 U.S. at 191 (Opinion of Stevens, J.); *see also* ECF No. 282 at 19-20.

Finally, Plaintiffs are correct that the Sixth Circuit's decision in *Northeast Ohio Coalition for the Homeless* is "instructive," ECF No. 288 at 19, but they draw all the wrong lessons from it. There, the Sixth Circuit held that requiring voters to "accurately complet[e] the two fields" for "[b]irthdate and address information" is a "*small* burden." *Ne. Ohio Coal.*, 837 F.3d at 632 (emphasis added). In fact, the Sixth Circuit upheld the challenged requirement as to provisional voters, and struck it down only as to absentee voters. *Id.* The Sixth Circuit's rationale was that the State "did not even offer combatting voter fraud as a relevant interest" served by the requirement as applied to absentee voters. *Id.* at 633. *Northeast Ohio Coalition for the Homeless*

therefore underscores that state-law voting rules that combat voter fraud pass constitutional muster under the *Anderson/Burdick* framework—particularly where, as here, those rules already *have* detected voter fraud.  *See id.* at 632-33; *see also* ECF No. 282 at 19-23; RSOF ¶ 137-39.  Plaintiffs' constitutional challenge to the date requirement in Count II fails as a matter of law.

## CONCLUSION

The Court should deny Plaintiffs' motion for summary judgment.

Dated:  May 5, 2023                          Respectfully submitted,


                                             */s/ Kathleen A. Gallagher*
                                             Kathleen A. Gallagher
                                             PA I.D. #37950
                                             Russell D. Giancola
                                             PA. I.D. #200058
                                             GALLAGHER GIANCOLA LLC
                                             436 Seventh Avenue, 31st Floor
                                             Pittsburgh, PA 15219
                                             Phone: (412) 717-1900
                                             kag@glawfirm.com
                                             rdg@glawfirm.com

                                             John M. Gore (*pro hac vice*)
                                             E. Stewart Crosland
                                             Louis J. Capozzi III
                                             Joshua S. Ha
                                             JONES DAY
                                             51 Louisiana Avenue, N.W.
                                             Washington, D.C. 20001
                                             Phone: (202) 879-3939
                                             jmgore@jonesday.com
                                             scrosland@jonesday.com

                                             Thomas W. King, III
                                             Thomas E. Breth
                                             DILLON, McCANDLESS, KING,
                                               COULTER & GRAHAM, LLP
                                             128 W. Cunningham St.
                                             Butler, PA  16001
                                             Phone: (724) 283.2200
                                             tking@dmkcg.com
                                             tbreth@dmkcg.com

                                             *Counsel for Intervenor-Defendants*

21