# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF PENNSYLVANIA
# ERIE DIVISION

| | |
|---|---|
| BETTE EAKIN, *et al.*, <br><br>             Plaintiffs, <br><br> v. <br><br> ADAMS COUNTY BOARD OF ELECTIONS, *et al.*, <br><br>             Defendants. | Case No. 1:22-cv-00340-SPB |

**PLAINTIFFS' REPLY TO INTERVENOR-DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Intervenors' Opposition to Plaintiffs' Motion for Summary Judgment (ECF No. 312) largely echoes the arguments they have made throughout these proceedings: (1) that the Materiality Provision does not mean what the text says, and (2) that Plaintiffs' constitutional claim fails either because Plaintiffs have not challenged *other* statutory requirements or because constitutional claims involving different statutes in different states with different burdens and different justifications have not always succeeded. Both arguments fail for the reasons stated below.

## ARGUMENT

**I.    The Date Provision violates the Materiality Provision.**

Intervenors' brief confirms that the only question before the Court with respect to the Materiality Provision is whether it applies to the certification on the outer envelope of a mail ballot. By acknowledging that the handwritten date on the certification plays no role whatsoever in determining an individual's qualifications to vote, Intervenors effectively concede that summary judgment must be granted to Plaintiffs if the Materiality Provision covers such certifications at all. *See* ECF No. 312 at 4; Intervenor-Defs' Resp. to Pls.' Statement of Material Facts (ECF No. 313) ("Intervenors' Resp. CSMF") ¶¶ 31–32. And the Provision's plain language makes clear that it does; by extending its protections to applications, registration, and other acts requisite to voting, Congress could not have been clearer in demonstrating that the Provision is not so limited as Intervenors suggest. ECF Nos. 288 at 15–16, 318 at 13–16.[1]

---

[1] Plaintiffs have addressed Intervenors' Materiality Provision arguments in prior briefing and respectfully refer the Court to those briefs: ECF No. 318 at 6–10 (Materiality Provision enforceable through § 1983); ECF No. 318 at 13–15 (Materiality Provision applicable throughout the voting process and not limited to voter qualification determinations); ECF Nos. 288 at 13–14, 318 at 12–13 (refusing to count a ballot cast by a qualified voter denies the right to vote); ECF Nos. 288 at 15–16, 318 at 13–16 (completing certification form is an act requisite to voting).

Nonetheless, Intervenors continue to supplement the statute's text, this time arguing that the sole purpose of the phrase "any . . . other act requisite to voting" is to prevent election officials from "circumventing" the Materiality Provision by calling applications or registrations something else, but fail to conjure a single practical example. ECF No. 282 at 7. Their *ejusdem generis* argument further falls flat after the Supreme Court's unanimous decision in *Southwest Airlines Co. v. Saxon*, which recognized that "[t]he use of 'other' in [a] catchall provision" confirms congressional categorization of the previous terms. 142 S. Ct. 1783, 1790 (2022). Here, the statute's structure emphasizes that applications and registrations are acts requisite to voting rather than limiting the "broadly worded catchall phrase." *Id.* at 1792.

Intervenors' final argument downplays the persuasive value of five on-point cases cited by Plaintiffs—including *Migliori*, the case that best represents the Third Circuit's view, *see* ECF No. 318 at 1—while relying almost entirely on a three-Justice U.S. Supreme Court dissent, a two-Justice Pennsylvania Supreme Court dissent, and dicta from a Fifth Circuit *motions* panel. *See, e.g.*, ECF No. 312 at 10 (citing *Ritter v. Migliori*, 142 S. Ct. 1824 (2022) (Alito, J.), *Ball v. Chapman*, 289 A.3d 1 (Pa. 2023) (Brobson, J.), and *Vote.org v. Callanen*, 39 F.4th 297 (5th Cir. 2022)). Intervenors never explain why these opinions should be considered more persuasive than a directly on-point Third Circuit opinion that is non-binding only because it became moot.[2]

## II. The county boards' enforcement of the Date Provision violates the Constitution.

Intervenors fundamentally misunderstand the *Anderson-Burdick* test and mischaracterize Plaintiffs' constitutional claim. *See* ECF No. 312 at 10–20. Since the Date Provision serves no legitimate purpose, the burdens imposed by its enforcement are unjustified and this Court should grant Plaintiffs' motion for summary judgment.

---

[2] Justice Alito furthermore recognized the possibility his view would prove to be "unfounded" after full briefing. *See also Ritter*, 142 S. Ct. at 1824 (Alito, J.).

*First*, contrary to Intervenors' suggestions, *see* ECF No. 312 at 10–13, the magnitude of the burden alone does not conclude the inquiry. *Anderson-Burdick* is a *balancing* test, under which courts weigh the character and magnitude of the burden imposed against the interests furthered by that burden. *See Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *see also Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1318–19 (11th Cir. 2019). Even if the burdens imposed by the Date Provision were light, or "less onerous than those upheld in *Crawford*," ECF No. 312 at 13, the lack of *any* relevant or legitimate state interest justifying those burdens means that the Date Provisions fails the *Anderson-Burdick* test.

*Second*, Intervenors argue that Plaintiffs have provided no evidence of the burdens imposed by the Date Provision and that those burdens cannot be quantified. ECF No. 312 at 11–13. Yet, they admit that Plaintiffs' assertions that over 10,000 mail ballots were rejected due solely to noncompliance with the Date Provision is "approximately accurate." Intervenors' Resp. CSMF ¶¶ 9–10. Intervenors compare this quantity of burdened voters to those burdened by the Indiana voter identification law ultimately upheld in *Crawford*, ECF No. 312 at 12–13, but *Crawford* nowhere requires that a specific number of voters must be burdened for a constitutional violation to be found. *See also Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 632–34 (6th Cir. 2016) (invalidating address and birthdate requirement that affected less than 2,000 absentee ballots in prior two elections). That over 10,000 voters had their mail ballots rejected due solely to noncompliance with the Date Provision demonstrates that the Date Provision imposes a burden on voters who would otherwise have no issue successfully casting their mail ballots. The fact that Plaintiffs are not challenging the signature requirement in this lawsuit is irrelevant. *See* ECF No. 318 at 23 & n.4. The Date Provision is unconstitutional not just because it burdens voters, but also because it serves no purpose and advances no sufficiently weighty state interest.

3

*Third*, Intervenors repeatedly claim that the burdens analyzed under *Anderson-Burdick* are limited to the costs of compliance, and not the consequences for noncompliance, ECF No. 312 at 13–16, yet provide no authority for their attempt to bifurcate the burden analysis. There is, however, case law finding the opposite, including in *Democratic Executive Committee of Florida v. Lee*, 915 F.3d 1312, 1319 (11th Cir. 2019) (cited at ECF No. 288 at 19), where the Eleventh Circuit found that the "the risk of disenfranchisement . . . from the way in which Florida implements the scheme . . . [and from] the very nature of matching signatures" created "an undue burden on the right to vote." *Id.* Intervenors suggest that *Lee* is distinguishable but make no effort to explain why or how. In fact, it is consistent with the way Courts of Appeals have treated the analysis, and similar reasoning applies here. *See also Husted*, 837 F.3d at 632 (invalidating requirement resulting in "disenfranchise[ment] based only on a technicality" that imposed an undue burden not furthered by any legitimate interest).[3]

*Fourth*, Intervenors once again misread *Crawford* in their misguided attempt to claim it is irrelevant that enforcement of the Date Provision disproportionately impacts Black, Hispanic, and older voters. While Intervenors rely on Justice Scalia's *concurring* opinion in *Crawford* to dismiss what they refer to as "subgroup analysis," the controlling opinion that they bypass says just the opposite: When assessing the burden that a photo identification law imposed on voters, the Supreme Court did not assess the impact on all voters, but instead stated, "[t]he burdens that are relevant . . . are those imposed on persons who are eligible to vote *but do not possess a current*

---

[3] Intervenors fault Plaintiffs for "nowhere mention[ing]" that the claims raised by the plaintiffs in *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 881 (3d Cir. 1997), were later rejected on the merits. But Intervenors nowhere mention that the later panel's decision relied heavily on an intervening change in the challenged state law. *See* 179 F.3d 64, 70 (3d Cir. 1999) (under version of statute reviewed by the second panel, "nominating petitions are no longer due 54 days before the primary, as they were under the version of the law examined by the District Court and the prior panel, but are due by the day of the primary").

4

*photo identification* that complies with [the law]." 553 U.S. at 198 (emphasis added). In fact, six justices in *Crawford* agreed that when evaluating burdens, courts should consider the law's impact on identifiable subgroups for whom the burden is more severe. *Id*. at 199-203 (plurality op.); *id*. at 212-23, 237 (Souter, J., dissenting); *id*. at 237 (Breyer, J., dissenting). In other words, "[d]isparate impact matters under *Anderson-Burdick*." *League of Women Voters of Fla.*, *Inc. v. Detzner*, 314 F. Supp. 3d 1205, 1216 (N.D. Fla. 2018).

*Finally*, Intervenors attempt to satisfy the state-interests side of the *Anderson-Burdick* balancing test (in only the last two pages of their brief) by listing several vague interests in passing before repeating their single example of *Commonwealth v. Mihaliak*. *See* ECF No. 312 at 18–19. But again, the "reason or basis" for the investigation was *not* the handwritten date, ECF No. 312 at 19, and whether the ballot envelope was undated, misdated, or "correctly dated," was ultimately irrelevant. *See* Pls' Resp. to Intervenor-Defs' Concise Statement of Material Facts (ECF No. 320) ("CSMF Resp.") ¶¶ 45–46, 49–50. Despite Intervenors' repeated insistence that the "handwritten date was the only evidence of fraud *on the face of the ballot envelope*," ECF No. 312 at 2 (emphasis added); *id*. at 19, that fact is irrelevant: undisputed evidence shows that the Lancaster County Board of Elections did not need the *face of the ballot envelope* to set aside the ballot in *Mihaliak*. *See* CSMF Resp. ¶¶ 49–50; Intervenor-Defs' Resp. CSMF ¶¶ 73–74 (assertions undisputed).

As the Sixth Circuit recognized in *Husted*, when there is "no indication of a legitimate fraud concern at all . . . the fraud interest does not offset the burden of technical perfection" on the absentee ballot "envelope's address and birthdate fields." *Husted*, 837 F.3d at 633. The same is true here, and this Court should conclude that the burdens imposed by the Date Provision outweigh the non-existent, irrelevant, and hollow state interests asserted.

## CONCLUSION

The Court should grant Plaintiffs' motion for summary judgment.

Dated: May 10, 2023

Adam C. Bonin
**THE LAW OFFICE OF**
**ADAM C. BONIN**
121 South Broad Street, Suite 400
Philadelphia, PA 19107
Telephone: (267) 242-5014
Facsimile: (215) 827-5300
adam@boninlaw.com

Respectfully submitted,

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta*
Justin Baxenberg*
Jacob D. Shelly*
Dan Cohen*
Daniela Lorenzo*
Omeed Alerasool*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave., Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
unkwonta@elias.law
jbaxenberg@elias.law
jshelly@elias.law
dcohen@elias.law
dlorenzo@elias.law
oalerasool@elias.law

\* *Admitted Pro Hac Vice*