**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION**

| | |
|---|---|
| BETTE EAKIN, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ADAMS COUNTY BOARD OF ELECTIONS, *et al.*, <br><br> Defendants. | Case No. 1:22-cv-00340-SPB |

**PLAINTIFFS' RESPONSE TO AMICUS CURIAE BRIEF OF LAWYERS
DEMOCRACY FUND**

# INTRODUCTION

Amicus curiae Lawyers Democracy Fund ("the Fund") largely rehashes arguments already made by Intervenor-Defendants the Republican National Committee, National Republican Congressional Committee, and the Republican Party of Pennsylvania ("Intervenors") and by amicus curiae Restoring Integrity and Trust in Elections, Inc. ("RITE"). But repetition *still* does not make these arguments any stronger, and the Fund's glaring errors only emphasize their flaws. Amicus Br. at 2–4, ECF No. 339 ("Br.").

As Plaintiffs have repeatedly explained, the Materiality Provision by its plain text extends beyond documents used to determine voter qualifications and prohibits the use of immaterial state-law requirements to discard the ballots of qualified voters at all stages of the voting process. *See* ECF Nos. 288 at 13–17, 318 at 12–17, 330 at 1–2, 337 at 3–5. And the Fund's hyperbolic prediction that proper enforcement of the Materiality Provision here would turn it into a "nuclear warhead targeting virtually all state ballot-casting requirements," Br. at 11, fizzles into an absolute dud as they struggle to identify a single example of another widely adopted ballot-casting rule that plainly violates the Materiality Provision's express terms in the same manner that the Date Provision does. Lastly, the Fund's policy argument—apparently that Act 77's non-severability provision is implicated and that Plaintiffs' challenge should be rejected to preserve Act 77's other provisions—is both unsupported and irrelevant to this lawsuit, which addresses *only* the validity of the Date Provision under *federal* law.

The Court should reject the Fund's unsupported theories and grant Plaintiffs' motion for summary judgment.

# ARGUMENT

I.  **The Fund's analysis commits multiple fundamental legal errors.**

First and foremost, the Fund expresses "confiden[ce] [that] . . . the U.S. Supreme Court

1

vacated the Third Circuit's decision in *Migliori*," not for mootness, but because proper enforcement of the Materiality Provision would purportedly "open a Pandora's Box of novel legal challenges." Br. at 2. Any claim that the Supreme Court vacated *Migliori* on the merits is clearly incorrect; the Court explicitly ordered the "[j]udgment vacated, and case remanded to the United States Court of Appeals for the Third Circuit *with instructions to dismiss the case as moot.*" *Ritter v. Migliori*, 143 S. Ct. 297, 298 (2022) (emphasis added) (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950)).[1] The Fund provides no explanation of how it has divined a decision on the merits from these words.

The Fund then claims that "only one court has ruled in favor of Plaintiffs' legal theory since [1964]." Br. at 3–4. This is again incorrect, as many courts have applied the Materiality Provision to laws governing the absentee voting process *Id.* at 4. *See, e.g.*, *Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*, No. 1:21-CV-01284-JPB, 2021 WL 6495360, at *14 (N.D. Ga. Dec. 9, 2021) (denying motion to dismiss claim applying Materiality Provision to absentee ballot envelopes); *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1308–09 (N.D. Ga. 2018) (applying Materiality Provision to enjoin rejection of absentee ballots for missing date of birth on ballot envelopes). These critical errors reveal significant gaps in the Fund's analysis.

II. **The Materiality Provision is not limited to determination of voter qualifications.**

In an effort to limit the scope of the Materiality Provision to solely the determination of voter qualifications, the Fund repeats the same arguments set forth by Intervenors and RITE.

---

[1] "The established practice of the [Supreme] Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or *vacate the judgment below and remand with a direction to dismiss*." *Munsingwear*, 340 U.S. at 39 (emphasis added). *See also Cnty. of Butler v. Governor of Pa.*, 8 F.4th 226, 231 (3d Cir. 2021) ("Guided by considerations of judicial fairness, the Supreme Court in *Munsingwear* observed that a judgment that is 'unreviewable because of mootness' should not 'spawn[] any legal consequences'" (quoting *Munsingwear*, 340 U.S. at 41) (alteration in original)).

*Compare* Br. at 5–10, *with* ECF Nos. 282 at 6–8, 312 at 2–4, 325 at 2–4, 335 at 8–15. Plaintiffs have already responded to these arguments and respectfully refer the Court to those responses. *See* ECF Nos. 288 at 15–16, 318 at 13–16, 330 at 1–2, 337 at 4–5.

To reiterate, however, the Materiality Provision's broad statutory language undermines the Fund's attempt to narrow its scope beyond its "plain terms." *See Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1742–43 (2020). While the Materiality Provision, by its own terms, applies to "application[s], registration[s], *or other act[s]* requisite to voting," 52 U.S.C. § 10101(a)(2)(B) (emphasis added), the Fund seeks to constrain the catch-all phrase by arguing that it covers only "functionally identical procedures" to applications or registrations to vote—i.e., where "state actors . . . call that process something other than an 'application' or 'registration.'" Br. at 5. But, as the Supreme Court's unanimous decision in *Southwest Airlines Co. v. Saxon* recognized, "[t]he use of 'other' in [a] catchall provision" confirms congressional categorization of the previous terms. 142 S. Ct. 1783, 1790 (2022); *see also Ford v. Tenn. S.*, No. 06-2031, 2006 WL 8435145, at *11 (W.D. Tenn. Feb. 1, 2006) (rejecting argument that the Materiality Provision applies "solely [to] determining eligibility to vote"). Properly read, the catch-all simply confirms that "registrations" and "applications" must be related to voting to fall under the Materiality Provision; it does not, as the Fund suggests, confine the scope of "acts requisite to voting" to merely voter registration applications or their functional equivalents.

**III. The Fund's additional statutory arguments to limit the scope of the Materiality Provision are unsupported.**

The Fund's hyperbolic prediction that applying the Materiality Provision here would create "a newfound nuclear warhead targeting virtually all state ballot-casting requirements," Br. at 11, echoes the nearly-identical slippery slope arguments raised by Intervenors and RITE, *see* ECF No. 196 at 13–15; ECF No. 282 at 7–8, 13–16; ECF No. 335 at 4–7, 10–16. But despite these parties'

3

purported concern over the future of election administration, they all fail to provide a single concrete example where the Materiality Provision would actually handcuff states in conducting elections. This is because the plain text of the Materiality Provision has very specific requirements which are not easily satisfied.

For example, basic election administration regulations such as using a secrecy envelope, voting at the correct polling place, or voting on time do not necessarily relate to an "error or omission *on* any *record or paper*" and thus may not fall under the Materiality Provision to begin with. 52 U.S.C. § 10101(a)(2)(B) (emphases added); *see also* ECF No. 220 at 14–15. And when a county board declines to count an overvote or undervote, it does not "deny the right of any individual to vote," 52 U.S.C. § 10101(a)(2)(B), but rather effectuates the choices on their ballot to the fullest practicable extent. *See* 25 P.S. § 3063(a) ("[T]he ballot shall be counted for all offices for which it is properly marked."). Pennsylvania's other ballot-casting rules, such as signing the declaration on the outer envelope, may relate to establishing the voter's identity and qualifications, and one could argue that they are thus "material in determining whether such individual is qualified . . . to vote," 52 U.S.C. § 10101(a)(2)(B), or are simply not used as a reason to entirely void a ballot, such as the requirement to use blue or black ink. *See In re Luzerne Cnty. Return Bd., Appeal of Elmer B. Weiskerger*, 290 A.2d 108, 109 (Pa. 1972) ("[T]he ballot is valid unless there is a clear showing that the ink used was for the purpose of making the ballot identifiable."). Each of these examples shows that the Materiality Provision, far from being a "nuclear warhead" or "blunt sledgehammer" obliterating common-sense election procedures, Br. at 11, 16, is in fact a narrowly targeted restriction specifically aimed at preventing states from rejecting ballots based solely on the failure to comply with unnecessary, technical paperwork requirements, such as the Date Provision.

For similar reasons, the Fund's fear that the Materiality Provision will entirely supplant the *Anderson-Burdick* framework—with which it has coexisted for over three decades—is unfounded. Br. at 11–12. While the Fund claims that the Materiality Provision could have applied to both *Anderson* and *Burdick*, tellingly, they make no attempt to explain how. *Anderson v. Celebrezze* involved a challenge to an early filing deadline, 460 U.S. 780, 782 (1983) ("Respondent refused to accept the petition solely because it had not been filed within the time required[.]"), and *Burdick v. Takushi* involved a prohibition on write-in voting, 504 U.S. 428, 430 (1992) (Petitioner claimed "that he wished to vote in the primary and general elections for a person who had not filed nominating papers[.]"). Neither of these involved an "error or omission on any record or paper," nor did they "deny the right of any individual to vote," as contemplated by the Materiality Provision. 52 U.S.C. § 10101(a)(2)(B). There is likewise no basis to presume that the unidentified "dozens of precedents passing on ballot rules," Br. at 12, will in any way be called into question by this challenge to the Date Provision.

The Fund's constitutional avoidance argument fares no better. The Materiality Provision is a valid exercise of Congress's "power to enforce" the Fifteenth Amendment "by appropriate legislation." U.S. Const. amend. XV, § 2. Pursuant to this power, "Congress may use any rational means to effectuate the constitutional prohibition of racial discrimination in voting." *South Carolina v. Katzenbach*, 383 U.S. 301, 324 (1966). As the Fund recognizes, "Congress had evidence that election officials in the Jim Crow South engaged in 'racial discrimination against Negro applicants for voter registration,' 'including the rejection of applicants for inconsequential errors on the application form.'" Br. at 19 (quoting S. Rep. No. 89-162, (April 20–21, 1965), 1965 U.S.C.C.A.N. 2508, 2546). A general prohibition on the employment of minor technical errors to disqualify voters easily passes constitutional muster as a rational means of prohibiting racial

discrimination in voting—particularly here, where the provision in question has a disproportionate impact on Black and Hispanic voters. *See* ECF No. 331 at 4–5; ECF Nos. 311 & 323 ¶¶ 34–37, 40–41, 43.

IV.  **The Fund's policy argument regarding the severability of Act 77 is irrelevant.**

The purported scope of Act 77's non-severability clause has absolutely no bearing on the proper interpretation and application of the Materiality Provision. Plaintiffs are not aware of any principle or doctrine by which the meaning of a federal law passed 60 years ago could be modified by a state law passed in 2019, and the Fund does not cite any authority for that proposition.

The Fund also vastly overstates the certainty that the non-severability provision would apply here. The Pennsylvania Supreme Court "has never deemed nonseverability clauses to be controlling in all circumstances," *Stilp v. Commonwealth*, 905 A.2d 918, 980 (Pa. 2006), and has held that "[w]here the provision appears to be aimed at securing a coercive effect upon the Judiciary, it necessarily implicates the separation of powers," *id.* at 979. The Fund's attempt to use Act 77's non-severability provision in precisely this manner—to convince this Court to disregard the Materiality Provision's plain language—should fail.

## CONCLUSION

The Court should grant Plaintiffs' motion for summary judgment.

| | |
|---|---|
| Dated: June 2, 2023 | Respectfully submitted, |
| | /s/ Uzoma N. Nkwonta |
| Adam C. Bonin | Uzoma N. Nkwonta* |
| **THE LAW OFFICE OF** | Justin Baxenberg* |
| **ADAM C. BONIN** | Jacob D. Shelly* |
| 121 South Broad Street, Suite 400 | Dan Cohen* |
| Philadelphia, PA 19107 | Daniela Lorenzo* |
| Telephone: (267) 242-5014 | Omeed Alerasool* |
| Facsimile: (215) 827-5300 | **ELIAS LAW GROUP LLP** |
| adam@boninlaw.com | 250 Massachusetts Ave., NW, Suite 400 |
| | Washington, D.C. 20001 |
| | Telephone: (202) 968-4490 |
| | Facsimile: (202) 968-4498 |
| | unkwonta@elias.law |
| | jbaxenberg@elias.law |
| | jshelly@elias.law |
| | dcohen@elias.law |
| | dlorenzo@elias.law |
| | oalerasool@elias.law |
| | |
| | *Admitted Pro Hac Vice* |
| | |
| | Counsel for Plaintiffs |