IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BETTE EAKIN, et al, </br>　　Plaintiffs, </br></br>　　v. </br></br> ADAMS COUNTY BOARD OF </br> ELECTIONS, et al, </br>　　Defendants. | Civil Action No. 1:22-CV-340 </br></br> Re: Motion to Dismiss </br>　　ECF No. 240 |

### MEMORANDUM OPINION

Presently before this Court is a motion to dismiss the amended complaint filed by the Intervenor-Defendants, the Republican Committees. ECF No. 240.

**I.　Relevant Procedural History**

In 2019, the Commonwealth of Pennsylvania expanded mail-in voting. The new provisions have increased voter participation, but have been the subject of intense and repeated litigation in state and federal courts. This action challenges the application of one of those state law provisions.

The operative complaint in this matter is the amended complaint filed by three organizations[1] and an individual voter.[2] ECF No. 228. The organizational-Plaintiffs challenge the

---

[1] These organizations include the Democratic Party's national senatorial committee (the "DSCC"), the national congressional committee (the "DCCC"), and the American Federation of Teachers (the "Federation").

[2] Bette Eakin lives in Erie County and is legally blind. In the November 2022 election, she submitted a mail-in ballot but did not enter the date on the outer Return Envelope. She was notified that her ballot would be rejected unless the missing date was rectified. Ms. Eakin was able to cure her undated ballot envelope with the assistance of her husband who was forced to cut short a hunting trip. ECF No. 228, ¶ 12.

disqualification of undated and incorrectly dated mail-in ballots and allege that their members are at risk of disenfranchisement, while Ms. Eakin alleges that she was nearly disenfranchised by Defendants' actions in the November 2022 midterm election and fears that she may be similarly disenfranchised in the future. ECF No. 228, ¶ 12. Plaintiffs allege that the actions of Defendants infringe on their rights under both the Federal Materiality Provision of the Voting Rights Act and the First and Fourteenth Amendments. The relief Plaintiffs seek is primarily injunctive and declaratory.

The named Defendants are each of the sixty-seven county Boards of Elections of the Commonwealth. The Republican Committees[3] have been allowed to intervene as of right under Federal Rule of Civil Procedure 24(a). ECF No. 165.

Presently before this Court is a motion to dismiss the amended complaint filed by Intervenor-Defendant Republican Committees. ECF No. 240. Plaintiffs, as well as some Defendants, have opposed the pending motion to dismiss. ECF No. 267 (Allegheny, Chester, Montgomery, and Philadelphia County Boards of Elections); ECF No. 266 (Plaintiffs). And the Intervenor-Defendants have filed a Reply brief. ECF No. 268. This motion is fully briefed and is ripe for disposition by this Court.

Due to the nature of the claims and the prayer for prospective injunctive relief, this case has been set on an expedited track. During the pendency of the motion to dismiss, the parties were ordered to engage in the discovery process and they have recently filed cross-motions for summary judgment. The arguments raised by the Intervenor-Defendants in the present motion to

---

[3] The Republican National Committee is the national committee of the Republican Party as defined by 52 U.S.C. § 30101(14); the National Republican Congressional Committee is the national congressional committee of the Republican Party; and the Republican Party of Pennsylvania is a major political party and is registered as a state committee under federal law.

dismiss are raised more robustly in their motion for summary judgment. In this unusual procedural posture, we proceed.

### II. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). Generally, a complaint that provides adequate facts to establish "how, when, and where" will survive a motion to dismiss brought under Rule 12(b)(6). *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009).

In deciding a motion to dismiss, a court is not opining on whether a plaintiff is likely to prevail on the merits; instead, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) *citing* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp., 235-236 (3d ed. 2004). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint should only be dismissed under Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In making this determination, the court must accept as true all well-pleaded factual allegations in the complaint and view them in a light most favorable to the plaintiff. *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

The Court of Appeals for the Third Circuit instructed that district courts are to engage in a three-step inquiry in order to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then

> determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) *quoting Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).

At the third step, the Court must consider the specific nature of the claims presented and determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013). A complaint cannot be dismissed simply because it appears unlikely or improbable that a plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563, n.8. Instead, the appropriate inquiry is whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556.

With this standard of review in mind, the Court now turns to an examination of the factual allegations of the amended complaint and the pending motion to dismiss it.

### III. The Allegations of the Amended Complaint

The Commonwealth's mail-in voting provisions allow all eligible voters to vote by mail. ECF No. 228, ¶ 18. On November 1, 2022, the Pennsylvania Supreme Court interpreted a Pennsylvania statute, 25 P.S. § § 3146.6(a), 3150.16(a), to order elections officials to "not count qualified voters' mail-in and absentee ballots due to an immaterial omission of a written date, or the entry of an incorrect date, on the outside of the ballot envelope." *Id.* at ¶¶ 2, 30.[4] At the

---

[4] This Court takes judicial notice that this Order was issued without opinion. The order indicated that the six justices were deadlocked as to whether the application of the statute violated the Federal Materiality Provision. *See Ball v. Chapman*, 284 A.3d 1189 (Pa. Nov. 1, 2022).

election held a few days later, the County Boards identified and rejected thousands of mail-in ballots with a missing or incorrect date. *Id.* at ¶¶ 3, 12.

The Election Code instructs voters casting mail-in ballots to (1) mark their ballot "on or before eight o'clock p.m. the day of the primary or election"; (2) use only "black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen"; (3) "fold the ballot, enclose and securely seal the same in the envelope on which it is printed, stamped or endorsed 'official election ballot'"; (4) place their completed ballot in a blank, secrecy envelope; (5) place the secrecy envelope into a separate, outer envelope, "on which is printed the form of declaration of the elector"; and (6) "fill out, date and sign the declaration printed on such envelope" before returning it to the voter's county board of elections. *Id.* at ¶ 19, *quoting* 25 P.S. §§ 3150.16(a), 3146.6(a).

Plaintiffs allege that the date instruction on the outer envelope in the voter declaration (hereinafter referred to as the "Date Instruction") serves no meaningful purpose and is immaterial to whether a voter is qualified to vote under Pennsylvania law. Plaintiffs contend that this is demonstrated by ample evidentiary records developed through extensive litigation since the 2020 election. Moreover, in July 2022, the Deputy Secretary for Elections and Commissions at the Pennsylvania Department of State, Jonathan Markes, testified that counties do not use the handwritten date to determine timeliness and have no mechanism of verifying whether the handwritten date is accurate. Marks also testified that he didn't believe there was any situation in which the handwritten date would be relevant to whether the vote is counted. *Id.* at ¶ 20.

Plaintiffs allege that the Date Instruction has no relevance to determining whether an individual is qualified to vote under Pennsylvania law which mandates that a voter be at least 18 years old, have been a citizen of the United States for at least a month, have resided in the

Commonwealth for at least 90 days, have resided in the district where they intend to vote for at least 30 days, and have not been confined for a felony within the last five years. *Id.* at ¶ 4, *citing* 25 P.S. §§ 2811, 2602(t); 25 C.S. § 1301.

Plaintiffs further allege that, to the extent any date is relevant to a voter's qualifications to participate in a particular election under Pennsylvania law, it is the date of that election, not the date that the voter completed, signed, or mailed their ballot. Moreover, a mail ballot's timeliness depends not on the date the voter completed, signed, and submitted it, but instead solely on the date and time the Board of Elections receives it. *Id.* at ¶ 5. The date on the ballot envelope has no bearing on a voter's qualifications and serves no purpose other than to erect barriers to qualified voters exercising their fundamental constitutional right to vote. Plaintiffs claim this impediment violates Section 101 of the Civil Rights Act and the First and Fourteenth Amendments to the U.S. Constitution.

### IV. The Motion to Dismiss

The Republican Committees move to dismiss this action for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). ECF No. 240. Rather than arguing that Plaintiffs have not pled sufficient factual allegations to support both legal claims, Intervenor-Defendants contend that the mandatory application of the Date Instruction is not implicated by and does not violate the Federal Materiality Provision. Additionally, Intervenor-Defendants argue that the application of the Date Instruction does not violate the First Amendment because it does not unduly burden the right to vote. These arguments are more appropriately raised and analyzed in the procedural context of summary judgment.[5]

---

[5] These arguments are raised more fully in the pending motion for summary judgment.

### A. The Materiality Provision Challenge

The right of every citizen to vote is a fundamental right. *Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 383 (W.D. Pa. 2020) *citing Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979). The right to vote "is a foundational right 'that helps to preserve all other rights.'" *Id. quoting Werme v. Merrill*, 84 F.3d 479, 483 (1st Cir. 1996). As the Supreme Court opined almost sixty years ago, "[o]ther rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).

In 1965, Congress enacted the Voting Rights Act "in an effort to achieve at long last what the Fifteenth Amendment had sought to bring about 95 years earlier: an end to the denial of the right to vote based on race." *Brnovich v. Democratic Nat'l Comm.*, ___ U.S. ___, 141 S.Ct. 2321, 2330 (2021). The Materiality Provision, a portion of the Voting Rights Act, prohibits denial of the right to vote based on immaterial mistakes on voting-related paperwork. Put another way, federal law prohibits a state from erecting immaterial roadblocks to voting.[6]

*Enforceability*

Whether these private Plaintiffs have a right to enforce the Federal Materiality Provision must be addressed at the outset. The Materiality Provision expressly provides for enforcement by the Attorney General of the United States, but is silent as to enforcement by others. *See* 52 U.S.C. § 10101(c). If Plaintiffs do not have the right to enforce the Materiality Provision, this claim must be dismissed.

---

[6] Where "compliance with both state and federal law is impossible," federal law "must prevail." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015).

Like substantive federal law, "private rights of action ... must be created by Congress." *Alexander v. Sandoval,* 532 U.S. 275, 286 (2001). When assessing whether private plaintiffs may enforce a federal statute without an express cause of action, courts "must first determine whether Congress *intended to create a federal right.*" *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). Courts look to three factors when determining whether statutory text contains rights-creating language: "(1) the statutory provision must benefit the plaintiffs with a right unambiguously conferred by Congress; (2) the right cannot be so 'vague and amorphous' that its enforcement would strain judicial competence; and (3) the statute must impose a binding obligation on the States." *Lewis v. Alexander*, 685 F.3d 325, 344 (3d Cir. 2012) *citing Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997).

The Court of Appeals for the Third Circuit addressed the precise question presented here, conducted an in-depth analysis, and concluded that Pennsylvania's registered voters had "a private right of action to enforce § 10101 under 42 U.S.C. § 1983." *Migliori v. Cohen*, 36 F.3d 153, 156 (3d Cir. May 27, 2022). The well-reasoned and thorough opinion recognized that § 10101 "specifically contemplates" a private plaintiff "bringing this type of claim in court." *Id.* at 160. Although the *Migliori* opinion has been vacated, this Court finds its reasoning persuasive, particularly on the question of whether a private plaintiff may raise a § 10101 challenge through 42 U.S.C. § 1983.[7] That the Supreme Court vacated the judgment of the Circuit based explicitly on mootness [*see Ritter v. Migliori*, ___ U.S. ___, 143 S.Ct. 297 (Oct. 11, 2022)] is of no

---

[7] *See also Schwier v. Cox*, 340 F.3d 1284, 1297 (11th Cir. 2003) (Materiality Provision "may be enforced by a private right of action under § 1983."). *But see, Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612, 630 (6th Cir. 2016) ("[T]he negative implication of Congress's provision for enforcement by the Attorney General is that the statute does not permit private rights of action.").

8

consequence to the analysis of the private enforceability of the Materiality Provision undertaken in the Circuit's ruling.

*Stating a Claim*

The Materiality Provision prohibits state officials from denying any individual the right to vote "because of an error or omission on any record or paper" that relates to any "application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B). To state a claim for violation of the statute, a plaintiff must allege: (1) denial of the right to vote (2) "because of an error or omission" (3) "on any record or paper relating to … an act requisite to voting" (4) that is "not material" in determining the voter's qualification to vote. *Id*. Plaintiffs allege that (1) the rejection of ballots denies the right to vote; (2) rejection is based on missing or incorrect dates; (3) on the outer return envelope; and (4) the dates are not material to determining the qualification of the voter.

In making a determination as to whether Plaintiffs have stated a claim, this Court must accept the veracity of the well-pleaded factual allegations and view them in the light most favorable to Plaintiffs. *U.S. Express*, 281 F.3d at 388. Here, Plaintiffs have met all the basic requirements in order to state a claim as they have factually supported each of the components of the claim.

In their motion to dismiss, the Intervenor-Defendants contend that the application of the Date Instruction does not implicate, let alone violate, the Materiality Provision. Intervenor-Defendants make several arguments in this regard. These arguments, and the legal citation in support, are based almost exclusively on a dissent from the denial of an application for stay at the

U.S. Supreme Court. Intervenor-Defendants take the dissenting opinion and extrapolate their reasoning therefrom. This Court is not swayed by such arguments at this stage in the proceedings because they find their genesis in an opinion that carries little, if any, precedential weight.[8] Moreover, these arguments and the complete history of the case they arise out of are more appropriately discussed in the disposition of the cross-motions for summary judgment.

At this stage of the proceedings, accepting the veracity of their factual allegations, Plaintiffs have sufficiently stated a plausible claim for relief.

### B. The First Amendment Challenge

In their Amended Complaint, Plaintiffs allege that the Date Instruction unduly burdens the right to vote. ECF No. 228, ¶ 42. Pennsylvania's lack of guidance to the voter on how to determine the correct date for the outer envelope subjects voters to arbitrary disenfranchisement. *Id*. at ¶ 47. This causes confusion for both voters and the county Boards of Elections. *Id*. Rejecting these ballots serves no legitimate purpose and functions only to disenfranchise eligible voters. *Id*. at ¶ 48. The Date Instruction imposes an unnecessary hurdle that eligible Pennsylvanians must clear to exercise their most fundamental right, resulting in otherwise valid votes being arbitrarily rejected, while advancing no compelling (or even

---

[8] *See* Trevor N. McFadden and Vetan Kapoor, *The Precedential Effects of the Supreme Court's Emergency Stays*, 44 Harvard Journal of Law & Public Policy 827, 882 (Summer 2021) ("In sum, we argue that decisions to deny a stay have no precedential value."). *See also* Kristen E. Parnigoni, *Shades of Scrutiny: Standards for Emergency Relief in the Shadow Docket Era*, 63 B.C. L. Rev. 2743, 2749 (Nov. 2022) ("Shadow docket decisions now comprise an unwieldy block of new jurisdiction, albeit with unclear precedential value, on high-stakes issues."); Bryan Garner, et al., *Law of Judicial Precedent* 219 (2016) ("[A] refusal to hear a case says nothing about the merits. It says only that, for any number of possible reasons, the Court didn't want to review the lower-court ruling: 'The variety of considerations that underlie denial of the writ counsels against according denials of certiorari any precedential value.") (internal citation omitted).

legitimate) governmental interest. *Id.* at ¶ 49.

Defendants move for dismissal of this claim arguing that the Date Instruction imposes no more than the usual burdens on voting and that the burden is "justified by the State's interests in protecting the integrity of its elections." ECF No. 241, page 17.

Intervenor-Defendants and Plaintiffs[9] agree that the Court should evaluate this claim under the *Anderson-Burdick* test[10] which requires "a reviewing court to (1) determine the 'character and magnitude' of the burden that the challenged law imposes on constitutional rights, and (2) apply the level of scrutiny corresponding to that burden." *Mazo v. New Jersey Sec. of State*, 54 F.4th 124, 137 (3d Cir. Nov. 23, 2022) *citing Burdick v. Takushi,* 504 U.S. 428, 434 (1992) and *Anderson v. Celebreeze,* 460 U.S. 780, 789 (1983). The Third Circuit explained this balancing test:

> If the burden is severe, the court must apply exacting scrutiny and decide if the law is narrowly tailored and advances a compelling state interest. But if the law imposes only reasonable nondiscriminatory restrictions, the court may use *Anderson-Burdick's* sliding scale approach under which a State need only show that its legitimate interests are sufficient to outweigh the limited burden.

---

[9] The four County Boards of Elections take no position and offer no argument as to the First Amendment claim. *See* ECF No. 267.

[10] In determining whether to apply the *Anderson-Burdick* test, courts look to two principal characteristics:

> First, the law must burden a relevant constitutional right, such as the right to vote or the First Amendment rights of free expression and association. Second, the law must primarily regulate the mechanics of the electoral process, as opposed to core political speech.

*Mazo*, 54 F.4th 137. *See also Trump for President v. Boockvar*, 493 F.Supp.3d 331, 393 (W.D. Pa. Oct. 10, 2020) ("*Anderson-Burdick* is invoked where the government takes some direct action to burden or restrict a plaintiff's right to vote.").

11

*Id.* (internal quotation and citation omitted). Meanwhile, requirements that "impose a more-than-minimal but less-than-severe burden require a flexible analysis, weighing the burden on the plaintiffs against the state's asserted interest and chosen means of pursuing it." *Daunt v. Benson*, 956 F.3d 396, 406-07 (6th Cir. 2020).

No matter what level of scrutiny should be used, the State's interest must be defined. In this case, at this stage of the proceedings, only Plaintiffs and Intervenor-Defendants are arguing the present motion to dismiss. So then, on one side is Ms. Eakin, the Democratic Committees, and the American Federation of Teachers and on the other side is the Republican Committees. None of these parties are in a position to posit as to the State's interest in the application of the Date Instruction – whether compelling, legitimate, or somewhere in between.[11] Any argument in this regard is speculative. The Intervenor-Defendants' argument that the State's interest lies in "protecting the integrity of its elections" and that the Date Instruction serves to prevent "election fraud" are not connected to how providing a date on the outer envelope supports these State interests. At this early stage of the proceedings and without any evidentiary support, such assertions cannot base the dismissal of Plaintiffs' claims.[12]

Plaintiffs have stated a plausible claim that application of the Date Instruction to reject ballots is an undue burden on voters and serves no legitimate purpose. At this stage of the proceedings, this is sufficient.

An appropriate Order follows.

---

[11] The Commonwealth of Pennsylvania is not a party to this action and the County Boards of Elections have not weighed in on this claim.

[12] The Intervenor-Defendants' attachment of a criminal docket for forgery of a signature on a ballot is (1) beyond the scope of a motion to dismiss and (2) does not correlate a date requirement with prevention of fraud.