IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BETTY EAKIN, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 1:22-cv-00340-SPB |
| | : | |
| ADAMS COUNTY BOARD OF ELECTIONS, *et al.*, | : | |
| | : | **ELECTRONICALLY FILED** |
| Defendants. | : | |

**BERKS COUNTY BOARD OF ELECTIONS' SUPPLEMENTAL
BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to the Court's May 16, 2024 lifting the stay of this action (doc. 375), defendant Berks County Board of Elections ("Berks County") reasserts its previous motion for summary judgment (doc. 286) and submits this supplemental brief in support of its motion for summary judgment on Plaintiffs' remaining claims.[1] For the reasons stated previously and the additional reasons below, the Court should grant summary judgment in favor of Berks County and against Plaintiffs and dismiss with prejudice all of Plaintiffs' claims against Berks County.

---

[1] Berks County previously joined in and incorporated by reference the prior summary judgment motion and supporting brief and concise statement of material facts filed by Defendant Lancaster County Board of Elections ("Lancaster County") (doc. 280, 284, 300). Berks County and Lancaster County previously filed responses and briefs in opposition to Plaintiffs' motion for summary judgment (doc. 306, 311, 323, 324, 358). All of the facts and arguments in these prior filings relating to Plaintiffs' claims against Berks County are reasserted and incorporated by reference herein to the extent they are still applicable. In addition to joining Lancaster County's arguments in favor of dismissing Plaintiffs' claims in this action, Plaintiffs also join and incorporate by reference any additional argument asserted by other defendant county boards of elections or Intervenor-Defendants in favor of dismissing Plaintiffs' claims in this action to the extent they apply to Berks County.

1

I. **Factual and procedural history.**

On November 21, 2023, while cross-motions for summary judgment were pending, the Court stayed this action in light of its Order in the related case of *Pennsylvania State Conf. of NAACP Branches v. Sec'y Commonwealth of Pennsylvania* 1:22-cv-339-SPB ("Case 339"), granting summary declaratory judgment in favor of Plaintiffs on their claim that enforcing the challenged Date Requirement violates the Materiality Provision of the federal civil rights act, 52 U.S.C. §10101(a)(2)(B) (Amended Complaint Count I), without reaching summary judgment on Plaintiffs' Equal Protection claim (Amended Complaint Count II).  (Order, Case 339 doc. 348 at 4-5; Opinion, Case 339 doc. 347 at 74-76).

On appeal, the United States Court of Appeals for the Third Circuit reversed the Court's Order granting Plaintiffs' summary judgment on their Materiality Provision claim (Case 339 doc. 348), and remanded Case 339 to this Court for further action on Plaintiffs' remaining constitutional claims.

On May 16, 2024, shortly after Third Circuit's mandate was docketed in Case 339, the Court issued an Order in this case (doc. 375) lifting the stay and permitting the parties to supplement their respective summary judgment motions.

II. **Plaintiffs do not have standing to sue Berks County.**

In its November 21, 2023 Order in Case 339, this Court granted in part and denied in part Berks County's motion for summary judgment after concluding that none of the individual plaintiffs, and all but a few organizational plaintiffs had standing to assert claims against Berks County.  (Order, Case 339 doc. 348 at 5.)

Applying the same standing analysis here, the Court should conclude that the only individual plaintiff, Betty Eakin, who is an Erie County-registered voter (Am. Complaint, doc. 228 ¶ 12), failed to establish standing to sue Berks County in this action.  Similarly, the

2

organizational plaintiffs, DSCC (*id.* ¶ 13), DCCC (*id.* ¶ 14), and AFT Pennsylvania (*id.* ¶ 15), cannot establish they took sufficient action or expended funds in Berks County, or sustained injuries caused by Berks County, which has merely followed the law as set forth in Pennsylvania's Election Code, and binding interpretive caselaw, *see Ball v. Chapman*, 289 Pa. 1 (Pa. 2023). Because none of the Defendants have standing to pursue claims against Berks County, the Court should dismiss with prejudice all claims against Berks County in this action.

    **III.**    **Plaintiffs' Materiality Provision claim must be dismissed with prejudice based on the Third Circuit's recent precedential decision reversing this Court's Order granting summary judgment on Plaintiffs' identical Materiality Provision claim in Case 339.**

Count I of Plaintiffs' Amended Complaint (doc. 228) claims the Pennsylvania Election Code's requirement that voters hand-write the correct date on the voter declaration on the outer envelope enclosing their absentee or mail-in ballots (the "Date Requirement") violates the Materiality Provision of the federal civil rights act, 52 U.S.C. § 10101(a)(2)(B). Plaintiffs in Case 339 asserted the identical claim. On appeal, in a precedential decision, the Third Circuit reversed this Court's November 21, 2023 Order in Case 339 granting Plaintiffs' summary judgment motion on their Materiality Provision claim (Case 339 doc. 348), holding the challenged Date Requirement is a vote-casting rule—not a voter qualification rule—that is not covered by and thus does not violate, the Materiality Provision. *Pennsylvania State Conf. of NAACP Branches v. Sec'y Commonwealth of Pennsylvania*, 97 F.4th 120, 131, 138-139 (3d Cir. 2024).

This precedential Third Circuit decision is binding on this Court's analysis of Plaintiffs' identical Materiality Provision claim in this case. *Jakomas v. City of Pittsburgh*, 342 F. Supp.3d 632, 647 (W.D. Pa. 2018) ("This Court is, of course, bound by the precedential decisions of the Third Circuit.") (citing *Cyclops Corp. v. United States*, 408 F. Supp. 1287, 1291 (W.D. Pa. 1976)

3

("The decisions of the United States Courts of Appeals, of course, are binding upon the District Courts within such Circuit.")); *A.A. ex rel. E.A. v. Exeter Twp. Sch. Dist.*, 485 F. Supp. 2d 587, 591 (E.D. Pa. 2007) ("It is axiomatic that a district court is bound to apply its appellate court's precedent.") (citing *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 867 (3d Cir. 1984) (the hierarchical nature of the federal judiciary compels district court judges to apply precedential decisions of their designated court of appeals regardless of their personal views as to the merits of those decisions).

Accordingly, the Court should grant summary judgment in favor of Berks County and the other defendants and dismiss with prejudice Plaintiffs' Materiality Provision claim in Count I.

### IV. Plaintiffs failed to comply with Fed. R. Civ. P. 5.1 requiring notice to the Pennsylvania Attorney General of their constitutional challenge to the Date Requirement.

Plaintiffs' remaining claim in Count II of their Amended Complaint (doc. 228 ¶¶ 41-49) challenges the constitutionality of the Pennsylvania Election Code's Date Requirement. Rule 5.1 of the Federal Rules of Civil Procedure requires any party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute to promptly file a notice of constitutional question stating the question and identifying the paper that raises if, in the event a state statute is challenged, the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity. Fed. R. Civ. P. 5.1(a)(1)(B). If a state statute is questioned, the party must serve the notice and paper on the state attorney general either by certified or registered mail or by sending it to an electronic address designated by the attorney general for that purpose. Fed. R. Civ. P. 5.1(a)(2).

Additionally, the Court must, under 28 U.S.C. § 2403,[2] certify to the appropriate attorney general that a statute has been questioned. Fed. R. Civ. P. 5.1(b). Unless the court sets a later time, the attorney general may intervene within 60 days after the notice is filed or after the court certifies the challenge, whichever is earlier. Fed. R. Civ. P. 5.1(c). Before the time to intervene expires, the court **may reject** the constitutional challenge, **but may not** enter a final judgment holding the statute unconstitutional. *Id.* (emphasis added).

The purpose of Rule 5.1's requirement to notify state attorneys general of constitutional challenges to their state statutes is obvious. Under Section 204(a)(3) of the Commonwealth Attorneys Act, the Pennsylvania Attorney General has a duty "to uphold and defend the constitutionality of all statutes so as to prevent their suspension or abrogation in the absence of a controlling decision by a court of competent jurisdiction." Act of Oct. 15, 1980, P.L. 950, No. 164, § 204(a)(3). Consistent with that duty, in Case 339, the Commonwealth of Pennsylvania defendants—Secretary of the Commonwealth Al Schmidt and the Pa. Department

---

[2] 28 U.S.C. § 2403(b), which applies to challenges to state statutes, states:

> (b) In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The State shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

Rule 5.1 goes beyond the requirements of 28 U.S.C. § 2403 by requiring notice and certification of a constitutional challenge to any federal or state statute, not only those "affecting the public interest." *See* Fed. R. Civ. P. 5.1 (Committee Notes – 2006). Here, the challenged Date Requirement involves the state rules for casting votes by absentee or mail-in ballots, which affects the public interest.

of State—who represented by Pennsylvania's Office of Attorney General and Office of General Counsel, have argued the Date Requirement is constitutional.

In this case, unlike Case 339, the Commonwealth of Pennsylvania, one of its agencies, or one of its officers or employees in an official capacity, are not parties. Because Count II of Plaintiffs' Amended Complaint asserts the Pennsylvania's Election Code's Date Requirement violates the First and Fourteenth Amendments (doc. 248 ¶¶ 41-49), Rule 5.1 applies to Plaintiffs. As far as Berks County can tell based on a review of this case's docket, Plaintiffs have not complied with their obligations under Fed. R. Civ. P. 5.1 to file notice of their constitutional challenge of the Date Requirement, and serve notice on the Pennsylvania Attorney General of this constitutional challenge so the Attorney General can intervene. Therefore, the Court **may reject** Plaintiffs' constitutional challenge, but **may not** enter a final judgment holding the Date Requirement unconstitutional until the Pennsylvania Attorney General has an opportunity to intervene and defend the constitutionality of the challenged Date Requirement. A few county boards of elections should not be the sole defenders of the constitutionality of the Pennsylvania Election Code.

### V.   On the merits, mandatory application of the Date Requirement does not violate the United States Constitution.

The provision of the Election Code at issue—the Date Requirement—requires the electors' declaration on outer envelope of their absentee or mail-in ballot to be both signed and dated. That declaration is returned to the electors' county board of elections with their mail-in or absentee ballot. The additional burden on voters of writing the correct date on their declarations after signing them is minimal or non-existent.

As a threshold matter, regulation of absentee and mail-in voting such as the Date Requirement does not implicate "fundamental rights." *Biener v. Calio*, 361 F.3d 206, 214 (3d

Cir. 2004). There is no federal constitutional right to vote by absentee or mail-in ballot. *Mays v. LaRose*, 951 F.3d 775, 792 (6th Cir. 2020); *Tully v. Okeson*, 977 F.3d 608, 611 (7th Cir. 2020); *Texas Democratic Party v. Abbott*, 961 F.3d 389, 406 (5th Cir. 2020); *see also McDonald v. Board of Election Comm'rs*, 394 U.S. 802, 807 (1969) ("[A]bsentee statutes, which are designed to make voting more available to some groups who cannot easily get to the polls, do not themselves deny . . . the exercise of the franchise."). Thus, the *Anderson-Burdick* framework Plaintiffs seek to invoke is inapplicable. *See Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 137 (3d Cir. 2022).

Instead, rational basis scrutiny applies. *See McDonald*, 394 U.S. at 809. For the reasons explained below, the Date Requirement is constitutional under that test because it "bear[s] some rational relationship to a legitimate state end." *Id.*

Even applying the *Anderson-Burdick* framework, the Date Requirement is constitutional. *Anderson-Burdick*, when it applies, requires courts to weigh the character and magnitude of the burden, if any, imposed by the law on protected rights against the state's interests in and justifications for the law. *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189-91 (2008) (Opinion of Stevens, J.). "Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest," while those imposing "[l]esser burdens … trigger less exacting review, and [the] State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Timmons v. Twin Cty. Area New Party*, 520 U.S. 351, 358-59 (1997).

>  A.   **The date requirement is constitutional because it imposes no more than the usual burdens of voting and is amply justified by the State's interests in protecting the integrity of its elections.**

Even if Plaintiffs satisfy the above requirements, the commonsense Date Requirement's "burdens" are too light and its justifications too reasonable to violate the Constitution. The U.S. Supreme Court's decision in *Crawford* demonstrates as much. The plaintiffs in that case claimed that an Indiana law requiring in-person voters to present a photo ID imposed an unconstitutional burden under the *Anderson-Burdick* framework. *See* 553 U.S. at 185 (Opinion of Stevens, J.). The Supreme Court noted that because the plaintiffs brought a facial challenge "that would invalidate the statute in all its applications, they bear a heavy burden of persuasion." *Id.* at 200. The plaintiffs, however, did not introduce "evidence of a single, individual Indiana resident who [would] be unable to vote" under the challenged law. *Id.* at 187 (internal quotation marks omitted). The Supreme Court ultimately held the plaintiffs had failed to carry that burden and rejected their claim. *See id.* at 200-04.

The Supreme Court analyzed the character and magnitude of the burden imposed by the photo ID requirement. *See id.* at 198. The Supreme Court recognized that the law placed some burden on voters, particularly voters who lacked a photo ID. *See id.* The Supreme Court noted that voters who did not already have a photo ID must bear "the inconvenience of making a trip to the [Bureau of Motor Vehicles], gathering the required documents, and posing for a photograph." *Id.* The Supreme Court concluded, however, that such inconvenience "surely does not qualify as a substantial burden on the right to vote, or even represent a significant increase over the usual burdens of voting." *Id.*

The Supreme Court also addressed the state's asserted interests in adopting the photo ID

8

requirement—"deterring and detecting voter fraud," "moderniz[ing] election procedures," and "safeguarding voter confidence." *Id.* at 191. The Supreme Court concluded that those interests were "legitimate" and that the photo ID requirement "is unquestionably relevant to the state's interest in protecting the integrity and reliability of the election process." *Id.* Accordingly, the Supreme Court held that the plaintiffs' unconstitutional burden claim failed. *See id.* at 200-04.

Plaintiffs' unconstitutional burden claim likewise fails because the Date Requirement imposes no more than the "usual burdens of voting." *Id.* at 198. Plaintiffs concede that the signature requirement is constitutional. The fact that Plaintiffs (in this case and Case 339) have not contested the constitutionality of the signature requirement demonstrates the Date Requirement is similarly lawful.

Signing one's name is at least as "burdensome" as writing the date the declaration is signed. If the signature requirement is valid and not unconstitutionally burdensome, then so too is the Date Requirement. It cannot be a significant burden to require voters to write a date on the same declaration they are required to sign. Moreover, any burden in writing the date is a lesser burden than "[h]aving to identify one's own polling place and then travel there to vote," which "does not exceed the usual burdens of voting." *Brnovich v. Democratic Nat'l Committee*, 594 U.S. 647, 676 (2021) (internal quotation marks omitted). And signing one's name and dating the voter declarations are certainly less onerous than "the inconvenience of making the trip to the [Bureau of Motor Vehicles], gathering the required documents, and posing for a photograph," which was upheld as minimal and constitutional in *Crawford*, 553 U.S. at 198 (Opinion of Stevens, J.).

The Date Requirement advances "legitimate" and "unquestionably relevant" state interests related to "protecting the integrity and reliability of the election process." *Id.* at 191.

9

The Date Requirement serves several weighty interests and an "unquestionable purpose." *In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 Gen. Election* ("*In re 2020 Canvass*") 241 A.3d at 1090 (Opinion of Justice Dougherty, Chief Justice Saylor, and Justice Mundy); *see also id.* at 1087 (Opinion of Justice Wecht) ("colorable arguments . . . suggest [the Date Requirement's] importance").

First, the Date Requirement advances the Commonwealth's interests in "deterring and detecting voter fraud" and "protecting the integrity and reliability of the electoral process." *Crawford*, 553 U.S. at 191 (Opinion of Stevens, J.); *see also Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989); *In re 2020 Canvass*, 241 A.3d at 1091 (Opinion of Justice Dougherty, Chief Justice Saylor, and Justice Mundy). "And it should go without saying that a State may take action to prevent election fraud without waiting for it to occur and be detected within its own borders." *Brnovich*, 594 U.S. at 686.

The Date Requirement's advancement of the Commonwealth's interest in preventing fraud is actual, not hypothetical. Two years ago, the Date Requirement was used to detect a Lancaster County woman's forgery and fraudulent submission of her deceased mother's mail-in ballot, leading to her guilty plea and sentencing on January 20, 2023 of two years of probation and forfeiture of her voting rights for four years. *See Commonwealth v. Mihaliak*, CP-36-CR-0003315-2022 (Lancaster Cty. Jan. 20, 2022). Because current Pennsylvania Supreme Court precedent precludes county boards of elections from comparing signatures on ballot envelopes with those in the official record, the only evidence of third-party fraud on the face of the fraudulent ballot in *Mihaliak* was the handwritten date of April 26, 2022, which was twelve days after the decedent had passed away. *See id*. This example shows the Date Requirement

effectively serves—at a minimum—the Commonwealth's legitimate interest in preventing election fraud.

Second, the Date Requirement serves the State's interest in solemnity—*i.e.*, in ensuring that voters "contemplate their choices" and "reach considered decisions about their government and laws." *Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1887-88 (U.S. 2018); *Tashjian v. Republican Party*, 479 U.S. 208, 221-22 (1986) (state has "legitimate interests" in "providing for educated and responsible voter decisions."). The formalities that attend voting— namely, that the "elector shall then fill out, **date and sign** the declaration printed," 25 P.S. § 3146.6(a) (emphasis added); § 3150.16(a)—encourage such deliberation, see *Ball*, 289 A.3d at 10 (the date "provides proof of when the elector actually executed the ballot in full, ensuring their desire to cast it in lieu of appearing in person at the polling place").

"Signature requirements have long been recognized as fulfilling cautionary functions in protecting an individual's rights." *State v. Williams*, 565 N.E.2d 563, 565 (Ohio 1991). Formalities like signing and dating requirements serve the "cautionary function" by "impressing the parties with the significance of their acts and their resultant obligations." *See Davis G N Mortg. Corp.*, 244 F. Supp. 2d 950, 956 (N.D. Ill. 2003). These formalities "guard[] against ill-considered action," *Thomas A. Armbruster, Inc. v. Barron*, 491 A.2d 882, 883-84 (Pa. Super. Ct. 1985), and the absence of formalities "prevent[s] . . . parties from exercising the caution demanded by a situation in which each ha[s] significant rights at stake," *Thatcher's Drug Store v. Consol. Supermarkets*, 636 A.2d 156, 161 (Pa. 1994). Traditional signing and dating requirements help people "to appreciate the seriousness of their actions," *id.*, and for that reason are required in a range of instruments, including "wills" and "transfer[s] of real property," *Williams*, 565 N.E.2d at 565.

11

Pennsylvania can require its citizens to exercise the same caution when engaging in the solemn civic exercise of voting. "Casting a vote is a weighty civic act, akin to a jury's return of a verdict, or a representative's vote on a piece of legislation." *Minnesota Voters Alliance*, 138 S. Ct. at 1888. If states can require the formalities of signing and dating for wills and property transactions, they can do the same for voting. The Election Code's Date Requirement is inextricably intertwined with the signature requirement. Together they focus voters "on the important decisions immediately at hand." *Id.* Indeed, everyday experience confirms that signatures are frequently accompanied by dates—to name an easy example, on checks.

Pennsylvania law often pairs signature and date requirements in its statutes.[3] Similarly, forms set forth in Pennsylvania statutes that provide spaces for both a signature and a date are too numerous to list here. A few examples include 57 Pa. C.S.A. § 316 (short form certificates of notarial acts); 23 Pa. C.S.A. § 5331 (parenting plan); 73 P.S. § 201-7(j.1)(iii)(3)(ii) (emergency work authorization form); 42 Pa. C.S.A. § 8316.2(b) (childhood sexual abuse settlement form); 73 P.S. § 2186(c) (cancellation form for certain contracts). It thus makes no sense to analyze the signature requirement and the date requirement separately—they appear in the same statutory clause, govern the same document, and together perform a cautionary function.

---

[3] *See, e.g.*, 75 Pa. C.S.A. § 1731(c.1) (form rejecting uninsured motorist protection "must be signed by the first named insured and dated to be valid"); *id.* § 1738(e) (form rejecting stacked limits of underinsured motorist coverage "must be signed by the first named insured and dated to be valid"); 62 P.S. § 1407-C(c)(1) ("In order to decline participation in the health information exchange, a patient must sign and date a form declining participation."); 20 Pa. C.S.A. § 5484(c), (d) (requiring "dated signature of the attending physician" on DNR bracelets and necklaces); 35 Pa. C.S.A. § 5203(b)(2) ("The patient executing and filing a voluntary nonopioid directive form with a practitioner shall sign and date the form."); 73 P.S. § 517.7(d)(4) (arbitration clause "shall not be effective unless both parties have assented as evidenced by signature and date, which shall be the date on which the contract was executed"); 35 Pa. C.S.A. § 52B02(b)(4) ("The treatment

*(Text of footnote continued on next page . . .)*

How can a voter be held accountable for a false declaration stating, among other things, "I have not already voted in this election," unless the voter's declaration is both signed and dated? It is not onerous or unusual to legally require a declarant to sign and date a declaration or affidavit stating certain facts are true. Pennsylvania's statute on unsworn declarations, 42 Pa. C.S.A. § 6206, requires both signature **and dating**, as follows:

> **§ 6206. Form of unsworn declaration.**
>
> An unsworn declaration under this chapter must be in substantially the following form:
>
>> I declare under penalty of perjury under the law of the Commonwealth of Pennsylvania that the foregoing is true and correct.
>>
>> Signed on the........day of........,........,
>> at............................................,
>> (date)........(month)...........(year).........
>> (county or other location, and state)............
>> ...............................................
>> (country)................................
>> (printed name).............................
>> (signature)...............................

Federal law provides another example of such a requirement. 28 U.S.C. § 1746 provides that when any matter is required or permitted to be supported, evidenced, established, or proved by a sworn written declaration, verification, certificate, statement, oath or affidavit, an unsworn declaration, verification, certificate, statement, oath or affidavit may be provided instead, with like force and effect, to support, evidence, establish or prove the matter at issue, as long as the unsworn declaration is in a writing that is subscribed to be true under penalty of perjury, **and dated**, in a specified form (depending on whether it is executed within or without the United States, its territories, possessions, or commonwealths).

---

agreement form under subsection (a)(3) shall … include … [t]he signature of the individual and the date of signing.").

13

Regardless of where it is executed, both forms require the declarant to provide the date on which the declaration is executed:

(1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)".

(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

*See* 28 U.S.C. § 1746.

Third, the Date Requirement advances the State's interest in "safeguarding voter confidence" in Pennsylvania elections. *Crawford*, 553 U.S. at 191 (Opinion of Stevens, J.). Pennsylvania law has long imposed the Date Requirement, which encourages "citizen participation in the voting process" by ensuring voters that Pennsylvania elections are free, fair, trustworthy, and untainted by fraud, *Crawford*, 553 U.S. at 197 (Opinion of Stevens, J.).

Because the Date Requirement imposes a minimal burden on voting and effectively furthers several weighty Commonwealth interests such as protecting the integrity and reliability of the election process the Election Code's Date Requirement does is constitutional, and thus Plaintiffs' proposed amendment is futile.

      **B.    Plaintiffs have not met their burden of showing the alleged constitutional violations resulted from Berks County's customs, practices or policies.**

Additionally, Plaintiffs have not demonstrated, as required, that the alleged violation of the First and Fourteenth Amendment is based on Berks County's customs, practices or policies. *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1027 (3d Cir. 1991) ("In a § 1983 claim against a local government unit, liability attaches when it is the government unit's policy or custom itself that violates the Constitution.") Because Plaintiffs' constitutional claim is based on

Pennsylvania law—and not any custom, practice or policy of Berks County, which is bound to follow Pennsylvania law and binding interpreting caselaw[4]—Plaintiffs' First and Fourth Amendment claim against Berks County fails for this additional independent reason.

**VI.   Conclusion.**

For the reasons set forth above and elsewhere, the Court should grant summary judgment in favor of Berks County and against Plaintiffs and dismiss all of Plaintiffs' claims against Berks County.

Respectfully submitted,

Dated: June 5, 2024                                    **SMITH BUKOWSKI, LLC**

By:   /s/ Jeffrey D. Bukowski
Jeffrey D. Bukowski, Esquire
PA Attorney I.D. No. 76102
JBukowski@SmithBukowski.com
1050 Spring Street, Suite 1
Wyomissing, PA 19610
Telephone: (610) 685-1600
Facsimile:  (610) 685-1300

*Attorneys for Berks County Board of Elections*

---

[4] *See Ball v. Chapman* (102 MM 2022), 289 Pa. 1, 28 (Pa. 2023) ("The Election Code commands absentee and mail-in electors to date the declaration that appears upon ballot return envelopes, and failure to comply with that command renders a ballot invalid as a matter of Pennsylvania law.")  Because of the timing, the Pennsylvania Supreme Court in *Ball v. Chapman* issued an Order dated November 1, 2022 and a supplemental Order dated November 5, 2022.  The Supreme Court's November 1, 2022 Order said, "The Pennsylvania county boards of elections are hereby ORDERED to refrain from counting any absentee and mail-in ballots received for the November 8, 2022 general election that are contained in undated or incorrectly dated outer envelopes."  The Court's November 5, 2022 supplemental Order defined, for purposes of the November 8, 2022 general election, "incorrectly dated outer envelopes" as "(1) mail-in ballot outer envelopes with dates that fall outside the date range of September 19, 2022, through November 8, 2022; and (2) absentee ballot outer envelopes with dates that fall outside the date range of August 30, 2022, through November 8, 2022."  Pursuant to these Orders and the Court's Majority Opinion issued February 8, 2023, the county boards of elections are required by law to set aside and not count domestic absentee and mail-in ballots "contained in undated or incorrectly dated outer envelopes."