IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

BETTE EAKIN, *et al.*,

    Plaintiffs,

v.

ADAMS COUNTY BOARD OF ELECTIONS, *et al.*,

    Defendants.

Case No. 1:22-cv-00340-SPB

**SECOND SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

ARGUMENT ............................................................................................................................ 1

    I.    The date requirement implicates the constitutional right to vote. .................................... 1

    II.    The date requirement does not advance any legitimate state interest ............................. 4

        A.    The purported state interest in "solemnity" is neither legitimate nor advanced by the date requirement. ........................................................................... 6

        B.    The asserted state interest in voter confidence is not advanced by the date requirement. ................................................................................................................ 8

        C.    The asserted state interest in fraud detection and deterrence is not advanced by the date requirement. ........................................................................................... 9

    III.    Enforcing the date requirement burdens the right to vote. ........................................... 11

CONCLUSION ....................................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Celebrezze*,
    460 U.S. 780 (1983) ................................................................................................ *passim*

*Ball v. Chapman*,
    289 A.3d 1 (Pa. 2023) ................................................................................................ 10, 11

*Belitskus v. Pizzingrilli*,
    343 F.3d 632 (3d Cir. 2003) ........................................................................................ 5, 14

*Burdick v. Takushi*,
    504 U.S. 428 (1992) ......................................................................................................... 4

*Chapman v. Berks Cnty. Bd. of Elections*,
    No. 355 M.D. 2022, 2022 WL 4100998 (Pa. Commw. Ct. Aug. 19, 2022) ............. 10, 11

*Crawford v. Marion Cnty. Election Bd.*,
    553 U.S. 181 (2008) ................................................................................................ 4, 5, 11

*Democratic Exec. Comm. of Fla. v. Lee*,
    915 F.3d 1312 (11th Cir. 2019) ............................................................................. 3, 4, 13

*Donald J. Trump for President, Inc. v. Boockvar*,
    493 F. Supp. 3d 331 (W.D. Pa. 2020) ............................................................................. 9

*Eu v. San Francisco Cnty. Democratic Cent. Comm.*,
    489 U.S. 214 (1989) ......................................................................................................... 6

*Fish v. Schwab*,
    957 F.3d 1105 (10th Cir. 2020) ............................................................................. *passim*

*Higgins v. Bayada Home Health Care Inc.*,
    62 F.4th 755 (3d Cir. 2023) ............................................................................................. 8

*Hill v. Stone*,
    421 U.S. 289 (1975) ......................................................................................................... 2

*Kim v. Hanlon*,
    99 F.4th 140 (3d Cir. 2024) .............................................................................. 2, 6, 8, 14

*Kramer v. Union Free Sch. Dist. No. 15*,
    395 U.S. 621 (1969) ......................................................................................................... 2

*Kusper v. Pontikes*,
    414 U.S. 51 (1973) ........................................................................................................... 6

*League of Women Voters of Fla., Inc. v. Detzner*,
   314 F. Supp. 3d 1205 (N.D. Fla. 2018) ............................................................................... 12

*Lerman v. Bd. of Elections in New York City*,
   232 F.3d 135 (2d Cir. 2000) .................................................................................................. 6

*Mays v. LaRose*,
   951 F.3d 775 (6th Cir. 2020) ................................................................................................ 4

*McDonald v. Bd. of Election Comm'rs of Chicago*,
   394 U.S. 802 (1969) .......................................................................................................... 2, 3

*Ne. Ohio Coal. for the Homeless v. Husted*,
   837 F.3d 612 (6th Cir. 2016) ......................................................................................... 11, 13

*O'Brien v. Skinner*,
   414 U.S. 524 (1974) ............................................................................................................. 3

*Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*,
   97 F.4th 120 (3d Cir. 2024) ......................................................................................... passim

*Pa. State Conf. of the NAACP v. Schmidt*,
   No. 1:22-CV-00339 (W.D Pa. Nov. 21, 2023) .................................................................... 10

*Reform Party of Allegheny Cnty. v. Allegheny Cnty. Dep't of Elections*,
   174 F.3d 305 (3d Cir. 1999) ............................................................................................ 4, 14

*Reynolds v. Sims*,
   377 U.S. 533 (1964) ............................................................................................................. 1

*Rosario v. Rockefeller*,
   410 U.S. 752 (1973) ............................................................................................................. 6

*Saucedo v. Gardner*,
   335 F. Supp. 3d 202 (D.N.H. 2018) ..................................................................................... 3

*Soltysik v. Padilla*,
   910 F.3d 438 (9th Cir. 2018) ............................................................................................ 5, 9

*Storer v. Brown*,
   415 U.S. 724 (1974) ............................................................................................................. 5

*Tashjian v. Republican Party of Conn.*,
   479 U.S. 208 (1986) .................................................................................................... 5, 6, 14

*Tex. Democratic Party v. Abbott*,
   978 F.3d 168 (5th Cir. 2020) ................................................................................................ 4

*Texas Democratic Party v. Abbott*,
    961 F.3d 389 (5th Cir. 2020) ................................................................................................4

*Trinsey v. Pennsylvania*,
    941 F.2d 224 (3d Cir. 1991)..................................................................................................2

*Tully v. Okeson*,
    78 F.4th 377 (7th Cir. 2023) .................................................................................................3

*Tully v. Okeson*,
    977 F.3d 608 (7th Cir. 2020) ................................................................................................3

*United States v. Classic*,
    313 U.S. 299 (1941)..............................................................................................................1

*Voto Latino v. Hirsch*,
    No. 1:23-CV-861, 2024 WL 230931 (M.D.N.C. Jan. 21, 2024) ..........................................3

**Statutes**

Pa. Stat. § 3150.11 .......................................................................................................................3

**INTRODUCTION**

In *Pennsylvania State Conference of NAACP Branches v. Secretary Commonwealth of Pennsylvania*, the Third Circuit confirmed that Pennsylvania's date requirement for mail ballot envelopes "serves little apparent purpose," 97 F.4th 120, 125 (3d Cir. 2024) ("*Pa. NAACP*"), and yet the enforcement of this meaningless technicality has disenfranchised over 10,000 eligible voters—a trend that will continue in future elections absent injunctive relief. Although the Third Circuit concluded that the materiality provision does not apply to mail voting procedures,[1] that court's findings nonetheless support Plaintiffs' second cause of action under the First and Fourteenth Amendments.

The test for this constitutional claim is straightforward: The Court must balance the character and magnitude of the date requirement's burden on the right to vote against the legitimate state interests that it serves. Uncontroverted evidence shows that enforcement of the date requirement has created an unnecessary barrier to the franchise for thousands of eligible voters, and the requirement advances no sufficiently weighty state interest, as the Third Circuit confirmed. *See id.* Thus, the date requirement unconstitutionally burdens the right to vote in violation of the First and Fourteenth Amendments, and this Court should enter summary judgment for Plaintiffs.

**ARGUMENT**

**I.     The date requirement implicates the constitutional right to vote.**

The constitutional right to vote broadly includes "the right to have one's vote counted." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964); *see also id.* at 563 n.40; *United States v. Classic*, 313 U.S. 299, 318 (1941) (explaining that right to vote includes both "right to cast a ballot and to have

---

[1] Plaintiffs disagree with the Third Circuit's analysis of the materiality provision but recognize that this Court currently is bound by that ruling.

1

it counted"); *Trinsey v. Pennsylvania*, 941 F.2d 224, 231 (3d Cir. 1991) ("[T]he right to have one's 'vote counted in both the general election and in the primary election' . . . is a right protected by the Constitution." (quoting *Classic*, 313 U.S. at 322)). This means that rules requiring the rejection of cast ballots implicate the right to vote, whether those ballots were cast in-person or by mail. Because election regulations "inevitably burden some fundamental rights," courts apply the *Anderson-Burdick* balancing test in assessing their constitutionality. *Kim v. Hanlon*, 99 F.4th 140, 155 (3d Cir. 2024) (citing *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992)). No parties in this case have disputed that the *Anderson-Burdick* test applies to Plaintiffs' claim. Mem. Op. 11 & n.9, ECF No. 341.[2]

In previous filings, Intervenors briefly contended that the date requirement does not implicate the fundamental right to vote because it involves voting by mail. Mem. in Supp. of Intervenor-Defs.' Mot. for Summ. J. 17, ECF No. 282. That argument, which relies on *McDonald v. Board of Election Commissioners of Chicago*, 394 U.S. 802 (1969), is simply incorrect. The plaintiffs in *McDonald*, who were detained in Illinois jails, claimed a "right to *receive*" mail ballots while detained, something that state law generally did not permit. *Id.* at 807 (emphasis added); *see also Hill v. Stone*, 421 U.S. 289, 300 n.9 (1975) ("In *McDonald* . . . the only issue before the Court was whether pretrial detainees in Illinois jails were unconstitutionally denied absentee ballots."); *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 626 n.6 (1969) ("[A]t issue [in *McDonald*] was not a claimed right to vote but a claimed right to an absentee ballot."). Moreover, the Supreme Court later explained that the "disposition of the claims in McDonald rested on failure of proof" that the challenged statute prohibited the plaintiffs from voting, rather than on a broad exemption

---

[2] Although the Third Circuit, in *Pa. NAACP*, held that "the Materiality Provision is concerned only with the process of determining a voter's *eligibility* to cast a ballot," 97 F.4th at 135, no such restriction applies to the *Anderson-Burdick* test.

2

of mail voting from the protections of federal law. *O'Brien v. Skinner*, 414 U.S. 524, 529 (1974). When plaintiffs presented evidence of a burden on their right to vote in *O'Brien*, challenging a restriction on mail voting, the Court held that restriction unconstitutional. *See id.* at 530–31. Here, there is no argument that Pennsylvania law does not allow for voting by mail—it clearly does. 25 Pa. Stat. § 3150.11. As such, Plaintiffs are not asking this Court to provide an option to vote by mail that Pennsylvania law does not allow; they are challenging a requirement imposed by Pennsylvania law on the exercise of mail voting that threatens to disenfranchise lawful voters who vote using mechanisms that are approved by the state.

The Supreme Court has recognized—including in *McDonald*—that once a state provides a means of exercising the right to vote, it must be administered in accordance with federal law. *See* 394 U.S. at 807 ("[W]e have held that once the States grant the franchise, they must not do so in a discriminatory manner."); *see also, e.g.*, *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1316, 1318–19 (11th Cir. 2019) (recognizing that "Florida allows eligible voters to cast their votes by mailing in their ballots" and applying *Anderson-Burdick* to vote-by-mail signature matching scheme); *Saucedo v. Gardner*, 335 F. Supp. 3d 202, 217 (D.N.H. 2018) ("Having induced voters to vote by absentee ballot, the State must provide adequate process to ensure that voters' ballots are fairly considered and, if eligible, counted."); *cf. Voto Latino v. Hirsch*, No. 1:23-CV-861, 2024 WL 230931, at *26 (M.D.N.C. Jan. 21, 2024) (recognizing that same-day voter registration, once provided, cannot be administered so as to violate procedural due process rights).

The cases cited by Intervenors do not establish any contrary proposition. *Tully v. Okeson*, 977 F.3d 608 (7th Cir. 2020) ("*Tully I*"), was a motion panel decision, later rebuked by the Seventh Circuit for its "truncated legal analysis" when that court considered the case on the merits, notably after initial summary judgment briefing concluded in this case. *Tully v. Okeson*, 78 F.4th 377, 381,

3

387 (7th Cir. 2023) ("*Tully II*"). Similarly, *Texas Democratic Party v. Abbott*, 961 F.3d 389 (5th Cir. 2020) ("*TDP I*"), was a motion panel decision that was explicitly reproached by the merits panel for its application of *McDonald*. *See Tex. Democratic Party v. Abbott*, 978 F.3d 168, 193 (5th Cir. 2020) ("*TDP II*"). The discussion in *TDP II* to which Intervenors cite merely reiterates that *McDonald* involved the "claimed right to *receive* absentee ballots." 978 F.3d at 185 (quoting *McDonald*, 394 U.S. at 807) (emphasis added). And *Mays v. LaRose* simply restated this proposition, 951 F.3d 775, 792 (6th Cir. 2020) (citing *McDonald*, 394 U.S. at 807–09), which is distinct from the principle that regulations of mail voting, once a state affirmatively allows for mail voting, must comply with federal law.

Thus, under the *Anderson-Burdick* standard, this Court must "weigh the 'character and magnitude of the asserted injury' . . . against 'the precise interests put forward by the State . . . ,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). Because it is a "flexible standard," the *Anderson-Burdick* framework "cannot be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions." *Anderson*, 460 U.S. at 789 (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)); *see also Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (controlling op.). And "even when a law imposes only a slight burden on the right to vote, relevant and legitimate interests of sufficient weight still must justify that burden." *Democratic Exec. Comm. of Fla.*, 915 F.3d at 1318–19. Here, the date requirement serves no legitimate interests, and therefore the burdens it imposes are not justified.

**II.     The date requirement does not advance any legitimate state interest.**

The *Anderson-Burdick* analysis requires this Court to "identify and evaluate the precise interests put forward by the" Defendants, without "speculat[ing] about possible justifications." *Reform Party of Allegheny Cnty. v. Allegheny Cnty. Dep't of Elections*, 174 F.3d 305, 315 (3d Cir.

4

1999) (quoting *Anderson*, 460 U.S. at 789). Whatever burden an election rule imposes—even if *de minimis*—"must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford*, 553 U.S. at 191 (controlling op.) (quoting *Norman v. Reed*, 502 U.S. 279, 288–89 (1992)). Here, Intervenors have asserted that the date requirement serves three interests: (1) solemnity; (2) voter confidence; and (3) fraud detection and deterrence. ECF No. 282 at 19–23; Intervenor-Defs.' Opp'n to Pls.' Mot. for Summ J. 18–19, ECF No. 312; Omnibus Reply in Supp. Intervenor-Defs.' Mot. for Summ. J. 5, ECF No. 325. But there is no evidence that a handwritten date on a mail ballot envelope actually advances any of these interests.

In evaluating the asserted interests, the Court must "determine the[ir] legitimacy and strength." *Belitskus v. Pizzingrilli*, 343 F.3d 632, 645 (3d Cir. 2003) (quoting *Anderson*, 460 U.S. at 789); *see also Crawford*, 553 U.S. at 191 (controlling op.). State interests that are not legitimate cannot justify any challenged practice imposing any burden. *See, e.g.*, *Anderson*, 460 U.S. at 804 (holding insufficient asserted interest in "political stability" and contrasting with "interest in avoiding political fragmentation" upheld in *Storer*, 415 U.S. 724); *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217–18, 222–24 (1986) (holding insufficient asserted interests in administrability and in protecting the integrity of the two-party system). Moreover, even if a state interest is "legitimate in the abstract," Defendants must put forward "concrete evidence" proving that "such an interest made it necessary to burden voters' rights." *Fish v. Schwab*, 957 F.3d 1105, 1132–33 (10th Cir. 2020). In other words, where a challenged practice does not actually advance the asserted state interests, those interests cannot justify even the slightest burden on the right to vote. *See Tashjian*, 479 U.S. at 219–22 (holding inapplicable "legitimate interest[s]" in preventing party raiding and in avoiding voter confusion because those interests were not advanced by the challenged statute); *see also Soltysik v. Padilla*, 910 F.3d 438, 447 (9th Cir. 2018) (holding that

even an "important government interest" could not justify burden because the court "struggle[d] to understand how [the challenged statutes] . . . advance[d] that goal"); *Lerman v. Bd. of Elections in N.Y.C.*, 232 F.3d 135, 149 (2d Cir. 2000) ("[T]he fact that the defendants['] asserted interests are 'important in the abstract' does not necessarily mean that its chosen means of regulation 'will in fact advance those interests.'" (quoting *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664 (1994))).

Because no legitimate state interest is actually advanced by the date requirement, it cannot survive any level of scrutiny under *Anderson-Burdick*.

### A. The purported state interest in "solemnity" is neither legitimate nor advanced by the date requirement.

State interests that have been deemed "legitimate" in the *Anderson-Burdick* context are typically those that seek to promote stronger ties between voters casting their ballots and the consequent electoral outcomes. In other words, state interests that intend to *strengthen democracy* are legitimate (although they still may not justify burdens on the right to vote). For example, preventing party raiding is considered a legitimate interest because it may prevent "voters in sympathy with one party . . . [from] influenc[ing] or determin[ing] the results of the other party's primary." *Rosario v. Rockefeller*, 410 U.S. 752, 760 (1973); *see also Tashjian*, 479 U.S. at 219; *Kusper v. Pontikes*, 414 U.S. 51, 59–60 (1973). Similarly, avoiding voter confusion is a legitimate interest, as it is critical in ensuring voters can cast informed decisions and are not deceived or misled. *See Tashjian*, 479 U.S. at 220–22; *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 228 (1989) ("Certainly the State has a legitimate interest in fostering an informed electorate."); *Kim*, 99 F.4th at 158. In contrast, Intervenors claim that the date requirement serves an interest in "solemnity," without any elaboration in the record. ECF No. 282 at 20–23; ECF No. 312 at 18–19; ECF No. 325 at 5. But such a pretextual and nebulous interest plays no role in

protecting the will of the voters and is therefore not legitimate for *Anderson-Burdick* purposes.

Intervenors do not explain what "solemnity" even involves or demands, let alone how it strengthens the democratic process. That is because it cannot be measured in any meaningful way. How "solemn" is the act of completing a mail ballot, placing it in a secrecy envelope, and mailing it in its outer envelope? And how does that "solemnity" compare with doing the same but also requiring that the voter handwrite a date on the outer envelope? And if "solemnity" is determined merely by the imposition of additional steps or administrative hurdles, is an activity that requires fewer steps, such as in-person voting, less "solemn"? The very act of voting could be considered solemn—but it remains to be seen how a state has any legitimate role in imposing procedural requirements merely to force some indeterminate degree of additional "solemnity" upon voters. *Cf. Anderson*, 460 U.S. at 798 (criticizing "[a] State's claim that it is enhancing the ability of its citizenry to make wise decisions by restricting the flow of information to them").

Moreover, there is absolutely nothing in the record here to suggest that the date requirement actually enhances the "solemnity" of the voting process. *See Schwab*, 957 F.3d at 1132–33. *None* of the county boards of elections—the parties actually administering elections—appear to share Intervenors' interest in "solemnity." Such an indeterminate and vague interest asserted not by election officials but partisan actors—which conveniently serves as a euphemism for making voting take longer—has no end: if deemed legitimate, it could theoretically be used to rationalize an endless array of otherwise pointless voting barriers, such that *any* burden can be justified on the basis that it could somehow make voting a more solemn procedure. Finally, even if solemnity *did* somehow matter, discarding a voter's undated or misdated ballot after they have cast it does not serve any such interest—the voter is not present when the noncompliant ballot is discarded and may not learn of the rejection until well after it has occurred. *See, e.g.*, ECF No. 311 ¶¶ 82–83;

*accord* ECF No. 313 ¶¶ 82–83 (explaining that Ms. Eakin learned that her ballot had been rejected due to a missing date days after casting it).

In sum, a purported interest in "solemnity" is not a legitimate state interest for *Anderson-Burdick* purposes where the fundamental right to vote is at stake and there is no evidence that the date requirement advances any such interest in this case. The date requirement therefore cannot be justified under this theory.

### B. The asserted state interest in voter confidence is not advanced by the date requirement.

Plaintiffs do not contest that safeguarding voter confidence is a legitimate state interest, but "the record does not demonstrate" that the date requirement actually advances such an interest. *Kim*, 99 F.4th at 158. No Defendant has offered "concrete evidence" that the date requirement—or the rejection of mail ballots for noncompliance with the date requirement—improves voter confidence in Pennsylvania. *See Schwab*, 957 F.3d at 1132–33. And Intervenors raised this state interest so briefly in their motion for summary judgment, *see* ECF No. 282 at 23, and provided only a conclusory statement in their reply, *see* ECF No. 325 at 5, that it should be considered ill-developed and therefore forfeited. *Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) ("arguments raised in passing . . . but not squarely argued, are considered forfeited" (cleaned up)).

If anything, discarding otherwise valid mail ballots for noncompliance with a meaningless requirement *impairs* voter confidence: for example, the undisputed evidence shows that "Ms. Eakin is very concerned that the Date Provision will force her" to undertake significant efforts to have her vote counted in future elections. Intervenor Defs.' Resp. to Statement of Material Facts in Supp. of Pls.' Mot. for Summ. J. ¶ 89, ECF No. 313; *accord* Resp. of Def. Lancaster Cnty. Bd. of Elections to Pls.' Concise Statement of Material Facts ¶ 89, ECF No. 311. By contrast, ensuring

8

qualified voters can cast their ballots and have them counted *inspires* confidence. *See Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 356 (W.D. Pa. 2020) (outlining evidence showing that drop boxes "inspire voter confidence").

In the absence of any evidence that a meaningless date requirement instills voter confidence, this interest cannot survive *Anderson-Burdick* scrutiny.

### C. The asserted state interest in fraud detection and deterrence is not advanced by the date requirement.

The purported interest in fraud detection or deterrence also collapses under the *Anderson-Burdick* analysis. For one, noncompliance with the date requirement is not a reason to suspect fraud, ECF No. 311 ¶¶ 65–68, and none of the 67 county boards named as defendants identified, raised, or was made aware of any credible concern regarding fraud with respect to the date requirement. *Id.* ¶ 72. Defendants make no serious attempt to explain how the date requirement—which serves no election administration purpose, *Pa. NAACP*, 97 F.4th at 125, 131, 135, 137–38—could plausibly prevent fraud, *Soltysik*, 910 F.3d at 447.

Intervenors fare no better. Their fraud-prevention theory rests on a distorted account of a single incident of attempted voter impersonation that ultimately had nothing to do with the date requirement. ECF No. 282 at 19–20; ECF No. 312 at 19; ECF No. 313 ¶¶ 65–69; ECF No. 325 at 5. That incident, at issue in *Commonwealth v. Mihaliak*, involved a Lancaster County voter allegedly completing and backdating her recently deceased mother's mail ballot. *See* Mem. in Supp. of Pls.' Mot. for Summ. J. 24, ECF No. 288; Pls.' Consol. Br. in Opp'n to Defs. & Intervenors' Mots. For Summ J. 20–21, ECF No. 318; Pls.' Reply to Intervenor-Defs.' Opp'n to Pls.' Mot. for Summ J. 5, ECF No. 330. As Lancaster County Board of Elections admitted, the perpetrator's mother had already been removed from the voter rolls before the ballot was received, and thus her mail ballot never would have been counted, *regardless of what was written on the*

*outer envelope*. *See* ECF No. 311 ¶¶ 73–75; *accord* ECF No. 313 ¶¶ 73–74; *see also Chapman v. Berks Cnty. Bd. of Elections*, No. 355 M.D. 2022, 2022 WL 4100998, at *21 n.14 (Pa. Commw. Ct. Aug. 19, 2022) ("[T]he ballot at issue [in *Mihaliak*] had already been separated by the chief clerk because the scan of the return envelope revealed, through the SURE system, that the elector was deceased[.]"), *overruled in part on other grounds*, *Ball v. Chapman*, 289 A.3d 1, 22 (Pa. 2023).[3] Thus, in the sole incident that Intervenors cite, the date requirement played no role whatsoever in preventing the counting of a fraudulent ballot. *See* Mem. Op. on Cross Mots. for Summ. J. at 67–68 n.39, *Pa. State Conf. of the NAACP v. Schmidt*, No. 1:22-CV-00339 (W.D Pa. Nov. 21, 2023), ECF No. 347 (noting record evidence that "the fraudulent ballot [in *Mihaliak*] was first detected by way of the SURE system and Department of Health records, rather than by using the date on the return envelope"). Because it played no role, the date requirement was obviously not the sole "reason or basis" to investigate the alleged voter fraud. ECF No. 312 at 19. To the contrary, the Mihaliak investigation "would have followed no matter what was written on the return envelope." *Ball*, 289 A.3d at 16 n.77; *see* ECF Nos. 311 ¶ 72, *accord* ECF No. 313 ¶ 72. If anything, the Lancaster County investigation reveals precisely why the date requirement is meaningless: The handwritten date is not used for any purpose in determining the validity of a mail ballot.

---

[3] Regardless, even if Intervenors' story was accurate, a single incident of attempted fraud does not justify a barrier that disenfranchised over 10,000 eligible voters in the 2022 general election alone (and, absent judicial redress, will continue to disenfranchise thousands more). *See Chapman*, 2022 WL 4100998, at *21 ("[A] single instance of alleged fraud related to a ballot that would have been rejected anyway because the elector had died prior to the Primary Election Day . . . does not support the drastic consequence of disenfranchising otherwise qualified Pennsylvania electors due to an omission that is unrelated to their qualifications or the timeliness of their ballot." (citation omitted)); *cf. Schwab*, 957 F.3d at 1133–35 (finding documentary proof of citizenship requirement that prevented 31,089 people from registering to vote was unconstitutional under *Anderson-Burdick* when record evidence showed 39 noncitizens had appeared on voter rolls).

As numerous courts confronting the issue have found, the date requirement "serves little apparent purpose." *Pa. NAACP*, 97 F.4th at 125; *see id.* at 155 n.31 (Shwartz, J., dissenting) ("[N]o county board of elections identified any fraud concern due to a declaration missing or having an incorrect date."); *see also Chapman*, 2022 WL 4100998, at *21 ("While the Boards posit that the date on the declaration is intended to deter fraud, the Court is unpersuaded, particularly where a ballot that contains any date on the declaration is considered valid."); *Ball*, 289 A.3d at 16 n.77 ("[I]n the isolated case of alleged fraud in Lancaster County that Petitioners cited, the Acting Secretary submitted that 'the date played no role in determining that the ballot at issue would not be counted.'" (citation omitted)); ECF Nos. 311 ¶ 72; ECF No. 313 ¶ 72. And where there is "no indication of a legitimate fraud concern at all . . . the fraud interest does not offset the burden of technical perfection" on the mail ballot outer envelope. *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 633 (6th Cir. 2016).

## III. Enforcing the date requirement burdens the right to vote.

Because there is no evidence that the date requirement meaningfully advances any legitimate state interest, state action imposing even a modest burden on the right to vote cannot survive constitutional scrutiny. In the 2022 general election, county boards discarded 10,657 otherwise-valid ballots because the voter either forgot to add a date or added a date deemed incorrect. *See* ECF No. 311 ¶ 10; *accord* ECF No. 313 ¶ 10. This disenfranchising effect reflects "the character and magnitude of the asserted injury" to the right to vote, and is thus part of the date requirement's burden under the *Anderson-Burdick* standard. *Anderson*, 460 U.S. at 789. Indeed, courts routinely include—and emphasize—such effects in their analysis of a challenged law's burden under *Anderson-Burdick*. *See, e.g.*, *Crawford*, 553 U.S. at 202 n.20 (analyzing number of voters affected by challenged photo identification law); *Schwab*, 957 F.3d at 1127–28 ("Based primarily on the district court's finding that 31,089 applicants were prevented from registering to

11

vote because of the DPOC requirement, we conclude that the burden imposed on the right to vote by the DPOC requirement was significant and requires heightened scrutiny.").

The date requirement's burden can also be shown through its impact on specific subgroups. *See Anderson*, 460 U.S. at 792–93 ("[I]t is especially difficult for the State to justify a restriction that limits political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or economic status."); *League of Women Voters of Fla., Inc. v. Detzner*, 314 F. Supp. 3d 1205, 1216 (N.D. Fla. 2018) ("Disparate impact matters under *Anderson-Burdick*."). Plaintiffs' expert, Dr. Hopkins, performed a linear regression analysis using both county level and Census block-group level data from the 2022 general election, which showed that "older, Black, and Hispanic voters were disproportionately likely to submit mail ballots that were rejected due to a failure to satisfy the date requirement." ECF No. 314-11 ¶¶ 21–23. Dr. Hopkins's analysis showed that the correlation between the number of Black or Hispanic residents in a given county and the rate of rejected mail ballots in that county was "statistically significant," which means that it was "extremely unlikely to have emerged by random chance alone." ECF No. 318 at 23–24 (emphasis and internal citation omitted). Intervenors object that Dr. Hopkins "did not determine the race or ethnicity of any voter" and that his analysis "made no predictions about actual Pennsylvania counties." ECF No. 313 ¶¶ 33–43. But neither is necessary to show a statistically significant relationship based on past election data. If, as Intervenors claim, there were no burden at all, then no statistically significant relationship should exist between the least-resourced groups of voters and the number of ballots rejected because of the date requirement. But such a relationship *does* exist, confirming that there *is* a burden on voters, with very real effects: namely, over 10,000 otherwise-valid ballots were not counted in 2022. *See* ECF No. 311 ¶ 10; *accord* ECF No. 313 ¶ 10.

Rather than dispute this mass disenfranchising effect, Intervenors claim this Court should wholly *ignore* it, arguing that the "burden" under *Anderson-Burdick* is only the cost of compliance, not the consequence of noncompliance. ECF No. 312 at 13. Intervenors' artificially narrow definition defies precedent and common sense. As previously noted, courts routinely consider the consequences of noncompliance when considering the burden imposed by an election regulation. *See, e.g.*, *Fish v. Kobach*, 309 F. Supp. 3d 1048, 1110 (D. Kan. 2018) (holding that "the number of incomplete and canceled registration applications for failure to submit DPOC provides concrete evidence of the magnitude of the harm"), *aff'd sub nom. Schwab*, 957 F.3d 1105. Even under Intervenors' definition, however, the date requirement creates costs to voting that disproportionately affect those least likely to have the resources necessary to navigate these costs. *See* ECF No. 318 at 23–24.

First, the date requirement requires voters to successfully complete an additional mandatory field by replicating the precise date format that their specific county board will accept, without accidental error or omission. *See* ECF No. 288 at 20–21; *see also Husted*, 837 F.3d at 632 (holding that rejecting mail ballots based on voters' failure to write their birthday and address with "technical precision" imposed unjustified burden); *Democratic Exec. Comm. of Fla.*, 915 F.3d at 1319–20 (lack of "uniform standards for matching signatures" "virtually guarantee[d] a crazy quilt of enforcement of the requirement from county to county," resulting in undue burden on right to vote under *Anderson-Burdick*).

Second, for those voters who rely on assistance to complete their ballot, like Ms. Eakin, the date requirement is another way in which that assistance can fall short. ECF No. 311 ¶¶ 80–84, 90; *accord* ECF No. 313 ¶¶ 80–84, 90. Moreover, if a voter fails to successfully comply with the date requirement, they must make last-minute travel arrangements to visit county board offices

13

to correct their ballot in order to have their vote counted. *See, e.g.*, ECF No. 311 ¶¶ 85–89; *accord* ECF No. 313 ¶¶ 50, 85–89. These costs may not be severe—but under the *Anderson-Burdick* balancing test, they do not need to be. Because there is simply nothing on the other side of the scale, *any* burden imposed by the date requirement is too heavy. And the undisputed evidence shows that there is at least some burden, even if the disenfranchisement of thousands of eligible voters is not part of the equation. *But see supra* 11–12 (collecting cases showing disenfranchisement is part of burden analysis).

\* \* \*

The date requirement, "it turns out, serves little apparent purpose. It is not used to confirm timely receipt of the ballot or to determine when the voter completed it." *Pa. NAACP*, 97 F.4th at 125; *see also* ECF No. 313 ¶¶ 52–64; *accord* ECF No. 311 ¶¶ 52–64. Nor is it used to determine an individual's qualifications to vote, *Pa. NAACP*, 97 F.4th at 137–38; *see also* ECF No. 313 ¶¶ 31–32; *accord* ECF No. 311 ¶¶ 31–32, or to detect or deter purported fraud. ECF No. 311 ¶¶ 65–75; *see also supra* Section II.C, or for any other purpose. ECF No. 311 ¶¶ 76–79. Thus, even if the burden imposed by the date requirement were slight, *but see supra* Part III, because the date requirement does not advance any sufficiently weighty state interest, it cannot withstand constitutional scrutiny under the *Anderson-Burdick* framework. *See Tashjian*, 479 U.S. at 217–25; *Kim*, 99 F.4th at 158–59; *Belitskus*, 343 F.3d at 645–47; *Reform Party*, 174 F.3d at 318.

## CONCLUSION

The Court should grant Plaintiffs' motion for summary judgment against each Defendant.

Dated: June 5, 2024

Adam C. Bonin (PA 80929)
**THE LAW OFFICE OF**
**ADAM C. BONIN**
121 South Broad Street, Suite 400
Philadelphia, PA 19107
Telephone: (267) 242-5014
Facsimile: (215) 827-5300
adam@boninlaw.com

Respectfully submitted,

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta*
Justin Baxenberg*
Daniel J. Cohen*
Omeed Alerasool* (PA 332873)
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
unkwonta@elias.law
jbaxenberg@elias.law
dcohen@elias.law
oalerasool@elias.law

* *Admitted Pro Hac Vice*

Counsel for Plaintiffs

15